KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Adam C. Rogoff
P. Bradley O'Neill
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Proposed Counsel for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
:
In re:                                          :           Chapter 11
:
SAINT VINCENTS CATHOLIC MEDICAL      :           Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, <u>et al.</u>,             :
:
                              Debtors.          :           Joint Administration Pending
:
-------------------------------------------------------- x

### DECLARATION OF MARK E. TONEY PURSUANT TO LOCAL BANKRUPTCY RULE 1007-2 AND IN <u>SUPPORT OF FIRST DAY MOTIONS AND APPLICATIONS</u>

MARK E. TONEY declares as follows:

1.      I am the Chief Restructuring Officer of Saint Vincents Catholic Medical

Centers of New York ("**SVCMC**") and have served in this position since January 27, 2010. I am

familiar with the business and affairs of SVCMC and its debtor affiliates (each a "**Debtor**" and

collectively, with SVCMC, the "**Medical Centers**" or the "**Debtors**"),[1] as Chapter 11 debtors

and debtors in possession.

---

[1]     In addition to SVCMC, the Debtors are as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home; and (viii) SVCMC Professional Registry, Inc. There are certain affiliates of SVCMC who are not debtors.

2.     I submit this declaration (this "**Declaration**") pursuant to Rule 1007 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Bankruptcy Rules**") to support the Debtors' petitions for relief under Chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") filed today (the "**Petition Date**") in these Chapter 11 cases ("**Chapter 11 Cases**") and the relief, in the form of motions and applications, that the Debtors' have simultaneously requested of the Court (the "**First Day Motions and Applications**").

3.     Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, upon information supplied to me by other members of the Debtors' management or professionals, upon information learned from my review of relevant documents, or upon my opinion based upon my experience and knowledge of the Debtors' operations and financial conditions.  If called as a witness, I would testify to the facts set forth in this Declaration.   Unless otherwise indicated, all financial information contained herein is presented on an unaudited basis.  I am authorized to submit this Declaration.

## INTRODUCTION

4.     Founded by the Sisters of Charity in 1849, the Medical Centers are the only remaining Catholic-sponsored, acute-care hospital network in New York City.  Dedicated to fulfilling a charitable healthcare mission, the Medical Centers are committed to a mission that demands they give "Respect, Integrity, Compassion and Excellence to all who come to us in need, especially the poor."

5.     Until recently, the Medical Centers' core business centered around St. Vincent's Hospital Manhattan (the "**Hospital**"), which is located in the Greenwich Village section of Manhattan.  The Medical Centers operate numerous other businesses, including a behavioral health facility, nursing homes, continuing care facilities, a hospice, a home health

agency and a military health plan serving active duty dependents, retirees, and their families. Additionally, the Medical Centers operate certain physician-related affiliates, provide specialized care across 14 clinical departments, and are affiliated with 18 licensed behavioral health and community medicine programs and six ambulatory care providers in Manhattan, including the Comprehensive Cancer Center, an HIV center, and a wound care center.

6. SVCMC and its then debtor and non-debtor affiliates emerged from Chapter 11 in the summer of 2007 subject to over $1 billion of liabilities. After emergence, management attempted to increase their revenue, improve their operations, and reduce costs. Despite these efforts, however, the Medical Centers' revenue remained flat, and the Debtors incurred operating losses of approximately $43 million in 2008 and approximately $64 million in 2009. In 2008 and 2009, the Hospital alone had operating losses of approximately $81 and $107 million, respectively.

7. By the end of 2009, the Debtors faced a severe cash crisis. In response, the Board appointed a Special Restructuring Committee in December 2009, hired a chief restructuring officer in late January 2010, and other restructuring professionals shortly thereafter, and took steps to cut costs and assess their restructuring alternatives. Despite these efforts, however, the Debtors' liquidity crisis deepened. By early February 2010, only emergency funding provided by their prepetition lenders and the State of New York enabled the Debtors to make payroll and stave off an immediate bankruptcy filing.

8. The Debtors had used the respite provided by this emergency financing, subsequent financial assistance from their prepetition lenders, the State of New York, the Sisters of Charity and a Board member, and wage concessions by employees to explore options for preserving their businesses' long-term viability and maximizing the value of their assets. Among

other things, the Debtors worked to identify and negotiate with potential new sponsors to preserve operations at the Hospital and potential purchasers for their non-Hospital services and assets. While these efforts have led to the entry of non-binding letters of intent for the sale of certain non-Hospital services, they did not yield a transaction that will support the continued operation of the Hospital. Despite an extensive marketing process and several serious indications of interest, negotiations concerning the last potential transaction terminated on March 31, 2010. When it became clear that all potential partners had withdrawn from consideration, the Debtors concluded that the continued operation of the Hospital was no longer a viable option.

9. As a result, on April 6, 2010, the Board of Directors of SVCMC voted to approve the closure of the Hospital and the transfer or closure of the outpatient programs and clinics associated with and operated by the Hospital. In accordance with New York State law, the Debtors submitted their proposed plan of closure on April 9, 2010 (as such may be amended from time to time in consultation with DOH (the "**Closure Plan**")) to the DOH for approval.

10. While DOH has not yet approved the Plan, the Debtors have already begun the closure process and are working closely with DOH to implement the Closure Plan. Among other things, the Hospital has limited new inpatient admissions, put its emergency department on permanent diversion, begun to transfer and discharge patients, initiated staff reductions, and instituted heightened security measures to safeguard patients, employees, medical records, medical supplies and equipment. At the same time, the Debtors are continuing their efforts to sell their non-Hospital businesses as going concerns.

11. During these Chapter 11 Cases, the Debtors expect to: (i) implement the Closure Plan, (ii) sell the Debtors' non-Hospital health care businesses (including their home health, hospice, nursing home, military health plan and behavioral health hospital businesses) as

going concerns pursuant to section 363 of the Bankruptcy Code, and (iii) complete an orderly wind down of the Debtors' businesses.

**PART I**

**THE MEDICAL CENTERS' HISTORY AND BUSINESS**

12.     The Medical Centers, which are jointly sponsored by the Most Reverend Bishop of the Roman Catholic Diocese of Brooklyn and the President of the Religious Congregation of the Sisters of Charity, are predominately organized as New York not-for-profit corporations and dedicated to fulfilling a healthcare mission (the "**Mission**").

13.     The Hospital, which was the centerpiece of the Medical Center's operations, is located in the Greenwich Village section of Manhattan and previously served as the academic acute-care medical center for New York Medical College.[2] The Hospital was the primary medical center on the West Side of Manhattan from 58th Street south to Battery Park — an area that includes over 260,000 residents, over 900,000 private sector workers and many tourists — and offered the only Level One Trauma Center below 114th Street on the West Side of Manhattan. Not only did the Hospital provide critical emergency services in response to the 1993 and September 11, 2001 World Trade Center disasters, but it provided specialized care and emergency services for this densely-populated area, especially for Medicaid and uninsured patients who represented 47% of treated and released emergency room visits.

14.     The Medical Centers' other – and on-going – services include: (i) St. Vincent's Hospital Westchester, a behavioral health facility; (ii) nursing home and continuing care services at (a) Bishop Francis J. Mugavero Center for Geriatric Care in Brooklyn, (b) Holy

---

[2]     In March, 2010, New York Medical College ("**NYMC**") provided a notice to the Accreditation Council for Graduate Medical Education ("**ACGME**") voluntarily withdrawing from the accreditation program for residents at the Hospital. As a result of NYMC's action, the Medical Centers no longer serve as the academic center for New York Medical College. The current resident classes, therefore, will terminate effective June 30, 2010.

Family Home in Brooklyn, (c) St. Elizabeth Ann's Health Care and Rehabilitation Center in Staten Island, and (d) Pax Christi Hospice on Staten Island and Manhattan; (iii) Saint Vincent Catholic Medical Centers Home Health Agency, which delivers comprehensive home care services throughout the five boroughs of New York City as well as in Nassau and Suffolk Counties through a "long-term" home health business and a "certified home health agency" business; and (iv) the Uniformed Services Family Health Plan at SVCMC, which is a military health plan serving active duty dependents, retirees and their families. Additionally, the Medical Centers operate certain physician related affiliates which provide specialized medical services for patients of the Hospital.

15.     The Medical Centers provided highly specialized care across 14 clinical departments, including emergency medicine, behavioral health, cardiology, cardiothoracic surgery, anesthesia, medical oncology, obstetrics and gynecology, and general and specialty surgery. Additionally, located throughout Manhattan, the Hospital was affiliated with six ambulatory care providers including the Comprehensive Cancer Center, an HIV center, a wound care center, 18 licensed behavioral health and community medicine programs including rape crisis counseling and medical care, homeless services, long-term health care for the elderly, and immigrant health services. The Debtors are evaluating the status of these clinical affiliations as part of their Closure Plan.

16.     Before the initiation of the Closure Plan, the Medical Centers had approximately 5,900 employees.[3]  Approximately 4,200 of these employees are unionized and represented by the following entities: (i) SEIU 1199 United Healthcare Workers East ("**SEIU**

---

[3]     In addition to headcount, the Medical Centers also calculate the amount of Employees in terms of "full-time equivalents." The Medical Centers employ in excess of 4,800 full-time equivalents ("**FTEs**") of which approximately 3,500 are Union members. The approximations of headcount and FTEs include employees of the professional corporations. There are fewer FTEs than actual employees. For example, two part-time employees could equal one FTE.

**1199**"); (ii) New York State Nurses Association ("**NYSNA**"); (iii) Committee of Interns and Residents/SEIU (the "**CIR SEIU**"); (iv) Teamsters Local 803 (the "**Local 803**"); and (v) the Special & Superior Officers Benevolent Association ("**SSOBA**"). In addition, approximately 1,000 physicians were affiliated with the Hospital. However, in connection with the Closure Plan, on April 12, 2010, the Debtors issued "WARN" notices to approximately 2,800 employees whose employment is being terminated as a result of the closure of the Hospital and any related clinical programs.

**Charitable Care**

17.    Because of their Mission, the Medical Centers provide critical healthcare services to vulnerable populations that other providers in the area lack sufficient capacity to provide. The Hospital operates one of the largest AIDS treatment centers in New York, treating more than 4,500 individuals on an in-hospital and on an outpatient basis and Community Medicine services for the homeless and homebound, serving more than serving approximately 10,000 individuals. The Hospital also treated over 60,000 emergency medicine visits, approximately 47% of treated and released patients were Medicaid and self-pay patients. Nationally recognized for cultural sensitivity, the Medical Centers welcome people from different cultures and religions and have instituted special programs and services for members of the Chinese, Jewish and Muslim communities as well as for the homeless and homebound.

18.    In furtherance of their Mission, in 2009, the Medical Centers provided over $36 million in charitable care to the indigent and uninsured population of Manhattan. The Commission on the Public's Health System recently issued a report on the distribution of funding to New York's hospitals from the state's charity care pools stating that the Hospital was one of the hospitals that was underpaid based on its actual service to the uninsured.

**The Medical Centers' Services**

19.     The Medical Centers have a variety of hospital and healthcare related services.  Certain of these services are operated by the individual Debtors, while others are operated as divisions of SVCMC.  Importantly, while the Debtors are closing the Hospital, they are marketing their other services as going concern operations in order to ensure continuation of patient care and for the benefit of the communities which the Medical Centers serve and stakeholders of the estate.

20.     **Saint Vincents Catholic Medical Centers of New York**.  The following businesses are operated as divisions of SVCMC:

(a)     **The Hospital**. Founded in 1849, the Hospital is licensed as a 727 bed facility located at 170 West 12th Street in the Greenwich Village section of Manhattan. Before the Closure began, the Hospital offered a wide variety of acute-care and related services, including behavioral health, cancer, cardiology, HIV treatment, orthopedic surgery, obstetric/maternity, pediatrics, intensive care units, rehabilitation and child psychiatry. Approximately 56% of the Hospital's admissions resulted from visitors to its emergency department.  In 2009, the Hospital recorded 276,635 outpatient visits, 61,368 emergency room visits, 297 trauma patients and 21,818 discharges (including psychiatric, rehabilitation and newborns).  In 2009, the Hospital had total revenues (including gifts) of approximately $502 million but suffered a net operating loss of approximately $107 million.

(b)     **St. Vincent's Hospital Westchester ("St. Vincent's Westchester")**. Founded in 1879 by the Sisters of Charity, St. Vincent's Westchester provides mental health care and substance abuse services, on both an inpatient and an outpatient basis, to individuals in all stages of illness and recovery.  Located in Harrison, New York, St. Vincent's Westchester provides a 24-hour emergency evaluation and referral center, and has a total of 133

licensed beds dedicated to psychiatric care and alcohol rehabilitation and almost 600 residential beds for individuals with histories of psychiatric illness/chemical dependency throughout the five boroughs. In 2009, St. Vincent's Westchester treated over 107,000 patient visits on an outpatient basis at the Harrison campus and at sites in White Plains and Tuckahoe, New York. St. Vincent's Westchester also maintains significant community funded programs, including intensive case management, supportive housing, assertive community treatment, and various other peer and outreach programs. In 2009, St. Vincent's Westchester had total revenues of approximately $85 million. St. Vincent's Westchester is not included in the Closure. Before the Petition Date, SVCMC entered into a non-binding letter of intent to sell the operations of St. Vincent's Westchester as a going concern and is now negotiating an asset purchase agreement to sell this important behavioral healthcare service, subject to higher or better bids

(c) **SVCMC Home Health Agency ("Home Health")**. SVCMC's Home Health division provides skilled nursing and rehabilitative services to patients in New York's five boroughs and Nassau and Suffolk counties, through both a "long term" home health care program (the "**Long-Term Home Health Program**") and a certified home health agency program (the "**CHHA**"). The CHHA provides traditional home care services for those with heart conditions, diabetes, asthma and orthopedic problems in addition to maternal and early intervention programs for children. The Long-Term Home Health Program provides nursing home-eligible Medicaid patients with clinical services at home as an alternative to institutionalization. In 2009, Home Health had total revenues of approximately $77 million. Home Health is not included in the Closure. Before the Petition Date, SVCMC entered into non-binding letters of intent to sell the CHHA and the Long-Term Home Health Program separately as going-concerns. As of the date hereof, SVCMC entered into a non-binding letter of intent to

sell the operations of these two Home Health businesses and is continuing its efforts to enter into asset purchase agreements.

(d) **Uniformed Services Family Health Plan ("US Family Health Plan")**. The Hospital is the designated managed care provider of the US Family Health Plan, serving parts New York, all of New Jersey, southeastern Pennsylvania and western Connecticut. The US Family Health Plan is a managed health plan, sponsored by the Department of Defense though its TRICARE program, for active duty dependents, armed services retirees and their families. The Hospital administers the US Family Health Plan and plan members have access to the Medical Centers' facilities. US Family Health Plan is not included in the Closure. SVCMC is evaluating options to preserve the value of this business as a going concern.

(e) **St. Vincent's Comprehensive Cancer Center ("Cancer Center")**. The Cancer Center is an outpatient facility affiliated with the Hospital that provides cancer care, diagnosis, treatment and recovery, as well as counseling, nutrition, therapeutic and educational services. Aptium Oncology, a national provider of oncology management and consulting services, runs the Cancer Center pursuant to prepetition agreements with the Hospital. In 2009, the Cancer Center treated approximately 11,000 patients. In 2009, the Cancer Center had total revenues of approximately $60 million. The Cancer Center is not included in the Closure. SVCMC is evaluating options to preserve the value of this business as a going concern.

21. **Pax Christi Hospice, Inc. ("Pax Christi")**. Pax Christi provides at-home hospice services in Manhattan, Brooklyn, Queens, the Bronx, and Staten Island as well as inpatient hospice care for special needs. Pax Christi also offers bereavement counseling to families of the deceased. In 2009, Pax Christi had total revenues of approximately $12 million. Before the Petition Date, SVCMC and Pax Christi entered into a non-binding letter of intent to

10

sell the hospice business as a going-concern. As of the date hereof, SVCMC and Pax Christie are continuing their efforts to enter into asset purchase agreements to sell this business, subject to higher or better bids.

22. **St. Jerome's Health Services Corporation d/b/a Holy Family Home ("Holy Family Home")**. Holy Family Home is a 200-bed, long-term, geriatric care facility located in the Bensonhurst section of Brooklyn. In 2009, Holy Family Home had total revenues of approximately $17 million. Before the Petition Date, Holy Family Home entered into a non-binding letter of intent to sell its business as a going-concern. As of the date hereof, Holy Family Home is continuing its efforts to enter into an asset purchase agreement to sell this business, subject to higher or better bids

23. **Bishop Francis J. Mugavero Center for Geriatric Care ("Bishop Mugavero")**. Bishop Mugavero is a 288-bed, long-term geriatric care facility located in the Boerum Hill section of Brooklyn. In 2009, Bishop Mugavero generated total revenues of approximately $26 million. Before the Petition Date, Bishop Maguvero entered into a non-binding letter of intent to sell its business as a going-concern. As of the date hereof, Bishop Maguvero is continuing its efforts to enter into an asset purchase agreement to sell this business, subject to higher or better bids.

24. **Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care Rehabilitation Center ("St. Elizabeth Ann")**. St. Elizabeth Ann is a 300-bed, skilled nursing and rehabilitative care facility located in Staten Island. In addition to long-term care, this facility provides highly specialized sub-acute, neuro-behavioral, and extensive AIDS-related services. In 2009, St. Elizabeth Ann had total revenues of approximately $51 million. Before the Petition Date, St. Elizabeth Ann began to solicit offers

11

for the sale of this business as a going concern and entered into a non-binding letter of intent to sell its business as a going concern.  This process is on-going.

25.    **SVCMC Professional Registry, Inc. ("SVCMC Professional Registry")**.  SVCMC Professional Registry is a wholly-owned, for-profit subsidiary of SVCMC that manages the placement of qualified practical and registered nurses, nurse's aides, office staff and other healthcare professionals at the Medical Centers and at other facilities.  As of the Petition Date, the SVCMC Professional Registry had little or no business operations and minimal revenues.  The Debtors anticipate that this business will be liquidated as part of the Closure Plan.

26.    **555 6th Avenue Apt. Operating Corporation ("555 6th Avenue")**.  555 6th Avenue is a for-profit holding company that manages an apartment complex (the "**Staff House**") owned by SVCMC located in New York City that housed graduate medical residents.  Because the Debtors no longer needed Staff House to house residents, before the Petition Date, they solicited bids for the sale of the Staff House and expect to use the proceeds of such a sale to pay down the secured debt against that building – mainly held by Sun Life Assurance Company of Canada (U.S.), a Delaware corporation ("**Sun Life**"), which has a first lien against the real estate and the MedMal Trust, which has a second lien against the real estate.  In coordination with the MedMal Trust Monitor, the Debtors intend on entering into an Asset Purchase Agreement for the sale this asset and filing a motion to sell this asset, subject to higher or better bids.

27.    **The Housing Development Corporations**.  Certain of the Debtors are wholly-owned, not-for-profit subsidiaries that hold parcels of real estate related to the behavioral health business of St. Vincent's Westchester.  These consist of (i) Chait Housing Development Corporation and (ii) Fort Place Housing Corporation.

**The Non-Debtors**

28.     The Debtors also have certain non-debtor affiliates:

(a)     **The Saint Vincent Catholic Medical Center Foundation (the "Foundation")**.  Incorporated in 2002, the Foundation is a not-for-profit subsidiary of SVCMC that (i) oversees the management, allocation and investment of the Hospital's endowment to support vital programs and capital improvements and (ii) seeks to increase philanthropic support of the Medical Centers.

(b)     **Queensbrook Insurance Limited ("QIL")**.  QIL is a wholly-owned, for-profit subsidiary of SVCMC.  Organized as an exempted company under the Companies Law of the Cayman Islands, QIL provides insurance and reinsurance to SVCMC affiliates and physicians for, among other things, its facilities, workers' compensation, automobile liability and general liability.

(c)     **Queensbrook NY LLC ("Queensbrook NY")**. Queensbrook NY is a wholly-owned captive insurance subsidiary of SVCMC.  Organized as a New York corporation, Queensbrook NY underwrites medical malpractice for physicians employed by or affiliated with SVCMC and includes coverage for their practices both within and outside the purview of SVCMC facilities.

(d)     **The Professional Corporations**.  SVCMC is affiliated with professional corporations which employ physicians who provide specialized medical services to patients on behalf of the Hospital.  These consist of: (i) Medical Service of St. Vincent's Hospital & Medical Center, P.C.; (ii) St. Vincent's Emergency Services, P.C.; (iii) St. Vincent's Physician Services, P.C.; and (iv) Surgical Service of St. Vincent's, P.C.  These professional corporations are managed by the Chair of the Department for that practice specialty, who is also their sole shareholder.

**The Debtors' Manhattan Real Estate**

29.     SVCMC owns ten buildings and real estate in lower Manhattan with a total approximate square footage of over 940,870.  Before the Petition Date, the Debtors explored a potential relocation and restructuring of the Hospital to a potential newly-built hospital on the site of the facility commonly known as the "O'Toole" building.  This process contemplated that the real estate where the Hospital operated would be sold for redevelopment by entities controlled by a developer, with the proceeds to be used to retire the Hospital's pre-existing debt.[4]

30.     As of the Petition Date, the Debtors are evaluating how best to maximize the value of the Hospital's real estate for the benefit of the estates and creditors.  The Debtors anticipate that this will be a significant decision and a marketing and sale process or alternatives will be pursued as part of these Chapter 11 Cases. This real estate is subject to material encumbrances, including the mortgages in favor of the GE Facility (as defined below).

**Corporate Governance**

31.     The current board of directors of SVCMC consists of 24 directors, who are listed in Exhibit B.

32.     In December 2009, the Board appointed a special Restructuring Committee comprised of seven directors (the "**Restructuring Committee**").  These directors work directly with me, the Debtors' senior management and the other restructuring professionals to coordinate and oversee the operational and financial restructuring necessary for preservation of the Medical Centers' businesses and to evaluate all strategic alternatives.

---

[4]    As part of the Prior Chapter 11 Cases, on December 31, 2007, SVCMC entered into a contract of sale with RSV, LLC, an entity owned by the Rudin family, whereby SVCMC agreed to sell certain of the Hospital's real property to the RSV, LLC for the development of a mixed use, predominantly residential facility.  The Debtors are presently evaluating their options with respect to the Hospital's real property.

33.     In late January 2010, at approximately the same time I became CRO and Grant Thornton was retained, the Debtors also retained Cain Brothers & Company, LLP as lead investment banker to advise on potential sale and strategic partnership transactions for the Hospital and to coordinate the going-concern sales of the other businesses.  The Debtors separately retained Shattuck Hammond Partners and Loeb & Troper LLP to market the Debtors' non-Hospital businesses in coordination with Cain Brothers.  Both of these investment banking firms were retained due to their prior involvement with the Debtors and/or their specialized expertise in selling the specific assets.  Additionally, in February 2010, the Board appointed Steven Korf of Grant Thornton as the Debtors' Chief Financial Officer.  Working with senior management, Federal, State and local officials, the Restructuring Committee and the Board, the Grant Thornton team and the Debtors' other restructuring professionals evaluated and implemented strategic and tactical options, including devising a business plan, identifying liquidity generating initiatives and negotiating with potential operating partners and acquirers of assets.  It is anticipated that we will continue these efforts and will be overseeing all aspects of the Chapter 11 Cases and the orderly closure of the Hospital and sale of the remaining services as going-concern operations.

## CAPITAL STRUCTURE AND PREPETITION INDEBTEDNESS[5]

34.     In 2000, SVCMC merged with several Catholic hospitals and nursing home facilities.  In the years that followed the merger, the operating results of the enterprise

---

[5]    Nothing herein constitutes a concession or acknowledgement of any amount owed or on the validity of any debt, claim or lien. The descriptions of the collateral securing the underlying obligations are intended only as brief summaries.  In the event of any inconsistencies between the summaries set forth herein and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

deteriorated.  In 2005, SVCMC and certain affiliates[6] commenced the Prior Chapter 11 Cases in the United States Bankruptcy Court for the Southern District of New York.

35.      In the summer of 2007, SVCMC and its then-debtor affiliates confirmed and consummated a plan of reorganization (the "**Prior Chapter 11 Plan**").[7]  Despite a long chapter 11 process, the reorganized debtors and their non-debtor affiliates emerged from chapter 11 with a complex capital structure consisting of various layers of secured debt, as well as substantial unsecured liabilities, totaling over $1 billion.  Each material obligation is discussed below.

**Post-Emergence Debt**

A.      **The GE Facility**

36.      SVCMC's primary credit facility (the "**GE Facility**") is a senior secured term and revolving loan facility provided by General Electric Capital Corporation ("**GE Capital**"), as agent, letter of credit issuer and lender, and Commerce Bank, N.A., as lender (n/k/a TD Bank, N.A.) (together with GE Capital as lender, the "**GE Facility Lenders**").  The GE Facility is guaranteed, on joint and several bases, by Holy Family Home, Pax Christi, Bishop Mugavero, and St. Elizabeth Ann (all the guarantors, together with SVCMC as borrower, collectively the "**GE/SVCMC Credit Parties**").

37.      The GE Facility was entered into in connection with the Prior Chapter 11 Cases, and provided the exit financing necessary for emergence from the Prior Chapter 11 Cases. Proceeds of the GE Facility were used to refinance the prior DIP facility, fund the Prior Chapter

---

[6]      In addition to SVCMC, the following entities filed for Chapter 11 protection on July 5, 2005: CMC Physician Services, P.C., CMC Radiological Services P.C., CMC Cardiology Services P.C., CMC Occupational Health Services P.C., Medical Service of St. Vincent's Hospital and Medical Center, P.C., and Surgical Service of St. Vincent's, P.C.

[7]      At present, Prior Chapter 11 Cases remains open to address certain minor matters, some of which are now stayed by the commencement of these Chapter 11 Cases.

11 Plan obligations, pay transaction costs, and provide post-emergence liquidity for working capital and general corporate needs of SVCMC.

38.     The GE Facility, which matures on August 30, 2014, is comprised of two separate facilities: a $270 million term loan (the "**Term Loan**") and a $50 million revolving credit facility (the "**Revolving Facility**").  As of the Petition Date, the full amount is owed on account of the Term Loan and approximately $43 million in principal is owed on account of the Revolving Facility.[8]

39.     The GE Facility is secured by a first priority lien on and security interest in substantially all of the assets of the GE/SVCMC Credit Parties.  The GE Facility is also secured by junior liens on and security interests in, among other things: (i) certain other SVCMC real property assets (i.e., the Staff House and the Westchester Real Estate Property (as defined below); (ii) certain SVCMC indigent care and professional educational pool funds; (iii) the real estate owned by Bishop Mugavaro; and (iv) certain receivables related to cancer-related services at SVCMC's Comprehensive Cancer Center (the "**Cancer Center Receivables**").

B.      **The Sun Life Mortgage Loans**

40.     On August 30, 2007, in connection with its emergence from the Prior Chapter 11 Cases, SVCMC issued two promissory notes to Sun Life.  The first promissory note, in the principal amount of $42.5 million (the "**Staff House Note**"), is secured by (i) a first priority mortgage and security interest on, and an assignment of the leases and rents of, the Staff House, and (ii) a second priority mortgage and security interest on, and an assignment of the leases and rents of, real property owned by SVCMC and used by St. Vincent's Westchester facility located in Harrison, New York (the "**Westchester Real Estate Property**").  The second

---

[8]     On or about February 10, 2010 and March 3, 2010, the GE Facility Lenders made overadvances to SVCMC in the amounts of $3 million and $5 million, respectively, under the Revolving Facility.

promissory note, in the principal amount of $17.5 million (the "**Westchester Note**" and together with the Staff House Note, the "**Sun Life Notes**"), is secured by a first priority mortgage and security interest on, and an assignment of leases and rents of the Westchester Real Estate Property.[9]

41.     Each of the Sun Life Notes bears interest at a rate equal to 6.25% per annum and matures on September 1, 2014.  As of the Petition Date, approximately $40 million and $16.4 million in principal are owed on the Staff House Note and the Westchester Note, respectively.

42.     The Westchester Property, which secures the Sun Life Notes, consists of two unsubdivided parcels, one of which has been improved and the other of which has not.  As of the Petition Date, the Westchester Property remains a single unitary lot.

C.     **MedMal Trusts' Secured Claims**

43.     Under the Prior Chapter 11 Plan, SVCMC agreed to fund three separate medical malpractice trusts (the "**MedMal Trusts**") to cover its estimated liability for medical malpractice claims against its physicians and employees.  The MedMal Trusts correspond to the three regions in which SVCMC operated prior to the commencement of the Prior Chapter 11 Cases: Manhattan/Westchester, Brooklyn/Queens and Staten Island.  Approximately $42 million was funded at the conclusion of the Prior Chapter 11 Plan and $10 million was funded on or about August 30, 2008.  The Prior Chapter 11 Plan provided that the balance was to be funded through annual payments over nine years, made pursuant to a funding schedule.

---

[9]     As part of the GE Facility, GE Capital, as agent, has a third priority mortgage and security interest on, and an assignment of the leases and rents of, the Staff House. GE Capital, as agent, has a fourth priority mortgage and security interest in, and an assignment of the leases and rents of, the Debtors' Westchester real property.  However, GE Capital, as agent, has a first-priority lien on all other assets of St. Vincent's Westchester.

44.     To secure the contractual obligations of SVCMC to the MedMal Trusts, under the Prior Chapter 11 Plan, SVCMC granted to the MedMal Trusts: (i) a second priority mortgage and security interest on, and an assignment of the leases and rents of, the Staff House and (ii) a third priority mortgage and security interest on, and an assignment of the leases and rents of, the Westchester Property.  As noted above, prior to the Petition Date, the Debtors coordinated with the Monitor for the MedMal Trusts on the marketing and sale of the Staff House.  Notably, this sale involves a discrete real estate asset only.  Based upon initial offers, the Debtors believe that the Staff House Note held by Sun Life will be paid in full and, therefore, the remaining net proceeds would be payable for the benefit of the MedMal Trusts.  Therefore, the Debtors solicited the participation of the Monitor for the MedMal Trusts in the Staff House sale process.  The MedMal Trusts will likely also hold a deficiency claim that will be unsecured.

D.     **Aptium**

45.     On or about April 11, 1996, SVCMC entered into a consulting and administrative services agreement (as amended, the "**Consulting Agreement**") with (the predecessor in interest to) Aptium W. New York, Inc., ("**Aptium**") pursuant to which Aptium agreed to provide development, consulting, administrative and other services to SVCMC with respect to the operation of a comprehensive outpatient cancer center.  To secure the payment of fees due to Aptium under the Consulting Agreement, SVCMC granted to Aptium a lien and security interest on all of the revenue generated solely from the cancer-related services actually provided by Aptium through the Cancer Center (the **"Cancer Care Receivables"**).[10]

46.     On August 30, 2007, Aptium and GE Capital, as agent, entered into the Aptium/GE Intercreditor Agreement, which provides that Aptium's security interest in the

---

[10]     To perfect this lien, Aptium has a lien and security interest in a certain segregated account into which the Cancer Care Receivables are ultimately deposited.

Cancer Care Receivables is senior to GE Capital's security interest therein. Aptium will likely have a deficiency claim that will be unsecured.

E. **Pension Plan/PBGC**

47. At the time of the Prior Chapter 11 Cases, SVCMC sponsored the Saint Vincents Catholic Medical Centers Retirement Plan (the "**Pension Plan**"), which is a defined benefit pension plan insured by the Pension Benefit Guaranty Corporation (the "**PBGC**") under Title IV of the Employee Retirement Income Security Act of 1974 ("**ERISA**"), 29 U.S.C. §§1301-1461, et seq. The Pension Plan was subject to minimum funding requirements of ERISA and § 412 of the Internal Revenue Code.

48. During the Prior Chapter 11 Cases, both the PBGC and SVCMC agreed that the Pension Plan was underfunded. Accordingly, pursuant to the Prior Chapter 11 Plan, SVCMC assumed its Pension Plan obligations and its obligations as contributing plan sponsor under ERISA and paid $75 million to the Pension Plan in 2007[11]. Thereafter, the Prior Chapter 11 Plan required SVCMC to pay an additional $13.5 million in each of calendar years 2008 through 2012. Prior to the Petition Date, due to liquidity constraints, the Debtors did not make the January 15, 2010 payment of approximately $5 million.

49. As a result of the Debtors' failure to make a required $5 million quarterly payment due to the Pension Plan on January 15, a statutory lien in favor of the Pension Plan arose automatically equal to the unpaid balance of the missed contribution payment. The PBGC perfected this lien on February 3, 2010. The lien attaches to real and personal property of certain of the Debtors.

---

[11] Of this amount, $57.5 million was paid in connection with the exit of the Prior Chapter 11 Cases.

50.     On or about February 4, 2010, the PBGC and GE Capital, as agent under the GE Facility, entered into a Lien Subordination Agreement under which the PBGC agreed to (i) subordinate its liens and security interest in the GE Credit Parties' personal property collateral to GE Capital, as agent, and (ii) subordinate its liens and security interests to any subsequent liens granted by the GE Credit Parties to secure additional or replacement financing prior to March 22, 2010  (the "**Advance Cutoff Date**").  On March 16, 2010, the parties entered into an amendment which extended the Advance Cutoff Date until April 22, 2010.

**Public Financing**

A.     **DASNY/HUD Bonds for Bishop Mugavero**

51.     On January 28, 1993, the Dormitory Authority of the State of New York ("**DASNY**") (through its predecessor, the New York State Medical Care Facilities Finance Agency ("**MCFFA**")) issued its Hospital and Nursing Home Insured Mortgage Revenue Bonds, 1993 Series A (the "**1993 Series A Bonds**").  On April 21, 1993, a portion of the proceeds of the 1993 Series A Bonds were loaned to Bishop Mugavero.  To evidence this loan, Bishop Mugavero issued a Mortgage Note (the "**Bishop Mugavero Note**") in the principal amount of approximately $27 million in favor of MCFFA.

52.     The Bishop Mugavero Note, and the performance by Bishop Mugavero of its obligations under a Regulatory Agreement and Building Loan Agreement executed in connection with the Bishop Mugavero Note, is secured by a mortgage and security interest on, and an assignment of the leases and rents of (the "**Bishop Mugavero Mortgage**"), certain real property located at 155 Dean Street, Brooklyn, New York (the "**Bishop Mugavero Nursing Home Facility**").[12]  As additional security for its obligations under the Bishop Mugavero Note,

---

[12]     Prepetition GE Agent has a second priority mortgage and security interest on, and an assignment of the leases and rents of, Bishop Mugavero.

Bishop Mugavero also granted to DASNY a first lien in and security interest on all equipment, furniture and fixtures located at the Bishop Mugavero Nursing Home Facility.

53. Pursuant to the resolutions of DASNY authorizing the issuance of the 1993 Series A Bonds (the "**Resolutions**"), Bishop Mugavero established a "depreciation reserve fund" (the "**Bishop Mugavero Depreciation Reserve Fund**") to service the amounts due under the Bishop Mugavero Note. The Bishop Mugavero Depreciation Reserve Fund is funded periodically in the amount determined pursuant to a formula set forth in that Depreciation and Reserve Agreement between DASNY and Bishop Mugavero entered in connection with the Bishop Mugavero Note. As of the date hereof, the Bishop Mugavero Depreciation Reserve Fund contains approximately $2.4 million.

54. The Bishop Mugavero Mortgage is insured by the United States of America acting through the Department of Housing and Urban Development ("**HUD**"). Pursuant to the requirements of that certain Regulatory Agreement entered into between Bishop Mugavero and HUD to effectuate HUD's insurance obligations, Bishop Mugavero set up an additional reserve fund (the "**Bishop Mugavero Operating Escrow Account**") for, among other things, effecting replacement of structural elements and mechanical equipment at the Bishop Mugavero Nursing Home Facility. The Bishop Mugavero Operating Escrow Account is replenished on a monthly basis in the amount of $46,000. As of the date hereof, the Bishop Mugavero Operating Escrow Account contains approximately $9.6 million.

55. The Bishop Mugavero Note matures on February 1, 2025. As of the Petition Date, approximately $20 million in principal remains outstanding on the Bishop Mugavero Note.

B. **DASNY Emergency Funding Transactions**

56. On February 2, 2010, DASNY made a $6 million emergency loan (the

"**Initial DASNY/SVCMC Loan**") to SVCMC pursuant to the Reimbursement and Security Agreement ("**Reimbursement Agreement**"). On February 16, 2010, DASNY amended the Reimbursement Agreement and made an additional loan to SVCMC in the amount of $3 million dollars (together with the Initial DASNY/SVCMC Loan, the "**DASNY/SVCMC Loans**"). As of the date hereof, $9 million in principal is owed in respect of the DASNY/SVCMC Loans.

57.     As security for the DASNY/SVCMC Loans, SVCMC granted a lien in and security interest to DASNY on those certain "Arbitrage Rebate Accounts" (as such term is defined in the Reimbursement Agreement), a junior lien on the "gross receipts" (as such term is defined in the Reimbursement Agreement), a third priority mortgage and security interest on, and an assignment of the leases and rents of, the O'Toole Building, and second-, third- and fourth-priority mortgages on various other real properties of SVCMC. On or about February 8, 2010, Prepetition GE Agent and DASNY entered into an Amended and Restated Intercreditor Agreement (the "**DASNY/GE Intercreditor Agreement**") to determine the relative priority of their liens on the above listed collateral.

58.     In addition, on March 22, 2010, DASNY made an additional emergency loan in the amount of $1 million to SVCMC (the "**Assembly Grant Loan**") pursuant to a new Reimbursement and Security Agreement, which is secured by a first priority lien on the $1 million grant (the "**Assembly Grant**") to be made from the "HCRA Speaker's Priority Pool." The Assembly Grant Loan must be repaid in full immediately upon the receipt of the proceeds of the Assembly Grant. If the Assembly grant is not received by September 1, 2010, then the Assembly Grant Loan must be repaid in 10 monthly installments of $100,000, commencing on September 1, 2010. Pursuant to an amendment to the DASNY/GE Intercreditor Agreement, Prepetition Agent has agreed to subordinate its liens to DASNY's lien on the Assembly Grant.

59.    The purpose of these emergency loans was to enable the Debtors to meet their operating shortfalls as the Debtors, in coordination with the Task Force, evaluated and pursued options for the continuation of the Hospital.

## CIRCUMSTANCES LEADING TO CHAPTER 11

60.    As explained above, upon emerging from the Prior Chapter 11 Cases in the summer of 2007, SVCMC and its then debtor affiliates were burdened with hundreds of millions of dollars in financial and contractual debt.  More particularly, as of August 30, 2007, SVCMC was subject to the following obligations:

- $270 million of senior secured financing under the GE Facility;

- a $55 million mortgage loan from an entity controlled by the Rudin family;[13]

- $60 million in mortgage loans from Sun Life which carried an annual debt expense of over $5.2 million;

- the obligation under the Prior Chapter 11 Plan to pay a total of approximately $123 million in installments (ranging from $10-18 million per annum) over a nine year period to three separate medical malpractice trusts to cover its then existing medical malpractice claims, which obligation is secured by junior liens on certain of SVCMC's real property;

- the obligation to fund the Medical Centers' pension plan $13.5 million annually in each year from 2008 through 2012 pursuant to a settlement agreement with the PBGC;

- capital lease obligations of over $6 million with principal and interest payment obligations of approximately $2 million per year; and

- an obligation to make distributions to general unsecured creditors totaling approximately $50 million above the $135 million that was set aside for the benefit of  general unsecured creditors in a separate trust.

61.    In addition, Bishop Mugavero and St. Elizabeth Ann, which had not been debtors, continued to owe approximately $35 million to DASNY under two issues of healthcare facilities revenue bonds.[14]

---

[13]    This mortgage loan was satisfied in January, 2010 by transferring the real property securing the mortgage to the mortgagee as part of a deed in lieu of foreclosure and loan termination agreement.

62. Although the Debtors' operating revenues have remained relatively constant, the Debtors have produced operating losses of approximately $43 million in 2008 and approximately $64 million in 2009. During this period, the Hospital alone had operating losses of approximately $81 million in 2008 and $107 million in 2009.

63. The Medical Centers' poor operating results stem from four principal causes. <u>First</u>, the Hospital's large operating footprint and staffing did not conform to the diminished state of its business and services. Significant changes in the healthcare industry have reduced the number of hospital admissions. Many services that were once provided on a higher-revenue, inpatient basis, are now provided on an outpatient basis. Moreover, stringent criteria for Medicare admissions increased the proportion of patients being treated on an outpatient basis or admitted under an "observational status" category, which yield a far lower level of reimbursement than inpatient admission. Competition from private doctors, other outpatient facilities and new clinics offering inpatient care further depleted Hospital admissions.

64. The effect of these industry-wide changes has been dramatic. While the Hospital is officially certified as a 727-bed hospital, during the year before the Petition Date, on a daily basis, it used an average of approximately 340 beds. Despite much diminished admissions, the Hospital continued to bear all of the costs of its larger physical plant. Before implementing lay-offs beginning in December 2009 and continuing through the Petition Date, the Hospital had not adjusted its workforce to reflect the changes in its operations.[15]

---

[14] On March 15, 2010, St. Elizabeth Ann transferred funds previously reserved and other cash on hand to the trustee for the holders of those DASNY - AIDS Long-Term Health Care Facilities Revenue Bonds, Series 2005 that were allocable to the loan made by DASNY to St. Elizabeth Ann (the "**SEA Loan**"). Consequently, the SEA Loan was deemed satisfied and discharged.

[15] In February 2010, the Debtors' unionized employees agreed to temporary wage concessions to provide immediate relief to reduce current cash outflow. Additional wage concessions were implemented for the Debtors' non-union employees and management. While these concessions were significant and were necessary to reduce

65.     Second, the Medical Centers' patient mix and reimbursement experience has limited their revenues.  The Hospital had one of the lowest percentages of higher margin private patients of all private Manhattan hospitals and the highest percentage of Medicare and self-pay (i.e., uninsured) discharges per year.  In addition, approximately 56% of the Hospital's inpatient admissions come through its Emergency Department, which is required by law to treat patients without regard to their ability to pay.  Moreover, as a stand-alone healthcare provider, the Medical Centers have been unable to negotiate reimbursement rates that are competitive with other private area hospitals.

66.     Third, the profound financial crisis that has gripped New York and the rest of the Nation over the last several years has magnified the financial challenges faced by the Medical Centers.  In an effort to balance their budgets in response to the deteriorating economic climate, New York State and the Federal government have repeatedly reduced hospital reimbursement rates over the last few years, a change that disproportionately impacted the Medical Centers, with their high government payor populations.  For example, from 2007 through 2009, New York State made cuts totaling over $985 million to its Medicaid program. The Debtors estimate that these cuts have cost the Hospital over $20.1 million in annual reimbursements and have resulted in cuts of approximately $30 million for the Medical Centers as a whole.

67.     Fourth, the financial and other obligations assumed in connection with the Prior Chapter 11 Plan have resulted in annual payment obligations that exceed what the current Hospital operations can bear.  In addition to annual post-confirmation debt service obligations of approximately $45 million, in 2008 and approximately $55 million in 2009, the Medical Centers

current cash outflows – and represented personal sacrifices – they were temporary and, standing-alone, were insufficient to overcome the expense burden on the Debtors' operations.

have been obligated to make combined annual payments of $23.5 million to the medical malpractice trusts created under the Prior Chapter 11 Plan and the assumed pension plan. This legacy liability, moreover, would have continued to increase had the Debtors not filed for bankruptcy protection.

68.     Other factors, which may be faced in part by other hospitals, such as labor costs, rising equipment and supply costs, malpractice costs, the cost of borrowing, the migration of profitable services to an unregulated environment, and the reduction in elective, high margin procedures when combined with the uniqueness of the Medical Centers, created an unsustainable position for the Medical Centers.

## RECENT EVENTS SURROUNDING THE DECISION TO CLOSE THE HOSPITAL AND FILE FOR CHAPTER 11

69.     Since December 2009, the Debtors' senior management and their advisors have been engaged in active discussions with the Debtors' major stakeholders to address the Debtors' deteriorating financial condition and to assess all potential options to preserve the Hospital's long-term viability, including identifying a healthcare partner or a new sponsor to keep the Hospital open and marketing the Debtors' non-Hospital businesses for sale.

70.     To prevent an emergency bankruptcy filing and allow the Debtors to make payroll during the first week of February, New York State and General Electric Capital Corporation ("**GE Capital**"), as agent for itself and TD Bank, N.A. ("**TD Bank**"), as co-lender, provided the Medical Centers with a $6 million emergency loan. Since then, GE Capital, TD Bank and New York State (including the State Assembly) have extended $12 million in additional loans to sustain the Medical Centers' operations.

71.     On February 3, 2010, the Governor of New York, David Paterson, convened a meeting with the management and sponsors of the Medical Centers, State health

department officials, local elected and community leaders, the Debtors' prepetition senior secured lenders, union leaders, and other key constituents. At that meeting, the Governor called for a Task Force to explore preserving the Hospital as an acute-care healthcare provider. The Governor's office coordinated the Task Force and asked that I be part of the Task Force.

72.     The Debtors and the Task Force immediately turned their attention to securing emergency interim financing to allow the Hospital sufficient time to assess all viable options and to conduct a meaningful search – outside of bankruptcy – for an alliance, affiliation, partnership, or new sponsorship with a financially stronger healthcare group or chain. Additionally, the Debtors, with the assistance of their investment bankers and brokers, began the process of marketing their non-Hospital businesses and facilities. The Governor's Task Force was closely engaged in the restructuring process, having met by telephone (and in person) on almost a daily basis.

73.     Moreover, in February 2010, the Debtors' union and non-union employees agreed to provide temporary wage reductions to help reduce the Hospital's cash flow needs. Specifically, the Debtors' management, physicians, nurses and staff agreed to 10-25% wage reductions for a 120 day period effective March 1, 2010. Additionally, throughout January and February, 2010, the Debtors implemented a reduction in force of approximately 330 employees across all levels of the Medical Centers' organization. Not only did the infusions of capital and employees' personal sacrifices extend the Medical Centers' ability to meet its direct operating needs, it also allowed the Debtors to pursue a marketing process outside of Chapter 11.

**Marketing Process for the Non-Hospital Services**

74.     With the assistance of the Debtors' investment bankers, brokers and restructuring professionals, before the Petition Date, the Debtors began marketing their non-Hospital services for sale as going concerns (the "**Non-Hospital Services**") as well as certain

other real estate assets. The Non-Hospital Services and other real estate assets include: (i) Bishop Mugavero; (ii) Holy Family Home; (iii) St. Elizabeth Ann; (iv) Pax Christi; (v) St. Vincent's Westchester's behavioral health services and associated real estate; (vi) the Home Health services (including a CHHA and a Long-Term Home Health Program); (vii) the US Family Health Plan; and (viii) the Staff House. The Debtors' professionals marketed these assets on local, regional, state and national levels in a process that included, but was not limited to, the following initiatives:

(i)      identifying and soliciting over 410 parties potentially interested in purchasing the Non-Hospital Services;

(ii)      preparing and distributing confidentiality agreements to over 130 parties;

(iii)      allowing approximately 77 potential parties access to a virtual data room, including confidential memoranda;

(iv)      conducted over 100 on-site visits with representatives of potential parties; and

(v)      reviewing, evaluating, and responding to over 25 written indications of interest submitted by potential parties for the purchase of the Non-Hospital Services.

75.      As a result of these initiatives, the Debtors entered into 7 non-binding letters of intent for certain of their Non-Hospital Services. The Debtors intend to file motions approving the sale of these Non-Hospital Services and other real estate assets pursuant to section 363 of the Bankruptcy Code during these Chapter 11 Cases. The marketing and sales process relating to the remaining services is on-going.

**Marketing Process for the Hospital**

76.      As its financial results deteriorated, SVCMC began searching for a viable healthcare partner, new sponsor or other affiliation for the Hospital. SVCMC believed that a transaction with a stronger healthcare partner was necessary to preserve the Hospital's operations and could provide improved reimbursement rates, retentions of quality physicians, reduction in administration and overhead, realignment of service offerings, access to capital for hospital

reconfiguration, improvements in the revenue cycle and technology, and routine and deferred capital improvements.  Moreover, a transaction would have avoided the substantial costs related to a shut-down, including closing costs, patient relocation costs, medical records retention, severance, and other potential employee-related claims.

77.     The Debtors discussed a potential transaction with more than ten major hospitals or healthcare institutions, including: (i) Mount Sinai Medical Center ("**Mount Sinai**"); (ii) Ramsay Health Care Limited; (iii) Caritas Christi; (iv) Catholic Health East; (v) Catholic Health Initiatives; (vi) Continuum Health Partners; (vii) Hospital Corporations of America (HCA); (viii) New York Presbyterian; (ix) North Shore-Long Island Jewish Health System; (x) New York University – Langone Medical Center; and (xi) Bayonne Medical Center.  The Debtor entered into six confidentiality agreements and provided information and virtual data room access to thousands of pages of documents related to the SVCMC system and the Hospital.  The Debtors and their representatives spent hundreds of hours in discussions with interested parties and conducted numerous on-site tours.

78.     Ultimately, Mount Sinai emerged as the most interested and qualified party.  In the weeks preceding the Petition Date, Mount Sinai conducted extensive due diligence, logging over 60 hours in a virtual data room, conducting over 60 facility visits to the Hospital and St. Vincent's Westchester, and attending several meetings with SVCMC's senior leadership and its representatives to discuss various structures for the potential acquisition of the Hospital's acute-care businesses and other assets of the Debtors.

79.     While Mount Sinai conducted its due diligence, certain operating and financial obstacles to a transaction emerged.  Mount Sinai represented that these obstacles included but were not limited to securing commitments from State and Federal governments

concerning going-forward Medicaid rates and payments, obtaining substantial new funding from City, State and Federal sources, and financial and operating challenges relating to Graduate Medical Education programs of the Hospital. Without agreement on post-transaction debt levels or commitments from the relevant governmental authorities, Mount Sinai withdrew from discussions of a potential transaction on March 31, 2010.

**THE DEBTORS' CLOSURE PLAN FOR THE HOSPITAL**

80.     Once Mount Sinai withdrew from the process, the Debtors determined that there were no other viable and qualified interested partners or new sponsors for the Hospital. With no prospect of a sale and no viable sources for additional funding, closure became the only option for the Hospital. Accordingly, to protect the health and safety of Hospital patients, on April 6, 2010, the Board voted to approve the closure of the Hospital and the transfer or closure of the outpatient programs and clinics associated with and operated by the Hospital. At the same time, the Debtors have continued their efforts to sell the Non-Hospital Businesses as going-concerns to be able to continue to provide quality care for those patients.

81.     The submission of the Closure Plan to the DOH on April 8, 2010 officially began the process of winding down the operations of the Hospital and related outpatient clinics. Subject to certain limited exceptions, the Closure Plan calls for all patients to have been transferred or discharged by, and all inpatient operations at the Hospital to cease by, April 30, 2010. The Closure Plan provides for the continuation of ambulatory care services through May 31, 2010, to provide time to search for alternate sponsors to whom these programs may be transferred.

82.     The Closure Plan provides for, among other things: (a) the orderly discharge or relocation of all patients to neighboring hospitals as quickly and safely as manageable; (ii) the redirection of emergency room admissions while keeping the Hospital's

emergency room open as a "treat and release or transfer" urgent care center through April 15, 2010; (iii) the continued operation of certain outpatient clinics for a limited period of time to allow for the possibility of their transfer to new sponsors; (iv) the transfer and storage of medical records in compliance with all regulations; (v) the orderly and safe disposition of the Hospital's equipment, pharmaceuticals, and inventory through appropriate channels in full compliance with regulatory requirements and (vi) the implementation of a communication program for patients, families, employees, providers and the community at large.[16]

## CHAPTER 11 OBJECTIVES

83.     The Debtors anticipate that they will continue to wind down their businesses in Chapter 11, with three principal objectives:

84.     **Continue to Implement the Hospital's Closure Plan**.  The Debtors will continue to implement the Hospital's Closure Plan in coordination with the DOH to make sure that all patients are safely transferred to other suitable facilities and other necessary actions are taken as part of the closure.

85.     **Continue the Process of the Sale of Non-Hospital Services**.  The Debtors will continue their efforts to sell their Non-Hospital Services as going-concerns.  These sales will be executed through various separate transactions and will require government or regulatory approvals where applicable.  This process started before the Petition Date and will be a prominent part of the initial stages on these Chapter 11 Cases.

86.     **Maximizing the Value of SVCMC's Other Assets**.  The Debtors will proceed with the orderly disposition of their other assets, including substantial real estate located

---

[16]  The timeline for closure of the Hospital's behavioral health services is still under consideration.  The Debtors are working with the DOH to develop a plan for the transfer of the Hospital's behavioral health patients.

in Manhattan's Greenwich Village. No determination has been made as to how to implement this process and the Debtors will work closely with their secured creditors and other stakeholders to address this as part of the wind down of their businesses.

## PART II

## FIRST DAY MOTIONS AND APPLICATIONS

87. Concurrent with the filing of their Chapter 11 petitions, the Debtors filed the First Day Motions and Applications in order to minimize the adverse effects of the commencement of the Debtors' bankruptcy cases on their business and the reorganization process. I believe that the success of these Chapter 11 Cases hinges on the Debtors obtaining approval of the First Day Motions and Applications. I have reviewed the factual background in support of each First Day Motion and Application and certify that the facts contained therein are true and correct to the best of my information, knowledge and belief.

## LOCAL BANKRUPTCY RULE 1007-2 SCHEDULES

88. Attached hereto and incorporated herein by reference are various schedules setting forth information required pursuant to Local Bankruptcy Rule 1007-2. Capitalized terms used in the attached schedules that are not otherwise defined therein shall have the meanings ascribed to them in preceding paragraphs of this Declaration.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on this 14th day of April, 2010 at New York, New York.

/s/  Mark E. Toney
Mark E. Toney,
Chief Restructuring Officer,
Saint Vincents Catholic Medical Centers of New York

## EXHIBIT A

## CORPORATE ORGANIZATIONAL CHART

# Saint Vincent's Catholic Medical Centers of New York and Subsidiaries



**SPONSOR**
Bishop of the Roman Catholic Diocese of Brooklyn

**SPONSOR**
President or her designee of the Sisters of Charity of St. Vincent de Paul of New York

Surgical Services St. Vincent's, P.C.

St. Vincent's, Emergency Services, P.C.

Saint Vincent's Catholic Medical Centers of New York d/b/a Saint Vincent Catholic Medical Centers

St. Vincent's Physician Services, P.C.

Medical Service of St. Vincent's Hospital & Medical Center, P.C.

Saint Vincent's Catholic Medical Centers Foundation, Inc.

Queensbrook New York LLC

555 6th Avenue Apartment Operating Corporation

St. Vincent's Hospital Westchester

Bishop Francis J. Mugavero Center for Geriatric Care

Chait Housing Development Corporation

Immaculata Hall Housing Development Fund Corporation

SVCMC Professional Registry, Inc.

Bayley Seton Hospital Staten Island

St. Jerome's Health Services Corporation d/b/a Holy Family Home

St. Mary's Supportive Housing Development Fund Corporation

Queensbrook Limited Insurance LLC

US Family Health Plan

Sisters of Charity Health System Nursing Home Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center

Fort Place Housing Corporation

St. Vincent's Hospital Manhattan

Pax Christi Hospice, Inc.

SVCMC Home Health Agency

Pax Christi Manhattan

Pax Christi Staten Island

Operating Division

Not-For-Profit Subsidiaries (Non-Debtor)

Debtor

For Profit Subsidiaries (Debtor)

Not For-Profit Debtor

For-Profit Subsidiaries (non-Debtor)

Professional Corp. (Non-Debtor)

## EXHIBIT B

| Board Member | Year of Appointment |
|---|---|
| 1. Alfred E. Smith IV, Chairman | 2001 |
| 2. Fr. Patrick J. Frawley, Vice Chair | 2005 |
| 3. Sr. Jane Iannucelli, Vice Chair | 2003 |
| 4. Sr. Carol Barnes, Secretary | 2000 |
| 5. Eugene Rainis, Treasurer | 2004 |
| 6. Karl Adler, MD | 2009 |
| 7. Alan Bernikow | 2001 |
| 8. Arthur Cashin | 2008 |
| 9. Jay Chazanoff | 2005 |
| 10. Jack DeSantis | 2008 |
| 11. Peter Georgiopoulos | 2008 |
| 12. Jeffrey Krauss | 2007 |
| 13. Mark Lane | 2008 |
| 14. James MacGilvray | 2008 |
| 15. Kevin O'Callaghan | 2008 |
| 16. Ralph O'Connell, MD | 2005 |
| 17. Mary Alice O'Malley | 2008 |
| 18. Christopher Quick | 2007 |
| 19. Major General Glenn Rieth | 2008 |
| 20. Fred Salerno | 2009 |
| 21. Brian Sepe | 2008 |
| 22. Bishop Joseph M. Sullivan | 2000 |
| 23. John Werwaiss | 2005 |
| 24. Vaughn Williams | 2007 |

## **Schedule A-1**

### List of Committees Formed Prior to the Petition Date

None.

## Schedule A-2

## Consolidated List of Holders of the 30 Largest Unsecured Claims

Contemporaneously with the filing of their petitions, the Debtors filed a motion requesting, among other things, authority to file a consolidated list of the 30 largest unsecured creditors (the "**Top 30 List**") in lieu of separate lists of each Debtor's 20 largest unsecured creditors. Attached hereto is the Top 30 List which is based on the Debtors' books and records as of approximately April 13, 2010. The Top 30 List was prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in the Debtors' Chapter 11 Cases. The Top 30 List does not include: (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101; or (2) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 30 largest unsecured claims. The Top 30 List is provided pursuant to Local Rule 1007-2(a)(4).

The information contained shall not constitute an admission of liability by, nor is it binding, on the Debtors. The Debtors reserve all rights to assert that any debt or claim listed herein is a disputed claim or debt, and to challenge the priority, nature, amount or status of any such claim or debt. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

| (1) Name of creditor and complete mailing address, including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17] | (5) Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| Pension Benefit Guaranty Corporation Office of the General Counsel Suite 340 1200 K Street, N.W. Washington, DC 20005-4026 | Pension Benefit Guaranty Corporation Attn: Brad Rogers, Esq. Office of the General Counsel Suite 340 1200 K Street, N.W. Washington, DC 20005-4026 Telephone: (202) 326-4020 ext. 3029 Facsimile: (202) 326–4112 | Government | Contingent; unliquidated | $180,000,000.00 (estimated) |

---

[17] All claims may be subject to offsets, discounts, reconciliations, credits, and adjustments, which are not reflected on this list.

| (1)<br>*Name of creditor and complete mailing address, including zip code* | (2)<br>*Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | (3)<br>*Nature of claim (trade debt, bank loan, government contract, etc.)* | (4)<br>*Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17]* | (5)<br>*Amount of claim (if secured also state value of security)* |
|---|---|---|---|---|
| Michael E. Katzenstein, MedMal Trust Monitor for MedMal Trust-BQ; MedMal Trust-MW; and MedMal Trust- SI 5956 Cherry Lane, Suite 1000 Dallas, TX 75225<br><br>c/o:<br><br>Cooley Godward Kronish LLP The Grace Building 1114 Avenue of the Americas New York, NY 10036 | Michael E. Katzenstein, MedMal Trust Monitor for MedMal Trust-BQ; MedMal Trust-MW; and MedMal Trust- SI 5956 Cherry Lane, Suite 1000 Dallas, TX 75225 Facsimile: 214-451-6999 E-Mail: mike@cxollc.com<br><br>c/o:<br><br>Cooley Godward Kronish LLP Attn: Richard Kanowitz The Grace Building 1114 Avenue of the Americas New York, NY 10036 Facsimile: (212) 479-6275 E-mail: rkanowitz@cooley.com | Lien | Contingent | $113,000,000.00 |
| Aptium Oncology 8201 Beverly Boulevard Los Angeles, CA 90048-4505 | Aptium Oncology Attn: Peter J. Rogers Chief Financial Officer 8201 Beverly Boulevard Los Angeles, CA 90048-4505 Telephone: (323) 966-3493 Facsimile: (323) 966-3444 E-mail: progers@aptiumoncology.com | Trade | | $6,453,089.00 |
| Office of the State Comptroller Office of Unclaimed Funds 110 State Street Albany, New York 12236 | Office of the State Comptroller Office of Unclaimed Funds 110 State Street Albany, New York 12236 Telephone: (800) 221-9311 Fax: (212) 383-4956 | Government | Contingent | $4,017,038.34 |

| (1) Name of creditor and complete mailing address, including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17] | (5) Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| Grove Pointe Urban Renewal, LLC<br>Attn: Jonathan Kushner<br>520 Route 22<br>PO Box 6872<br>Bridgewater, NJ 08807 | Grove Pointe Urban Renewal, LLC<br>Attn: Jonathan Kushner<br>520 Route 22<br>PO Box 6872<br>Bridgewater, NJ 08807<br>Telephone: (908) 725-8100<br>Fax: (908) 575-2237<br>Email: jk@skpropertiesre.com | Landlord | Disputed | $4,653,770.00 |
| Local 1199 Benefit Fund<br>330 W. 42nd Street<br>27th Floor<br>New York, NY 10036 | Local 1199 Benefit Fund<br>330 W. 42nd Street<br>27th Floor<br>New York, NY 10036<br>Attn: Finance Dept.<br>Telephone: (212) 582-1890<br>Facsimile: (212) 767-1732 | Union | | $3,696,513.26 |
| Nursing Personnel HomeCare<br>175 South 9th Street<br>Brooklyn, NY 11211 | Nursing Personnel HomeCare<br>175 South 9th Street<br>Brooklyn, NY 11211<br>Attn: Moses Schleslinger<br>Telephone: (516) 377-9503<br>Fax: (866) 590-9866 | Trade | | $2,744,816.45 |
| BestCare Inc.<br>3000 Hempstead Turnpike<br>Levittown, NY 11756 | BestCare Inc.<br>Legal Department<br>3000 Hempstead Turnpike<br>Levittown, NY 11756<br>Attn: Bernard Schiel<br>Telephone: (516) 731-3770<br>Fax: (516) 731-9271 | Trade | | $2,606,170.91 |
| Siemens Medical Solutions USA<br>51 Valley Stream Parkway<br>Malverne, PA 19355 | Siemens Medical Solutions USA<br>51 Valley Stream Parkway<br>Malverne, PA 19355<br>Attn: Olga Richter<br>Telephone: (203) 722-0504<br>Fax: (610) 219-3124 | Trade | | $2,536,875.63 |

| (1) Name of creditor and complete mailing address, including zip code | (2) Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | (3) Nature of claim (trade debt, bank loan, government contract, etc.) | (4) Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17] | (5) Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| Access Nursing Services 411 Manville Road Pleasantville, NY 10570 | Access Nursing Services 411 Manville Road Pleasantville, NY 10570 Attn: Louise Weadock Telephone: (914) 747-9696 Fax: (914) 747-7577 | Trade | | $1,928,347.79 |
| Cardinal Health Medical Products and Services 7000 Cardinal Place Dublin, OH 43017 | Cardinal Health Medical Products and Services Legal Department 7000 Cardinal Place Dublin, OH 43017 Telephone: Fax: (732) 417-4777 | Trade | | $1,881,718.56 |
| Special Touch Home Care Service 2091 Coney Island Avenue Brooklyn, NY 11223 | Special Touch Home Care Service 2091 Coney Island Avenue Brooklyn, NY 11223 Attn: Linda Keehn Telephone: (718) 627-1122 Fax: (718) 627-0606 | Trade | | $1,879,940.90 |
| Verizon 220 East 42nd Street New York, NY 10017 | Verizon 140 West Street New York, NY 10007 Telephone: (212) 395-1000 Fax: (212) 571-1897 | Utilities | | $1,851,899.00 |
| Command Security Corp. Legal Department Lexington Park Route 55 Lagrangeville, NY 12540 | Command Security Corp. Legal Department Lexington Park Route 55 Suite D Lagrangeville, NY 12540 Telephone: (845) 454-3703 Fax: (845) 454-0075 | Trade | | $1,174,326.53 |
| Local 1199 Pension Fund 330 W. 42nd Street 27th Floor New York, NY 10036 | Local 1199 Pension Fund 330 W. 42nd Street 27th Floor New York, NY 10036 Attn: Finance Dept. Telephone: (212) 582-1890 Facsimile: (212) 767-1732 | Union | | $1,043,642.50 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17]* | *Amount of claim (if secured also state value of security)* |
| Boston Scientific SCIMED<br>One Scimed Place<br>Maple Grove, MN 55311-1566 | Boston Scientific SCIMED<br>Legal Department<br>One Scimed Place<br>Maple Grove, MN 55311-1566<br>Telephone: (800) 832-7822<br>Fax: (800) 782-1357 | Trade | | $927,280.10 |
| Renal Research Institute LLC<br>207 East 94th Street<br>New York, NY 10128 | Renal Research Institute LLC<br>207 East 94th Street<br>New York, NY 10128<br>Attn: John Callegari<br>Telephone: (212) 360-6579<br>Fax: (212) 360-7233 | Trade | | $905,325.00 |
| Con Edison<br>CAG 9th Floor<br>4 Irving Place<br>New York, NY 10003 | Con Edison<br>CAG 9th Floor<br>4 Irving Place<br>New York, NY 10003<br>Telephone: (212) 677-9686<br>Fax: (212) 982-7816 | Utilities | | $887,892.28 |
| NYSNA Benefits<br>1 Pine West Building<br>Albany, NY 12205 | NYSNA Benefits<br>1 Pine West Building<br>Albany, NY 12205<br>Telephone: (518) 443-2700<br>Facsimile: (518) 432-2773 | Union | | $783,792.43 |
| I &Y Senior Care<br>1991 Flatbush Avenue<br>2nd Floor<br>Brooklyn, NY 11234 | I &Y Senior Care<br>1991 Flatbush Avenue<br>2nd Floor<br>Brooklyn, NY 11234<br>Attn: Lana Kucher<br>Telephone: (718) 253-0077<br>Fax: (728) 253-0071 | Trade | | $734,213.47 |
| Hope Home Care Inc.<br>71 New Dorp Plaza<br>Staten Island, NY 10306 | Hope Home Care Inc.<br>71 New Dorp Plaza<br>Staten Island, NY 10306<br>Attn: Brent Alexander<br>Telephone: (718) 667-8510<br>Fax: (718) 667-4524<br>Fax: (718) 667-8884 | Trade | | $720,213.64 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17]* | *Amount of claim (if secured also state value of security)* |
| 450 Partners LLC<br>Legal Department<br>450W 33rd Street<br>New York, NY 10001 | 450 Partners LLC<br>Legal Department<br>450W 33rd Street<br>New York, NY 10001<br>Telephone: (212) 947-7887<br>Fax: (212) 947-8659 | Trade | | $672,190.95 |
| Utopia Home Care Inc.<br>60 East Main Street<br>Kings Park, NY 11754 | Utopia Home Care Inc.<br>60 East Main Street<br>Kings Park, NY 11754<br>Attn: Manuel Martinez<br>Telephone: (631) 544-0462<br>Facsimile: (631) 544-5141 | Trade | | $650,969.57 |
| FedCap Home Care<br>Legal Department<br>211 W. 14th Street<br>New York, NY 10011 | FedCap Home Care<br>Legal Department<br>211 W. 14th Street<br>New York, NY 10011<br> Telephone: (212) 727-3400<br>Fax: (212) 727-4374 | Trade | | $641,074.20 |
| SelfHelp Community Services<br>Legal Department<br>520 Eighth Avenue<br>New York, NY 10018 | SelfHelp Community Services<br>Legal Department<br>520 Eighth Avenue<br>New York, NY 10018<br>Telephone: (212) 971-7600<br>Fax: (212) 695-0941 | Trade | | $591,543.96 |
| New York Dialysis Services<br>Legal Department<br>2615-21 Frederick Douglas Blvd.<br>New York, NY 10030 | New York Dialysis Services<br>Legal Department<br>2615-21 Frederick Douglas Blvd.<br>New York, NY 10030<br>Telephone: (212) 281-8200<br>Fax: (212) 690-7265 | Trade | | $570,825.00 |
| Allen Health Care Services<br>175-20 Hillside Avenue<br>2nd Floor<br>Jamaica, NY 11432 | Allen Health Care Services<br>175-20 Hillside Avenue<br>2nd Floor<br>Jamaica, NY 11432<br>Attn: Marie Anreacchio<br>Telephone: (718) 657-2966<br>Fax: (718) 291-5987 | Trade | | $569,342.09 |

| (1) | (2) | (3) | (4) | (5) |
|---|---|---|---|---|
| *Name of creditor and complete mailing address, including zip code* | *Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted* | *Nature of claim (trade debt, bank loan, government contract, etc.)* | *Indicate if claim is contingent, unliquidated, disputed, or subject to setoff[17]* | *Amount of claim (if secured also state value of security)* |
| Biomet Inc.<br>Legal Department<br>56 East Bell Drive<br>PO Box<br>Warsaw, IN 46581-0587 | Biomet Inc.<br>Legal Department<br>56 East Bell Drive<br>PO Box<br>Warsaw, IN 46581-0587<br>Telephone: (574) 267-6639<br>Fascimile: (574) 267-8137 | Trade | | $526,376.93 |
| Sodexo Operations LLC<br>Legal Department<br>9801 Washington Blvd<br>Gaithersburg, MD 20878-5355 | Sodexo Operations LLC<br>Legal Department<br>9801 Washington Blvd<br>Gaithersburg, MD 20878-5355<br>Telephone: (301) 987-4000<br>Facsimile: (301) 987-4499 | Trade | | $525,233.75 |
| Aides at Home, Inc.<br>29 West Marie Street<br>Hicksville, NY 11801 | Aides at Home, Inc.<br>29 West Marie Street<br>Hicksville, NY 11801<br>Telephone: (516) 538-2176<br>Facsimile: (516) 931-4175 | Trade | | $481,202.61 |

# Schedule A-3

## Schedule Regarding Holders of the Five Largest Secured Claims

Pursuant to Local Rule 1007-2(a)(5), the following is a schedule of the holders of the five largest secured claims for the Debtors on a consolidated basis, prepared in accordance with the Debtors' books and records as of April 8, 2010.

The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to assert that any debt or claim listed herein is a disputed claim or debt, or that a claim amount exceeds the value of the collateral securing such claim. The descriptions of the collateral securing the underlying obligations are intended only as brief summaries. In the event of any inconsistencies between the summaries set forth below and the respective corporate and legal documents relating to such obligations, the descriptions in the corporate and legal documents shall control.

| Name/Address of Secured Creditor | Principal Amount of Claim | Type of Collateral | Debtor | Indicate if Claim Disputed |
|---|---|---|---|---|
| **General Electric Capital Corporation, as Agent**<br><br>2 Bethesda Metro Center Suite 600<br>Bethesda, MD 20814<br>Attn: Jeff Schall<br><br>c/o:<br>Winston & Strawn LLP<br>*Counsel to General Electric Capital Corporation, as Agent*<br>200 Park Avenue<br>New York, NY 10166-4193<br>Attn: David Neier<br>Facsimile: (212) 294-4700<br>E-Mail: dneier@winston.com<br><br>-and-<br><br>Winston & Strawn LLP<br>*Counsel to General Electric Capital Corporation, as Agent*<br>101 California Street<br>San Francisco, CA 94111-5802<br>Attn: Randy Rogers | $313,000,000.00 | Substantially all assets | SVCMC<br><br>Pax Christi<br><br>Bishop Mugavero<br><br>Holy Family Home | |

| Name/Address of Secured Creditor | Principal Amount of Claim | Type of Collateral | Debtor | Indicate if Claim Disputed |
|---|---|---|---|---|
| Facsimile: (415) 591-1400<br>E-Mail:<br>rrogers@winston.com | | | | |
| **Sun Life Assurance Company of Canada**<br><br>Attn: Scott M. Davis<br>Vice President & General Counsel<br>60 East 42nd Street<br>Suite 1115<br>New York, NY 10165<br><br>c/o<br><br>Goldfarb & Fleece<br>Attn: Neal A. Weinstein<br>345 Park Avenue<br>33rd Floor<br>New York, NY 10154 | $56,400,000.00<br>(two notes) | Real property located at 555 6th Avenue, New York, NY.<br><br>Real property located at 275 North Street, Harrison, NY. | SVCMC | |

| Name/Address of Secured Creditor | Principal Amount of Claim | Type of Collateral | Debtor | Indicate if Claim Disputed |
|---|---|---|---|---|
| **Dormitory Authority of State of New York**<br><br>Attn: Jeffrey M. Pohl, Esq.<br>General Counsel<br>515 Broadway<br>Albany, NY 12207-2964<br><br>-and-<br><br>Andrew M. Cuomo<br>Attorney General for the<br>State of New York<br>120 Broadway, 24th Floor<br>New York, NY 10271<br><br>-and-<br><br>Sidley Austin LLP<br>Lee S. Attanasio, Esq.<br>787 Seventh Avenue<br>New York, NY 10019<br>Telephone: (212) 839-5342<br>Facsimile: (212) 839-5599<br>lattanasio@sidley.com | $40,600,000.00 | Real property, equipment, and fixtures located at 155 Dean Street, Brooklyn, NY.<br><br>Real property located at 91 Tompkins Avenue, Staten Island, New York and gross revenues of St. Elizabeth Ann<br><br>Arbitrage account, revenues, and real property located at 36 Seventh Avenue, New York, NY. | SVCMC<br><br>Bishop Mugavero<br><br>St. Elizabeth Ann | |

| Name/Address of Secured Creditor | Principal Amount of Claim | Type of Collateral | Debtor | Indicate if Claim Disputed |
|---|---|---|---|---|
| **Pension Benefit Guaranty Corporation**<br><br>Attn: Brad Rogers, Esq.<br>Office of the General Counsel<br>Suite 340<br>1200 K Street, N.W.<br>Washington, DC 20005-4026<br>Telephone: (202) 326-4020 ext. 3029 | $5,000,000.00 | | SVCMC | |
| **Michael E. Katzenstein, MedMal Trust Monitor for MedMal Trust-BQ; MedMal Trust-MW; and MedMal Trust- SI**<br><br>5956 Cherry Lane, Suite 1000<br>Dallas, TX 75225<br>Facsimile: 214-451-6999<br>E-Mail: mike@cxollc.com<br><br>c/o:<br><br>Cooley Godward Kronish LLP<br>Attn: Richard Kanowitz<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, NY 10036<br>Facsimile: (212) 479-6275<br>E-mail: rkanowitz@cooley.com | $113,000,000.00[18]<br><br>(partial lien) | Third priority lien on real property located at 275 North Street, Harrison, NY<br><br>Second priority lien on real property located at 555 6th Avenue, New York, NY | SVCMC | Disputed |

---

[18] The amount is listed is currently set forth on the Debtors books and records but is subject to periodic reductions pursuant to the terms of MedMal Trust Agreements.

## Schedule A-4

### Summary of the Debtors' Assets and Liabilities


Pursuant to Local Rule 1007-2(a)(6), the following financial data is the latest available information and reflects the Debtors' financial condition, on a consolidated basis, as of April 8, 2010. All amounts are reported gross, without the eliminations or adjustments required for consolidated financial statements. The estimated assets and liabilities stated herein are estimated on a consolidated basis for Saint Vincents Catholic Medical Centers of New York and its debtor and non-debtor subsidiaries and affiliates.

The following financial data shall not constitute an admission of liability by the Debtors. The Debtors reserve all rights to assert that any claim or debt listed herein as liquidated or fixed is in fact a disputed claim or debt. The Debtors reserve all rights to challenge the priority, nature, amount or status of any claim or debt.


|  |  |
|---|---|
| **Total Assets** | $347,793,774 |
|  | (as of January 31, 2010) |
| **Total Liabilities** | $1,092,176,772 |
|  | (as of January 31, 2010) |

## Schedule A-5

### Schedule of Publicly Held Securities

Pursuant to Local Rule 1007-2(a)(7), the following is a schedule of Debtors' shares of stock, debentures and other securities that are publicly held, and approximate number of holders thereof.

N/A

### The Debtor's Voting Securities

Pursuant to Local Rule 1007-2(a)(7), the following sets forth a list of the names of any person known by the Debtors to own, control, or hold, directly or indirectly, with power to vote, 5% or more of the voting securities of Saint Vincents Catholic Medical Centers of New York.

N/A

# Schedule A-6

## List of Debtors' Property in the Possession of Third Parties

Pursuant to Local Rule 1007-2(a)(8), the following schedule lists property of any of the Debtors in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or any agent for any such entity. The Debtors are working to confirm that no other such party is in possession of any of the Debtors' property and reserve the right to supplement this schedule if additional property is identified. The information contained herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. The Debtors reserve all rights to challenge the priority, nature, amount or status of any claim or debt.

To the best of the Debtors' knowledge, none of the Debtors has any property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or any agent for any such entity, other than, if any:

(i) bank accounts that may be subject to claims of setoff by the Debtors' lenders, or their agents (collectively, the "**Lenders**");

(ii) cash collateral of the Debtors held in bank accounts of counter parties in accordance with power sales agreements, which cash is subject to daily true-ups based on mark-to-market calculations;

(iii) cash held by third party independent system operators in settlement accounts;

(iv) stock and/or membership interests of certain of St. Vincent's direct and/or indirect subsidiaries pledged to certain Lenders;

(v) inter-company promissory notes pledged to certain of the Lenders;

(vi) certain restricted cash accounts held by various project indenture trustees on behalf of the Debtors;

(vii) various security deposits held by certain lessors, utility companies, regulatory agencies and others; and

(viii) property that may be owned by the Debtors that may be in the possession of third parties for purposes of storage, repair, and/or delivery in the ordinary course of business.[19]

---

[19] The arrangements described in this clause (viii) do not affect the Debtors' ownership interest in such property. Further, in light of the movement of this property and size of the Debtors' business operations, providing a comprehensive list of the persons or entities in possession of the property, their addresses and telephone numbers, and the location of any court proceeding affecting such property, would be impractical if not impossible.

**Schedule A-7**


List of Premises Owned and Leased From Which the Debtors Operate

Pursuant to Local Bankruptcy Rule 1007-2(a)(9), the following table lists the premises owned, leased, or held under other arrangement from which the Debtors operate their businesses:[20]

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 100 Christopher Columbus Drive Jersey City, NJ 07302 | Staff/Resident Housing | Grove Pointe Urban Renewal, LLC | 520 Route 22 PO Box 6872 Bridgewater, NJ 08807 | Lease |
| 13-15 Sheridan Sq. New York, NY 10014 | GI Practice/SP. | 13-15 Sheridan Square LLC | c/o S.W. Management LLC 145 Huguenot St, Ste 503 New Rochelle, NY 10801 | Lease |
| 168 Canal Street New York, NY 10013 | Ambulatory Care | Dadourian Management LLC | 168 Canal Street Suite 600 New York, NY 10013 | Lease |
| 170 Broadway Suite 308 New York, NY 10038 | Ambulatory Care | AMG Realty Partners, LP GECC/CRE Maritime Properties A/C #1008969822 | PO Box 828212 Philadelphia, PA 19182-8212 | Lease |
| 221-227 Canal St New York, NY 10013 | Ambulatory Care | 221 Canal Street LLC | c/o Centre Court 183 Centre Street, 6th Fl New York, NY 10013 | Lease |

---

[20] The classification of the contractual arrangements pertaining to the premises listed herein shall not be binding upon the Debtors.

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 222 West 14th St<br>New York, NY 10011 | Seton Clinic (Medical, Peds, GYN) | Royal Realty c/o Sackman Enterprises | 165 West 73rd Street<br>New York, NY 10023 | Lease |
| 260 East Broadway, #1<br>New York, NY 10002 | Lower Eastside Geriatrics/Internal Med | Seward Park Housing c/o CHG Management Corp. | P.O. Box 6187<br>Hicksville, NY 11802 | Lease |
| 275-277 8th Avenue<br>New York, NY 10011 | Chelsea Services / Senior Health | Mutual Redevelopment | 321 Eighth Avenue<br>New York, NY 10001 | Lease |
| 101 West 12th Street<br>New York, NY 10011 | Village Obstetrics | The John Adams Owners, INC c/o Halstead Management | 770 Lexington Ave<br>New York, NY 10065 | Lease |
| 15 East 40th Street<br>New York, NY 10016 | Gianna Health Care | Dr. Mei Li | 67-25 Clyde St., Apt 7L<br>Forest Hills, NY 11375 | Lease |
| 450 West 33 Street<br>New York, NY 10001 | SVCMC Corporate Offices | 450 Partners LLC<br>**(REM 1)** | c/o Wachovia Bank-National Association<br>PO Box 60994<br>Charlotte, NC 28260 | Lease |
| 199 Main Street<br>White Plains, NY 10601 | Ambulatory/MHSA | 199 Main Street Realty | PO Box 26<br>New Rochelle, NY 10802 | Lease |
| 147-18 Archer Ave<br>Jamaica, NY 11435 | MMTP II | Jamaica Hotel Development Company, LLC | c/o Greater Jamaica Development Corp.<br>90-04 161st St., Ste 704<br>Jamaica, NY 11432 | Lease |
| 147-20 Archer Ave<br>Jamaica, NY 11435 | MMTP I | Jamaica Hotel Development Company, LLC | c/o Greater Jamaica Development Corp.<br>90-04 161st St., Ste 704<br>Jamaica, NY 11432 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 635-639 Classon Ave Brooklyn, NY 11238 | Ambulatory Care/St. Mary's MMTP | Classon Properties, LLC | 1360 East 14th Street #101 Brooklyn, NY 11230 | Lease |
| 92 Yonkers Ave Tuckahoe, NY 10701 | Ambulatory Care/ Maxwell Institute | Coastal Electrical Contracting Corp. | 2 Tibbits Avenue White Plains, NY 10606 | Lease |
| Echo Hills Dobbs Ferry, NY 10522 | Ambulatory Care/MHSA | The Children's Village | Attn: Accounting Dept Dobbs Ferry, NY 10522 | Lease |
| 155 Vanderbilt Avenue Staten Island, NY 10304 | Adult Aids Day Health Care | New York City Health and Hospitals Corp. | c/o Coney Island Hosp. 2601 Ocean Parkway Attn: CFO Brooklyn, NY 11235 | Lease |
| 1200 South Avenue Staten Island, NY 10314 | Home Health Care | Nicotra 1200, LLC | 1110 South Avenue Suite 401 Staten Island, NY 10314 | Lease |
| 1707-32 Veterans Memorial Hwy Islandia, NY 11749 | MIH Home Health Agency/Suffolk | 1700 Veterans Associates, LP c/o Ivy Realty | 1393 Veterans Memorial Highway Hauppauge, NY 11788 | Lease |
| 447 86th Street Brooklyn, NY 11209 | Home Health | HSBC Bank USA, NA | PO Box 347043 Pittsburgh, PA 15251 | Lease |
| 95-25 Queens Blvd Rego Park, NY 11374 | MIH Home Care | Queens Office Tower | c/o Mid State Mgmt. Corp. 40 West 57th St., 23rd Flr. Attn: Comm. Fin. Dept. New York, NY 10019 | Lease |
| 77 East Post Road White Plains, NY 10601 | MMTP @ White Plains Hosp. | Post Development Corp. (a subsidiary of White Plains Hospital Medical Center) | Davis Avenue and East Post Road White Plains, NY 10601 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 111 8th Avenue New York, NY 10011 | Ambulatory Care | Aptium W. New York, Inc (formerly known as Comprehensive Cancer Corporation of New York) (sub-landlord) | 325 West 15th Street Attn: Executive Director New York, NY 10011 | Lease |
| 100 Davis Avenue, 1st Floor Staten Island, NY10310 | Residential Supported Housing | J Helms Properties | 1855 Victory Blvd. Staten Island, NY 10314 | Lease |
| 100 Davis Avenue, 2nd Floor Staten Island, NY 10310 | Residential Supported Housing | J Helms Properties | 1855 Victory Blvd. Staten Island, NY 10314 | Lease |
| 1000 Clove Road #3K Staten Island, NY 10301 | Residential Supported Housing | Richard Shelala | 159-15 Rockaway Blvd. Jamaica, NY 11434 | Lease |
| 105 Sherman Ave., 1st Floor, Staten Island, NY 10301 | Residential Supported Housing | Poritz Properties | 398 Manor Road Staten Island, NY 10314 | Lease |
| 10A Michelle Court Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 10B Michelle Court Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 1105 College Avenue, Apt. 2D Bronx, NY 10456 | Residential Supported Housing | 1106 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1105 College Avenue, Apt. 3D Bronx, NY 10456 | Residential Supported Housing | 1106 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1105 College Avenue, Apt. 4A Bronx, NY 10456 | Residential Supported Housing | 1106 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1105 College Avenue, Apt. 4C Bronx, NY 10456 | Residential Supported Housing | 1106 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 1105 College Avenue, Apt. 5H<br>Bronx, NY 10456 | Residential Supported Housing | 1106 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 111 Franklin Ave., Apt. 2D New Rochelle, NY 10805 | Residential Supported Housing | Franklin Realty LLC | 6001 Montrose Road Suite 606 Rockville, MD 20852 | Lease |
| 11-23 Casimir Ave., Apt. 418A<br>Yonkers, NY 10701 | Residential Supported Housing | St. Casimir Senior Housing/a/c #288-190, | 4 Executive Blvd. Suite 100 Suffern, NY 10901 | Lease |
| 121 Downing Street, Apt. 1 1st Fl.<br>Yonkers, NY 10705 | Residential Supported Housing | Victor Sanchez | 114 Ludlow Street Yonkers, NY 10705 | Lease |
| 121 Downing Street, Apt. 3 3rd Fl<br>Yonkers, NY 10705 | Residential Supported Housing | Victor Sanchez | 114 Ludlow Street Yonkers, NY 10705 | Lease |
| 121 Downing Street, Apt. 4 4th Fl.<br>Yonkers, NY 10705 | Residential Supported Housing | Victor Sanchez | 114 Ludlow Street Yonkers, NY 10705 | Lease |
| 125-13 111th Ave., 2nd Fl. South Ozone Park, NY 11420 | Residential Supported Housing | Kulvinder Uppal | 119-10 101 Avenue Richmond Hill, NY 11419 | Lease |
| 129 Willowbrook Road 1st Fl Staten Island, NY 10302 | Residential Supported Housing | Poritz Associates LLC | 398 Manor Road Staten Island, NY 10314 | Lease |
| 12A Michelle Court Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 12B Michelle Court Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 130 Nicholas Avenue Staten Island, NY 10302 | Residential Supported Housing | Dorothy Nelson | 130 Nicholas Avenue Staten Island, NY 10309 | Lease |
| 1329 College Avenue Apt. 1D<br>Bronx, NY 10456 | Residential Supported Housing | 1329 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 1329 College Avenue Apt. 1E Bronx, NY 10456 | Residential Supported Housing | 1329 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1329 College Avenue Apt. 1H Bronx, NY 10456 | Residential Supported Housing | 1329 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1329 College Avenue Apt. 2D Bronx, NY 10456 | Residential Supported Housing | 1329 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1329 College Avenue Apt. 3D Bronx, NY 10456 | Residential Supported Housing | 1329 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1329 College Avenue Apt. 5E Bronx, NY 10456 | Residential Supported Housing | 1329 College Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 1354 Bay Street 1st Floor Staten Island, NY 10305 | Residential Supported Housing | Carmelo Saia | 73 Tacoma Street Staten Island, NY 10304 | Lease |
| 1354 Bay Street 2nd Floor Staten Island, NY 10305 | Residential Supported Housing | Carmelo Saia | 73 Tacoma Street Staten Island, NY 10304 | Lease |
| 1356 Bay Street, 2nd Floor Staten Island, NY 10305 | Residential Supported Housing | Carmelo Saia | 73 Tacoma Street Staten Island, NY 10304 | Lease |
| 138 McLean Ave., Apt. 1-S Yonkers, NY 10705 | Residential Supported Housing | LMJ Mgmt. Corp. | P.O. Box 61 Yonkers, NY 10703-0061 | Lease |
| 1385 Nelson Avenue Bronx, NY 10452 | Residential Supported Housing | 1385 Nelson Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 146S. 9th Avenue Mt. Vernon, NY 10550 | Residential Supported Housing | Abraham Grant | 146S. 9th Avenue Mt. Vernon, NY 10550 | Lease |
| 147 Ridge Road, Apt. 1F Yonkers, NY 10705 | Residential Supported Housing | Remus Realty, Inc. | P.O. Box 86 Yonkers, NY 10704 | Lease |
| 149 Charles Ave. Staten Island, NY 10302 | Residential Supported Housing | Debra Massa | 81 Oneida Avenue Staten Island, NY 10310 | Lease |

## SCHEDULE OF LEASED PROPERTY

| SVCMC Location | Use of Premises | Landlord | Address | Nature of Debtors' Property Interest |
|---|---|---|---|---|
| 149 Regis Drive<br>Staten Island, NY 10314 | Residential Supported Housing | Doris Cosme | 149 Regis Drive<br>Staten Island, NY 10314 | Lease |
| 159 South Side Ave., Apt. #1<br>Hastings on the Hudson, NY 10706 | Residential Supported Housing | Mike Kerpchek | 23 Westerly Lane North<br>Thornwood, NY 10594 | Lease |
| 161-28 98th Street, 2nd Fl.<br>Howard Beach, NY 11414 | Residential Supported Housing | Giuseppe Frandina | 155-51 Huron St.<br>Howard Beach, NY 11414 | Lease |
| 166 Charles Avenue<br>Staten Island, NY 10302 | Residential Supported Housing | Richard Zawisny | 159 Charles Avenue<br>Brooklyn, NY 11228 | Lease |
| 17k Scenic Drive<br>Croton-on-Hudson, NY 10520 | Residential Supported Housing | NIDA Associates | 14 Dove Court<br>Croton on Hudson, NY 10520 | Lease |
| 18 Spring Street<br>Port Chester, NY 10573 | Residential - Community Residence | Church of our Lady of Mercy | 260 Westchester Avenue<br>Port Chester, NY 10573 | Lease |
| 1857 Victory Blvd.<br>Staten Island, NY | Residential Supported Housing | Salmon Brothers, LLC | 1855 Victory Blvd.<br>Staten Island, NY 10314 | Lease |
| 1859 Victory Blvd.<br>Staten Island, NY 10314 | Residential Supported Housing | Salmon Brothers LLC | 1855 Victory Blvd.<br>Staten Island, NY 10314 | Lease |
| 196 Regis Drive 2nd Fl<br>Staten Island, NY 10314 | Residential Supported Housing | Shagufta Jabin | 818 Coney Island Avenue<br>Brooklyn, NY 11218 | Lease |
| 196 Willow St.<br>Yonkers, NY 10701 | Residential Supported Housing | Maher Mukeattash | 99 Hayward St.<br>Yonkers, NY 10703 | Lease |
| 2 Morningside Avenue, Apt. 1F<br>Yonkers, NY 10703 | Residential Supported Housing | 1-6 LLC Morningside Properties | 37 Hillcrest Avenue<br>Ardsley, NY 10502-465 | Lease |
| 20 Austin Place<br>Staten Island, NY 10304 | Residential - Community Residence | Our Lady of Good Counsel (Austin House) | 10 Austin Place<br>Staten Island, NY 10304 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 208 Buena Vista Ave., Apt. #3 Yonkers, NY 10304 | Residential Supported Housing | Felix J. Rivas | 164 Winding Hill Drive Hackettstown, NJ 7840 | Lease |
| 210 Pelham Road, Apt. 2B New Rochelle, NY 10805 | Residential Supported Housing | CIELO ALARCON-FRASCATORE | 32 Maltbie Avenue Stamford, CT 6902 | Lease |
| 2120 Hughes Ave., Apt. 1C Bronx, NY 10457 | Residential Supported Housing | Hughes Avenue Crescent LP | 660 E. 183rd Street Bronx, NY 10458 | Lease |
| 221 Nicholas Avenue Staten Island, NY 10302 | Residential Supported Housing | Richard Zawisny | 159 Charles Avenue Staten Island, NY 10302 | Lease |
| 2216 Adams Place, Apt. 3A Bronx, NY 10457 | Residential Supported Housing | 2216 Adams Place HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2216 Adams Place, Apt. 3B Bronx, NY 10457 | Residential Supported Housing | 2216 Adams Place HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2216 Adams Place, Apt. 3D Bronx, NY 10457 | Residential Supported Housing | 2216 Adams Place HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2216 Adams Place, Apt. 4C Bronx, NY 10457 | Residential Supported Housing | 2216 Adams Place HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2216 Adams Place, Apt. 5B Bronx, NY 10457 | Residential Supported Housing | 2216 Adams Place HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2270 Washington Avenue, Apt. 5H Bronx, NY 10457 | Residential Supported Housing | Washington Avenue HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 23 Mitchell Place, Apt. 3B White Plains, NY 10601 | Residential Supported Housing | WPMV, Inc. | 200 E. 61st Street New York, NY 10021 | Lease |
| 234 Drake Avenue Apt. 2B New Rochelle, NY 10805 | Residential Supported Housing | 234 Drake Avenue Realty | c/o Direct Management Corp. 42-14 Astoria Blvd. Astoria, NY 11103 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 235 South Lexington Avenue Apt. 10-K White Plains, NY 10606 | Residential Supported Housing | Lexington Hills LLC | c/o Bronstein Properties 108-18 Queens Blvd. Ste 302 Forest Hills, NY 11375 | Lease |
| 235 South Lexington Avenue Apt. 2K White Plains, NY 10606 | Residential Supported Housing | Lexington Hills LLC | c/o Bronstein Properties 108-18 Queens Blvd. Ste 302 Forest Hills NY 11375 | Lease |
| 235 South Lexington Avenue Apt. 4N White Plains, NY 10606 | Residential Supported Housing | Lexington Hills LLC | c/o Bronstein Properties 108-18 Queens Blvd. Ste 302 Forest Hills, NY 11375 | Lease |
| 235 South Lexington Avenue Apt. 6C White Plains, NY 10606 | Residential Supported Housing | Lexington Hills LLC | c/o Bronstein Properties 108-18 Queens Blvd. Ste 302 Forest Hills, NY 11375 | Lease |
| 2386 Bathgate Avenue, Apt. #2B Bronx, NY 10458 | Residential Supported Housing | Central Bronx Housing | 660 E. 183rd Street Bronx, NY 10458 | Lease |
| 240 McLean Ave., Apt. 3E Yonkers, NY 10705 | Residential Supported Housing | Tatra Apartments | 240 McLean Ave. Yonkers, NY 10705 | Lease |
| 2419 Hoffman Street, Apt. 1B Bronx, NY 10458 | Residential Supported Housing | 2419 Hoffman Street. Realty | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2419 Hoffman Street, Apt. 3A Bronx, NY 10458 | Residential Supported Housing | 2419 Hoffman Street Realty | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2419 Hoffman Street, Apt. 3C Bronx, NY 10458 | Residential Supported Housing | 2419 Hoffman Street Realty | 660 East 182nd Street Bronx, NY 10458 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 2419 Hoffman Street, Apt. 5C Bronx, NY 10458 | Residential Supported Housing | 2419 Hoffman Street Realty | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 2419 Hoffman Street, Apt. 5D Bronx, NY 10458 | Residential Supported Housing | 2419 Hoffman Street Realty | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 27 Eldridge Ave, 1st Floor Staten Island, NY 10302 | Residential Supported Housing | George Wonica | 415 Manor Road Staten Island, NY 10314 | Lease |
| 285 South Central Ave., Apt. K Westchester, NY 10530 | Residential Supported Housing | Marion Kourt Condominium | 33 Hubbels Drive Mount Kisco, NY 10549 | Lease |
| 286 Myrtle Avenue Apt. 1H Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 286 Myrtle Avenue Apt. 3H Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 286 Myrtle Avenue, Apt. 2F Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 286 Myrtle Avenue, Apt. 3F Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 286 Myrtle Avenue, Aptl. 1G Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 29 Eldridge Ave 1st Fl. Staten Island, NY 10302 | Residential Supported Housing | George Wonica | 415 Manor Road Staten Island, NY 10314 | Lease |
| 29 Eldridge Ave, 2nd Fl. Staten Island, NY 10302 | Residential Supported Housing | George Wonica | 415 Manor Road Staten Island, NY 10314 | Lease |
| 290 Myrtle Ave., Apt. 3A Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 290 Myrtle Avenue Apt. 1A Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 290 Myrtle Avenue Apt. 1C Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 290 Myrtle Avenue Apt. 1D Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 290 Myrtle Avenue Apt. 2C Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Bronx, NY 10458 | Lease |
| 290 Myrtle Avenue Apt. 2D Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 290 Myrtle Avenue Apt. 3C Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 290 Myrtle Avenue Apt. 3D Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 290 Myrtle Avenue, Apt. 2A Staten Island, NY 10310 | Residential Supported Housing | CEKA Realty | 1405 70th Street Brooklyn, NY 11228 | Lease |
| 296 N. Central Park Ave. Apt. 2A Hartsdale, NY 10530 | Residential Supported Housing | Concord Hill Apt. LLC | 83 Petersville Rd New Rochelle, NY 10003 | Lease |
| 30 Walton Ave., Apt. 1D White Plains, NY 10606 | Residential Supported Housing | Edward Lombardi | 16 Mohegan Lane Rye Brook, NY 10573 | Lease |
| 300 Palisades Ave., Apt. 4T Yonkers, NY 10703 | Residential Supported Housing | 290 Palisade Corp. | P.O. Box 116 Eastchester, NY 10709 | Lease |
| 315B Larchmont Acres West Larchmont, NY 10538 | Residential Supported Housing | ABC Properties | Larchmont Owners Group c/o ABC Properties 152 West 57th Street New York, NY | Lease |
| 32 Vanderburgh Ave., Apt. 2C Larchmont, NY 10538 | Residential Supported Housing | JSA Realty Trust | 44 Island Container Plaza Wheatley Heights, NY 11798 | Lease |
| 33 Van Wart Ave., Apt. 2B White Plains, NY 10606 | Residential Supported Housing | Edward Lombardi | 16 Mohegan Lane Rye Brook, NY 10573 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 342 E. 4th Street, Apt. B4 Mt. Vernon, NY 10553 | Residential Supported Housing | LMA Associates, LLC | P.O. Box 856 Yonkers, NY 10703 | Lease |
| 342 E. 4th Street, Apt. B5 Mt. Vernon, NY 10553 | Residential Supported Housing | LMA Associates, LLC | P.O. Box 856 Yonkers, NY 10703 | Lease |
| 354 Nepperhan Ave., Apt. 10D Yonkers, NY 10701 | Residential Supported Housing | Whitney Young Manor | 358 Nepperhan Avenue Yonkers, NY 10701 | Lease |
| 354 Nepperhan Ave., Apt. 10H Yonkers, NY 10701 | Residential Supported Housing | Whitney Young Manor | 358 Nepperhan Avenue Yonkers, NY 10701 | Lease |
| 354 Nepperhan Ave., Apt. 5D Yonkers, NY 10701 | Residential Supported Housing | Whitney Young Manor | 358 Nepperhan Avenue Yonkers, NY 10701 | Lease |
| 363 Elwood Ave., Apt. 2 Hawthorne, NY 10532 | Residential Supported Housing | Gisondi Properties Limited | 11 Harding Ave. White Plains, NY 10606 | Lease |
| 366 Warburton Ave., Apt. 1 Yonkers, NY 10701 | Residential Supported Housing | Wolf Creek Realty Corp. | 81 Pondfield Rd. Suite #241 Bronxville, NY 10708 | Lease |
| 37 Arcadia Place, Apt. #3E Staten Island, NY 10310 | Residential Supported Housing | Estate Development Corp. LLC | 101 Tyrellan Ave Staten Island, NY 10309 | Lease |
| 37 Arcadia Place, Apt. 1B Staten Island, NY 10310 | Residential Supported Housing | Estate Development Corp. LLC | 101 Tyrellan Ave Staten Island, NY 10309 | Lease |
| 37 Arcadia Place, Apt. 1C Staten Island, NY 10310 | Residential Supported Housing | Estate Development Corp. LLC | 101 Tyrellan Ave Staten Island, NY 10309 | Lease |
| 37 Oxford Place 1st Fl Staten Island, NY 10301 | Residential Supported Housing | Daut Ibroci | 630 Victory Blvd. Apt. 1J Staten Island, NY 10301 | Lease |
| 380 E. 173rd Street, Apt. 3C, Bronx, NY 10457 | Residential Supported Housing | Clay Walton L.P. | 660 E. 183rd Street, Bronx, NY 10458 | Lease |
| 39-30  39th Street, Apt. D-3, Woodside, NY 11377 | Residential Supported Housing | Woodside-Silver Associates, LLC | P.O. Box 360, Ryder Station, Brooklyn, NY 11234 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 39-30 39th Street, Apt. E-9, Woodside, NY 11377 | Residential Supported Housing | Woodside-Silver Associates, LLC | P.O. Box 360, Ryder Station, Brooklyn, NY 11234 | Lease |
| 39-30 39th Street, Apt. E-5, Woodside, NY 11377 | Residential Supported Housing | Woodside-Silver Associates, LLC | P.O. Box 360, Ryder Station, Brooklyn, NY 11234 | Lease |
| 395 Westchester Avenue Port Chester, NY 10573 | Residential Supported Housing | Garthchester Realty Ltd. For Apt. 1-0 | P.O. Box 5063 White Plains, NY 10602-5063 | Lease |
| 4 Michelle Court,2nd Floor Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 40 E. Sidney Avenue, Apt. 6H Mt. Vernon, NY 10550 | Residential Supported Housing | Westchester Plaza Housing LLC (A/C#1440-001-6H-1 - A/c Name: Gadsen Norma Evans) | P.O. Box 3106, Hicksville, NY 10550 | Lease |
| 409 Manor Road, 2nd Fl. Staten Island, NY 10314 | Residential Supported Housing | George K. Wonica | c/o Wonica Realtors 415 Manor Road Staten Island, NY 10314 | Lease |
| 411Warburton Ave., Apt. 2C Yonkers, NY 10701 | Residential Supported Housing | Di La Re, Inc. | 8 Hays Hill Road Pleasantville, NY 10570 | Lease |
| 411 Warburton Ave., Apt. 4C Yonkers, NY 10701 | Residential Supported Housing | Di La Re, Inc. | 8 Hays Hill Road Pleasantville, NY 10570 | Lease |
| 411Warburton Ave., Apt. 3B Yonkers, NY 10701 | Residential Supported Housing | Di La Re, Inc. | 8 Hays Hill Road Pleasantville, NY 10570 | Lease |
| 411Warburton Ave., Apt. 3D Yonkers, NY 10701 | Residential Supported Housing | Di La Re, Inc. | 8 Hays Hill Road Pleasantville, NY 10570 | Lease |
| 440 East 182nd St. Apt. #15 Bronx, NY 10457 | Residential Supported Housing | 440 East 182nd Street HDFC | Belmont Arthur Ave LDC 660 East 183rd St Bronx, NY 10458 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 440 East 182nd St. Apt. #8 Bronx, NY 10457 | Residential Supported Housing | 440 East 182nd Street HDFC | Belmont Arthur Ave LDC 660 East 183rd St Bronx, NY 10458 | Lease |
| 440 East 182nd St. Apt.# 23 Bronx, NY 10457 | Residential Supported Housing | 440 East 182nd Street HDFC | Belmont Arthur Ave LDC 660 East 183rd St Bronx, NY 10458 | Lease |
| 440 East 182nd St. Apt.#12 Bronx, NY 10457 | Residential Supported Housing | 440 East 182nd Street HDFC | Belmont Arthur Ave LDC 660 East 183rd St Bronx, NY 10458 | Lease |
| 440 East 182nd St. Apt.#6 Bronx, NY 10457 | Residential Supported Housing | 440 East 182nd Street HDFC | Belmont Arthur Ave LDC 660 East 183rd St Bronx, NY 10458 | Lease |
| 440 East 182nd Street, Apt. #17 Bronx, NY 10457 | Residential Supported Housing | 440 East 182nd Street HDFC | Belmont Arthur Ave LDC 660 East 183rd St Bronx, NY 10458 | Lease |
| 4419 3rd Avenue Bronx, NY 10457 | Residential Supportive Housing Office | Nathalia 4419 3rd Avenue LLC | 4419 3rd Avenue, 4A Bronx, NY 10457 | Lease |
| 446 Travis Avenue, 2nd Floor Staten Island, NY 10314 | Residential Supported Housing | Richmond County Construction & Dev. Corp. | 362 St. Marks Place Staten Island, NY 10301 | Lease |
| 446 Travis Avenue, Apt. 1L Staten Island, NY 10314 | Residential Supported Housing | Richmond County Construction & Dev. Corp. | 362 St. Marks Place Staten Island, NY 10301 | Lease |
| 4470 Park Avenue, Apt. 1B Bronx, NY 10457 | Residential Supported Housing | Bathgate Belmont HDFC | 660 East 183rd Street Bronx, NY 10458 | Lease |
| 45 Mitchell Place, Apt. C7 White Plains, NY 10601 | Residential Supported Housing | MGH Company, LLC | P.O. Box 1755 New York, NY 10156-1755 | Lease |
| 463 Midland Ave. Staten Island, NY 10306 | Residential Supported Housing | George K. Wonica | c/o Wonica Realtors 415 Manor Road Staten Island, NY 10314 | Lease |

## SCHEDULE OF LEASED PROPERTY

| SVCMC Location | Use of Premises | Landlord | Address | Nature of Debtors' Property Interest |
|---|---|---|---|---|
| 4B Michelle Court Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 5 Greenridge Ave. White Plains, NY 10605 | Residential Supported Housing | Richard Jones | 333 E. 53rd Street, Apt. 10M New York, NY 10022 | Lease |
| 5 W. 4th Street, Apt. 34 Mt. Vernon, NY 10550 | Residential Supported Housing | CMF Realty. LLC | P.O. Box 856 Yonkers, NY 10703 | Lease |
| 5 W. 4th Street, Apt. 46 Mt. Vernon 10550 | Residential Supported Housing | CMF Realty. LLC | P.O. Box 856 Yonkers, NY 10703 | Lease |
| 5 W. 4th Street, Apt. 55 Mt. Vernon 10550 | Residential Supported Housing | CMF Realty. LLC | P.O. Box 856 Yonkers, NY 10703 | Lease |
| 50 Birch Road 2nd Floor Staten Island, NY 10303 | Residential Supported Housing | Ben Ojeh | 50 Birch Road 2nd Floor Staten Island, NY 10303 | Lease |
| 53 Richard Lane Staten Island, NY 10314 | Residential Supported Housing | Monty Li | 28 Jardine Avenue Staten Island, NY 10314 | Lease |
| 59 Oxford Place Staten Island, NY 10301 | Residential Supported Housing | Duke Ajrulla | 59 Oxford Place Staten Island, NY 10301 | Lease |
| 59 Oxford Place, 2nd Floor Staten Island, NY 10301 | Residential Supported Housing | Duke Ajrulla | 59 Oxford Place Staten Island, NY 10301 | Lease |
| 600 Locust St. Apt. 5E. Mt. Vernon 10552 | Residential Supported Housing | Fleetwood Owners, Inc. | c/o Gramatan Management, Inc. 2 Hamilton Ave. Suite 217 New Rochelle, NY 10801 | Lease |
| 600 Locust St., Apt. 5E Mr. Vernon 10552 (duplicate of above) | Residential Supported Housing | Everhome Mortgage Co. | P.O. Box 530579 Atlanta, GA 30353-0579 | Lease |
| 60-58 Fresh Pond Road Queens 11378 | Residential Supported Housing | Ana Lotrijan | 161-30  92nd Street Howard Beach, NY 11414 | Lease |
| 636 Castleton Avenue 1st Fl Staten Island, NY 10310 | Residential Supported Housing | Poritz Properties | 398 Manor Road Staten Island, NY 10314 | Lease |

## SCHEDULE OF LEASED PROPERTY

| SVCMC Location | Use of Premises | Landlord | Address | Nature of Debtors' Property Interest |
|---|---|---|---|---|
| 636 Castleton Avenue 2nd Fl Staten Island, NY 10310 | Residential Supported Housing | Poritz Properties | 398 Manor Road Staten Island, NY 10314 | Lease |
| 638 Castleton Avenue 1st Fl Staten Island, NY 10310 | Residential Supported Housing | Poritz Properties | 398 Manor Road Staten Island, NY 10314 | Lease |
| 64 Elm Ave., Apt. 3D Mt. Vernon 10550 | Residential Supported Housing | Artsdale Realty Corp. | P.O. Box 203-H Scarsdale, NY 10583 | Lease |
| 654 Port Richmond Ave., Apt. 3-B Staten Island, NY 10302 | Residential Supported Housing | DA-MARC Realty Corp. | 254 Flag Place, S Staten Island, NY 10304 | Lease |
| 660 Crescent Avenue, Apt. #22 Bronx, NY 10458 | Residential Supported Housing | 660 Crescent Avenue HDFC | 660 East 183rd Street, B Bronx, NY 10458 | Lease |
| 6A Michelle Court, 1st Fl Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 6B Michelle Court, 1st Fl Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 700 Travis Ave., Apt. 1R Staten Island, NY 10314 | Residential Supported Housing | Murray Berman | 362 St. Mark's Place Staten Island, NY 10301 | Lease |
| 71-35 Myrtle Ave., Apt. 2R Glendale 11385 | Residential Supported Housing | John Lotrijan | 162-12 91st Street Howard Beach, NY 11414 | Lease |
| 71-38 68th St., Apt. #2 FT Glendale, NY 11385 | Residential Supported Housing | Kathleen Kearns | 2756 Terrwood Drive E. Macungie, PA 18062-8442 | Lease |
| 71-38 68th Street, Apt. 2R Glendale, NY 11385 | Residential Supported Housing | Kathleen Kearns | 2756 Terrwood Drive E. Macungie, PA 18062-8442 | Lease |
| 72 Bowman Ave., Rye Brook, NY 10573 | Residential Supported Housing | Vannio Capizzano | 72 Bowman Ave. Rye Brook, NY 10573 | Lease |
| 72-21  67th St., Apt. #2C Glendale, NY 11385 | Residential Supported Housing | Nada Wagner | 853 Senece Ave. Ridgewood, NY 11385 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 72-21 67th St., Apt. 1C Glendale, NY 11385 | Residential Supported Housing | Nada Wagner | 853 Seneca Ave. Ridgewood, NY 11385 | Lease |
| 73-15 67th Road, Apt. 2R Queens, NY 11379 | Residential Supported Housing | Filomena Salce | 68-40 78th Street Middle Village, NY 11379 | Lease |
| 74 W. Devonia Ave., 2nd Fl. Mt. Vernon, NY 10552 | Residential Supported Housing | Yolanda DelBracco | 74 W. Devonia Ave. Mt. Vernon, NY 10552 | Lease |
| 8 Michelle Court, 2ND Fl. Staten Island, NY 10303 | Residential Supported Housing | Giovanucci Property Mgmt | 45 Watchogue Rd. Staten Island, NY 10314 | Lease |
| 807 Delafield Avenue 1st Fl Staten Island, NY 10310 | Residential Supported Housing | Forest Manor Mangement Corp | 415 Manor Road Staten Island, NY 10314 | Lease |
| 809 Delafield Avenue 1st Fl Staten Island, NY 10310 | Residential Supported Housing | Forest Manor Mangement Corp | 415 Manor Road Staten Island, NY 10314 | Lease |
| 809 Delafield Avenue 2nd Fl Staten Island, NY 10310 | Residential Supported Housing | Forest Manor Mangement Corp | 415 Manor Road Staten Island, NY 10314 | Lease |
| 811 Delafield Ave., 2nd Fl. Staten Island, NY 10310 | Residential Supported Housing | Forest Manor Mangement Corp | 415 Manor Road Staten Island, NY 10314 | Lease |
| 811 Delafield, 1st Floor Staten Island, NY 10310 | Residential Supported Housing | Wonica Realty | 415 Manor Road Staten Island, NY 10304 | Lease |
| 825 Post Avenue, 1st Floor Staten Island, NY 10310 | Residential Supported Housing | Post Avenue Realty Co., LLC | P.O. Box 140205, S Staten Island, NY 10314 | Lease |
| 84-11 101st Ave., Apt. #11 Ozone Park 11416 | Residential Supported Housing | Liberty Manor | 136-16 32nd Ave. Flushing, NY 11364 | Lease |
| 84-11 101st Ave., Apt. #7 Ozone Park 11416 | Residential Supported Housing | Liberty Manor | 136-16 32nd Ave. Flushing, NY 11364 | Lease |
| 84-14 149th Ave., Apt. 4C Howard Beach 11414 | Residential Supported Housing | Mustata Palej | 159-15 81st Street, H Howard Beach, NY 11414 | Lease |
| 85 Bronx River Road, Apt. #65 WESTCHESTER (Yonkers) 10704 | Residential Supported Housing | Bronx River Management | P.O. Box 040-313 Parkville Station Brooklyn, NY 11204-0004 | Lease |

## SCHEDULE OF LEASED PROPERTY

| SVCMC Location | Use of Premises | Landlord | Address | Nature of Debtors' Property Interest |
|---|---|---|---|---|
| 86-03 102nd St., Apt. 3H Queens, NY 11418 | Residential Supported Housing | Framingham Equities, LLC | c/o Benedict Properties 150 Great Neck Road, Suite 402 Great Neck, NY 11021 | Lease |
| 88-39 88th St., Woodhaven, NY 11421 | Residential Supported Housing | Maria C. Rojas | 1380 Woodbine Ave. Deltona, FL 32725 | Lease |
| 90 Bryant Ave., Apt. TB White Plains, NY 10605 | Residential Supported Housing | Jerome M. Luks | 23 Wyldwood Drive Tarrytown, NY 10591 | Lease |
| 90-13 Jamaica Ave., 2nd Fl Queens, NY 11421 | Residential Supported Housing | Ginsburg & Misk, (Saline vs Saline) | Attorneys at Law 215-48 Jamaica Avenue Queens Village, NY 11428 | Lease |
| 91-47 88 Road., Apt. 2B Woodhaven, NY 11421 | Residential Supported Housing | Rajnagen Inc. | 41 Bay Ave. E. Moriches, NY 11940 | Lease |
| 91-47 88th Road, Apt. 2EA Woodhaven, NY 11421 | Residential Supported Housing | Rajnagen Inc. | 41 Bay Ave. E. Moriches, NY 11940 | Lease |
| 91-47 88th Road, Apt. 4B Woodhaven, NY 11421 | Residential Supported Housing | Rajnagen Inc. | 41 Bay Ave. E. Moriches, NY 11940 | Lease |
| 91-47 88th Road., Apt. 4G Woodhaven, NY 11421 | Residential Supported Housing | Rajnagen Inc. | 41 Bay Ave. E. Moriches, NY 11940 | Lease |
| 92 Davis Ave., 1st Floor Staten Island, NY 10310 | Residential Supported Housing | J. Helms Properties, LLC | 1855 Victory Blvd. Staten Island, NY 10314 | Lease |
| 94-46  85TH Road, Apt. 3B Queens, NY 11421 | Residential Supported Housing | Devendra K., Inc. | 41 Bay Ave., East Moriches, NY 11940 | Lease |
| 94-46 85th Road, Apt. 4D Queens, NY 11421 | Residential Supported Housing | Devendra K., Inc. | 41 Bay Ave. East Moriches, NY 11940 | Lease |
| 94-46 85th Road, Apt. 4E Queens, NY 11421 | Residential Supported Housing | Devendra K., Inc. | 41 Bay Ave. East Moriches, NY 11940 | Lease |
| 94-46 85th Road., Apt. 3F Queens, NY 11421 | Residential Supported Housing | Devendra K., Inc. | 41 Bay Ave. East Moriches, NY 11940 | Lease |

| SCHEDULE OF LEASED PROPERTY | | | | |
|---|---|---|---|---|
| **SVCMC Location** | **Use of Premises** | **Landlord** | **Address** | **Nature of Debtors' Property Interest** |
| 945 Post Avenue #1B<br>Staten Island, NY 10302 | Residential Supported Housing | Post Island Properties LLC | 145 Beach Street<br>Staten Island, NY 10314 | Lease |
| 946 Bronx Park South, Apt. 3D<br>Bronx, NY 10460 | Residential Supported Housing | Rising Development BPS, LLC | 1 Parker Plaza<br>Fort Lee, NY 10458 | Lease |
| 96 Davis Avenue, 1st Floor<br>Staten Island, NY 10310 | Residential Supported Housing | J. Helms Properties, LLC | 1855 Victory Blvd.<br>Staten Island, NY 10314 | Lease |
| 96 Davis Avenue, 2nd floor<br>Staten Island, NY 10310 | Residential Supported Housing | J Helms Properties, LLC | 1855 Victory Blvd.<br>Staten Island, NY 10314 | Lease |
| 98 Davis Avenue<br>Staten Island, NY 10310 | Residential Supported Housing | J Helms Properties, LLC | 1855 Victory Blvd.<br>Staten Island, NY 10314 | Lease |
| 99 Yonkers Ave., Apt. #5<br>Yonkers, NY 10701 | Residential Supported Housing | Ann & Ted O'Lear | 67 Woodford Road<br>Scarsdale, NY 10583 | Lease |

| SCHEDULE OF OWNED PROPERTY | | | |
|---|---|---|---|
| **Building/Tenant Name** | **Address** | **Use** | **Operator** |
| Coleman Pavilion | 1 Seventh Avenue (aka 7 Seventh Avenue, 7-15 Seventh Avenue) New York, NY 10011 | Hospital & Related | SVCMC |
| Staff House | 101 W 15th Str. or 555 6th Avenue (aka 101-111 W 15th Street, 100-110 W 16th or 553-573 6th Avenue) New York, NY 10011 | Residential | SVCMC |
| Tompkins Residence | 1150 Castleton Avenue Staten Island, NY 10310 | Residential/ Supportive Housing | SVCMC |
| Cronin Building | 133 West 11th Street (aka 133-141 W 11th Street) New York, NY 10011 | Hospital & Related | SVCMC |
| Spellman Pavilion | 143 West 11th Street (143-147 W 11th Street) New York, NY 10011 | Hospital & Related | SVCMC |
| Reiss Pavilion | 148 West 12th Street (aka 148-158 W 12th Street or 134 W 12th Street) New York, NY 10011 | Hospital & Related | SVCMC |

## SCHEDULE OF OWNED PROPERTY

| Building/Tenant Name | Address | Use | Operator |
|---|---|---|---|
| Was St. Mary's Hospital MMTP I Now: SATC - Opiod Treatment Services Tract 13.15.17 | 1480 Prospect Place Brooklyn, NY 11213 | Ambulatory/MHSA | SVCMC |
| Immaculata Hall Annex | 149-20 90th Avenue Jamaica, NY 11435 | Residential/ Supportive Housing | Immaculata Hall HDFC |
| Bishop Sullivan Residence | 1534 Prospect Place 1526-1540 Prospect Place 190 - 192 Buffalo Avenue Brooklyn, NY 11213 | Residential/ Supportive Housing | St. Mary's Supportive Housing HDFC |
| Link Pavilion | 153 West 11th Street (aka 151 W 11th St. 151-167 W 11th Street or 1-5 Seventh Avenue) New York, NY 10011 | Hospital & Related | SVCMC |
| Bishop Mugavero | 155 Dean Street Brooklyn, NY 11217 | Skilled Nursing | Bishop Francis J. Mugavero Geriatric Care Center |
| Nurses Residence | 158 West 12th Street aka 134 W 12th Street New York, NY 10011 | Hospital & Related | SVCMC |

## SCHEDULE OF OWNED PROPERTY

| Building/Tenant Name | Address | Use | Operator |
|---|---|---|---|
| Smith | 170 West 12th Street (aka 160 W 12th Street, 160-172 W 12th Street) New York, NY 10011 | Hospital & Related | SVCMC |
| Raskob | 170 West 12th Street (aka 160 W 12th St. 172 W 12th St, 160-172 W 12th Street) New York, NY 10011 | Hospital & Related | SVCMC |
| Holy Family Home | 1740 84th Street Brooklyn, NY 11214 | Skilled Nursing | St. Jerome's Health Services Corporation |
| Materials Handling Center | 2 Seventh Avenue (aka 76 Greenwich Ave) New York, NY 10011 | Warehouse | SVCMC |
| O'Toole Building | **20 Seventh Ave** or 203 W 12th St (aka 20-40 Seventh Avenue 201-209 W 12th & 200-206 W 13th) New York, NY 10011 | Ambulatory Care | SVCMC |
| St. Mary's Hospital MMTP III | 221 Powell Street Brooklyn, NY 11212 | Ambulatory/MHSA | SVCMC |
| South Wing Annex | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Boiler Plant | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |

## SCHEDULE OF OWNED PROPERTY

| Building/Tenant Name | Address | Use | Operator |
|---|---|---|---|
| Vincent House | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Seton | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Summer House | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Hanin House | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Gate House | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Garage | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| St. John's | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Support Services | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Annex | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Doty | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Judson | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Spellman | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |
| Vincentia | 275 North Street Harrison, NY 10528 | Hospital & Related | SVCMC |

| SCHEDULE OF OWNED PROPERTY | | | |
|---|---|---|---|
| **Building/Tenant Name** | **Address** | **Use** | **Operator** |
| Sister Mary Assissium Residence | 382 Westervelt Avenue Staten Island, NY 10301 | Residential/ Supportive Housing | SVCMC |
| 1) MICA CDT & 2) St. Martin de Porres SATC which is **Now:** SATC - Opiod Treatment Services Tract 13.15.17 | 480 Alabama Avenue (aka 542 Livonia Avenue) Brooklyn, NY 11201 | Ambulatory/MHSA | SVCMC |
| 49 Clinton Avenue Residence | 49 Clinton Avenue Staten Island, NY 10301 | Residential/ Supportive Housing | SVCMC |
| 700 Bay Street Residence | 700 Bay Street Staten Island, NY 10304 | Residential/ Supportive Housing | SVCMC |
| Building 1 - SVCMC / RUMC | 75 Vanderbilt Avenue Staten Island, NY 10304 | Hospital Closed - Leased Medical Mixed Use | SVCMC |
| Building 13 - VACANT | | Vacant-Warehouse | |
| Building 15 - VACANT | | Vacant-Storage | |
| Building 5a - VACANT | | Vacant | |
| Building 6 - Power Plant | | Power Plant | |

| SCHEDULE OF OWNED PROPERTY | | | |
|---|---|---|---|
| **Building/Tenant Name** | **Address** | **Use** | **Operator** |
| Building 7 - Marine Dental | | One Tenant | |
| Building 8 - VACANT | | Vacant | |
| SEA Parking Lot | 75 Vanderbilt Avenue Staten Island, NY 10304 | SEA Parking Lot | St. Elizabeth Ann |
| Building being gutted for construction | 78 Fort Place Staten Island, NY 10301 | | Fort Place Housing Corp. |
| Immaculata Hall | 90-10 150th Street Jamaica, NY 11432 | Residential/ Supportive Housing | Immaculata Hall HDFC |
| St. Elizabeth Ann Nursing Home | 91 Tompkins Avenue Staten Island, NY 10304 | Skilled Nursing | SEA |

# Schedule A-8

### Location of Debtors' Substantial Assets and Books and Records and
### Nature, Location and Value of Assets Held Outside the United States

Pursuant to Local Rule 1007-2(a)(10), the following schedule lists the locations of the Debtors' substantial assets, the location of their books and records, and the nature, location, and value of any assets held by the Debtors outside of the territorial limits of the United States.

**Location of the Debtors' Substantial Assets**:

170 W 12th Street
New York, New York 10011

275 North Street
Harrison, NY  10528

450 W. 33rd Street
New York, NY 10001

153 W. 11th Street
New York, New York 10011

91 Tompkins Avenue
Staten Island, New York 10304

1740 84th Street
Brooklyn, New York 11214

155 Dean Street
Brooklyn, New York 11217

130 West 12th Street
New York, NY 10011

690 Castleton Avenue
Staten Island, NY 10310

**Location of the Debtors' Books and Records**:

170 W 12th Street
New York, New York 10011

275 North Street
Harrison, NY  10528

450 W. 33rd Street
New York, NY 10001

153 W. 11th Street
New York, New York 10011

91 Tompkins Avenue
Staten Island, New York 10304

1740 84th Street
Brooklyn, New York 11214

155 Dean Street
Brooklyn, New York 11217

130 West 12th Street
New York, NY 10011

690 Castleton Avenue
Staten Island, NY 10310

**<u>Nature, Location and Value of Assets Held Outside the United States</u>**:

None.

## Schedule A-9

## Schedule of Pending Litigation

Pursuant to Local Rule 1007-2(a)(11), to the best of the Debtors' knowledge, belief and understanding, there are no actions or proceedings pending or threatened against the Debtors or their property, as of the Petition Date, where a judgment against the Debtors or a seizure of their property may be imminent.

None.

## Schedule A-10

## Schedule of Senior Management

Pursuant to Local Rule 1007-2(a)(12), the following table sets forth the names of the individuals who comprise the Debtors' existing senior management, their tenure with the Debtors, and a brief summary of their relevant responsibilities and experiences.

| NAME | TITLE | EXPERIENCE/RESPONSIBILITIES |
|------|-------|------------------------------|
| Mark Toney | Chief Restructuring Officer | Mr. Toney, National Managing Principal of Grant Thornton's Corporate Advisory and Restructuring Services practice. Prior to joining Grant Thornton, Mr. Toney was a Managing Director at AlixPartners, LLC, partner at PricewaterhouseCoopers LLP, serving as National Healthcare Practice Leader for its Business Recovery Services group., as well as a principal in a consulting firm and vice president in a boutique investment banking firm. He has served as Plan Manager and Crisis Manager for restructuring plans for hospitals, PPM's, HMO's, PPO's, as well as other healthcare related entities. Mr. Toney has significant experience in corporate strategy and restructuring projects. His responsibilities have included operational reorganizations, financial restructurings, transaction management for mergers, acquisitions and divestitures, turnarounds and loan workouts, and Chapter 11 bankruptcy proceedings. Most of Mr. Toney's engagements have involved large and middle market companies in healthcare, retail, food processing, and manufacturing. |

| NAME | TITLE | EXPERIENCE/RESPONSIBILITIES |
|------|-------|------------------------------|
| Steven Korf | CFO, SVCMC | Mr. Korf is a partner with Grant Thornton. Prior to joining Grant Thornton, Mr. Korf was a Managing Director at a national consulting firm and spent 20 years in private industry in various "C-level" positions. Mr. Korf has represented debtors and creditors of both public and private companies in identifying solutions to various complex operational and financial issues, frequently in crisis situations. Services provided have included evaluating business plans, negotiating capital structures, developing reorganization plans and valuing business enterprises. Mr. Korf has also negotiated numerous acquisitions and divestitures and has consistently proven his ability to enhance profitability in both growth and restructuring environments. |

## Schedule B-1

### Estimated 30-Day Weekly Payroll
### (Excluding Directors, Officers, Stockholders and Partners)

Pursuant to Local Rule 1007-2(b)(1), the estimated consolidated amount of weekly payroll to all of the Debtors' employees (exclusive of directors, officers, stockholders and partners) for the 30-day period following the Petition Date is approximately **$24,220,000.**

## Schedule B-2

### Estimated 30-Day Weekly Payroll
### for Directors, Officers and Stockholders


Pursuant to Local Rule 1007-2(b)(2), the Debtors will not make any payroll payments to directors and officers for the 30-day period following the Petition Date. While there are certain senior staff members employed by the Debtors, they are not corporate officers. Further, Grant Thornton LLP is providing certain crisis management services, including a Chief Restructuring Officer and Chief Financial Officer; however, these individuals are not on the corporation's payroll. Grant Thornton's retention will be approved pursuant to a specific order of the Court. The Debtors will not be making any payroll or other payments to their shareholders or members during the 30-day period following the Petition Date.

**<u>Schedule B-3</u>**


**Estimated 30-Day Fees for**
**<u>the Debtors' Financial and Business Consultants</u>**


As noted on Schedule B-2, Grant Thornton LLP is providing certain crisis management services and temporary employees to the Debtors.  These services are not considered financial or business consulting services.  Grant Thornton's retention will be approved pursuant to a specific order of the Court.

# Schedule B-4

## Schedule of 30-Day Estimated Cash Receipts and Disbursements, Net Cash Gain or Loss, and Accrued Obligations and Receivables (Excluding Professional Fees)

Pursuant to Local Rule 1007-2(b)(3), the following schedule provides, for the 30-day period following the Petition Date, the estimated cash receipts and disbursements, net cash gain or loss, and obligations and receivables expected to accrue but remain unpaid, other than professional fees, for the Debtors on a consolidated basis:

| Category | Estimated Amount for the 30-day period following the Petition Date |
|---|---|
| Cash Receipts | $38,770,000 |
| Cash Disbursements | $87,380,000 |
| Net Cash Gain (Loss) | ($48,610,000) |
| Accrued Obligations | $2,200,000 |
| Accrued Receivables | $22,800,000 |