**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SAINT VINCENTS CATHOLIC MEDICAL CENTERS OF NEW YORK, *et al.*, | Case No. 10-11963 |
| | (Jointly Administered) |
| Debtors. | **[Re Docket No. _____]** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO INCUR POSTPETITION INDEBTEDNESS; (II) GRANTING SENIOR SECURITY INTERESTS AND SUPERPRIORITY CLAIMS (III) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL (IV) GRANTING ADEQUATE PROTECTION; (V) PROVIDING RELATED RELIEF; AND (VI) SCHEDULING A FINAL HEARING

THIS MATTER came before the Court on April 15 and April 16, 2009, on the motion (the "**Motion**") of Saint Vincents Catholic Medical Centers of New York ("**SVCMC**") and certain of its affiliates, as Chapter 11 debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Medical Centers**" or the "**Debtors**")[1] in the above-referenced Chapter 11 cases (the "**Chapter 11 Cases**") for entry of this Interim Order (the "**Interim Order**") authorizing the Debtors to (i) incur postpetition indebtedness; (ii) grant senior security interests and superpriority claims, pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), including pursuant to sections 105(a), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); (iii) use Cash Collateral (defined below) pursuant to Bankruptcy Rule 4001(b) and section 363(c) of the Bankruptcy Code, and provide

---

[1] In addition to SVCMC, the Debtors are as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Pax Christi Hospice, Inc.; (iv) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (v) St. Jerome's Health Services Corporation d/b/a Holy Family Home; (vi) SVCMC Professional Registry, Inc.; (vii) Chait Housing Development Corporation; (viii) Fort Place Housing Corporation, and (ix) 555 6th Avenue Apartment Operating Corporation. There are certain affiliates of SVCMC who are not Debtors.

adequate protection in accordance with sections 364(d), 363(c)(2) and 361 of the Bankruptcy Code; (iv) grant other related relief; and (v) schedule a final hearing ("**Final Hearing**") for entry of a Final Order (the "**Final Order**" and, together with the Interim Order, collectively, the "**DIP Orders**") providing for similar relief on a final basis. Pursuant to the Motion, the Debtors have requested that the Court:

(a)      authorize, pursuant to the Bankruptcy Code, including sections 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, rules 2002, 4001, and 9014 of the Bankruptcy Rules, and rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors to obtain financial accommodations consisting of a revolving line of credit (the "**DIP Facility**") under which borrowings may be made from time to time pursuant to that certain Debtor In Possession Credit Agreement (together with all schedules and exhibits thereto, and as it may be amended, restated, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, the "**DIP Loan Documents**")[2] by and among (i) the Debtors, and (ii) General Electric Capital Corporation (in its individual capacity, "**GE Capital**"), as agent (collectively, the "**DIP Agent**") for financial institutions from time to time party to the DIP Credit Agreement (collectively, "**DIP Lenders**" and individually each a "**DIP Lender**") and for itself as a DIP Lender all in respect of the obligations set forth in the DIP Budget (defined below), DIP Loan Documents and this Interim Order ("**DIP Obligations**,");

(b)      authorize the Debtors to execute and deliver to the DIP Agent the DIP Loan Documents;

(c)      authorize the Debtors to borrow on an interim basis the amount of Fifty Million Dollars ($50,000,000) (the "**Interim Amount**"), the proceeds of which, together with cash on hand, will be used to repay the prepetition revolving loan as set forth below in (f) with the balance used to fund the Debtors' chapter 11 operating expenses;

(d)      authorize, subject to the entry of the Final Order, the Debtors to borrow on a final basis the amount of Seventy-Eight Million Dollars ($78,000,000)[3] (the "**Maximum Permitted Loan Balance**"), in accordance with the DIP Budget, the DIP Loan Documents and this Interim Order;

(e)      authorize, pursuant to the Bankruptcy Code, including section 363(c) thereof, the Debtors to use Cash Collateral (defined below) in which the Prepetition Lenders, DASNY (defined below) and the PBGC (defined below) have an interest in accordance with the DIP Budget, the DIP Loan Documents and this Interim Order;

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the Motion, DIP Credit Agreement and the other DIP Loan Documents.

[3] In the sole discretion of the DIP Agent and the DIP Lenders, the maximum amount of the DIP Facility may be increased to an amount not to exceed $85 million.

(f)     in accordance with the DIP Budget, the DIP Loan Documents and this Interim Order, authorize the Debtors to use Cash Collateral and proceeds from the DIP Facility to, *inter alia*:

(i)     upon entry of this Interim Order, repay in full in cash in the approximate amount of $43,190,000.00 (the "**Revolver Roll-Up Payment**") the Debtors' prepetition senior secured obligations (the "**Prepetition Obligations**") in respect of prepetition revolving loans to GE Capital, as agent (collectively, the "**Prepetition Agent**") for financial institutions (collectively, "**Prepetition Lenders**" and individually each a "**Prepetition Lender**") and for itself as a Prepetition Lender from time to time party to that certain Credit Agreement dated as of August 30, 2007 (as it may be amended, restated, modified or supplemented from time to time, the "**Prepetition Credit Agreement**," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, "**Prepetition Loan Documents**") by and among (x) SVCMC, Mugavero, St. Jerome's, St. Elizabeth Ann's, Pax Christi, and St. Vincent's Physician Services, P.C., (y) the Prepetition Agent; and (z) the Prepetition Lenders;

(ii)    fund the orderly wind down and closure of the Hospital Businesses and fund the operating expenses and orderly disposition of the Non-Hospital Assets during these Chapter 11 Cases,

(iii)   fund postpetition allowed fees and expenses incurred by Retained Professionals (defined below) for the Debtors and any statutory committee including any committee appointed pursuant to section 1102 of the Bankruptcy Code (collectively, the "**Committee**"),

(iv)    pay interest and fees on the DIP Facility,

(v)     pay fees and expenses of the DIP Agent and the DIP Lenders related to the DIP Facility and these Chapter 11 Cases, including, without limitation, attorneys' fees and fees of professional advisors on the terms set forth in the DIP Loan Documents and this Interim Order,

(vi)    pay Adequate Protection Payments (defined below), and

(vii)   fund the other items covered by the terms of the DIP Budget, this Interim Order, and the DIP Loan Documents;

(g)     authorize, pursuant to the Bankruptcy Code, including sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, the DIP Agent and DIP Lenders to receive DIP Superpriority Claims (defined below) and DIP Liens (defined below) with respect to all assets of the Debtors, of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired, including all accounts, all chattel paper, all commercial tort claims, all deposit accounts, all documents, all equipment, all general intangibles, all goods, all instruments, all inventory, all investment property, all letter-of-credit rights, all books and records, and all proceeds, rents, profits, and offspring of the foregoing

(including Cash Collateral, as defined below), and all Avoidance Action Proceeds[4] (all of the foregoing, and as more fully set forth in the DIP Loan Documents, the "**DIP Collateral**"), subject and subordinate in each case to the Carve-Out (defined below) and Permitted Prior Senior Liens (defined below);

(h)　　authorize the following forms of adequate protection (collectively, the "**Adequate Protection**"), pursuant to applicable provisions of the Bankruptcy Code, including sections 361, 503(b) and 507(b) thereof, and the terms of this Interim Order:

> (i)　　that the Prepetition Agent and the Prepetition Lenders, whose liens and security interests are being primed by the DIP Obligations, DIP Liens and DIP Superpriority Claims under the DIP Credit Agreement and other DIP Loan Documents, and whose Prepetition Collateral (defined below) may be used, sold or leased by the Debtors, be granted the following as adequate protection of such interests with the same relative priority of the liens and claims owing to the Prepetition Lenders:　(i) Adequate Protection Liens (defined below), subject only to the Permitted Prior Senior Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims, and the Carve-Out, (ii) Section 507(b) Claims (defined below), subject and subordinate only to the Permitted Prior Senior Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and the Carve-Out, and (iii) Adequate Protection Payments (defined below), all on the terms set forth herein; and

> (ii)　　that DASNY, whose liens and security interests are being primed, in part, by the DIP Obligations, DIP Liens and DIP Superpriority Claims under the DIP Credit Agreement and other DIP Loan Documents, and whose Cash Collateral may be used by the Debtors, be granted certain Adequate Protection Payments on the terms set forth herein;

(i)　　modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the DIP Orders and satisfy the Adequate Protection Obligations (defined below);

(j)　　waive any stay of effectiveness under the Bankruptcy Code and Bankruptcy Rules, including under Bankruptcy Rule 4001(a)(3), and under the Local Rules and, provide for the immediate effectiveness of this Interim Order; and

(k)　　schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of the Final Order approving the Motion.

IT APPEARING that due and appropriate notice of the Motion, the relief requested therein and the interim hearing on the Motion (the "**Interim Hearing**") has been given and

---

[4] "**Avoidance Action Proceeds**" means proceeds of all claims and causes of actions under Chapter 5 of the Bankruptcy Code, including, without limitation, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553, and state laws of similar import.

served by the Debtors on: (1) the Office of the United States Trustee (the "**U.S. Trustee**"), (2) the local office of the Internal Revenue Service, (3) the Securities and Exchange Commission, (4) counsel for the DIP Agent, (5) counsel for the Prepetition Agent, (6) the Debtors' alleged secured creditors, to the extent known, (7) the creditors holding the thirty (30) largest unsecured claims against the Debtors' Estates (defined below), on a consolidated basis, as reflected in the lists submitted pursuant to Bankruptcy Rule 1007(d), (8) the Office of New York State Attorney General, (9) the Pension Benefit Guaranty Corporation (the "**PBGC**"), (10) the Dormitory Authority of the State of New York ("**DASNY**"), (11) the New York State Department of Health, and any other parties required to receive notice pursuant to Bankruptcy Rules 2002, 4001, 5003(e) or 9014 or the local rules of this Court or requesting notice pursuant to a written and timely received request (collectively, the "**Notice Parties**"); and the Interim Hearing having been held; and upon all of the pleadings filed with the Court and evidence presented in support of the Motion, and all of the proceedings held before the Court; and the Court having noted the appearances of parties in interest at the hearing in the record of this Court; and any objections to the Motion having been resolved or overruled by the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates (the "**Estates**") and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:[5]

A.    <u>Notice and Hearing</u>.  Notice of the Motion, the relief requested therein and the Interim Hearing on the Motion has been served in accordance with all applicable rules and guidelines, including under section 102(1) of the Bankruptcy Code, Bankruptcy Rule 4001(b)

---

[5] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

and Local Rule 4001-2(i), which notice is appropriate under the circumstances and sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules.

B.     Chapter 11 Filed.  The Debtors filed their petitions pursuant to Chapter 11 of the Bankruptcy Code on April 14, 2010 (the "**Petition Date**"), and are presently operating as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108.

C.     Necessity and Best Interest.

(1)     The Debtors do not have sufficient cash collateral or other available sources of working capital and financing to implement the Closure Plan, to continue to market and effectuate the sales of their Non-Hospital Assets and to pay the costs attendant to these Chapter 11 Cases.  Accordingly, the Debtors urgently need access to the DIP Facility and use of the Cash Collateral to continue to provide adequate care to their remaining patients in advance of their transfer to other facilities, to pay certain claims of their employees, utilities, and other short-term costs pending the shut-down of the Hospital Businesses and to otherwise implement the Closure Plan.  In addition, to preserve the value of the Non-Hospital Assets for the benefit of all creditors and other parties in interest, the Debtors urgently need access to the DIP Facility and use of the Cash Collateral to continue marketing such Non-Hospital Assets as a going concern and to consummate the sale transactions that were negotiated prior to the Petition Date.

(2)     Consummation of the DIP Facility and authorization to use the Cash Collateral in accordance with this Interim Order is in the best interests of the Debtors, their creditors, patients, estates and the other parties in interest because it will stave off an immediate closure (which would jeopardize the remaining patients of the Hospital and the sale of the Non-Hospital Businesses as a going concern) and enhance the value of the Debtors' Estates for the benefit of all creditors and other parties in interest.

(3)     The priming of certain liens on the Prepetition Collateral and payment of the Revolver Roll-Up Payment will enable the Debtors to obtain the DIP Facility and continue to operate their businesses for the benefit of their Estates and creditors.  The Debtors are unable to obtain adequate unsecured credit allowable under section 503 of the Bankruptcy Code as an administrative expense and are unable to obtain other financing on equal or more favorable terms than the DIP Credit Agreement and the other DIP Loan Documents.  Postpetition financial accommodations in the amount provided by the DIP Agent and DIP Lenders pursuant to the DIP Loan Documents are unavailable to the Debtors generally and, including from the DIP Lenders, without the grant to the DIP Agent, for the ratable benefit of the DIP Lenders, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the claims, priorities and liens provided for in the DIP Loan Documents and this Interim Order.

(4)     The terms of the DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(5)     The DIP Facility and the provisions of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Agent and the DIP Lenders, and the extension of the financial accommodations to the Debtors by the DIP Agent and the DIP Lenders pursuant to this Interim Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.

(6)     The Debtors (in consultation with their advisors) have determined that (i) the DIP Budget is reasonable and will allow the Debtors to operate in the Chapter 11 Cases

without the accrual of unpaid allowed administrative expenses; and (ii) the DIP Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth in the DIP Budget in connection with the closure of the Hospital Businesses pursuant to the Closure Plan and the marketing and the sales of their Non-Hospital Assets during the pendency of these Chapter 11 Cases.

(7)     The Debtors anticipate that as of the week ending May 7, 2010, the DIP Obligations of the Debtors will be a total of approximately $50 million, which $50 million of DIP Obligations will consist of (i) approximately $22 million of borrowing under the DIP Facility that was used to make the Revolver Roll-Up Payment and (ii) approximately $28 million of new postpetition advances under the DIP Facility, taking into account anticipated cash receipts and disbursements as provided for in the DIP Budget.

The Court, having determined that good cause exists for the relief requested in the Motion,

IT IS HEREBY ORDERED as follows:

2.     <u>Jurisdiction</u>.  This Court has core jurisdiction over the Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     <u>Notice</u>.  Under the circumstances, notice of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with all applicable Bankruptcy Rules, including Rules 2002, 4001(b) and (c), 5003(e) and 9014 and the local rules of this Court, including Local Rule 4001-2(i), and no other notice need be given.

4.     <u>The DIP Budget</u>.

(a)     The amount of the DIP Facility and Cash Collateral authorized to be used

hereby shall not exceed the amounts reflected in the initial budget prepared by Debtors, a copy of which is annexed hereto as Exhibit A, and which shall be in form and substance satisfactory to the DIP Agent (as amended, supplemented, extended or otherwise modified from time to time, the "**DIP Budget**") for the time period set forth therein, but in no event beyond the Termination Date.

(b) The DIP Budget may be amended, supplemented, extended or otherwise modified from time to time in any manner as to which Debtors and the DIP Agent mutually agree without further order of this Court or advance notice to any Person. The Debtors shall promptly provide any modified DIP Budget to the U.S. Trustee and counsel for the Prepetition Agent and counsel for the Committee; provided, however, the Debtors may take appropriate actions with respect to confidentiality of any portion of the DIP Budget.

5. Reports. The Debtors shall deliver to the DIP Agent such reports, data and other information required to be delivered pursuant to the DIP Credit Agreement and other DIP Loan Documents. The Debtors shall deliver to the Prepetition Agent and counsel to the Committee such reports, data and other information required to be delivered pursuant to the DIP Credit Agreement and other DIP Loan Documents at the same time and in the same form delivered to the DIP Agent and deliver copies to counsel for the Committee; provided, however, the Debtors may take appropriate actions with respect to confidentiality of such reports, data and other information.

6. Authorization to Use Cash Collateral. The Debtors are authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Interim Order and the DIP Loan Documents.[6] For purposes of this Interim Order, the term "**Cash Collateral**" shall mean and

---

[6] For the avoidance of doubt, the authorization to use Cash Collateral in this Interim Order does not extend to use of the Cash Collateral (i) generated from SVCMC's outpatient cancer center to the extent that Aptium W. New York,

include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code. Without

limiting the generality of the foregoing, Cash Collateral shall include all of the cash proceeds of

Prepetition Collateral in which the Prepetition Agent or the Prepetition Lenders have an interest,

whether such interest existed as of the Petition Date or arises thereafter pursuant to this Interim

Order, any other order of this Court, applicable law or otherwise; provided, however, Cash

Collateral of the Prepetition Lenders shall not include loan proceeds of the DIP Facility. For the

avoidance of doubt, the use of Cash Collateral for the operations of the Nursing Homes is not

subject to the limitations of the DIP Budget, and the funds generated by the Nursing Homes may

be used for the operations of the Nursing Homes.

7.      Use of Prepetition Collateral (including Cash Collateral). The Debtors are hereby

authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from

the Petition Date through and including the Termination Date in accordance with the terms and

conditions of the DIP Budget, this Interim Order and the DIP Loan Documents, provided that the

Prepetition Agent, Prepetition Lenders and DASNY are granted Adequate Protection as set forth

in this Interim Order, including in Paragraph 24 below. In no event shall the Debtors be

authorized to use Cash Collateral for any purpose or under any terms other than those set forth in

the DIP Budget, this Interim Order or the DIP Loan Documents.

8.      Borrowing Authorization.

(a)     The DIP Credit Agreement substantially in the form annexed to the

Motion as Exhibit B and the other DIP Loan Documents are hereby approved on an interim

basis.

(b)     The DIP Facility. The Debtors are authorized to enter into and perform

---

Inc. ("**Aptium**") has a lien in such Cash Collateral that is a Permitted Prior Senior Lien; and (ii) in respect of
DASNY, the Arbitrage Rebate Accounts. the Bishop Mugavero Operating Escrow Account, and the Bishop
Mugavero Depreciation Reserve Fund.

the transactions contemplated in this Interim Order and the DIP Loan Documents and to borrow under the DIP Credit Agreement on an interim basis up to the Interim Amount, subject to the terms and conditions of the DIP Budget, this Interim Order and the DIP Loan Documents. The DIP Credit Agreement and the other DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto and each of their respective Estates, enforceable against each such Debtor and its respective Estate in accordance with the terms hereof and the DIP Loan Documents and any successor of each such Debtor or any representative of the Estates (including a trustee, responsible person, or examiner with expanded powers). The Debtors are authorized to obtain financial accommodations pursuant to the terms of the DIP Budget, this Interim Order, the DIP Credit Agreement, and the other DIP Loan Documents.

(c)     <u>Repayment of Prepetition Obligations</u>. Debtors are authorized and directed to use the Interim Amount of the DIP Facility and Cash Collateral to pay the Revolver Roll-Up Payment to repay Prepetition Obligations constituting revolving credit advances. Any remaining unsatisfied Prepetition Obligations under the Prepetition Credit Agreement shall receive Adequate Protection hereunder as set forth herein. Notwithstanding anything to the contrary in this Interim Order or any other DIP Loan Document, in addition to those limitations set forth in Paragraph 21, the Revolver Roll-Up Payment may also be un-rolled pursuant to an order of this Court at the Final Hearing.

(d)     <u>Working Capital</u>. The Debtors are authorized and directed to use the DIP Facility and Cash Collateral to fund working capital requirements, operating expenses, and capital expenditures of the Debtors during these Chapter 11 Cases and other line items subject to and in accordance with the terms of the DIP Budget, this Interim Order, and the DIP Loan Documents,

including, among other things, to implement the Closure Plan and to conduct orderly sales of the Non-Hospital Businesses.

9. <u>Due Authorization</u>. The Debtors acknowledge, represent, stipulate and agree, and the Court hereby finds and orders, that:

(a) subject to the entry of this Interim Order, the Debtors have obtained all authorizations, consents and approvals necessary from, and have made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents;

(b) in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lenders reflected herein and in the DIP Loan Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in final in full in cash[7] and the DIP Credit Agreement and DIP Loan Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claims provided to the DIP Lenders under this Interim Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto;

(c) each Debtor is jointly and severally liable for, and hereby absolutely and

---

[7] A reference herein to payment "in final," "in full," or "indefeasibly," or use of words of similar import shall include the cash collateralization of, at a minimum, 105% of the amount of any DIP Obligations that are contingent obligations, including any contingent indemnification obligations, and the establishment of any reserves in the DIP Agent's discretion, including, without limitation, for attorneys' fees and expenses. This section shall not be in limitation of any rights or remedies of the DIP Agent or DIP Lenders under the DIP Loan Documents with respect to contingent DIP Obligations.

unconditionally guarantees to the DIP Agent and DIP Lenders and their respective successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to DIP Agent or any DIP Lender by each other Debtor. Each Debtor agrees that (i) its guarantee obligation hereunder shall be, and is, absolute and unconditional for all purposes in these Chapter 11 Cases and is a present and continuing guaranty of payment and performance and not of collection, and (ii) its obligations under this Interim Order and any DIP Loan Document shall not be discharged until the indefeasible payment and performance, in full, in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Loan Documents; and

(d)     by accepting the DIP Budget submitted to them by the Debtors and by taking any other actions pursuant to this Interim Order or the DIP Loan Documents, the DIP Agent and the DIP Lenders shall not be deemed (i) to be in control of the operations or any liquidation of the Debtors; or (ii) to be acting as a "responsible person" or an "owner" or "operator," as such terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar federal or state statute, rule or guideline with respect to the operation, management, or any liquidation of the Debtors.

10.     Reserves.  The DIP Agent and DIP Lenders retain the right in their reasonable discretion to establish or modify reserves pursuant to the DIP Credit Agreement.

11.     Interest, Fees, and Expenses.

(a)     The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Loan Documents, and be due and payable in accordance with this Interim Order and the DIP Loan

Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

(b)     The Debtors shall pay to the DIP Agent, for itself and, if applicable, the ratable benefit of the DIP Lenders, the fees payable under the terms of the DIP Loan Documents, including the following:  (i) the Agent's fees, (ii) the Lender closing fees, and (iii) the Unused Commitment Fees, all as set forth in the DIP Loan Documents, whether or not incurred prepetition or postpetition, in each case whether or not such amounts are included in the DIP Budget or arose before or after the Petition Date.  None of such fees payable pursuant to this sub-paragraph (b) shall be subject to any other approval by this Court.

(c)     The Debtors shall pay the reasonable fees and expenses of the attorneys and advisors for the DIP Agent and for each DIP Lender that is a party to the DIP Credit Agreement on the Closing Date as provided under the DIP Loan Documents.  Invoices supporting such fees and expenses shall be submitted to counsel for the Debtors, with copies to the U.S. Trustee, counsel for the Prepetition Agent and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine).  No attorney or advisor to the DIP Agent or DIP Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  The U.S. Trustee, Prepetition Agent, the Debtor, and Committee shall have ten (10) business days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors.  Any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agent or DIP Lenders

in connection with or with respect to the DIP Facility, DIP Credit Agreement or other DIP Loan Documents are hereby approved in full.

12.     Authorization to Act.  Each of the Debtors is expressly authorized and empowered to perform, and the automatic stay under Bankruptcy Code Section 362 is hereby modified to permit them to perform under, make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages, financing statements and other DIP Loan Documents), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtors' performance under and compliance with the terms of the DIP Loan Documents and this Interim Order, including, inter alia: to (i) enter into and deliver the DIP Loan Documents, (ii) perform all of their obligations under the DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents or as provided for in this Interim Order; (iii) pay the fees and expenses set forth in the DIP Loan Documents or this Interim Order, including the reasonable fees and expenses of attorneys and other professionals as provided for in the DIP Loan Documents and this Interim Order, and (iv) to perform all other acts that may be required in connection with the DIP Loan Documents and this Interim Order.

13.     Amendments.  Each of the Debtors is expressly authorized and empowered to enter into amendments or other modifications of the DIP Credit Agreement or any other DIP Loan Documents without further order of the Court, in each case, in such form as the DIP Agent and the DIP Lenders may agree with the Debtors in writing; provided, that notice of any modification or amendment shall be provided to the U.S. Trustee, the Prepetition Agent, counsel to the Committee and any affected holder of a Permitted Prior Senior Lien or counsel to any affected holder of a Permitted Prior Senior Lien, which parties shall have two (2) business days

from the date of such notice within which to object in writing; _further provided_, that, notwithstanding the foregoing, any material modification of the DIP Loan Documents that materially increases the burden on the Debtors shall require Court approval; and _further provided_, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, the entry of which may be sought on an expedited basis.

14. _Superpriority Claims and DIP Liens._ In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Loan Documents and this Interim Order, the DIP Agent is granted, for itself and the ratable benefit of the DIP Lenders, the following with respect to the Debtors, their Estates and all DIP Collateral:

(a) a superpriority administrative expense claim pursuant to Bankruptcy Code section 364(c)(1) with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726 and 1114 thereof or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), which superpriority expenses of the DIP Agent and DIP Lenders shall be subordinate only to the Carve-Out (the "**DIP Superpriority Claims**");

(b) a first priority, priming security interest in and lien pursuant to Bankruptcy Code section 364(d)(1) on all encumbered property of the Debtors and the Estates (the "**Section 364(d)(1) Liens**"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject only to (i) the Carve-Out, and (ii) liens on property of a Debtor that are in existence on the Petition Date but only (A) to the extent a lien on any property is valid, perfected, and not avoidable, and (B) the Lien on such property on the Petition Date was senior in priority to the

16

Prepetition Liens (as hereinafter defined) of the Prepetition Agent on such property, and (iii) the Prepetition Liens of the Prepetition Agent (collectively, the "**Permitted Prior Senior Liens**");[8]

       (c)     a first priority security interest and lien pursuant to Bankruptcy Code section 364(c)(2) on all unencumbered property of the Debtors and the Estates (the "**Section 364(c)(2) Liens**"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and

       (d)     a junior security interest and lien pursuant to Bankruptcy Code section 364(c)(3) on all property of the Debtors and the Estates that is subject to a Permitted Prior Senior Lien (the "**Section 364(c)(3) Liens**"), which Section 364(c)(3) Liens are also subject to the Carve-Out.[9]

       15.    <u>DIP Collateral</u>.  The DIP Liens of the DIP Agent, for the benefit of the DIP Lenders, under the DIP Loan Documents and as approved and perfected by this Interim Order include, <u>inter alia</u>, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code, (ii) all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other DIP Collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing.  None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured

---

[8] For the avoidance of doubt, GE's proposed lien shall be limited to only proceeds realized by the Debtors upon a disposition of the Aptium sublease, if any, and not in and upon the Aptium sublease itself.
[9] The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "<u>DIP Liens</u>."

or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor,

(c) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (d) hereafter be

subordinated to or made *pari passu* with any other lien or security interest under sections 361,

363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Interim

Order.

      16.    <u>Carve-Out</u>.

      (a)    <u>Generally</u>.  Upon the occurrence of the Carve-Out Trigger Date (defined

below), the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, Section

507(b) Claims and Prepetition Liens shall be subject to the payment, without duplication, of the

following fees and expenses (the amounts set forth below, together with the limitations set forth

therein, collectively, the "**<u>Carve-Out</u>**") from either Cash Collateral or proceeds resulting from

liquidation of Prepetition Collateral:

      (i)    the claims of the respective retained professionals of the Debtors

and Committee that have been approved by this Court during the Chapter 11 Cases pursuant to

sections 327, 328, and 1103 of the Bankruptcy Code, (collectively, the "**<u>Retained</u>**

**<u>Professionals</u>**") and reasonable expenses of members of the Committee ("**<u>Committee Member</u>**

**<u>Expenses</u>**") for unpaid fees and expenses which were incurred (A) on and after the Petition Date

and before the Carve-Out Trigger Date in amounts not in excess of the amounts set forth in the

DIP Budget, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not

exceeding $2 Million Dollars ($2,000,000), for all Retained Professionals and Committee

Member Expenses; provided that, in each case, such fees and expenses of the Retained

Professionals and Committee Member Expenses are in accordance with the DIP Budget and are

ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the

Bankruptcy Code and are not excluded from the Carve-Out under Paragraph 16 of this Interim Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); and

(ii)     the unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.  For the avoidance of doubt, there is no limitation on the obligations of the Debtors and their Estates with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b)     Carve-Out Trigger Date.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the DIP Agent provides written notice to the Debtors, the U.S. Trustee and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Loan Documents or upon the Termination Date.

(c)     Reduction of Amounts.  The fixed dollar amount of $2 million available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals, Committee Member Expenses, the U. S. Trustee and Clerk of the Bankruptcy Court on account of such allowed fees and expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).  For the avoidance of doubt, there is no limitation on the obligations of the Debtors and their Estates with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United

States Code.

(d)     Reservation of Rights.  The payment of any fees or expenses of the

Retained Professionals and Committee Member Expenses pursuant to the Carve-Out shall not,

and shall not be deemed to (i) reduce any Debtor's obligations owed to any of the DIP Agent,

DIP Lenders, Prepetition Agent or Prepetition Lenders, or (ii) modify, alter or otherwise affect

any of the liens and security interests of such parties in the DIP Collateral or Prepetition

Collateral (or their respective claims against the Debtors).  The DIP Agent, DIP Lenders,

Prepetition Agent and Prepetition Lenders shall not be responsible for the direct payment or

reimbursement of any fees or disbursements of any Retained Professionals, Committee Member

Expenses, the U. S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in

connection with the Chapter 11 Cases or any successor case, and nothing in this Interim Order or

otherwise shall be construed to obligate such parties in any way to pay such compensation to or

to reimburse such expenses.

(e)     In the event the Chapter 11 Cases are converted to Chapter 7, there shall

be a separate carve-out of $100,000 in the aggregate (the "**Trustee Carve-Out**") that may be

used for the reasonable fees and expenses of a Chapter 7 trustee and such separate Trustee

Carve-Out shall have the same priorities as the Carve-Out.

17.     Waiver of Right to Surcharge.  In light of the consent of the DIP Agent and DIP

Lenders to the current payment of administrative expenses of the Debtors' Estates in accordance

with the DIP Budget and (i) the agreement of the DIP Agent and DIP Lenders to subordinate

their Superpriority Claims to the Carve-Out, (ii) the agreement of the DIP Agent and DIP

Lenders to subordinate their DIP Liens to the Carve-Out and Permitted Prior Senior Liens, the

DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders are each entitled to a waiver

of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code. Accordingly, subject to entry of the Final Order, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP Agent, the DIP Lenders, the Prepetition Collateral, the Prepetition Agent, or Prepetition Lenders or their respective claims under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their Estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, this Interim Order and the DIP Loan Documents, the DIP Agent, DIP Lenders, Prepetition Agent and the Prepetition Lenders have each relied on the foregoing provisions of this Paragraph. Notwithstanding any approval of or consent to the DIP Budget, nothing in this Interim Order shall constitute or be deemed to constitute the consent by any of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims or its collateral under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such consent shall be implied from any other action or inaction by such parties.

18.     <u>Automatic Perfection</u>.

(a)     The (i) DIP Liens granted to the DIP Agent, for the benefit of the DIP Lenders pursuant to this Interim Order and the DIP Loan Documents, and the (ii) Adequate Protection Liens granted pursuant to this Interim Order to the Prepetition Agent for the benefit of

the Prepetition Lenders, shall be valid, enforceable, and perfected by operation of law upon entry of this Interim Order by the Court without any further action by any party. The DIP Agent and DIP Lenders in respect of the DIP Liens, and the Prepetition Agent and Prepetition Lenders in respect of the Adequate Protection Liens, shall not be required to enter into or to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages, deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of lien or similar instruments in any jurisdiction (including filings with the United States Patent and Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action in order to validate and to perfect the DIP Liens granted under the DIP Loan Documents and this Interim Order and the Adequate Protection Liens granted under this Interim Order and approved hereby, all of which are automatically perfected by the entry of this Interim Order. If the DIP Agent, DIP Lenders, Prepetition Agent, or Prepetition Lenders, independently or collectively, in their sole discretion respectively, choose to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents. In lieu of recording or filing any Perfection Documents, the DIP Agent, DIP Lenders, Prepetition Agent, or Prepetition Lenders may, in their sole discretion, choose to

record or file a true and complete copy of this Interim Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.  In addition, the DIP Agent may, in its sole discretion, at the Debtors' expense, require the Debtors to file or record any Perfection Document.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent all Perfection Documents as the DIP Agent may reasonably request.

(b)	Until the indefeasible payment in full in cash of the DIP Obligations, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody or control of the Prepetition Agent (or in the possession, custody or control of agents or bailees of the Prepetition Agent) shall be deemed to be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Agent and DIP Lenders for the purposes of perfecting the security interests granted in such DIP Collateral.  Upon an Event of Default and the request of the DIP Agent, the Prepetition Agent (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in its possession, custody or control to the DIP Agent for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the indefeasible payment in full in cash of all DIP Obligations, the DIP Agent (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Agent.  For the avoidance of doubt, the grant, perfection, scope and vesting of the DIP Liens, DIP Superpriority Claims and DIP Obligations are fully effectuated by this Interim

Order and any security agreements, collateral agreements or other Perfection Documents executed as part of the DIP Loan Documents shall supplement the grant, perfection, scope and vesting set forth herein as well as the powers and protections accorded to the DIP Agent, on behalf of itself and the DIP Lenders, but in no event shall any such security agreement, collateral agreement or other Perfection Document be interpreted as a limitation of such provisions of this Interim Order.

19. <u>Stipulations and Waivers</u>:  After consultation with their attorneys and financial advisors, subject to and without prejudice to the rights of the Committee and any other party as set forth in Paragraph 20 below, the Debtors admit, stipulate, and agree to the following, and make the releases and waivers set forth below, on and as of the Petition Date:

(a) <u>Prepetition Loans</u>.  Prior to the Petition Date, certain of the Debtors entered into the Prepetition Credit Agreement and other Prepetition Loan Documents with the Prepetition Agent and Prepetition Lenders.  Pursuant to the Prepetition Loan Documents, the Prepetition Agent and Prepetition Lenders were granted liens on, and security interests in (the "**<u>Prepetition Liens</u>**"), substantially all property of each Borrower under the Prepetition Loan Documents, whether now owned or existing or hereafter acquired or arising regardless of where located, including all accounts, all chattel paper, certain commercial tort claims, all deposit accounts, all documents, all equipment, all general intangibles, all instruments, all inventory, all investment property, all letter-of-credit rights, all books and records, and all proceeds of the foregoing (all as more fully set forth in the Prepetition Loan Documents, the "**<u>Prepetition Collateral</u>**").  All indebtedness and other obligations in respect of the Prepetition Loan Documents shall be referred to as the "**<u>Prepetition Obligations</u>**."

(b) <u>Prepetition Obligations</u>.

(i)        the Debtors were indebted and liable to the Prepetition Agent and Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $313,000,000 in respect of loans made, letters of credit issued, and other financial accommodations provided, by the Prepetition Agent and Prepetition Lenders pursuant to the Prepetition Credit Agreement and the other Prepetition Loan Documents, plus accrued but unpaid interest, costs, fees and expenses as provided in the Prepetition Loan Documents;

(ii)        the Prepetition Liens are (x) valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral, (y) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) subject only to (A) after giving effect to this Interim Order, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, and the Carve-Out (as defined in Paragraph 16 above), and (B) Permitted Prior Senior Liens;

(iii)        the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors that are party thereto, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Prepetition Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)        the Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Agent, Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors, and employees from the beginning of time;[10]

        (v)     all of the Debtors' cash existing as of the Petition Date, except for proceeds of the DIP Facility, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Lender, constitutes Cash Collateral of the Prepetition Agent and Prepetition Lenders; and

        (vi)    the Debtors are in default with respect to their Prepetition Obligations and an Event of Default has occurred under the Prepetition Loan Documents.

      20.    <u>Effect of Stipulations on Third Parties</u>.

      (a)    <u>Generally</u>.  The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph of this Interim Order (collectively, the "**<u>Prepetition Lien and Claim Matters</u>**") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other Estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, <u>unless</u>, and solely to the extent that, (i) the Committee or another party-in-interest with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 22 of this Interim Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**<u>Challenge</u>**") by no later than 60 days from the date of entry of the Final Order (as such applicable date may be extended from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by the Committee or any other party in

---

[10] For the avoidance of doubt, such releases are subject to Challenge under Paragraph 20.

interest prior to the expiration of such period, the "**Challenge Deadline**"), and (ii) this Court rules in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such ruling is not subject to any further review or appeal.

(b)    Binding Effect.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Interim Order become binding, conclusive and final on the Committee and any other person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that each of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge.  To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Agent and Prepetition Lenders, as applicable, shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding pursuant to the Prepetition Loan Documents.

(c)    No Standing.  Nothing in this Interim Order confers or vests standing on

the Committee or any other party-in-interest to assert any claim on behalf of any Debtor or any estate of any Debtor, or relieves the Committee or any other party-in-interest from any requirement under the Bankruptcy Code or otherwise to obtain authorization and standing from the Court prior to asserting any claim on behalf of any Debtor or any Estate of any Debtor.

21. <u>Limitation on Revolver Roll-Up Payment and Adequate Protection Liens</u>. Pursuant to the requirements of Local Rule 4001-2(k)(3) and this Interim Order, the Court reserves the right, after a notice and a hearing, to unwind the Revolver Roll-Up Payment and Adequate Protection Liens, in the event that there is a timely and successful Challenge to the validity, enforceability, extent, perfection, or priority of any secured party's claims and/or liens (including with respect to the Prepetition Lenders) or a determination that prepetition debt of such secured party's claims and/or liens (including with respect to the Prepetition Lenders) was undersecured as of the Petition Date, pursuant to the terms of this Interim Order, including, without limitation, the Challenge Deadline. Notwithstanding anything to the contrary in this Interim Order or any other DIP Loan Document, the Revolver Roll-Up Payment may also be un-rolled pursuant to an order of this Court at the Final Hearing.

22. <u>Limitation on Use of Proceeds</u>. Notwithstanding anything in this Interim Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Loan Documents or any security interests, liens or claims granted under this Interim Order, the DIP Loan Documents, or the Prepetition Loan Documents to secure such

amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the DIP Collateral or the Prepetition Collateral or (d) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders under this Interim Order, the DIP Loan Documents or the Prepetition Loan Documents; provided, however, that no more than $25,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

23.     Avoidance Action Proceeds.  Notwithstanding anything in this Interim Order or any other DIP Loan Document to the contrary, subject to entry of the Final Order: (i) Avoidance Action Proceeds shall be DIP Collateral and shall be subject to the DIP Liens and DIP Superpriority Claims, and, (ii) subject and subordinate to the DIP Liens and DIP Superpriority Claims, Avoidance Action Proceeds shall be subject to the Adequate Protection Liens and Section 507(b) Claims of the Prepetition Agent and Prepetition Lenders.

24.     Adequate Protection.  This Court finds that the Adequate Protection provided in this Interim Order, including, without limitation, in this Paragraph 24, is reasonable and sufficient to protect the interests of the Prepetition Agent, Prepetition Lenders and DASNY. Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Agent, Prepetition Lenders and DASNY pursuant hereto is without prejudice to the right of the Prepetition Agent, DASNY or any other party in interest to seek adequate protection or to seek

modification of a grant of Adequate Protection provided in this Interim Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

(a)  Adequate Protection Liens.  As adequate protection of the Prepetition Liens of the Agent under the applicable Prepetition Loan Documents, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, each of the Prepetition Agent shall be granted (for the ratable benefit of the respective Prepetition Lenders) valid, binding, enforceable and perfected security interests and replacement liens (the "**Adequate Protection Liens**") upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever located, in each case to secure the Prepetition Obligations (the "**Adequate Protection Obligations**") of, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) the reduction in Prepetition Collateral available to satisfy Prepetition Obligations as a consequence of the priming of the Prepetition Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral; and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than Prepetition Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above.  The Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, DIP Liens and DIP Superpriority Claims, and (C) the Permitted Prior Senior Liens.  None of the Adequate Protection Liens or Adequate Protection Obligations shall (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the

30

Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Interim Order and the DIP Loan Documents, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

(b)     Section 507(b) Claims.  To the extent the Prepetition Agent shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Agent is hereby granted, for the ratable benefit of the Prepetition Lenders, an administrative expense claim pursuant to Bankruptcy Code section 507(b) (each, a "**Section 507(b) Claim**") of the Bankruptcy Code with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

(c)     Adequate Protection Payments.  The Debtors shall, in accordance with the DIP Budget, (x) with respect to the Prepetition Agent and Prepetition Lenders: (i) promptly pay all reasonable fees and expenses under the Prepetition Loan Documents incurred by the Prepetition Agent and Prepetition Lenders, whether incurred prior to or following the Petition Date, and (ii) pay all other payments payable when and as due under the Prepetition Loan Documents, including all payments of principal, interest, fees and charges; and (y) with respect to DASNY, subject to any party's right to request recharacterization of such payments as payments of principal, make regularly scheduled principal, interest payments and all reasonable fees and expenses due to DASNY from Debtor Bishop Mugavero.  The payments under this

Paragraph shall be referred to collectively as the "**<u>Adequate Protection Payments</u>**."  Invoices

supporting fees and expenses being charged to the Debtors shall be submitted to counsel for the

Debtors, with copies to the U.S. Trustee, counsel for the Prepetition Agent and counsel for the

Committee (invoices may be redacted to the extent necessary to delete any information subject to

the attorney-client privilege, any information constituting attorney work product, or any other

confidential information, and the provision of such invoices shall not constitute any waiver of the

attorney-client privilege or of any benefits of the attorney work product doctrine).  No attorney

or advisor to the Prepetition Agent or the Prepetition Lenders shall be required to file an

application seeking compensation for services or reimbursement of expenses with the Court.

The U.S. Trustee, Prepetition Agent, the Debtor, and Committee shall have ten (10) business

days in which to raise an objection to the payment of any fees and expenses of such attorneys

and advisors.  In the event any Adequate Protection Payment would be required to be repaid to

the Debtors as a result of application of Bankruptcy Code section 506(b) or otherwise, any such

amounts shall not be repaid and instead shall be applied as follows:  first, to the DIP Obligations

until such obligations are indefeasibly paid in full, in cash; second, to the Prepetition Obligations

until such obligations are indefeasibly paid in full, in cash; and third, to the Debtors and their

Estates, or subject to further order of this Court.

      25.    <u>Indemnification</u>.  The Debtors shall indemnify the DIP Agent and DIP Lenders

and their respective affiliates, successors and assigns and the officers, directors, employees,

agents, advisors, controlling persons and members of each of the foregoing (each, an

"**<u>Indemnified Person</u>**") and hold each of them harmless from and against all costs, expenses

(including reasonable fees, disbursements and other charges of counsel) and liabilities of such

Indemnified Person arising out of or relating to any claim or any litigation or other proceeding

(regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or this Interim Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such Person's gross negligence or willful misconduct. Nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Agent or DIP Lenders in the DIP Loan Documents. For the avoidance of doubt, this Paragraph 25 does not apply or otherwise affect any indemnification rights or obligations in respect of the Prepetition Lenders under the Prepetition Loan Documents.

26.     <u>Remedies</u>.  Upon the occurrence of an Event of Default under the DIP Loan Documents or upon the Termination Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court, the DIP Agent is granted leave to cease making financial accommodations to the Debtors, accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash, and the Debtors shall use Cash Collateral only with the written consent of the DIP Agent and only to the extent required to avoid irreparable damage to the Debtors and their Estates. In addition, upon the Termination Date, and after providing seven (7) days prior notice to the Court, U.S. Trustee, counsel for the Debtors, counsel for the Committee, any holder of a Permitted Prior Senior Lien or counsel to any holder of a Permitted Prior Senior Lien and the list of parties maintained by the Debtors pursuant to Bankruptcy Rule 2002, then the DIP Agent, for the benefit of the DIP Lenders, shall be entitled to exercise all of its rights and remedies under this Order and the DIP

Loan Documents, including, without limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, DIP Liens and DIP Superpriority Claims on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan Documents, this Interim Order or applicable law in seeking to recover payment of the DIP Obligations. For the avoidance of doubt, with respect to Permitted Prior Senior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law in respect of Permitted Prior Senior Liens. During the seven (7) day notice period, the Debtors, the Committee or any other party in interest may seek an order of the Court staying the DIP Agent's exercise of such remedies against the DIP Collateral and, if no such stay is obtained, then the DIP Agent may exercise any and all such rights and remedies without further order of the Court or notice to any party and the Debtors' authority to use Cash Collateral under this Interim Order shall terminate.

27.     Access to DIP Collateral.  Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, contained in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing under the DIP Loan Documents, the DIP Agent may, subject to the applicable notice provisions, if any, in this Interim Order and any separate agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent shall only be obligated to pay rent of the Debtors that first accrues after the DIP Agent's

written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this Paragraph. Furthermore, any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.[11]

28. <u>Insurance Policies</u>. Effective as of entry of this Interim Order, the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Prepetition Collateral, as applicable.

29. <u>Successors and Assigns</u>. This Interim Order, the DIP Credit Agreement and the other DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11 Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative.

30. <u>Survival</u>. The provisions of this Interim Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent Interim Order or the Final order), and the rights, remedies, powers, privileges, liens and priorities of the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders provided for in this Interim Order and in any DIP Loan Document shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation

---

[11] The provisions of this Paragraph 27 will not apply to the Aptium lease.

in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP

Obligations shall not be discharged by the entry of any such order, or pursuant to section

1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge);

(ii) converting any of the Chapter 11 Cases to a Chapter 7 case; (iii) dismissing any of the

Chapter 11 Cases; or (iv) any superseding cases under the Bankruptcy Code.  The terms and

provisions of this Interim Order as well as the DIP Obligations, DIP Liens, DIP Superpriority

Claim, DIP Loan Documents, and Adequate Protection Liens shall continue in full force and

effect notwithstanding the entry of any such order, and such rights, claims and liens shall

maintain their priority as provided by this Interim Order and the DIP Loan Documents to the

maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in

cash.

       31.    <u>Good Faith</u>.  The DIP Facility, the use of Cash Collateral, and the other provisions

of this Interim Order, the DIP Credit Agreement and the other DIP Loan Documents have been

negotiated in good faith and at arm's-length among the Debtors, the DIP Agent, DIP Lenders, the

Prepetition Agent and Prepetition Lenders, and the extension of the financial accommodations to

the Debtors by the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders pursuant

to this Interim Order and the DIP Loan Documents have been and are deemed to be extended in

good faith, as that term is used in section 364(e) of the Bankruptcy Code.  The DIP Agent, DIP

Lenders, Prepetition Agent and Prepetition Lenders are entitled to, and are hereby granted, the

full protections of section 364(e) of the Bankruptcy Code.

       32.    <u>Subsequent Reversal or Modification</u>.  Subject to Paragraph 21, if any or all of the

provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action

will not affect (i) the validity of any obligation, indebtedness or liability under this Interim Order

and the DIP Loan Documents by the Debtors prior to the date of receipt of written notice to the

DIP Agent and Prepetition Agent of the effective date of such action; or (ii) the validity and

enforceability of any lien, administrative expense, right, or priority authorized or created hereby

or pursuant to this Interim Order and the DIP Loan Documents, including, without limitation,

the DIP Obligations, DIP Liens and DIP Superpriority Claims, Prepetition Obligations, Adequate

Protection Obligations, Adequate Protection Liens, Adequate Protection Payments and Section

507(b) Claims.  Notwithstanding any such reversal, stay, modification or vacatur, any

postpetition indebtedness, obligation or liability incurred by the Debtors to the DIP Agent, DIP

Lenders, Prepetition Agent and Prepetition Lenders prior to written notice to the DIP Agent and

Prepetition Agent of the effective date of such action, shall be governed in all respects by the

original provisions of this Interim Order and the DIP Loan Documents, and the DIP Agent and

DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted pursuant

to this Interim Order and the DIP Loan Documents.

33.    <u>No Waiver</u>.  This Interim Order shall not be construed in any way as a waiver or

relinquishment of any rights that the DIP Agent or DIP Lenders, the Prepetition Agent or

Prepetition Lenders may have to bring or be heard on any matter brought before the Court.  Any

consent, modification, declaration of default, or exercise of remedies or non-exercise of remedies

under or in connection with this Interim Order or the DIP Loan Documents shall require the

approval of DIP Agent, and, as and to the extent required by the voting provisions of the DIP

Credit Agreement and shall not be deemed a waiver or relinquishment of any of the rights of the

DIP Agent and DIP Lenders.  Nothing contained in this Interim Order (including without

limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any

rights, claims or defenses available in law or equity to the DIP Agent on behalf of the DIP

Lenders, or Prepetition Agent on behalf of the Prepetition Lenders, including, without limitation, the right to (a) request conversion of the Debtors' chapter 11 case to chapter 7 (to the extent applicable for charitable entities), (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from the automatic stay. All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

34. <u>Additional Defaults</u>. In addition and without limitation of the Events of Default set forth in and defined in the DIP Loan Documents or this Interim Order, it shall be a default hereunder (and constitute an "Event of Default" under the DIP Loan Documents) if (a) an order is entered dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner with expanded powers, (b) except as otherwise contemplated by the Transaction Side Letter or permitted by the DIP Credit Agreement, a sale of assets is proposed by the Debtors without the written consent of the DIP Agent that would not indefeasibly pay the DIP Obligations in full in cash, (c) any other motion is filed by the Debtors for any relief directly or indirectly affecting the DIP Collateral in a material manner unless all DIP Obligations have been indefeasibly paid in final, in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby, (d) the Debtors fail to comply with any of the terms of this Interim Order, including the DIP Budget, or any stipulation, representation or covenant by the Debtors stated herein is false or misleading, or (e) the Debtors fail to meet the deadlines for asset sales as set forth in the Transaction Side Letter and any other milestones set forth in the DIP Loan Documents (except to the extent such

deadlines or milestones are extended by the DIP Agent). Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Agent and DIP Lenders, and Prepetition Agent and Prepetition Lenders, under this Interim Order and shall preserve the Carve-Out. No order providing for the sale of substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the DIP Obligations are transferred to the proceeds of such sale and such proceeds are applied to permanently and indefeasibly repay the DIP Obligations in full, in cash. If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and DIP Superpriority Claims granted to the DIP Lenders hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and indebtedness owing to the DIP Lenders under the DIP Loan Documents shall have been indefeasibly paid in full in cash and the DIP Lenders' obligations and commitments under the DIP Loan Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Payment and 507(b) Claims.

35. <u>Order Governs</u>. In the event of any conflict between the provisions of this Interim Order and the DIP Loan Documents, the provisions of this Interim Order shall control and govern to the extent of such conflict.

36. <u>Right to Credit Bid</u>. Pursuant to section 363(k) of the Bankruptcy Code, (i) the DIP Agent shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP

Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral; and (ii) subject to the indefeasible payment in full in cash of the DIP Obligations, the Prepetition Agent shall have the exclusive right to use the Prepetition Obligations and the Adequate Protection Obligations, Adequate Protection Liens and Section 507(b) Claims of the Prepetition Agent and Prepetition Lenders to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

37.     <u>No Marshaling</u>.  None of the DIP Agent, DIP Lenders, DIP Collateral, the Prepetition Agent, Prepetition Lenders, or Prepetition Collateral shall be subject to the doctrine of marshaling.

38.     <u>Headings</u>.  The headings in this Interim Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Interim Order.

39.     <u>Immediate Docketing and Effect of Order</u>.  The Clerk of the Court is hereby directed to forthwith enter this Interim Order on the docket of this Court maintained in regard to these Chapter 11 Cases.  This Interim Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order.  All objections to the entry of this Order have been withdrawn or overruled and the Motion is approved on an interim basis on the terms and conditions set forth herein.

40.     <u>Final Hearing</u>.  The motion is set for a final hearing (the "**Final Hearing**") to be held on May 6, 2010, at 2:00 p.m. (prevailing Eastern Time), with an objection deadline of 4:00 p.m. (prevailing Eastern Time) on April 30, 2010 (the "**Objection Deadline**").  Any objection to entry of the Final Order shall be filed with this Court, and served upon the respective counsel to the Debtors, the U.S. Trustee, the Committee, the DIP Agent and the Prepetition Agent so as to

be actually received on or before the Objection Deadline.  The Debtors shall promptly mail

copies of this Interim Order (which shall constitute adequate notice of the Final Hearing) to the

Notice Parties and to the Committee after the same has been appointed, or Committee counsel, if

the same shall have been hired.

Dated: New York, New York
      April 16, 2010

                        /s/ Cecelia Morris
                        THE HONORABLE CECELIA G. MORRIS
                        UNITED STATES BANKRUPTCY JUDGE