AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
(212) 872-1000 (Telephone)
(212) 872-1002 (Facsimile)
David H. Botter
Sarah Link Schultz (admitted *pro hac vice*)
Kenneth A. Davis

*Proposed Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
In re:                                                       :        Chapter 11
                                                             :
SAINT VINCENTS CATHOLIC MEDICAL                              :        Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, et al.,                                 :
                                                             :
                         Debtors.                            :        (Jointly Administered)
                                                             :
-------------------------------------------------------------x

**APPLICATION OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR ORDER UNDER BANKRUPTCY CODE SECTIONS 328(a) AND
1103, BANKRUPTCY RULES 2014 AND 2016, AND S.D.N.Y. LOCAL RULES 2014-1,
AUTHORIZING EMPLOYMENT AND RETENTION OF HOULIHAN LOKEY
HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISOR AND
INVESTMENT BANKER *NUNC PRO TUNC* TO APRIL 23, 2010**

The Official Committee of Unsecured Creditors (the "Committee") of Saint Vincents

Catholic Medical Centers of New York ("SVCMC") and its affiliated debtors and debtors in

possession (collectively, the  "Debtors"), hereby submits this application (the "Application") to

retain and employ Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan") as its financial

advisor and investment banker, *nunc pro tunc* to April 23, 2010, pursuant to sections 328(a) and

1103 of title 11 of the United States Code ( the "Bankruptcy Code"), rules 2014 and 2016 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules").  In support of this

Application the Committee submits the Declaration of Andrew Turnbull, Managing Director of Houlihan, which is attached hereto as Exhibit A (the "Turnbull Declaration"). In further support of this Application, the Committee respectfully states as follows:

## BACKGROUND

1.  On April 14, 2010 (the "Petition Date") each of the Debtors each commenced a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

2.  On April 21, 2010, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee (Docket No. 106) consisting of: (i) Bestcare, Inc.; (ii) Consolidated Edison Company of New York, Inc.; (iii) McKesson Corporation; (iv) Medmal Trust Monitor; (v) New York State Nurses Association; (vi) Nursing Personnel Homecare; (vii) 1199 SEIU National Benefit Fund for Health and Human Services Employees; (viii) Pension Benefit Guaranty Corporation; and (ix) Siemens Medical Solutions USA, Inc.

3.  No other official committees have been appointed or designated in these cases.

4.  On April 23, 2010, the Committee selected Houlihan to serve as financial advisors and investment bankers.

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York (Ward, Acting C.J.), dated July 10, 1984.

This matter constitutes a core proceeding as that term is defined in 28 U.S.C. § 157(b). Venue of the Debtors' chapter 11 cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

6.     By this Application, the Committee seeks authority to retain and employ Houlihan as its financial advisor and investment banker in these chapter 11 cases, *nunc pro tunc* to April 23, 2010 (the "Engagement Effective Date"), pursuant to the terms, and subject to the conditions, of the engagement letter between the Committee and Houlihan dated April 23, 2010 and attached hereto as Exhibit B (the "Engagement Letter").

## APPLICABLE AUTHORITY

7.     Bankruptcy Code section 1103(a) provides, in relevant part, that the Committee, with the Court's approval, "may select and authorize the employment by such committee of one or more attorneys, accountants, or other agents, to represent or perform services for such committee." 11 U.S.C. § 1103(a).

8.     In addition, Bankruptcy Code section 328(a) provides, in relevant part, that the Committee:

> may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provided under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

9.     Bankruptcy Rule 2014 provides, in relevant part, as follows:

> An order approving the employment of . . . professionals pursuant to . . . § 1103
> . . . of the Code shall be made only on application of the trustee or committee.

Fed. R. Bankr. P. 2014.

10.    Local Bankruptcy Rule 2014-1 provides, in relevant part, as follows:

> An application for the employment of a professional person pursuant to §§
> 327 and 328 of the Bankruptcy Code shall state the specific facts showing
> the reasonableness of the terms and conditions of the employment,
> including the terms of any retainer, hourly fee or contingent fee
> arrangement.

S.D.N.Y. LBR 2014-1.

## HOULIHAN'S QUALIFICATIONS

11.    The Committee formally interviewed and reviewed qualification materials and fee
proposals submitted by a number of candidates prior to selecting Houlihan as its financial
advisor and investment banker.  Such selection was based on the Committee's determination that
Houlihan is the best candidate for the financial advisory and investment banking services to be
provided and that its proposed compensation structure is competitive and appropriate given the
Committee's understanding of the facts and circumstances of these chapter 11 cases and the
proposals received from competing firms.

12.    The Committee has selected Houlihan to act as its financial advisor and
investment banker in these cases based on Houlihan's extensive experience and expertise in
corporate restructurings, its knowledge of the capital and real estate markets, valuation, corporate
finance and merger and acquisition capabilities, as well as Houlihan's specific experience with
and knowledge of the Debtors and the Debtors' capital structure as a result of Houlihan's work
during the Debtors' previous chapter 11 proceeding.

13.    Houlihan is a nationally recognized investment banking and financial advisory
firm, with fourteen offices worldwide and more than 800 professionals.  Houlihan's Financial

Restructuring Group, which has more than 160 professionals, is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties-in-interest involved in financially troubled companies both in and outside of bankruptcy. Houlihan has been, and is, involved in some of the largest restructuring cases in the United States, including representing official committees in <u>Lehman Brothers Holdings Inc.</u>, <u>Enron Corp.</u>, <u>WorldCom, Inc.</u>, <u>Delta Airlines, Inc.</u>, <u>National Benevolent Association</u>, <u>Farmland Industries, Inc.</u>, and <u>General Growth Properties, Inc.</u>, and representing debtors in <u>Bally Total Fitness Holding Corp.</u>, <u>Covad Communications, Inc.</u>, <u>Kimball Hill, Inc.</u>, <u>Dairy Mart Convenience Stores, Inc.</u>, and <u>Stage Stores, Inc</u>.

14.     The Committee believes that, because of Houlihan's experience and expertise, its employment and retention is in the best interests of the Committee and all of the Debtors' unsecured creditors.

<u>**SCOPE OF SERVICES TO BE PROVIDED BY HOULIHAN**</u>

15.     It is expected that Houlihan will provide such advisory and investment banking services to the Committee and its legal advisors as they deem appropriate and feasible to advise the Committee in the course of these chapter 11 cases, including, but not limited to, the following services:

    a.  Assessing the financial issues, processes undertaken and continuing, and options concerning (i) the sale of the Debtors' assets and businesses, either in whole or in part, (ii) the plan of closure for certain of the Debtors' businesses, and (iii) the Debtors' plan(s) of reorganization and / or liquidation;

    b.  Evaluating the assets and liabilities of the Debtors;

    c.  Analyzing business plans and forecasts of the Debtors' businesses;

    d.  Analyzing and reviewing the financial and operating statements of the Debtors;

e.  Assisting in the review of financial and business issues as the Committee may require in connection with the Cases;

f.  Providing such specific valuation or financial analyses as the Committee may require in connection with the Cases;

g.  Analyzing strategic alternatives relating to the Debtors' businesses and assets;

h.  Assisting in the review of claims and with the reconciliation, estimation, settlement, and litigation with respect thereto;

i.  Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

j.  Advising and representing the Committee in negotiations with the Debtors, other creditors and third parties with respect to any of the foregoing;

k.  Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

l.  Providing such other financial advisory and investment banking services as shall be reasonably agreed upon by the Committee and Houlihan.

## **HOULIHAN'S ELIGIBILITY FOR EMPLOYMENT**

16.     To the best of the Committee's knowledge, information, and belief, other than as set forth in the Turnbull Declaration, Houlihan has not represented and has no relationship with: (i) the Debtors;[1] (ii) their respective creditors or equity security holders; (iii) any other parties-in-interest in these cases; (iv) the respective attorneys and accountants of any of the foregoing; or (v) the U.S. Trustee or any other person employed in the Office of the U.S. Trustee.

17.     Houlihan is a "disinterested person," as such term is defined in Bankruptcy Code section 101(14). The Turnbull Declaration, executed on behalf of Houlihan in accordance with Bankruptcy Code sections 328(a) and 1103, Bankruptcy Rules 2014 and 2016 and Local Rule

---

[1] As set forth in more detail in the Turnbull Declaration, Houlihan represented the Official Committee of Unsecured Creditors during the Debtors' 2005 chapter 11 proceeding.

2014-1, is filed contemporaneously herewith and incorporated herein by reference. The

Committee's knowledge, information, and belief regarding the matters set forth in this

Application are based, and made in reliance, upon the Turnbull Declaration. The Committee

believes that the employment of Houlihan will be in the best interests of the Committee, the

Debtors and their estates and creditors.

## HOULIHAN'S COMPENSATION STRUCTURE

18.     Subject to the Court's approval, Houlihan will be entitled to be compensated in

accordance with the following structure[2] for its services pursuant to, and as further explained by,

the Engagement Letter:

- *Monthly Fees*:  Houlihan shall be paid a nonrefundable monthly cash fee of $150,000 for each of the first three months of the term of the engagement and thereafter through the remainder of the term of the engagement, a nonrefundable monthly cash fee of $125,000 (each of the foregoing payments, a "Monthly Fee"). The first payment shall be made within three business days of the entry of an order approving this Application by the Bankruptcy Court and shall be in respect of the period as from the Engagement Effective Date through the monthly period in which payment is made.  Thereafter, the Monthly Fee shall be earned and payable on every monthly anniversary of the Engagement Effective Date during the term of this Application in consideration of Houlihan accepting this engagement and performing services as described herein.  With the exception of any Monthly Fees for the first six months of this Agreement, fifty-percent of any Monthly Fees paid by the Debtors shall be credited against the Deferred Fee (as defined below) to which Houlihan becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be credited more than once), provided, however, in no event, shall such Deferred Fee be reduced below zero; and

- *Deferred Fee*:  In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") in cash, equal to the greater of (a) $750,000 and (b) five percent (5.0%) of the Total Consideration (as defined in the Engagement Letter), if any, received by unsecured creditors on account of non-administrative, non-priority, unsecured claims in the Cases.  The Deferred

---

[2] Neither the Committee, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee) is liable for the fees, expenses or other amounts payable to Houlihan under the Engagement Letter. In the event of any discrepancy between this description and the Engagement Letter, the terms and conditions of the Engagement Letter should control.

Fee shall be earned and payable on the earlier to occur of (x) the date of receipt of initial distributions by the unsecured creditors in the Cases (excluding payments made pursuant to orders in connection with first-day motions), and (y) the effective date of a plan of reorganization or a plan of liquidation in the Cases (a "Plan)".

19. The Committee also requests, and Houlihan has agreed, that in the event Houlihan seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Houlihan's own application and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Court under the standards of Bankruptcy Code sections 330 and 331.

20. The terms of the Engagement Letter were negotiated between the Committee and Houlihan, and reflect the Committee's evaluation of the extensive work that will be performed by Houlihan and its expertise. The Committee acknowledges and agrees that the Monthly Fees and Deferred Fee have been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Houlihan and its professionals under the Engagement Letter, and in light of the fact that such commitment may foreclose other opportunities for Houlihan and its professionals and that the actual time and commitment required of Houlihan and its professionals to perform the services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

21. In light of the foregoing and given the numerous issues which Houlihan may be required to address in the performance of its services hereunder, Houlihan's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Houlihan's services for engagements of this nature and in an out-of-court context, the Committee acknowledges and agrees that the Monthly Fees and Deferred Fee are both fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

## WAIVER OF REQUIREMENTS REGARDING TIME DETAIL

22.     Customarily, investment bankers such as Houlihan do not charge for their services on an hourly basis.  Instead, their fees consist of monthly "flat" fees and deferred compensation contingent upon the occurrence of specified events such as the confirmation of a chapter 11 plan.  As is the case with other investment bankers, Houlihan does not customarily maintain time records like those maintained by attorneys and other professionals compensated on an hourly basis.  Moreover, the Committee has also been advised that requiring Houlihan to create the time entries for its restructuring personnel and require its non-restructuring personnel to record their time as prescribed by the Bankruptcy Rules, Local Rules and U.S. Trustee Fee Guidelines would be, in each case, unduly burdensome and time consuming.  Accordingly, the Committee requests that Houlihan be excused from the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-1 and the U.S. Trustee Fee Guidelines or otherwise conform to a schedule of hourly rates for its professionals.

23.     Notwithstanding the foregoing, Houlihan will nonetheless maintain records (in summary format) of its services rendered for the Committee by financial restructuring personnel employed in Houlihan's U.S. offices, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and will present such records to the Court.  In addition, Houlihan will submit a list of its foreign personnel that provide services on behalf of the Committee.  Houlihan has requested that, to the extent the U.S. Trustee has any objection to the scope, completeness or adequacy of Houlihan's time records or summaries thereof, the U.S. Trustee notify Houlihan of such objection within 30 days of receipt thereof or be deemed to have waived any such objection.

## RETENTION PURSUANT TO SECTION 328(a)

24.     The Committee is seeking to retain Houlihan under Bankruptcy Code section 328(a).  As noted above, section 328(a) provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis."  11 U.S.C.§ 328(a).  Section 328(a) permits the retention and compensation of professionals, including investment bankers and financial advisors, on more flexible terms that reflect the nature of their services and market conditions, including alternative fee structures to the customary hourly rate.  Accordingly, the compensation structure outlined in the Engagement Letter is similar to arrangements routinely approved by courts in this district under section 328(a).  The Committee further believes that because Houlihan will be retained under section 328(a), the firm's compensation should not be subject to any additional standard of review under Bankruptcy Code section 330 and should not constitute a "bonus" under applicable law.

25.     Notwithstanding the foregoing, the U.S. Trustee shall retain the right to object to the compensation to be paid to Houlihan pursuant to the Engagement Letter based on the reasonableness standard provided for in Bankruptcy Code section 330; provided, that, with respect to the U.S. Trustee's retention of rights under section 330, it is understood and agreed that reasonableness for this purpose shall be evaluated by comparing the fees payable in these cases to fees paid to other investment banking firms offering comparable services in other chapter 11 cases and shall not be evaluated primarily on the basis of time committed or the length of these cases.

26. Except as otherwise provided herein, Houlihan intends to apply to the Court for interim and final payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the U.S. Trustee Fee Guidelines, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

## INDEMNIFICATION

27. In addition to the foregoing, and as a material part of the consideration for the agreement of Houlihan to furnish services to the Committee pursuant to the terms of the Engagement Letter, Houlihan has requested that certain indemnification provisions set forth in the Engagement Letter be approved. The Committee submits that the proposed indemnification provisions are standard in Houlihan's industry and such provisions are fair and reasonable considering Houlihan's qualifications and the expected scope of the services Houlihan will provide during this engagement.

## MOTION PRACTICE

28. This application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this application. Accordingly, the Debtors submit that this application satisfies Rule 9013-1(a) of the Local Rules of Bankruptcy Procedure for the Southern District of New York.

## NOTICE

29. No trustee or examiner has been appointed in these chapter 11 cases. The Committee has served notice of this Motion on: (i) the Office of the U.S. Trustee (Attn: Serene K. Nakano); (ii) Co-Counsel for the Debtors, Kramer Levin Naftalis & Frankel LLP, (Attn: Adam C. Rogoff, Esq.); (iv) parties entitled to receive notice in these chapter 11 cases pursuant to the Bankruptcy Code, Bankruptcy Rule 2002, and the Second Amended Interim

Administrative Order Establishing Case Management Procedures; and (v) certain of the Debtors'

secured lenders.  The Committee submits that no other or further notice need be provided.

[<em>remainder of page intentionally left blank</em>]

**WHEREFORE**, the Committee respectfully requests the Court to enter an order, substantially in the form attached hereto as Exhibit A, (i) authorizing the Committee to retain and employ Houlihan nunc pro tunc to April 23, 2010, as its financial advisor and investment banker and (ii) granting the Committee such other relief as is appropriate.

DATED: New York, New York

May 13, 2010

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SAINT VINCENTS CATHOLIC MEDICAL CENTERS, ET AL.**

By: MedMal Trust Monitor, solely in its capacity as Co-Chair of the Committee and not in its individual capacity,

By: _____
Name: Michael E. Katzenstein
Title: MedMal Trust Monitor

**EXHIBIT A**
**Turnbull Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
           :

In re:                         :         Chapter 11
           :

SAINT VINCENTS CATHOLIC MEDICAL   :        Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, et al.,     :
           :

        Debtors.               :         (Jointly Administered)
           :

------------------------------------------------------------x

**DECLARATION OF ANDREW TURNBULL IN SUPPORT OF THE APPLICATION OF
OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER UNDER
BANKRUPTCY CODE SECTIONS 328(a) AND 1103, BANKRUPTCY RULES 2014 AND
2016, AND S.D.N.Y. LOCAL RULES 2014-1, AUTHORIZING EMPLOYMENT AND
RETENTION OF HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS
FINANCIAL ADVISOR AND
INVESTMENT BANKER *NUNC PRO TUNC* TO APRIL 23, 2010**

I, Andrew Turnbull, being duly sworn, depose and say:

    1.     I am a Managing Director of Houlihan Lokey Howard & Zukin Capital, Inc.

("Houlihan") and am duly authorized to make this Declaration on behalf of Houlihan. The facts

set forth in this Declaration are personally known to me and, if called as a witness, I could and

would testify thereto.

    2.     This Declaration is submitted in support of the application (the "Application") of

the Official Committee of Unsecured Creditors (the "Committee") in these Chapter 11 cases for

authorization of the employment and retention of Houlihan as Financial Advisor and Investment

Banker, *nunc pro tunc,* to April 23, 2010.

    3.     This Declaration is also submitted as the statement required pursuant to §§ 328(a),

of Title 11, United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code")

and Rules 2014(a) and 2016(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

4. Established in 1970, Houlihan is an international investment banking/financial advisory firm, with fourteen offices in the United States, Europe and Asia and more than eight hundred employees. Houlihan provides corporate finance and financial advisory services, as well as execution capabilities, in a variety of areas, including financial restructuring. In 2009 Houlihan ranked as the No. 1 M&A advisor for U.S. transactions under $3 billion, according to Thomson Reuters. The firm is one of the leading providers of M&A fairness opinions and has one of the largest worldwide financial restructuring practices of any investment bank. Houlihan annually serves more than 1,000 clients ranging from closely held companies to Global 500 corporations.

5. Through its Financial Restructuring Group, Houlihan is one of the leading advisors and investment bankers to troubled companies, both inside and outside of bankruptcy, as well as to their bondholders, banks, other secured and unsecured creditors, Official Creditor Committees, acquirers, equity sponsors and other parties-in-interest involved with financially challenged companies. Houlihan's Financial Restructuring Group has over 140 professionals worldwide dedicated to providing restructuring and other financial services to distressed companies.

6. Houlihan has agreed to provide investment banking services to the Committee in the above-captioned Chapter 11 cases pursuant to the terms and conditions of the engagement letter agreement between the Committee and Houlihan (the "Engagement Letter"), a copy of which is attached to the Committee's Application as Exhibit B. Among other things, the Engagement Letter provides that the Committee shall indemnify Houlihan against any and all losses, claims, damages or liabilities to which Houlihan may become subject in connection with services provided pursuant to the Engagement Letter. The Committee shall pay Houlihan's fees and expenses, including counsel fees, as they are incurred in defending any such claim. Where it

has been determined in a final judgment by a court of competent jurisdiction that the claim resulted from the gross negligence or willful misconduct of Houlihan, Houlihan shall repay the Committee for any fees and expenses advanced by the Committee pursuant to the preceding sentence. Notwithstanding a final judgment determining that a claim did not result from Houlihan's gross negligence or willful misconduct, the Committee shall not pay any indemnification claim without further notice and a hearing before the Bankruptcy Court for approval of such payment.

7. In addition to me, the principal professionals who have rendered, and are expected to render, services to the Committee are attached hereto as <u>Exhibit 1</u> and is incorporated herein by this reference.

8. By way of further disclosure:

    a. From time to time, Houlihan's Financial Restructuring Group, which is providing the services in this case, has provided services, and likely will continue to provide services to certain attorneys, other professionals, creditors (including lenders) and/or security holders of the Debtors and various other parties, some of whom may be providing services to, or may be adverse to, or may be otherwise connected to, the Debtors, in each case in matters unrelated to these Chapter 11 cases.

    b. In addition to its Financial Restructuring Group, Houlihan and the other subsidiaries of its direct parent company, Houlihan, Lokey, Howard & Zukin, Inc., that are engaged in providing investment banking and financial advisory services globally (collectively, the "<u>Houlihan Group</u>") provide services to a wide range of institutions and individuals and may in the past have had, and may currently or in the future have, financial advisory or other investment banking relationships with parties that may have interests with respect to the Debtor. In the ordinary course of business, investment funds affiliated with the Houlihan Group and certain of the Houlihan Group's employees, as well as investment funds in which such employees may have financial interests, but over whose investment decisions such employees have no input or control, may acquire, hold or sell, long or short positions, or trade or otherwise effect transactions, in debt, equity, and other securities and financial instruments (including bank loans and other obligations) of, or investments in, the Debtors or other parties that may have an interest in these Chapter 11 cases or have other relationships with such parties. With respect to any such securities, financial instruments and/or investments, all

rights in respect of such securities, financial instruments and investments, including any voting rights, will be exercised by the holder of the rights, in its sole discretion. Moreover, the Houlihan employees who are working on these Chapter 11 cases are subject to compliance mechanisms and policies and procedures designed to prevent confidential, non-public information from being improperly shared.

c.  The Houlihan Group's Hedge Fund and Derivatives Valuation Services Group provides valuation opinions on the securities and derivative holdings of various business development companies, private equity firms and hedge funds, which may include debt securities of the Debtors. This work is unrelated to the financial advisory services that Houlihan intends to provide in these Chapter 11 cases. Moreover, the Houlihan Group, through the establishment of an "Information Wall" has separated its employees in the Hedge Fund and Derivatives Valuation Services Group from the rest of the employees of the Houlihan Group. This "Information Wall" includes physical and technological barriers, compliance mechanisms and policies and procedures designed to prevent confidential, non-public information and work product from being shared improperly.

d.  Houlihan personnel may have business associations with certain creditors of the Debtors or counsel or other professionals involved in these Chapter 11 cases on matters unrelated to these Chapter 11 cases. In addition, in the ordinary course of its business, Houlihan may engage counsel or other professionals in unrelated matters who now represent, or in the future may represent, creditors or other interested parties in these Chapter 11 cases.

e.  Houlihan is indirectly majority-owned by ORIX USA Corporation, an affiliate of ORIX Corporation, a diversified financial services company based in Japan (collectively, "ORIX"), which has a wide-range of business interests in 26 countries. ORIX's businesses (other than the Houlihan Group) are not managed or controlled by the Houlihan Group or any of its employees and the Houlihan Group has no input into any of ORIX's decisions regarding its other businesses. While ORIX does control a majority of the equity of the Houlihan Group (approximately 48% of the common equity is held by Houlihan Group employees), the Houlihan Group is operated as a separate business from all other ORIX entities. As evidence of this separateness, (i) the Houlihan Group is governed by a 15-person board of directors, eleven of whom are Houlihan Group employees and four are designated by ORIX, (ii) the activities of the Houlihan Group are managed on a day-to-day basis exclusively by Houlihan Group employees, (iii) only the profits and losses of the Houlihan Group businesses are taken into account in valuing the equity of the Houlihan Group and (iv) the aggregate annual compensation of Houlihan Group professionals is set by formula and ORIX has no input in determining that amount.

9.      To determine its relationship with parties in interest in these Chapter 11 cases,

Houlihan has researched the client databases maintained with respect to the Houlihan Group to

determine whether it has any relationships with the entities (individually an "Interested Party"

and collectively, the "Interested Parties") that were identified to Houlihan by the Committee. Such entities include:

    a.   The Debtors and their non-debtor affiliates;

    b.   The Debtors' sponsors;

    c.   The officers, directors and Trustees of the Debtors and their known business affiliations;

    d.   The Debtors' top 50 unsecured creditors;

    e.   The attorneys and other professionals of the Debtors;

    f.   The secured lenders, creditors and Mortgagees of the Debtors;

    g.   Federal and State regulatory agencies;

    h.   Medical malpractice and other litigation adversaries;

    i.   Related employee unions;

    j.   Workers compensation claimants;

    k.   Equipment Lessors;

    l.   Landlords, Utility, Insurance and Benefits providers/administrators of the Debtors;

    m.   The Debtors' Vendors; and

    n.   Other parties-in-interest.

In addition to checking the client data base maintained by the Houlihan Group, Houlihan checked this list of Interested Parties and determined that none of them is a company controlled by ORIX outside the Houlihan Group.

10.    The attached Exhibit 2 details the relationship check performed by Houlihan, and identifies any relationships discovered through such investigation that members of the Houlihan Group have with any Interested Parties in these Chapter 11 cases.

11.	To the best of my knowledge, information and belief after reasonable inquiry, other than as disclosed in this Declaration, neither I, the Houlihan Group, nor any of our professionals or employees participating in or connected with Houlihan's engagement with the Committee: (i) is related to the Debtors or any other party in interest herein, the United States Trustee for the Southern District of New York or anyone employed in the United States Trustee's Office for this District; (ii) has any connection with or holds or represents any interest adverse to the Debtors, its estate, its creditors or any other Interested Party or their respective attorneys in the matters on which Houlihan is proposed to be retained; or (iii) has advised any Interested Party, except for the Committee, in connection with these Chapter 11 cases. In addition, Houlihan does not believe that any relationship that the Houlihan Group or any of our professionals or employees participating in or connected with Houlihan's engagement with the Committee may have with any Interested Party in connection with any unrelated matter will interfere with or impair Houlihan's representation of the Committee in these Chapter 11 cases.

12.	To the extent Houlihan discovers any facts bearing on the matters described herein during the period of Houlihan's retention, Houlihan undertakes to amend and supplement the information contained in this Declaration to disclose such facts.

13.	Based on all of the foregoing, Houlihan is a "disinterested person" as that term is defined in Section 101(14) of the Bankruptcy Code.

14.	No agreement presently exists to share with any other person or firm any compensation received by Houlihan for its services in these cases. If any such agreement is entered into, Houlihan undertakes to amend and supplement this Declaration to disclose the terms of any such agreement.

15.    No promises have been received by Houlihan, or by any employee thereof, as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

*[remainder of page intentionally left blank]*

16.     I am generally familiar with the Bankruptcy Code and the Bankruptcy Rules, and Houlihan will comply with them, subject to the Orders of this Court.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this [11]th day of May, 2010.

_____
Andrew Turnbull

Sworn to and subscribed before me on this [11]th day of May, 2010.

_____
Notary Public

OFFICIAL SEAL
JOHN M. AMEDIO
Notary Public - State of Illinois
My Commission Expires Aug 18, 2013

**EXHIBIT 1**

***PRINCIPAL PROFESSIONALS***

<u>Financial Restructuring Group</u>
Andrew Turnbull, Managing Director
Reid Snellenbarger, Director
Scott Jackson, Senior Vice President
Tim Flannery, Financial Analyst
Adam Teplitzky, Financial Analyst

<u>Healthcare Group</u>
Patrick Hurst, Managing Director
Matt Ryan, Senior Vice President
Jeffrey Carsello, Vice President

<u>Real Estate Group</u>
Gary Gordon, Managing Director
John Kenyon, Senior Vice President

**EXHIBIT 2**

## RELATIONSHIPS WITH INTERESTED PARTIES (since 2000)

| Corporate Finance | Engagement Summary | Status |
|---|---|---|
| GE Capital Corporation | Seller Advisory (multiple engagements) | Closed |
| Grant Thornton | Joint Seller Advisor | Active |
| MCI Worldcom Communications, Inc. | Seller Advisory | Closed |
| Pitney Bowes Inc. | Various Advisory Services (multiple engagements) | Closed |
| SourceOne Healthcare Technologies | Various Advisory Services (multiple engagements) | Closed |
| **Financial Advisory Services** | **Engagement Summary** | **Status** |
| GE Capital Corporation | Various Financial Advisory Services (multiple engagements) | Closed |
| GE Medical Systems | Fairness Opinion (multiple engagements) | Closed |
| Grant Thornton LLP | FMV Transaction Based Opinion | Closed |
| Grubb & Ellis Company | Various Financial Advisory Services (multiple engagements) | Closed |
| John Hancock Financial Services | FMV Non-Transaction Based Opinion (multiple engagements) | Closed |
| KPMG, LLP | Various Financial Advisory Services (multiple engagements) | Closed |
| AT&T Corporation | Purchase Price Allocation | Closed |
| Kramer, Levin, Naftalis & Frankel, LLP | Litigation Advisory Services | Closed |
| New Hampshire Insurance Co. | Consulting Services | Closed |
| Medco Health Solutions, Inc. | Purchase Price Allocation | Closed |
| Merrill Lynch | Various Financial Advisory Services (multiple engagements) | Active / Closed |
| MetLife, Inc. | Various Financial Advisory Services (multiple engagements) | Active / Closed |
| Pitney Bowes Inc. | Purchase Price Allocation (multiple engagements) | Closed |
| Proskauer Rose, LLP | Various Financial Advisory Services (multiple engagements) | Closed |
| Qwest Communications International, Inc. | Solvency Opinion | Closed |
| Skadden Arps Slate Meagher & Flom LLP | Various Advisory Services (multiple engagements) | Active / Closed |
| Sprint Nextel Corporation | Solvency Opinion (multiple engagements) | Closed |
| Verizon Communications, Inc. | Solvency Opinion (multiple engagements) | Active / Closed |
| Zimmer Holdings, Inc. | Purchase Price Allocation (multiple engagements) | Active / Closed |
| **Financial Restructuring Group** | **Engagement Summary** | **Status** |

| | | |
|---|---|---|
| The Bank of New York Mellon, Corporate Trust | Creditor Advisor | Closed |
| Kramer, Levin, Naftalis & Frankel, LLP | Creditor Advisors | Closed |
| MCI Worldcom Communications, Inc. | Creditor Advisors | Closed |
| Merrill Lynch | Creditor Advisors | Closed |
| Nextel Communications, Inc. | Debtor Advisors | Closed |
| Saint Vincent Catholic Medical Centers of New York | Creditor Advisors (2005 Bankruptcy) | Closed |
| Skadden Arps Slate Meagher & Flom, LLP | Creditor Advisor | Closed |
| Verizon Communications, Inc. | Creditor Advisor | Closed |

# EXHIBIT B
## Engagement Letter



May 11, 2010

The Official Committee (the "Committee") of Unsecured Creditors
of Saint Vincents Catholic Medical Centers of New York
d/b/a Saint Vincent Catholic Medical Centers, et al., as
debtors and debtors-in-possession (the "Debtors")

Siemens Medical Solutions USA
51 Valley Stream Parkway
Malvern, PA 19355-1406
Attn: John J. Schwab

Medmal Trust Monitor
Corporate Finance and Restructuring
FTI Consulting
3 Times Square, 9th floor
New York, NY 10036
Attn: Michael Katzenstein

Dear Ladies and Gentlemen:

    This letter agreement (this "Agreement") confirms the terms under which the Committee has engaged Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan Lokey"), effective as of April 23, 2010 (the "Effective Date"), to provide financial advisory and investment banking services to the Committee in connection with the Debtors' Chapter 11 cases (the "Cases"), which are pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

1.    **Services**. Pursuant to its engagement by the Committee, Houlihan Lokey's services will consist of, if appropriate and if requested by the Committee:

    a)    Assessing the financial issues, processes undertaken and continuing, and options concerning (i) the sale of the Debtors' assets and businesses, either in whole or in part, (ii) the plan of closure for certain of the Debtors' businesses, and (iii) the Debtors' plan(s) of reorganization and / or liquidation;

    b)    Evaluating the assets and liabilities of the Debtors;

    c)    Analyzing business plans and forecasts of the Debtors' businesses;

    d)    Analyzing and reviewing the financial and operating statements of the Debtors;

e)      Assisting in the review of financial and business issues as the Committee may require in connection with the Cases;

f)      Providing such specific valuation or financial analyses as the Committee may require in connection with the Cases;

g)      Analyzing strategic alternatives relating to the Debtors' businesses and assets;

h)      Assisting in the review of claims and with the reconciliation, estimation, settlement, and litigation with respect thereto;

i)      Assisting the Committee in identifying potential alternative sources of liquidity in connection with any debtor-in-possession financing, any chapter 11 plan(s) or otherwise;

j)      Advising and representing the Committee in negotiations with the Debtors, other creditors and third parties with respect to any of the foregoing;

k)      Providing testimony in court on behalf of the Committee with respect to any of the foregoing, if necessary; and

l)      Providing such other financial advisory and investment banking services as shall be reasonably agreed upon by the Committee and Houlihan Lokey.

2.      **Committee Engagement**. Neither the Committee, its individual members, its constituents, nor any of its advisors or professionals (including, but not limited to, counsel to the Committee ("Committee Counsel")), shall be liable for the fees, expenses or other amounts payable to Houlihan Lokey hereunder. Houlihan Lokey is providing its services as the financial advisor to the Committee, and is not providing any services on behalf of the individual members of the Committee. To the extent any issue arises as to the scope, nature or substance of Houlihan Lokey's analysis, Houlihan Lokey and the Committee, with the advice of Committee Counsel, shall in good faith work to mutually resolve such issue. At the direction of Committee Counsel, certain communications and correspondence from Houlihan Lokey, and work product and analyses prepared by Houlihan Lokey for the Committee in connection with this matter, will be considered in preparation for litigation over the restructuring of the Debtors and, accordingly, will be subject to the attorney-client privilege and work-product doctrine.

3.      **Fees and Expenses.** In consideration of Houlihan Lokey's acceptance of this engagement, the Debtors shall pay the following:

(i)      *Monthly Fees*: In addition to the other fees paid herein, Houlihan Lokey shall be paid a nonrefundable monthly cash fee of $150,000 for each of the first three (3) months of the term of this Agreement and thereafter through the remainder of the term of this Agreement, a nonrefundable monthly cash fee shall of $125,000 (each of the foregoing payments, a "Monthly Fee"). The first payment shall be made within 3 business days of the entry of an order approving this Agreement by the Bankruptcy Court and shall be in respect of the period as from the Effective Date through the monthly period in which payment is made. Thereafter, payment of the Monthly Fee shall be made not later than the twenty-third (23rd) day of each month following the Effective Date during the term of this Agreement. Each Monthly Fee shall be earned upon Houlihan Lokey's receipt thereof in consideration of Houlihan Lokey accepting this engagement and performing services as described herein. With the exception of any Monthly Fees for the first six (6) months of this Agreement, fifty-percent (50%) of any Monthly Fees paid by the Debtors shall be credited against the Deferred Fee (as defined below) to which Houlihan Lokey becomes entitled hereunder (it being understood and agreed that no Monthly Fee shall be

credited more than once), provided, however, in no event, shall such Deferred Fee be reduced below zero; and

(ii) *Deferred Fee*: In addition to the other fees provided for herein, the Debtors shall pay Houlihan Lokey a fee (the "Deferred Fee") in cash, equal to the greater of (a) $750,000 and (b) five percent (5.0%) of the Total Consideration (as defined below), if any, received by unsecured creditors on account of non-administrative, non-priority, unsecured claims in the Cases. The Deferred Fee shall be earned and payable on the earlier to occur of (a) the date of receipt of initial distributions by the unsecured creditors in the Cases (excluding payments made pursuant to orders in connection with first-day motions), and (b) the effective date of a plan of reorganization or a plan of liquidation in the Cases (a "Plan").

For purposes hereof, "Total Consideration" shall mean the total aggregate amounts paid by the Debtors or otherwise on account of all allowed non-administrative, non-priority, general unsecured claims (including deficiency claims) against the Debtors pursuant to a Plan (including, without limitation, any amounts held in escrow or in claims reserves); provided, however, that "Total Consideration" shall exclude (i) payments made on account of general unsecured claims pursuant to orders entered in connection with first-day motions and (ii) payments made to unsecured creditors that where the monies for such payments were generated solely as a result of the identification and work performed by any Committee-retained forensic accountant. Total Consideration shall include, without limitation: (a) cash; (b) notes, securities (including, but not limited to, debt and/or equity) or other property; (c) payments made in installments; (d) contingent payments (whether or not related to future earnings or operations); and (e) other interests or consideration. For purposes of computing any fees payable to Houlihan Lokey hereunder, non-cash consideration shall be valued as the greatest of: (I) if the value of such non-cash consideration is disclosed in a court approved disclosure statement in support of the Plan, the value of such non-cash consideration in such disclosure statement; (II) if such non-cash consideration includes equity securities that are publicly traded prior to the effective date of the Plan, the value of such securities shall be calculated based on the weighted average of the last sale or closing price for the ten trading days immediately prior to the effective date of the Plan; (III) if such non-cash consideration includes notes or debt securities, such notes or debt securities shall be valued at face value; or (IV) if such non-cash consideration cannot be valued under clauses (I), (II) or (III), Houlihan Lokey will prepare a valuation of such non-cash consideration, and Houlihan Lokey and the Committee will mutually agree on a fair valuation thereof for the purposes of calculating the Deferred Fee; provided that, if the Committee and Houlihan Lokey are unable to agree on the value of such non-cash consideration, then the Bankruptcy Court will determine the value of such non-cash consideration and such decision will be final and binding on the Committee and Houlihan Lokey.

4. **Term and Termination.** In the event that (a) the Committee's application for employment of Houlihan Lokey under Sections 328(a) and 1103 of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") is not granted by the Bankruptcy Court or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Houlihan Lokey in its sole discretion, this Agreement shall terminate immediately. Otherwise, this Agreement may be terminated at any time by either Houlihan Lokey or the Committee upon thirty days prior written notice to the other party. The expiration or termination of this Agreement shall not affect (i) any provision of this Agreement other than Sections 1 and 3 and (ii) Houlihan Lokey's right to receive, and the Debtors' obligation to pay, any and all fees, expenses and other amounts due hereunder, as more fully set forth in this Agreement.

In addition, notwithstanding the expiration or termination of this Agreement, Houlihan Lokey shall be entitled to full payment by the Debtors of the Deferred Fee described in this Agreement so long as the conditions set forth in Section 3(ii) hereunder causing such Deferred Fee to be due and payable are satisfied

during the term of this Agreement or within 12 months after the date of expiration or termination by the Committee of this Agreement.

5.    **Reasonableness of Fees.** The parties acknowledge that a substantial professional commitment of time and effort will be required of Houlihan Lokey and its professionals hereunder, and that such commitment may foreclose other opportunities for Houlihan Lokey.  Moreover, the actual time and commitment required for the engagement may vary substantially, creating "peak load" issues for Houlihan Lokey.  Given the numerous issues which may arise in engagements such as this, Houlihan Lokey's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Houlihan Lokey that will be required in this engagement, and the market rate for Houlihan Lokey's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Houlihan Lokey, and provides the requisite certainty to the Debtors and the Committee.

6.    **Expenses.** In addition to all of the other fees and expenses described in this Agreement, the Debtors shall, upon Houlihan Lokey's request, which request shall be tendered monthly in accordance with any order of the Bankruptcy Court governing interim compensation of professionals, to reimburse Houlihan Lokey for its reasonable out-of-pocket expenses incurred from time to time in connection with its services hereunder. Houlihan Lokey bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) actual travel-related and certain other expenses, without regard to volume-based or similar credits or rebates Houlihan Lokey may receive from, or fixed fee arrangements made with, travel agents, airlines or other vendors on a periodic basis, and (ii) research, database and similar information charges paid to third party vendors, and postage, telecommunication and duplicating expenses, to perform client-related services that are not capable of being identified with, or charged to, a particular client or engagement in a reasonably practicable manner, based upon a uniformly applied monthly assessment or percentage of the fees due to Houlihan Lokey.

Houlihan Lokey shall, in addition, be reimbursed by the Debtors for the fees and expenses of Houlihan Lokey's legal counsel incurred in connection with (i) the negotiation and performance of this Agreement and the matters contemplated hereby, (ii) Houlihan Lokey's employment as a professional person in the Cases and (iii) the payment of all fees and expenses due to Houlihan Lokey hereunder, including, without limitation, in connection with fee disputes and objections to Houlihan Lokey's fees by any party in the Cases.

7.    **Invoicing and Payment.** All amounts payable to Houlihan Lokey shall be made in lawful money of the United States in accordance with the payment instructions set forth on the invoice, or to such accounts as Houlihan Lokey shall direct. All amounts invoiced by Houlihan Lokey shall be exclusive of value added tax, withholding tax, sales tax and any other similar taxes ("Taxes"). All amounts charged by Houlihan Lokey will be invoiced together with Taxes where appropriate.

8.    **Information.** The Committee shall use all reasonable efforts to cause the Debtors (i) to provide Houlihan Lokey with access to management and other representatives of the Debtors, as reasonably requested by Houlihan Lokey and (ii) to furnish all data, material and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Debtors that Houlihan Lokey reasonably requests in connection with the services to be performed for the Committee hereunder. Houlihan Lokey shall rely, without independent verification, on the accuracy and completeness of all information that is publicly available and of all information furnished by or on behalf of the Debtors or the Committee or otherwise reviewed by, or discussed with, Houlihan Lokey. The Committee understands and agrees that Houlihan Lokey will not be responsible for the accuracy or completeness of such information, and

Co - Chairs of The Official Committee of Unsecured Creditors of Saint Vincents Catholic Medical Centers of New York
d/b/a Saint Vincent Catholic Medical Centers, et al., as debtors and debtors-in-possession
Page 5

shall not be liable for any inaccuracies or omissions therein. The Committee acknowledges that except as may be otherwise set forth herein, Houlihan Lokey has no obligation to conduct any appraisal of any assets or liabilities of the Debtors or any other party. The Committee acknowledges that Houlihan Lokey's ability to render the services hereunder will depend upon the extent of cooperation that it receives from the Debtors and the Debtors' advisors. Any advice (whether written or oral) rendered by Houlihan Lokey pursuant to this Agreement is intended solely for the use of the Committee in considering the matters to which this Agreement relates, and such advice may not be relied upon by any other person or used for any other purpose. Any advice rendered by, or other materials prepared by, or any communication from, Houlihan Lokey may not be disclosed, in whole or in part, to any third party, or summarized, quoted from, or otherwise referred to in any manner without the prior written consent of Houlihan Lokey.

9. **Limitations on Services as Advisor.** Houlihan Lokey's services are limited to those specifically provided in this Agreement, or subsequently agreed upon in writing, by Houlihan Lokey and the Committee. Houlihan Lokey shall have no obligation or responsibility for any other services including, without limitation, any crisis management or business consulting services related to, among other things, the implementation of any operational, organizational, administrative, cash management, or similar activities. Houlihan Lokey is providing the Committee with Houlihan Lokey's services hereunder as an independent contractor. In performing its services pursuant to this Agreement, Houlihan Lokey is not assuming any responsibility for the Committee's or the Debtors' decision on whether to pursue, endorse or support any business strategy, or to effect, or not to effect, any transaction(s).

10. **Bankruptcy Court Approval.** The Committee shall, as soon as practicable following the execution of this Agreement by the Committee, seek an order authorizing the employment of Houlihan Lokey pursuant to the terms of this Agreement, as a professional person pursuant to, and subject to the standard of review of, Sections 328(a) and 1103 of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders. Houlihan Lokey's employment hereunder shall not be subject to any other standard of review including under Section 330 of the Bankruptcy Code. In so agreeing to seek Houlihan Lokey's retention under Section 328(a) of the Bankruptcy Code, the Committee acknowledges that it believes that Houlihan Lokey's general restructuring experience and expertise, its knowledge of the capital markets and its merger and acquisition capabilities will inure to the benefit of the Committee, that the value to the Committee of Houlihan Lokey's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the contingent Deferred Fee is reasonable regardless of the number of hours the parties expect to be expended by Houlihan Lokey's professionals in the performance of the services to be provided hereunder. The Committee shall use its best efforts to cause Houlihan Lokey's employment application to be considered on the most expedited basis. The employment application and the proposed order authorizing employment of Houlihan Lokey shall be provided to Houlihan Lokey as much in advance of their filing as is practicable, and must be acceptable to Houlihan Lokey in its sole discretion. Following the entry of an order authorizing the employment of Houlihan Lokey, the Debtors shall pay all fees and expenses due pursuant to this Agreement, as promptly as possible in accordance with the terms of this Agreement, any order of the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders. The Committee and its legal counsel will work with Houlihan Lokey to promptly file any and all necessary applications regarding such fees and expenses with the Bankruptcy Court. The terms of this Section are solely for the benefit of Houlihan Lokey, and may be waived, in whole or in part, only by Houlihan Lokey.

11. **Credit.** Houlihan Lokey may, at its own expense, place announcements on its corporate website and in financial and other newspapers and periodicals (such as a customary "tombstone" advertisement, including the Debtors' logo or other identifying marks) describing its services in connection with this engagement.

12. **Choice of Law; Jury Trial Waiver; Jurisdiction.** THIS AGREEMENT SHALL BE DEEMED TO BE MADE IN NEW YORK. ALL DISPUTES ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAWS. EACH OF HOULIHAN LOKEY AND THE COMMITTEE IRREVOCABLY WAIVES ANY RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) RELATED TO OR ARISING OUT OF THE ENGAGEMENT OF HOULIHAN LOKEY PURSUANT TO, OR THE PERFORMANCE BY HOULIHAN LOKEY OF THE SERVICES CONTEMPLATED BY, THIS AGREEMENT. REGARDLESS OF ANY PRESENT OR FUTURE DOMICILE OR PRINCIPAL PLACE OF BUSINESS OF THE PARTIES HERETO, EACH PARTY HEREBY IRREVOCABLY CONSENTS AND AGREES THAT ANY CLAIMS OR DISPUTES BETWEEN OR AMONG THE PARTIES HERETO ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL BE BROUGHT AND MAINTAINED IN THE BANKRUPTCY COURT.

13. **Indemnification and Standard of Care.** As a material part of the consideration for the agreement of Houlihan Lokey to furnish its services to the Committee under this Agreement, the Debtors shall (i) indemnify and hold harmless Houlihan Lokey and its affiliates, and their respective past, present and future directors, officers, shareholders, partners, members, employees, agents, representatives, advisors, subcontractors and controlling persons (collectively, the "Indemnified Parties"), to the fullest extent lawful, from and against any and all losses, claims, damages or liabilities (or actions in respect thereof), joint or several, arising out of or related to this Agreement, Houlihan Lokey's engagement under this Agreement, any transaction or any actions taken or omitted to be taken by an Indemnified Party, the Committee, any member of the Committee or the Debtors in connection with this Agreement and (ii) reimburse each Indemnified Party for all expenses (including, without limitation, the fees and expenses of counsel) as they are incurred in connection with investigating, preparing, pursuing, defending, settling or compromising any action, suit, dispute, inquiry, investigation or proceeding, pending or threatened, brought by or against any person (including, without limitation, any shareholder or derivative action), arising out of or relating to the formulation of any plan of reorganization for the Debtors, this Agreement, or such engagement, transaction or actions. However, the Debtors shall not be liable under the foregoing indemnity and reimbursement agreement to the extent of any loss, claim, damage or liability which is finally judicially determined by a court of competent jurisdiction to have resulted from the bad-faith, self-dealing, willful misconduct or gross negligence of such Indemnified Party.

If for any reason the foregoing indemnification or reimbursement is unavailable to any Indemnified Party or insufficient fully to indemnify any such party or to hold it harmless in respect of any losses, claims, damages, liabilities or expenses referred to in such indemnification or reimbursement provisions, then the Debtors shall contribute to the amount paid or payable by the Indemnified Party as a result of such losses, claims, damages, liabilities or expenses in such proportion as is appropriate to reflect the relative benefits received by the Committee and the Debtors, on the one hand, and Houlihan Lokey, on the other hand, in connection with the services rendered by Houlihan Lokey. If, however, the allocation provided by the immediately preceding sentence is not permitted by applicable law, then the Debtors shall contribute to such amount paid or payable by any Indemnified Party in such proportion as is appropriate to reflect not only such relative benefits, but also the relative fault of the Committee and Debtors, on the one hand, and such Indemnified Party, on the other hand, in connection therewith, as well as any other relevant equitable considerations. Notwithstanding the foregoing, in no event shall the Indemnified Parties be required to contribute an aggregate amount in excess of the amount of fees actually received by Houlihan Lokey from the Debtors pursuant to this Agreement. Relative benefits received by the Committee and the Debtors, on the

Co - Chairs of The Official Committee of Unsecured Creditors of Saint Vincents Catholic Medical Centers of New York
d/b/a Saint Vincent Catholic Medical Centers, et al., as debtors and debtors-in-possession
Page 7

one hand, and Houlihan Lokey, on the other hand, shall be deemed to be in the same proportion as (i) the total value paid or received or contemplated to be paid or received by the Debtors, and its security holders, creditors (including members of the Committee), and other affiliates, as the case may be, pursuant to the transaction(s) (whether or not consummated) contemplated by the engagement hereunder, bears to (ii) the fees received by Houlihan Lokey under this Agreement. Neither the Committee nor the Debtors shall settle, compromise or consent to the entry of any judgment in or otherwise seek to terminate any pending or threatened action, suit, dispute, inquiry, investigation or proceeding in respect of which indemnification or contribution may be sought hereunder (whether or not an Indemnified Party is an actual or potential party thereto), unless such settlement, compromise, consent or termination contains a release of the Indemnified Parties reasonably satisfactory in form and substance to Houlihan Lokey.

Neither Houlihan Lokey nor any other Indemnified Party shall have any liability (whether direct or indirect and regardless of the legal theory advanced) to the Committee, its members (solely in their capacity as members of the Committee), the Debtors or any person or entity asserting claims related to or arising out of this Agreement, Houlihan Lokey's engagement under this Agreement, any transaction, or any actions taken or omitted to be taken by an Indemnified Party, the Debtors, the Committee or its members (solely in their capacity as members of the Committee) in connection with this Agreement, except for losses, claims, damages or liabilities incurred by the Committee, its members (solely in their capacity as members of the Committee) and/or the Debtors which are finally judicially determined by a court of competent jurisdiction to have resulted primarily from the willful misconduct or gross negligence of such Indemnified Party, and no Indemnified Party shall have any liability whatsoever to any other person or entity. The indemnity, reimbursement, and other obligations and agreements of the Committee and the Debtors set forth herein (i) shall apply to any services provided by Houlihan Lokey in connection with this engagement prior to the Effective Date and to any modifications of this Agreement, (ii) shall be in addition to any obligation or liability which such parties may otherwise have to any Indemnified Party, (iii) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of such parties or any Indemnified Party or any person controlling any of them, and (iv) shall survive the completion of the services described in, and any expiration or termination of the relationship established by, this Agreement.

All requests of Houlihan Lokey for payment of indemnity pursuant to this Agreement shall be made by means of application (interim or final as the case may be) and shall be subject to review by the Bankruptcy Court to ensure that payment of such indemnity conforms to the terms of this Agreement and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought. In the event Houlihan Lokey seeks reimbursement for attorneys' fees from the Debtors pursuant to this Agreement, the invoices and supporting time records from such attorneys shall be included in Houlihan Lokey's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

14. **Miscellaneous.** This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any Chapter 11 or Chapter 7 trustee appointed in the Cases. If appropriate, in connection with performing its services for the Committee hereunder, Houlihan Lokey may utilize the services of one or more of its affiliates, in which case the references herein to Houlihan Lokey shall include such affiliates.

Nothing in this Agreement, express or implied, is intended to confer or does confer on any person or entity, other than the Committee, the Indemnified Parties and each of their respective successors, heirs and assigns, any rights or remedies (directly or indirectly as a third party beneficiary or otherwise) under or by reason of this Agreement or as a result of the services to be rendered by Houlihan Lokey hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Houlihan Lokey and one of the Chairs or other authorized representative of the Committee (as authorized by the Committee's Bylaws) and approved by the Bankruptcy Court.

The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

To help the United States government fight the funding of terrorism and money laundering activities, the federal law of the United States requires all financial institutions to obtain, verify and record information that identifies each person with whom they do business as a condition to doing business with that person. Accordingly, the Debtors will provide Houlihan Lokey upon request certain identifying information necessary to verify the identity of the Debtors, such as a government-issued identification number (e.g., a U.S. taxpayer identification number), certified articles of incorporation, a government-issued business license, partnership agreement or trust instrument.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Committee has all requisite power and authority to enter into this Agreement and perform its obligations hereunder. This Agreement has been duly and validly authorized by all necessary action on the part of the Committee and has been duly executed and delivered by the Committee and constitutes a legal, valid and binding agreement of the Committee, enforceable in accordance with its terms. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Houlihan Lokey because this Agreement was drafted by Houlihan Lokey, and the parties waive any statute or rule of law to such effect.

The Committee understands that Houlihan Lokey is not undertaking to provide any legal, regulatory, accounting, insurance, tax or other similar professional advice and the Committee confirms that it is relying on its own counsel, accountants and similar advisors for such advice.

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**

By: _____
       Andrew Turnbull
       Managing Director


Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SAINT VINCENTS CATHOLIC MEDICAL CENTERS OF NEW YORK D/B/A SAINT VINCENT CATHOLIC MEDICAL CENTERS, ET AL.**

By:  Co-chair of the Committee


By:  _____
     Michael Katzenstein
     Title:

All of us at Houlihan Lokey thank you for choosing us to advise the Committee, and look forward to working with you on this engagement.

Very truly yours,

**HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC.**

By: _____

Andrew Turnbull
Managing Director

Accepted and agreed to as of the Effective Date:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF SAINT VINCENTS CATHOLIC MEDICAL CENTERS OF NEW YORK D/B/A SAINT VINCENT CATHOLIC MEDICAL CENTERS, ET AL.**

By: Co-chair of the Committee

By: _____

Michael Katzenstein
Title: _Medical Trust Month_

**EXHIBIT C**
**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
In re:                                                    :     Chapter 11
                                                          :
SAINT VINCENTS CATHOLIC MEDICAL          :     Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, et al.,                 :
                                                          :
                                                          :     (Jointly Administered)
                                          Debtors.     :
------------------------------------------------------------x

### ORDER GRANTING APPLICATION OF OFFICIAL COMMITTEE
### OF UNSECURED CREDITORS FOR ORDER UNDER BANKRUPTCY CODE
### SECTIONS 328(a) AND 1103, BANKRUPTCY RULES 2014 AND 2016, AND S.D.N.Y.
### LOCAL RULES 2014-1, AUTHORIZING EMPLOYMENT AND RETENTION OF
### HOULIHAN LOKEY HOWARD & ZUKIN CAPITAL, INC. AS FINANCIAL ADVISOR
### AND INVESTMENT BANKER *NUNC PRO TUNC* TO APRIL 23, 2010

Upon the application, dated May 13, 2010 (the "Application"), of Official Committee of

Unsecured Creditors (the "Committee") of Saint Vincents Catholic Medical Centers of New

York ("SVCMC") and its affiliated debtors and debtors in possession (collectively, the

"Debtors") for an order, pursuant to sections 328(a) and 1103 of title 11 of the United States

Code, (the "Bankruptcy Code"), rules 2014 and 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") and rule 2014-1 of the Local Bankruptcy Rules for the

Southern District of New York (the "Local Rules"), authorizing the Committee to retain and

employ Houlihan Lokey Howard & Zukin Capital, Inc. ("Houlihan") as financial advisor and

investment banker for the Committee, *nunc pro tunc* to April 23, 2010, pursuant to the terms of

the engagement letter between the Committee and Houlihan, dated as of April 23, 2010 (the

"Engagement Letter"); and the Court having jurisdiction to consider the Application and the

relief requested therein pursuant to 28 U.S.C. § 1334 and the Standing Order of Referral of Cases

to Bankruptcy Judges of the United States District Court for the Southern District of New York

(Ward, Acting C.J.), dated July 10, 1984; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application and determined that the employment of Houlihan by the Committee is necessary and in the best interest of the Debtors' estates, creditors, and other parties in interest and that the terms of compensation being sought by the Application as set forth in the Engagement Letter are reasonable; and the Court having considered the Declaration of Andrew Turnbull, sworn to May 11, 2010 (the "Turnbull Declaration") filed in support of the Application; and the Court being satisfied based on the representations in the Application and the Turnbull Declaration that Houlihan does not represent any other entity having an adverse interest in connection with the case; and the Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and upon all of the proceedings had before the Court, and after due deliberation and sufficient cause appearing therefore, it is hereby:

**ORDERED** that the Application is granted as provided herein; and it is further

**ORDERED** that in accordance with Bankruptcy Code sections 328(a) and 1103, the Committee is authorized to employ and retain Houlihan *nunc pro tunc* to April 23, 2010 as its financial advisor and investment banker in the above-captioned bankruptcy cases on the terms set forth in the Application, the Engagement Letter and the Turnbull Declaration; and it is further

**ORDERED** that all compensation and reimbursement of expenses to be paid to Houlihan shall be subject to the standard of review provided in Bankruptcy Code section 328(a), and not subject to any other standard of review under Bankruptcy Code section 330, and none of the fees

contemplated by the Engagement Letter shall constitute a "bonus" under applicable law; and it is further

**ORDERED** that, notwithstanding the preceding paragraph, the compensation to be paid to Houlihan shall be subject to prior approval of this Court pursuant to the standard of review described above, and the U.S. Trustee shall retain the right to object to the compensation payable pursuant to the Engagement Letter based on the reasonableness standard provided for in Bankruptcy Code section 330; provided, it is understood and agreed that reasonableness for this purpose shall be evaluated by comparing the fees payable in these cases to fees paid to other investment banking firms offering comparable services in other chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of these cases; and it is further

**ORDERED** that in the event Houlihan seeks reimbursement for attorneys' fees pursuant to the terms of the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Houlihan's own application and such invoices and time records shall be subject to the U.S. Trustee's guidelines for compensation and reimbursement of expenses (the "U.S. Trustee Fee Guidelines") and the approval of the Bankruptcy Court under the standards of Bankruptcy Code sections 330 and 331; and it is further

**ORDERED** that in light of the services to be provided by Houlihan and the compensation structure in the Engagement Letter, Houlihan and its professionals shall be excused from the requirement to maintain or provide detailed time records in accordance with Bankruptcy Rule 2016(a), Local Rule 2016-1 and the U.S. Trustee Fee Guidelines or conform to a schedule of hourly rates for its professionals; provided, however, that Houlihan shall nonetheless maintain records (in summary format) of its services rendered for the Committee by

financial restructuring personnel employed in Houlihan's U.S. offices, including reasonably detailed descriptions of those services, the approximate time expended in providing those services and the individuals who provided those services, and shall present such records to the Court. In addition, Houlihan shall submit a list of its foreign personnel that provide services on behalf of the Committee; and it is further

**ORDERED** that to the extent the U.S. Trustee has any objection to the scope, completeness or adequacy of Houlihan's time records or summaries thereof, the U.S. Trustee shall notify Houlihan of such objection within 30 days of receipt thereof or be deemed to have waived any such objection; and it is further

**ORDERED** that all requests of Houlihan for payment of indemnity pursuant to the Engagement Letter shall be made by application and shall be subject to review by the Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought; provided, however, that in no event shall Houlihan be indemnified in the case of its own willful misconduct or gross negligence; and it is further

**ORDERED** that to the extent this Order is inconsistent with the Engagement Letter or the Application, this Order shall govern; and it is further

**ORDERED** that this Court shall retain jurisdiction with respect to all matters arising or related to the implementation of this order; and it is further

Dated: New York, New York
        May ____, 2010

_____
**HONORABLE CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**