**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                            :
In re:                                                      :   Chapter 11
                                                            :
SAINT VINCENTS CATHOLIC MEDICAL                             :   Lead Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, <u>et al.</u>,                         :
                                                            :
                              Debtors.                      :   Jointly Administered
                                                            :
------------------------------------------------------------ X

## MEMORANDUM DECISION

**A P P E A R A N C E S :**

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
(212) 715-9285
Fax : (212) 715-8000
Kenneth H. Eckstein
Adam C. Rogoff
Paul B. O'Neill
*Attorneys for Debtors*

U.S. Department of Justice
U.S. Trustee's Office
33 Whitehall Street
21st Floor
New York, NY 10004
(212) 510-0500
Fax : (212) 668-2255
**Serene K. Nakano**
**Susan D. Golden**
*Attorneys for United States Trustee*

Office of the New York State Attorney General
120 Broadway, 24th Floor
New York, NY 10022
**Neal 3S. Mann**
*Attorneys for the New York State Department of Health*

Neubert, Pepe & Monteith, P.C.
195 Church Street
New Haven, CT 06510
203.821.2000
Fax : 203.821.2009
**Mark I. Fishman**
*Attorney for Patient Care Ombudsman*

Akin, Gump, Strauss, Hauer & Feld, LLP
One Bryant Park
New York, NY 10036
212-872-1000
Fax : 212-872-1002
**David H. Botter**
*Attorney for Official Committee of Unsecured Creditors*

Kurland, Bonica & Associates, P.C.
304 Park Avenue South, Suite 206
New York, NY 10010
(212) 253-6911
Fax:  (212) 614-2532
**Yetta G. Kurland**

Thomas D. Shanahan, P.C.
551 Fifth Avenue, Suite 2010
New York, NY 10176
**Thomas D. Shanahan**
*Attorneys for Richard Leon Stack and other similarly situated individuals*

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiffs in a New York State court proceeding (hereafter, "State Court Plaintiffs") titled *Stack, et al v. New York State Department of Health, et al.*, Index Number 105114/10, (hereafter, the "State Court Action") faxed a letter to the Chambers of the Hon. Cecelia G. Morris on April 20, 2010. The letter requested, *inter alia*, an immediate conference call with the Court and counsel for the Debtors. The letter was docketed by the Court on April 21, 2010, with a notation denying the requests made therein. (ECF Doc. No. 100; hereafter, the "Letter"). On April 21, 2010, an Emergency Application for Ex Parte Relief for Declaratory Judgment and Amended Interim Order was filed by State Court Plaintiffs seeking a declaratory judgment that the State

Court Action may continue in state court or alternatively lifting the stay pursuant to 11 U.S.C. § 362 only with respect to the State Court Action; amending the Interim Order entered by this Court on April 16, 2010 (ECF Doc. No. 53, hereafter "Interim Closure Order") authorizing the Debtors to continue the implementation of a plan of closure for the Debtors' Manhattan Hospital and Certain Affiliated Outpatient Clinics and Practices to stay any closing activity of St. Vincent's Hospital until May 6, 2010 and to allow parties aggrieved by state claims or parties outside the jurisdiction of federal bankruptcy court to seek relief in New York State Court or the courts of most competent jurisdiction. (ECF Doc. No. 101; hereafter, the "Order to Show Cause"). On April 21, 2010, the Debtors filed a Motion to Impose Automatic Stay/Motion of Debtors for Entry of an Order Enforcing the Interim Closure Order and the Automatic Stay seeking the Court to enforce the Interim Closure Order and enforce the automatic stay by enjoining the continued prosecution of the State Court Action. (ECF Doc. No. 104; hereafter, the "Motion to Enforce the Stay"). On April 21, 2010, State Court Plaintiffs filed an objection to the Motion to Enforce the Stay. (ECF Doc. No. 109; hereafter, the "Opposition to Motion to Enforce the Stay"). On April 21, 2010, Debtors filed opposition to the Order to Show Cause. (ECF Doc. No. 110; hereafter, the "Opposition to Order to Show Cause"). On April 22, 2010, State Court Plaintiffs filed a Reply to Motion for Declaratory Judgment and Amended Interim Order. (ECF Doc. No. 112).

A hearing was held on April 22, 2010 (hereafter, the "April 22, 2010 Hearing") to consider the Order to Show Cause, Motion to Enforce the Stay and all related filings  Counsel for State Court Plaintiffs and Counsel for Debtors appeared at the April 22, 2010 Hearing. Following the April 22, 2010 Hearing the Court entered an Order, *inter alia*, enforcing the Interim Closure Order, enjoining the State Court Action, directing the State Court Plaintiffs to present any argument in opposition to the closure of Saint Vincent's Hospital and affiliated Debtors at the Court's May 6, 2010 hearing. (ECF Doc. No. 115). On May 5, 2010, the State Court Plaintiffs filed an objection to entry of the Final Order Authorizing Debtors to Continue Implementation of Plan of Closure. (ECF Doc. No. 189, hereafter "Objection to Final Closure Order").

At the May 6, 2010 hearing (hereafter, the "May 6, 2010 Hearing" and reference thereto "Transcript at"),  after considering the opposition by the State Court Plaintiffs, the Court denied

the State Court Plaintiffs' Objection to the Final Closure Order and granted the Debtors' final order with respect to the plan of closure.

For the reasons stated at the May 6, 2010 Hearing and more fully explained below, the State Court Plaintiffs are enjoined from proceeding in the State Court Action and their Objection to Final Closure Order is overruled.

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. Adjudication of the Motion constitutes a core proceeding within the meaning 28 U.S.C. § 157(b)(2). Venue of the captioned cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. These motions deal with the Court's statutory power pursuant to sections 362 and 105(a) of title 11 of the United States Code (the "Bankruptcy Code" or alternatively the "Code").

## BACKGROUND

The Court finds the facts as stated by Debtors in the Motion to Enforce the Stay to be complete and incorporates them by reference. Unless otherwise noted, the following discussion constitutes the Court's finding of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

Saint Vincent's Catholic Medical Centers of New York ("SVCMC") and certain of its affiliates, as Chapter 11 debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors")[1] filed for bankruptcy on April 14, 2010. (ECF Doc. No. 1). As is routine in many Chapter 11 cases, the Debtors made a number of first-day motions including, *inter alia*, a Motion of the Debtors for Entry of Interim and Final Orders Pursuant to Sections 105(a), 363, and 1108 of the Bankruptcy Code (A) Authorizing the Debtors to Continue the Implementation, in Accordance With New York State Law of a Plan of Closure for the Debtors' Manhattan Hospital

---

[1] In addition to SVCMC, the Debtors are as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home; and (viii) SVCMC Professional Registry, Inc. There are certain affiliates of SVCMC who are not Debtors.

(hereafter, the "Hospital" or "St. Vincent's Hospital") and Certain Affiliated Outpatient Clinics and Practices; and (B) Scheduling a Final Hearing. (ECF Doc. No. 10, hereafter the "Closure Motion"). A hearing was held on April 15, 2010, and the Closure Motion was granted on an interim basis with a final hearing to be held on May 6, 2010. The Interim Closure Order was entered by the Court on April 16, 2010 retaining jurisdiction over the closure and authorizing the Debtors to continue to implement the closure on an interim basis until the final hearing. Interim Closure Order ¶ 2-4.

On April 16, 2010, the United States Trustee pursuant to its duties imposed by 28 U.S.C. § 586(a), 11 U.S.C. § 333(a)(2), Rule 2007.2(c)and an April 16, 2010 Order of this Court appointed a Patient Care Ombudsman. (ECF Doc. No. 63). Daniel T. McMurray of Focus Management Group was appointed to, *inter alia*, monitor the quality of patient care provided to patients of the debtor. 11 U.S.C. § 333(b). On April 21, 2010 the United States Trustee pursuant to its duties imposed by 11 U.S.C. § 332 and an April 16, 2010 Order of this Court appointed a Consumer Privacy Ombudsman. (ECF Doc. No. 108). Alan Chapell of Chapell & Associates, LLC was appointed Consumer Privacy Ombudsman to monitor the Debtor's privacy policies and potential consequences of Debtor's actions with respect to privacy issues. 11 U.S.C. § 332.

On April 6, 2010, before the Bankruptcy petition was filed, the Board of Directors of SVCMC voted to approve the closure of the Hospital and the transfer or closure of the outpatient programs and clinics associated with and operated by the Hospital. Motion to Enforce the Stay ¶ 7. The Debtors submitted a plan of Closure to the New York State Department of Health on April 9, 2010. *Id.* The Debtors worked under the supervision and with the active participation of the New York State Department of Health to implement the closure plan. *Id.* The Closure Motion indicated that the Debtors would continue to work with the Department of Health and other government agencies to "prevent disruption of patient care and ensure a smooth transition of the Debtors' patients to new care providers." Closure Motion ¶ 31. The Closure Motion also noted that the dire financial position of the Debtors required the commencement of the closure process before the Department of Health ("DOH") had granted final approval of the closure motion. Closure Motion ¶ 28.

The State Court Action was commenced in New York State Supreme Court, New York County on or about April 19, 2010,[2] five days after the Bankruptcy petition was filed. Motion to Enforce the Stay ¶ 10. The State Court Plaintiffs sought a court order "permanently enjoining any further actions by the [DOH] to close the Hospital, including but not limited to the approval of a closure plan, pending further order of this Court." State Court Action Complaint at ¶ 74.[3] The State Court Plaintiffs sought a temporary restraining order against the Department of Health from "taking any further actions to facilitate the closure of Saint Vincent's Hospital or approving the closure plan submitted by Saint Vincent's Hospital." State Court Action Order to Show Cause.[4] A hearing regarding the State Court Action was held before the Hon. Marilyn G. Diamond, a New York State Supreme Court Judge, on April 20, 2010. Motion to Enforce the Stay ¶ 11. The Debtors appeared at the State Court Action April 20, 2010 hearing and argued that the bankruptcy stay and the Interim Closure Order prevented the state court from hearing these matters. Motion to Enforce the Stay ¶ 11. Judge Diamond declined to issue the temporary restraining order and instructed the State Court Plaintiffs to appear before this Court. Motion to Enforce the Stay ¶ 12. Judge Diamond set a follow up hearing on April 22, 2010. Motion to Enforce the Stay ¶ 13.

State Court Plaintiffs faxed a letter to the Chambers of the Hon. Cecelia G. Morris on April 20, 2010. The letter requested, *inter alia*, an immediate conference call with the Court and counsel for the Debtors to discuss Judge Diamond's concerns that the bankruptcy court was the proper venue for these matters and not state court. Motion to Enforce the Stay ¶¶ 12-13. This Court denied the requests contained in the Letter. On April 21, 2010, an Emergency Application for Ex Parte Relief for Declaratory Judgment and Amended Interim Order was filed by State Court Plaintiffs seeking a declaratory judgment that the State Court Action may continue in state court or alternatively lifting the stay pursuant to 11 U.S.C. 362 only with respect to the State Court Action; amending the Interim Closure Order pursuant to sections 105(a), 363, and 1108 of the Bankruptcy Code authorizing the debtors to continue the implementation, in accordance with New York State Law, a plan of closure for the Debtors' Manhattan Hospital and Certain

---

[2] The summons and index number in the State Court Action appear to have been purchased on April 20, 2010, the Complaint, an Order to Show Cause and supporting affidavits are signed on April 19, 2010. The Court uses the date contained in the Debtor's Motion to Enforce the Stay ¶ 10, but if the State Court Action was filed on April 20, 2010 it has not bearing on the outcome of this decision.
[3] The State Court Action Complaint can be found as Exhibit B to the Motion to Enforce the Stay.
[4] The State Court Action Order to Show Cause can be found as Exhibit B to the Motion to Enforce the Stay.

- 6 -

Affiliated Outpatient Clinics and Practices to stay any closing activity of St. Vincent's Hospital until May 6, 2010 and to allow parties aggrieved by state claims or parties outside the jurisdiction of federal bankruptcy court to seek relief in New York State Court or the courts of most competent jurisdiction. On April 21, 2010, the Debtors filed a Motion to Enforce the Stay by enjoining the continued prosecution of the State Court Action. On April 21, 2010, State Court Plaintiffs filed Opposition to Motion to Enforce the Stay. On April 21, 2010, Debtors filed Opposition to Order to Show Cause. On April 22, 2010, State Court Plaintiffs filed a Reply to Motion for Declaratory Judgment and Amended Interim Order.

At the April 22, 2010 Hearing, after considering the papers and the arguments raised at the Hearing, the Court held that the State Court Action violated the provisions of the automatic stay and the parties were enjoined from pursuing the State Court Action. The State Court Plaintiffs were ordered to brief the issue of standing in bankruptcy court and present any argument in opposition to the closure of Saint Vincent's Hospital and affiliated debtors at the May 6, 2010 Hearing. On May 5, 2010, the State Court Plaintiffs filed an Objection to Final Closure Order. Their Objection to Final Closure Order stated that they do not seek monetary recovery or equitable relief from the debtor but "merely to compel a state agency to comply with its statutory obligations to ensure the health and safety of the public." Objection to Final Closure Order ¶ 1. The State Court Plaintiffs argue that the requested relief is outside of the Bankruptcy stay because 11 U.S.C. § 362(b) specifically excludes state police powers. *Id.* Alternatively, the State Court Plaintiffs request that the stay be lifted to "satisfy a compelling state interest of public health and safety." *Id.*

At the May 6, 2010 Hearing, State Court Plaintiffs reiterated that they do not seek monetary or equitable relief from the Debtors, but instead to compel the Department of Health to assert its rights under 362(b). Transcript at 54. State Court Plaintiffs asked the Court to direct the Department of Health to comply with its obligations regarding the proper closing of Saint Vincent's Hospital. Transcript at 58. Counsel to the State Court Plaintiffs stated that there have been suggestions made that a federal investigation should be conducted with respect to the propriety of the closure. Transcript at 59. Counsel continued that "we question the business judgment of Saint Vincent's Hospital by virtue of the fact that they have begun closures without an approved closure plan and quite possibly without even a fully submitted closure plan." Transcript at 59. To this end, counsel for the State Court Plaintiffs submitted an affidavit with

the Objection to Final Closure Order that purported to show that St. Vincent's HIV/AIDS unit was supposed to have been acquired by another hospital, but that has not happened because they were being told that a closure plan has not been submitted to the Department of Health. Transcript at 59-60.

Debtors' counsel and Neal Mann ("Mann"), of the New York State Attorney General's Office on behalf of the New York State Department of Health, appeared at the May 6, 2010 Hearing and contradicted the claims of the State Court Plaintiffs. Mann testified that the "Department of Health has been immersed in this case for several months now from the very beginning and we have worked very closely with Saint Vincent's Hospital on this closure." Transcript at 61-2. Mann outlined some of the involvement of the Department of Health for the Court including "daily phone calls from top management to staff…on-site monitors who are at the hospital to verify the closure that's being done. We've also been very involved in where these patients go. Transcript at 62. In case there was any doubt, Mann stated that "The hospital as of now is in complete compliance with state law and we are working very closely to make sure that continues." Transcript at 62.

Counsel to State Court Plaintiffs argued that they are entitled as taxpayers with standing under state court law to compel the Department of Health to use their best efforts to ensure proper closure of St. Vincent's Hospital. Transcript at 65-6. They stated that keeping the hospital open "has no financial impact or minimal financial impact on the Debtors or the creditors and the public health and safety interest would far outweigh any minimal impact financially." Transcript at 66. Debtors responded that the Hospital is no longer operating and that the Debtors were complying with all applicable laws in unwinding the rest of the businesses. Transcript at 67-8. Counsel to State Court Plaintiffs' final remarks at the hearing were, "we think that Saint Vincent's obviously will and should close…we want to make sure that the services that are going to replace Saint Vincent's happen as expeditiously as possible." Transcript at 69.

After considering the opposition by the State Court Plaintiffs, the Court denied the State Court Plaintiffs' objection to entry of the final closure order and granted the Debtor's final order with respect to the plan of closure.

**DISCUSSION**

<u>The Automatic Stay enjoins the State Court Action.</u>

The filing of a bankruptcy petition invokes the powerful protection of the automatic stay under 11 U.S.C. § 362. The filing also creates an estate consisting of "all legal or equitable interests of the debtor in property" at the time of filing as well as other property that may be recaptured during the bankruptcy. 11 U.S.C. § 541(a)(1); *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 522 F. Supp. 2d 569, 576 (S.D.N.Y. 2007). The automatic stay, *inter alia*, operates to stop the commencement or continuation of a judicial, administrative, or other action that seeks to exercise control over or take possession of property of the estate. 11 U.S.C. § 362(a). The crucial role of the stay is to "prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts…to prevent conflicting judgments from different courts and in order to harmonize all of the creditors' interests with one another." *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 522 F. Supp 2d at 578 (*citing In re Fidelity Mortgage Investors*, 550 F.2d 46, 55 (2d Cir. 1976)). At issue in the instant case is 11 U.S.C. § 362(a)(3) which stays, "any act … to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

The State Court Plaintiffs violated the automatic stay by bringing the State Court Action that sought to exercise control over property of the estate. Although the State Court Action was brought against the New York State Department of Health and did not name the Debtors, this technicality does not insulate the State Court Plaintiffs from 11 U.S.C. § 362(a)(3). By its clear and unambiguous terms, § 362(a)(3) stays "any act … to exercise control over property of the estate," and is not limited to acts brought against the debtor. 11 U.S.C. § 362(a)(3). The language in the Code is purposefully broad to encompass a wide array of actions that seek to exercise control over property of the estate and the Court must look to the purpose of the Bankruptcy Code to interpret its meaning. *In re Comcoach Corp.*, 698 F.2d 571, 573 (2d Cir. 1983)(*citing Kokoszka v. Belford*, 417 U.S. 642, 645-46 (1974)). One of the Bankruptcy Code's main purposes, and the one most relevant here, "is to convert the bankrupt's estate into cash and distribute it among creditors." *In re Comcoach Corp.*, 698 F.2d at 573.

It is well established in this Circuit that even if the action is taken against a non-debtor the Court must examine the effect of the action, and if that effect "would inevitably have an adverse impact on property of the bankrupt estate, such action should be barred by the automatic stay." *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.*), 835 F.2d 427, 431 (2d Cir. 1987). In *Steakhouse*, the debtor assigned its lease to an entity called ISH, with the consent of the debtor's landlord. *Id*. at 428-29. The debtor sub-leased the space from ISH, which was the nominal tenant. The debtor and its parent company filed for chapter 11 bankruptcy. *Id*. The landlord rejected debtor's attempt to cure the lease arrears, demanded of ISH that ISH pay the arrears, and served a default notice and intent to terminate the lease on ISH. *Id*. The bankruptcy court found that debtor's interest in the lease was property of the estate, and that the landlord's attempt to terminate the lease violated the automatic stay, pursuant to § 362(a)(3). *Id*. at 429. Affirming the bankruptcy court, the Second Circuit noted that even a mere possessory interest in real property triggers the automatic stay. *Id.* at 430. The appellate court held, "If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *Id.* at 431.

The State Court Plaintiffs ask this Court for declaratory judgment that their State Court Action may continue in New York State Supreme Court. Order to Show Cause ¶1. The State Court Action sought emergency relief to immediately stay the approval of the closure plan of St. Vincent's Hospital by the New York State Department of Health and a stay of any closing of St. Vincent's Hospital until all interested parties may be heard why such closing is a breach of law and could cause irreparable harm. Order to Show Cause, Emergency Declaration of Yetta G. Kurland ¶ 2. Although SVCMC was not named in the State Court Action, it is clear that the action related directly to property of the Debtors' estate, the Hospital. If the State Court Action was allowed to continue and a Temporary Restraining Order was issued, the Hospital would have been forced to operate for "an indefinite period, threatening the health and safety of their remaining patients, diverting estate assets and jeopardizing the Debtors' numerous viable healthcare operations." Motion to Enforce the Stay ¶ 17.

As the Debtors point out, a similar action was taken in the first SVCMC bankruptcy filing seeking to restrain the New York State Department of Health from approving a closure plan. Motion to Enforce the Stay ¶ 19. These issues are not new to this Court, as was evident in the

motion to close St. Mary's Hospital in St. Vincent's previous bankruptcy case. *In re Saint Vincent's Catholic Medical Centers of New York*, 2007 WL 2492787 *8 (Bankr. S.D.N.Y. August 29, 2007); *McCloud v. Novello as Commissioner of the Department of Health*, Hon. Theodore T. Jones, of the Kings County Supreme Court, dated July 27, 2005. Similar to the present case, efforts to close St. Mary's Hospital began before the bankruptcy case was commenced by seeking both canonical approval as well as approval from the DOH. *Id.* at 8. St. Vincent's did not file a first day motion to close St. Mary's Hospital, Brooklyn, New York. *Id.* at 9. A former patient brought suit in New York State Supreme Court, Kings County to prevent the Department of Health from approving a closure plan. The debtors were not named as parties. On July 22, 2005, the former patient received a temporary restraining order against the DOH pursuant to Article 78 of the CPLR. On July 29, 2005, counsel for the debtor filed a complaint with the Bankruptcy Court seeking to enjoin the state court litigation. At a hearing held on August 4, 2005 the bankruptcy court indicated that the automatic stay applied to the state court litigation and the state court plaintiff thereafter ceased prosecution of action. *Id.* at 21. In the first St. Vincent's case, the motion to close St. Mary's was carried because the original motion was not supported by a sufficient record submitted by the debtor and at the hearing the attorney presented no testimony. *Id.* at 21. Similar to the first St. Vincent's bankruptcy, State Court Plaintiffs cannot claim refuge from the automatic stay by virtue of the fact that the debtor is not a named party in the state court proceeding. By seeking to exercise control over the bankruptcy estate, the State Court Action violates § 362(a)(3).

The police power exception is inapplicable as asserted by State Court Plaintiffs.

There are several exceptions to the automatic stay including governmental units ability to enforce their police and regulatory powers. 11 U.S.C. § 362(b)(4). Courts have narrowly construed 362(b)(4) to allow actions by governmental units to continue if they are enforcing laws affecting health, welfare and public safety and not to merely protect its pecuniary interest. *In re Chateaugay Corp.*, 115 B.R. 28 (Bankr. S.D.N.Y. 1988). The plain and unambiguous language of 362(b)(4) only excepts actions brought by a governmental unit.[5] State Court Plaintiffs make

---

[5] 362(b)(4) also excepts from the stay any acts by "any organization exercising authority under the 1993 Chemical Weapons Convention Implementation Act." 11 U.S.C. § 362(b). This exception is not relevant to the instant matter.

no argument that they are a governmental unit and provide no case law to support such a strained reading of § 362(b)(4).

In *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, Quincy Community Services District, one of more than 30,000 special districts across the country, owned and operated public drinking water in California. *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 522 F. Supp. 2d at 571. Quincy sued various oil companies for contamination of groundwater by the gasoline additive MTBE and the potential detrimental health effects on the public. *Id.* The matters were brought in state court and then removed and consolidated to federal district court including a bankruptcy case which had jurisdiction over Texaco who had filed for bankruptcy protection. *Id.* at 571-72. The states of California and New Hampshire were able to reverse the removal of the cases from their state courts. *Id.* at 573. Quincy argued that as a governmental unit, as defined in 11 U.S.C. 101(27), it is immune from the Bankruptcy removal statue[6] as well as the automatic stay. In rejecting this argument the court noted that unlike the state of California and New Hampshire, Quincy lacked any police or regulatory powers. *Id.* at 573. Technically, Quincy qualified as a governmental unit under 11 U.S.C. § 101(27) though the court could not read § 362(b)(4) so broadly because it "would dramatically affect the Bankruptcy Code given that each one of these special districts would … not be subject the automatic stay." *Id.* at 577. A broad reading of § 362(b)(4) would allow too many entities to have "free rein over a debtor's assets simply because they state that they are enforcing police or regulatory power despite the fact that they generally lack any such authority." *Id.* The Court is persuaded by *In re Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation* and cannot construe §362(b)(4) so broadly as to allow individuals to exercise police and regulatory powers that are not theirs to exercise.

The Court notes that an action by the New York State Department of Health done in furtherance of the welfare of the people of the state of New York would likely be outside the reach of the automatic stay, but such an action in the hands of the State Court Plaintiffs does not meet this standard.

---

[6] The Bankruptcy removal statute can be found at 28 U.S.C. § 1452 and provides in pertinent part that a "party may remove any claim or cause of action in a civil action other than … a civil action by a governmental unit to enforce such governmental unit's police or regulatory power." 28 U.S.C. § 1452. The court in *Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation* discusses the parallel language and logic of 11 U.S.C. 362(b)(4). In *Methyl Tertiary Butyl Ether (MTBE) Products Liability Litigation*, 522 F.Supp.2d at 577-78.

<u>The State Court Plaintiff's do not have standing to request relief from the automatic stay</u>

Only a party in interest can request the for-cause relief provided in 11 U.S.C. § 362(d). *In re Comcoach Corp.*, 698 F.2d at 573. "The 'real party in interest' is the one who under the applicable substantive law, has the legal right which is sought to be enforced or is the party entitled to bring suit." *Id.* (citations omitted). Since 'party in interest' is not defined by the Bankruptcy Code, the Second Circuit looks to the underlying purpose of the Code which is "to provide a forum where creditors and debtors could settle their disputes and thereby effectuate the objectives of the statute." *Id.* The movant on a motion to lift the stay must be either a creditor or a debtor. *Id.*

At the May 6, 2010 Hearing, counsel for the State Court Plaintiffs argued that if the State Court Action is enjoined than they are entitled to standing in the Bankruptcy Court to compel the Department of Health to use their best efforts to ensure proper closure of St. Vincent's. Transcript at 65-66. Standing in the Bankruptcy Court would derive from the general standing of taxpayers in state court to compel state agencies to act in accordance with law. *Id.* The State Court Plaintiffs point to no section in the Bankruptcy Code and provide no case law that would compel this Court to find that they had such standing. The State Courts Plaintiffs lack standing to move for relief from the automatic stay because they are not a party in interest.

In *Comcoach*, Roslyn Savings Bank loaned Jon-Rac Associates money secured by a mortgage on certain premises. *In re Comcoach Corp.*, 698 F.2d at 572-3 (2d Cir. 1983). Jon-Rac, with the bank's permission, conveyed the mortgaged premises to Rhone Holdings Nominee Corporation who entered into a written agreement with the bank to pay the mortgage. *Id.* Rhone leased the property to Comcoach subject to the mortgage. *Id.* No payments were made on the mortgage and Roslyn commenced a foreclosure proceeding in New York State Supreme Court, Suffolk County. *Id.* Comcoach, the tenant in possession of the mortgaged premises, was not named as a party or served process. *Id. at* 572 The bank, believing it was barred by the automatic stay to proceed in state court, sought to lift the automatic stay to name Comcoach as party defendant in the state court action. *Id. at* 572-73. The bankruptcy court held that Roslyn lacked standing to bring a lift-stay motion against Comcoach because they were not a creditor of Comcoach. *Id*.

Similar to the instant case, the bank in *Comcoach* was neither a debtor or a creditor of the estate. *Id.* at 574. The State Court Plaintiffs are neither the debtor or creditors and cannot move for relief from the automatic stay. The Court informed counsel for the State Court Plaintiffs to address this threshold jurisdictional issue. The issue was not addressed by the State Court Plaintiff. The novel argument that this Court should allow standing for the State Court Plaintiffs similar to general taxpayer standing lacks support in the Code, case law, or the underlying policies of bankruptcy. Motions for relief from the stay are expressly limited to parties in interest, and to allow a generalized tax-payer standing would eviscerate the limits on standing imposed by the Code.

Even if the State Court Plaintiffs have standing pursuant to 11 U.S.C. 1109(b) to object to entry of the Final Closure Order, they have not demonstrated cause to not enter the order.

Bankruptcy Code § 1109(b) provides, "A party in interest, including [a creditor and equity security holder], may raise and may appear and be heard on any issue in a case under this chapter." Fed. R. Bankr. P. 2018(a) provides, "In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any interested entity to intervene generally or with respect to any specified matter." The Court construes *Metro North State Bank*, discussed herein, to mean that, when Bankruptcy Code § 1109(b) and Fed. R. Bankr. P. 2018(a) are read together, the long list of interested parties set out in § 1109 does not guarantee a party on that list the right to object to every motion; rather the party must be directly interested in the motion at hand. Otherwise, the party needs the Court's permission to intervene.

In *Metro North State Bank v. The Barrick Group, Inc. (In re The Barrick Group)*, 98 B.R. 133 (Bankr. D. Conn. 1989), the bank moved for relief from the stay. A group of unsecured creditors objected, "on the ground that certain fraudulent acts may have been committed by [the Bank] and the debtor and discovery is necessary to develop that claim." *Id.*. at 134. The court overruled the objection, noting that many provisions in the Bankruptcy Code require expedited results, such as lift-stay motions and authorization to use cash collateral. The court noted that 11 U.S.C. § 1109(b) permits parties in interest to object to relief sought in a contested matter; "if a peripheral party wishes to file request for discover and/or join in the evidentiary hearing, leave to intervene should be sought pursuant to Rule 2018(a)." *Id.* at 135.

"[B]ankruptcy causes fundamental changes in the nature of corporate relationships. One of the painful facts of bankruptcy is that the interests of shareholders become subordinated to the interests of creditors. In cases in which it is clear that the estate is not large enough to cover any shareholder claims, the trustee's exercise of the corporation's attorney-client privilege will benefit only creditors, but there is nothing anomalous in this result; rather, it is in keeping with the hierarchy of interests created by the bankruptcy laws." *Commodity Futures Trading Com v. Weintraub*, 471 U.S. 343, 355 (1985) (power to waive attorney-client privilege with respect to pre-bankruptcy communications passes to bankruptcy trustee).

The Court is compelled by the reasoning of *In re Refco Inc.*, 505 F.3d 109 (2d Cir. 2007), that the State Court Plaintiffs likely do not even have standing to object to the closure of the hospital. *Id.* In *Refco*, investors in Sphinx, an exempted investment company incorporated in the Cayman Islands, sought to object to a settlement approved by the Bankruptcy Court pursuant to Fed. R. Bankr. P. 9019 of a preference action. *Id.* at 111. The investors' assets and liabilities were held in a particular cell managed by Sphinx, and it appeared that Sphinx managed fifteen cells at the time of Bankruptcy. *Id.* Refco Alternative Investments was hired to monitor Refco-related investments for Sphinx and transferred $312 million ultimately to the benefit of the cells some five days before Refco, Inc. filed for bankruptcy. *Id.* The committee of unsecured creditors sued Sphinx for preferential transferred and the matter was settled by an agreement between Sphinx and the committee whereby Sphinx would return $263 million to the Refco estate. *Id.*

The Second Circuit held that the cell investors lacked standing under 11 U.S.C. § 1109(b) to object to the settlement since they seek to enforce rights that belong to Sphinx as a creditor and defendant in the adversary proceeding and not any distinct rights of their own. *Id.* at 117. The Circuit reaffirmed its holding in *Comcoach*[7] that the "real party in interest is the one who … has the legal right which is sought to be enforced or is the party entitled to bring suit" and rejected "the notion that any particular creditor's interests may be asserted by anyone other than the creditors." *Id.* at 117 (citing *In re Comcoach Corp.*, 698 F.2d at 572-3). Investors sought to show that the settlement by Sphinx was not done at arms length, entered into subject to conflicts

---

[7] "In Comcoach we were interpreting the term party in interest in the context of a request for relief from a stay under 11 U.S.C. § 362(d)(1) and not in the context of the right to be heard under § 1109(b). Strictly construing that term, we held that only a creditor can move to lift the automatic stay under § 362(d)(1)." *In re Refco Inc.*, 505 F.3d at 116, n. 9.

of interest, and was not a properly authorized corporate act. *Id.* at 119. Allowing all parties standing in a bankruptcy case would slow the process of reorganization and marshalling of assets. *Id.* The standard to be heard under §1109(b) is more broadly construed than standing under §362(d), but it is not infinitively expansive. *Id.* at 118. "Bankruptcy courts are primarily courts of equity, but they are not empowered to address any equitable claim tangentially related to the bankruptcy proceedings." *Id.* Bankruptcy courts do not have the general jurisdiction of state courts and are meant as a "forum where creditors and debtors can settle their disputes with each other." *Id.*

Even assuming that the State Court Plaintiffs had standing to object to the Final Closure Order they failed to demonstrate why the Court should not enter the order pursuant to 11 U.S.C. §§ 105(a), 363, and 1108. The Debtors correctly point out that the power to operate the debtor's business pursuant to 11 U.S.C. § 1108 also allows the debtor to modify or cease operations of the debtor if it is appropriate under the circumstances. *See In re Thrifty Liquors, Inc.*, 26 B.R. 26 (Bankr. D. Mass. 1982); 7 Collier on Bankruptcy ¶ 1108.13 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2009).

The Debtors have presented an Affidavit/Declaration of Mark E. Toney, the chief restructuring officer in support of its first-day motions that outlined the grave financial condition of the Debtors and of the Hospital in particular. (ECF Doc. No. 18; hereafter, the "Toney Affidavit"). According to the Toney Affidavit, in 2009 the Hospital had a $107 million operating loss. Contrary to the position of the State Court Plaintiffs, a requirement by this Court to continue operation of the Hospital would have been extremely detrimental to the financial condition of the Debtors and would likely undermine the safety of the patients that would remain at an anemic facility. The Patient Care Ombudsman as well as the Consumer Privacy Ombudsman independently monitor the operation and closing process of the hospital. These individuals may have standing to object to any action by the Debtors whereby patients are put at risk, and they have not objected to the closing.

Most fatal to the State Court Plaintiffs is the appearance at the May 6, 2010 Hearing of the New York State Department of State. Neal Mann, New York State Attorney General's Office on behalf of the New York State Department of Health testified that the "Department of Health has been immersed in this case for several months now from the very beginning and we have worked very closely with Saint Vincent's Hospital on this closure." Transcript at 61-62.

The Court is particularly compelled by Mr. Mann's statement that "The hospital as of now is in complete compliance with state law and we are working very closely to make sure that continues." Transcript at 62. This Court believes that the New York State Department of Health or the Ombudsmen are the proper parties in interest pursuant to 11 U.S.C. § 1109 to object to the closure of the Hospital, however the Court considered the objections filed by State Court Plaintiffs and considered the arguments made at the May 6, 2010 Hearing.

This Court is cognizant of Bankruptcy Judge Hardin's observation in the previous St. Vincent's bankruptcy case that:

> The closing of any medical facility in a big city is almost certain to generate intense and emotional opposition from doctors, other hospital staff and affected local community groups. The Court must be sensitive to such pressures and must grant time and attention to the objecting community voices. Most important, the debtors must provide the Court with a comprehensive, well-documented record of affidavits and supporting exhibits demonstrating to the press, politicians and the public the economic or other facts of life requiring closure.

*In re Saint Vincent's Catholic Medical Centers of New York*, 2007 WL 2492787 *21 (Bankr. S.D.N.Y. August 29, 2007).

The Court finds that the process of winding down the Hospital has been done in a procedurally proper manner. The Debtors have been open at all hearings and in all their papers about their dire financial condition. The efforts to save St. Vincent's Hospital have been widely reported in the media and documented in court papers. The Court is saddened by the closing of this historic Hospital that has provided so many services to so many people for more than 150 years. However, the Court is bound to perform its basic function as providing an efficient forum "to convert the bankrupt's estate into cash and distribute it among creditors." *In re Comcoach Corp.*, 698 F.2d at 573.

The final comments of counsel to the State Court Plaintiffs is telling. They admitted, "we think that Saint Vincent's obviously will and should close…we want to make sure that the services that are going to replace Saint Vincent's happen as expeditiously as possible." Transcript at 69. The State Court Plaintiffs did not provide the Court with any legally relevant reasons why the Final Closure Order should not be entered.

## **CONCLUSION**

For the reasons expressed at the May 6, 2010 Hearing and as more fully explained above, the State Court Plaintiffs are enjoined from proceeding in the State Court Action and their objection to entry of the Final Order Authorizing Debtors to Continue Implementation of Plan of Closure is overruled.


Dated: Poughkeepsie, New York
      May 14, 2010

                                        /s/ Cecelia Morris
                                        U.S. BANKRUPTCY JUDGE