**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SAINT VINCENTS CATHOLIC MEDICAL CENTERS OF NEW YORK, *et al.*, | Case No. 10-11963 (CGM) |
| | (Jointly Administered) |
| Debtors. | **Re Docket Nos. 22,61** |

### FINAL ORDER (I) AUTHORIZING DEBTORS TO INCUR POSTPETITION INDEBTEDNESS; (II) GRANTING SENIOR SECURITY INTERESTS AND SUPERPRIORITY CLAIMS (III) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL (IV) GRANTING ADEQUATE PROTECTION; AND (V) PROVIDING RELATED RELIEF

THIS MATTER came before the Court on April 15, April 16, and May 13, 2010, on the motion (the "**Motion**") of Saint Vincents Catholic Medical Centers of New York ("**SVCMC**") and certain of its affiliates, as Chapter 11 debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Medical Centers**" or the "**Debtors**")[1] in the above-referenced Chapter 11 cases (the "**Chapter 11 Cases**") for entry of an Interim Order (the "**Interim Order**") and this Final Order (the "**Final Order**," and, together with the Interim Order, collectively, the "**DIP Orders**") authorizing the Debtors to (i) incur postpetition indebtedness; (ii) grant senior security interests and superpriority claims, pursuant to Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended, the "**Bankruptcy Code**"), including pursuant to sections 105(a), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, and rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); (iii) use Cash Collateral (defined below) pursuant to Bankruptcy Rule 4001(b) and section 363(c) of the Bankruptcy Code, and

---

[1] In addition to SVCMC, the Debtors are as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Pax Christi Hospice, Inc.; (iv) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center ("**St. Elizabeth Ann**"); (v) St. Jerome's Health Services Corporation d/b/a Holy Family Home; (vi) SVCMC Professional Registry, Inc.; (vii) Chait Housing Development Corporation; (viii) Fort Place Housing Corporation, and (ix) 555 6th Avenue Apartment Operating Corporation.  There are certain affiliates of SVCMC who are not Debtors.

provide adequate protection in accordance with sections 364(d), 363(c)(2) and 361 of the

Bankruptcy Code; and (iv) grant other related relief. Pursuant to the Motion, the Debtors have

requested that the Court:

(a) authorize, pursuant to the Bankruptcy Code, including sections 105(a), 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, rules 2002, 4001, and 9014 of the Bankruptcy Rules, and rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), the Debtors to obtain financial accommodations consisting of a revolving line of credit (the "**DIP Facility**") under which borrowings may be made from time to time pursuant to that certain Debtor In Possession Credit Agreement (together with all schedules and exhibits thereto, and as it may be amended, restated, supplemented, or otherwise modified from time to time, the "**DIP Credit Agreement**," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, the "**DIP Loan Documents**")[2] by and among (i) the Debtors, and (ii) General Electric Capital Corporation (in its individual capacity, "**GE Capital**"), as agent (collectively, the "**DIP Agent**") for financial institutions from time to time party to the DIP Credit Agreement (collectively, "**DIP Lenders**" and individually each a "**DIP Lender**") and for itself as a DIP Lender all in respect of the obligations set forth in the DIP Budget (defined below), DIP Loan Documents and this Final Order ("**DIP Obligations**,");

(b) authorize the Debtors to execute and deliver to the DIP Agent the DIP Loan Documents;

(c) authorize the Debtors to borrow on a final basis the amount of Seventy-Eight Million Dollars ($78,000,000) (the "**Maximum Permitted Loan Balance**"), in accordance with the DIP Budget, the DIP Loan Documents and this Final Order;[3]

(d) authorize, pursuant to the Bankruptcy Code, including section 363(c) thereof, the Debtors to use Cash Collateral (defined below) in which the Prepetition Lenders, the Dormitory Authority of the State of New York ("**DASNY**") and the Pension Benefit Guaranty Corporation (the "**PBGC**") have an interest in accordance with the DIP Budget, the DIP Loan Documents and this Final Order;

(e) in accordance with the DIP Budget, the DIP Loan Documents and this Final Order, authorize the Debtors to use Cash Collateral and proceeds from the DIP Facility to, *inter alia*:

(i) repay in full in cash in the approximate amount of $43,190,000.00 (the "**Revolver Roll-Up Payment**") the Debtors' prepetition senior secured obligations (the "**Prepetition Obligations**") in respect of prepetition

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to those terms in the Motion, DIP Credit Agreement and the other DIP Loan Documents.
[3] In the sole discretion of the DIP Agent and the DIP Lenders, and without further Order of the Court, the Maximum Permitted Loan Balance of the DIP Facility may be increased to an amount not to exceed Eighty-Five Million Dollars ($85,000,000).

revolving loans to GE Capital, as agent (collectively, the "**Prepetition Agent**") for financial institutions (collectively, "**Prepetition Lenders**" and individually each a "**Prepetition Lender**") and for itself as a Prepetition Lender from time to time party to that certain Credit Agreement dated as of August 30, 2007 (as it may be amended, restated, modified or supplemented from time to time, the "**Prepetition Credit Agreement**," and together with all security, pledge, guaranty, and other lien and loan documents entered into in connection therewith and as further amended, restated, supplemented or otherwise modified from time to time, "**Prepetition Loan Documents**") by and among (x) SVCMC, Mugavero, St. Jerome's, St. Elizabeth Ann's, Pax Christi, and St. Vincent's Physician Services, P.C., (y) the Prepetition Agent; and (z) the Prepetition Lenders;

(ii)     fund the orderly wind down and closure of the Hospital Businesses and fund the operating expenses and orderly disposition of the Non-Hospital Assets during these Chapter 11 Cases,

(iii)     fund postpetition allowed fees and expenses incurred by Retained Professionals (defined below) for the Debtors and any statutory committee including any committee appointed pursuant to section 1102 of the Bankruptcy Code (collectively, the "**Committee**") and to fund other fees and expenses, including with respect to the Ombudsmen (defined below) and with respect to the Retained Professionals of the Ombudsmen,

(iv)     pay interest and fees on the DIP Facility,

(v)     pay fees and expenses of the DIP Agent and the DIP Lenders related to the DIP Facility and these Chapter 11 Cases, including, without limitation, attorneys' fees and fees of professional advisors on the terms set forth in the DIP Loan Documents and this Final Order,

(vi)     pay Adequate Protection Payments (defined below), and

(vii)     fund the other items covered by the terms of the DIP Budget, this Final Order, and the DIP Loan Documents;

(f)     authorize, pursuant to the Bankruptcy Code, including sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) thereof, the DIP Agent and DIP Lenders to receive DIP Superpriority Claims (defined below) and DIP Liens (defined below) with respect to all assets of the Debtors, of any nature whatsoever and wherever located, whether first arising prior to or following the Petition Date, now owned or hereafter acquired, including all accounts, all chattel paper, all commercial tort claims, all deposit accounts, all documents, all equipment, all general intangibles, all goods, all instruments, all inventory, all investment property, all letter-of-credit rights, all books and records, and all proceeds, rents, profits, and offspring of the foregoing (including Cash Collateral, as defined below), and all Avoidance Action Proceeds[4] (all of the foregoing, and as more fully set forth in the DIP Loan Documents, the "**DIP Collateral**"),

---

[4] "**Avoidance Action Proceeds**" means proceeds of all claims and causes of actions under Chapter 5 of the Bankruptcy Code, including, without limitation, those under sections 502(d), 544, 545, 547, 548, 549, 550, 552(b) and 553, and state laws of similar import.

subject and subordinate in each case to the Carve-Out (defined below) and Permitted Prior Senior Liens (defined below);

(g)     authorize the following forms of adequate protection (collectively, the "**Adequate Protection**"), pursuant to applicable provisions of the Bankruptcy Code, including sections 361, 503(b) and 507(b) thereof, and the terms of this Final Order:

(i)     that the Prepetition Agent and the Prepetition Lenders, whose liens and security interests are being primed by the DIP Obligations, DIP Liens and DIP Superpriority Claims under the DIP Credit Agreement and other DIP Loan Documents, and whose Prepetition Collateral (defined below) may be used, sold or leased by the Debtors, be granted the following as adequate protection of such interests with the same relative priority of the liens and claims owing to the Prepetition Lenders:  (i) Adequate Protection Liens (defined below), subject only to the Permitted Prior Senior Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims, and the Carve-Out, (ii) Section 507(b) Claims (defined below), subject and subordinate only to the Permitted Prior Senior Liens, DIP Obligations, DIP Liens, DIP Superpriority Claims and the Carve-Out, and (iii) Adequate Protection Payments (defined below), all on the terms set forth herein;

(ii)     that DASNY, whose liens and security interests are being primed, in part, by the DIP Obligations, DIP Liens and DIP Superpriority Claims under the DIP Credit Agreement and other DIP Loan Documents, and whose Cash Collateral may be used by the Debtors, be granted certain Adequate Protection Payments on the terms set forth herein; and

(iii)     that the PBGC and Sun Life Assurance Company of Canada ("**Sun Life**") be granted the Adequate Protection set forth herein.

(h)     modify the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and the DIP Orders and satisfy the Prepetition Agent Adequate Protection Obligations (defined below); and

(i)     waive any stay of effectiveness under the Bankruptcy Code and Bankruptcy Rules, including under Bankruptcy Rule 4001(a)(3), and under the Local Rules and, provide for the immediate effectiveness of this Final Order.

IT APPEARING that due and appropriate notice of the Motion, the relief requested therein, and the interim hearing (the "**Interim Hearing**") has been given and served by the Debtors, and notice of the final hearing (the "**Final Hearing**") with respect to the Motion has been given and served by the Debtors on the parties identified on the General Service List and the Special Service List (collectively, the "**Notice Parties**") identified in the Second Amended

Interim Administrative Order Establishing Case Management Procedures entered on April 19, 2010 [Docket No. 83] (the "**Case Management Order**"); and the Final Hearing having been held; and upon all of the pleadings filed with the Court and evidence presented in support of the Motion, and all of the proceedings held before the Court; and the Court having noted the appearances of parties in interest at the Final Hearing in the record of this Court; and any objections to the Motion having been resolved or overruled by the Court; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates (the "**Estates**") and their creditors; and after due deliberation and consideration, and sufficient cause appearing therefor,

THE COURT HEREBY FINDS:[5]

A.      Notice and Hearing.  Notice of the Motion, the relief requested therein, the Interim Hearing and the Final Hearing on the Motion has been served in accordance with all applicable rules and guidelines, including under section 102(1) of the Bankruptcy Code, Bankruptcy Rule 4001(b), Local Rule 4001-2(i) and the Case Management Order, which notice is appropriate under the circumstances and sufficient for all purposes under the Bankruptcy Code, Bankruptcy Rules and Local Rules.

B.      Chapter 11 Filed.  The Debtors filed their petitions pursuant to Chapter 11 of the Bankruptcy Code on April 14, 2010 (the "**Petition Date**"), and are presently operating as debtors in possession pursuant to 11 U.S.C. §§1107 and 1108.

C.      Necessity and Best Interest.

(1)      The Debtors do not have sufficient cash collateral or other available sources of working capital and financing to implement the Closure Plan, to continue to market

---

[5] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact.

and effectuate the sales of their Non-Hospital Assets and to pay the costs attendant to these Chapter 11 Cases. Accordingly, the Debtors urgently need access to the DIP Facility and use of the Cash Collateral to continue to provide adequate care to their remaining patients in advance of their transfer to other facilities, to pay certain claims of their employees, utilities, and other short-term costs pending the shut-down of the Hospital Businesses and to otherwise implement the Closure Plan. In addition, to preserve the value of the Non-Hospital Assets for the benefit of all creditors and other parties in interest, the Debtors urgently need access to the DIP Facility and use of the Cash Collateral to continue marketing such Non-Hospital Assets as a going concern and to consummate the sale transactions that were negotiated prior to the Petition Date.

(2)    Consummation of the DIP Facility and authorization to use the Cash Collateral in accordance with this Final Order is in the best interests of the Debtors, their creditors, patients, estates and the other parties in interest because it will stave off an immediate closure (which would jeopardize the remaining patients of the Hospital and the sale of the Non-Hospital Businesses as a going concern) and enhance the value of the Debtors' Estates for the benefit of all creditors and other parties in interest.

(3)    The priming of certain liens on the Prepetition Collateral and payment of the Revolver Roll-Up Payment will enable the Debtors to obtain the DIP Facility and continue to operate their businesses for the benefit of their Estates and creditors. The Debtors are unable to obtain adequate unsecured credit allowable under section 503 of the Bankruptcy Code as an administrative expense and are unable to obtain other financing on equal or more favorable terms than the DIP Credit Agreement and the other DIP Loan Documents. Postpetition financial accommodations in the amount provided by the DIP Agent and DIP Lenders pursuant to the DIP Loan Documents are unavailable to the Debtors generally and, including from the DIP Lenders,

without the grant to the DIP Agent, for the ratable benefit of the DIP Lenders, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the Bankruptcy Code, the claims, priorities and liens provided for in the DIP Loan Documents and this Final Order.

(4)     The terms of the DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(5)     The DIP Facility and the provisions of this Final Order, the DIP Credit Agreement and the other DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Agent and the DIP Lenders, and the extension of the financial accommodations to the Debtors by the DIP Agent and the DIP Lenders pursuant to this Final Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code.

(6)     The Debtors (in consultation with their advisors) have determined that (i) the DIP Budget is reasonable and will allow the Debtors to operate in the Chapter 11 Cases without the accrual of unpaid allowed administrative expenses; and (ii) the DIP Budget includes all reasonable, necessary, and foreseeable expenses to be incurred for the period set forth in the DIP Budget in connection with the closure of the Hospital Businesses pursuant to the Closure Plan and the marketing and the sales of their Non-Hospital Assets during the pendency of these Chapter 11 Cases.

(7)     The Debtors anticipate that as of the week ending May 7, 2010, the DIP Obligations of the Debtors will be a total of approximately $50 million, which $50 million of DIP Obligations will consist of (i) approximately $22 million of borrowing under the DIP

Facility that was used to make the Revolver Roll-Up Payment and (ii) approximately $28 million of new postpetition advances under the DIP Facility, taking into account anticipated cash receipts and disbursements as provided for in the DIP Budget.

The Court, having determined that good cause exists for the relief requested in the Motion,

IT IS HEREBY ORDERED as follows:

2.      <u>Jurisdiction</u>.  This Court has core jurisdiction over the Chapter 11 Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      <u>Notice</u>.  Under the circumstances, notice of the Motion, the Interim Hearing and the Final Hearing constitutes due and sufficient notice thereof and complies with all applicable Bankruptcy Rules, including Rules 2002, 4001(b) and (c), 5003(e) and 9014 and the local rules of this Court, including Local Rule 4001-2(i), and the Case Management Order, and no other notice need be given.

4.      <u>The DIP Budget</u>.

(a)      The amount of the DIP Facility and Cash Collateral authorized to be used hereby shall not exceed the amounts reflected in the initial budget prepared by Debtors, which shall be in form and substance satisfactory to the DIP Agent (as amended, supplemented, extended or otherwise modified from time to time, the "**<u>DIP Budget</u>**") for the time period set forth therein, but in no event beyond the Termination Date.

(b)      The DIP Budget may be amended, supplemented, extended or otherwise

modified from time to time in any manner as to which Debtors and the DIP Agent mutually agree without further order of this Court or advance notice to any Person (other than counsel to the Committee). The Debtors shall promptly provide any modified DIP Budget to the Office of the United States Trustee (the "**U.S. Trustee**") and counsel for the Prepetition Agent and counsel for the Committee; provided, however, the Debtors may take appropriate actions with respect to confidentiality of any portion of the DIP Budget.

5.        Reports.  The Debtors shall deliver to the DIP Agent such reports, data and other information required to be delivered pursuant to the DIP Credit Agreement and other DIP Loan Documents. The Debtors shall deliver to the Prepetition Agent and counsel to the Committee such reports, data and other information required to be delivered pursuant to the DIP Credit Agreement and other DIP Loan Documents at the same time and in the same form delivered to the DIP Agent; provided, however, the Debtors may take appropriate actions with respect to confidentiality of such reports, data and other information.

6.        Authorization to Use Cash Collateral.  The Debtors are authorized to use Cash Collateral, subject to and as set forth in the DIP Budget, this Final Order and the DIP Loan Documents.[6]  For purposes of this Final Order, the term "**Cash Collateral**" shall mean and include all "cash collateral" as defined by section 363(a) of the Bankruptcy Code.  Without limiting the generality of the foregoing, Cash Collateral shall include all of the cash proceeds of

---

[6] For the avoidance of doubt, the authorization to use Cash Collateral in this Final Order does not extend to use of the following cash collateral: (i) the cash collateral generated from SVCMC's outpatient cancer center to the extent that Aptium W. New York, Inc. ("**Aptium**") has a lien in such cash collateral that is a Permitted Prior Senior Lien; (ii) in respect of DASNY and the Trade Claims Monitor established in connection with the Prior Chapter 11 Plan, the cash collateral contained in the Arbitrage Rebate Accounts; (iii) in respect of DASNY, the cash collateral contained in the Bishop Mugavero Operating Escrow Account (as defined in the Motion) and the Bishop Mugavero Depreciation Reserve Fund (as defined in the Motion), and the cash collateral contained in the Revenue Fund, the Debt Service Fund, the Debt Service Reserve Fund, and the General Reserve Fund, each as defined in such documents for the Bishop Mugavero Bonds (as defined in the Motion); and (iv) in respect of Sun Life, the cash collateral generated from the proceeds, including, without limitation, rents and security deposits, of the Westchester Real Property (and any improvements thereon) to the extent that Sun Life has a lien in such cash collateral that is a Permitted Prior Senior Lien.

Prepetition Collateral in which the Prepetition Agent or the Prepetition Lenders have an interest, whether such interest existed as of the Petition Date or arises thereafter pursuant to this Final Order, any other order of this Court, applicable law or otherwise; provided, however, Cash Collateral of the Prepetition Lenders shall not include loan proceeds of the DIP Facility. For the avoidance of doubt, the use of Cash Collateral for the operations of the Nursing Homes is not subject to the limitations of the DIP Budget, and the funds generated by the Nursing Homes may be used for the operations of the Nursing Homes.

7.     Use of Prepetition Collateral (including Cash Collateral).  The Debtors are hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the period from the Petition Date through and including the Termination Date in accordance with the terms and conditions of the DIP Budget, this Final Order and the DIP Loan Documents, provided that the Prepetition Agent, Prepetition Lenders, DASNY, the PBGC and Sun Life are granted Adequate Protection as set forth in this Final Order, including in Paragraph 24 below.  In no event shall the Debtors be authorized to use Cash Collateral for any purpose or under any terms other than those set forth in the DIP Budget, this Final Order or the DIP Loan Documents.

8.     Borrowing Authorization.

(a)     The DIP Credit Agreement substantially in the form annexed to the Motion as Exhibit B and the other DIP Loan Documents are hereby approved on a final basis (subject to Paragraph 41 of this Final Order).

(b)     The DIP Facility.  The Debtors are authorized to enter into and perform the transactions contemplated in this Final Order and the DIP Loan Documents and to borrow under the DIP Credit Agreement on a final basis up to the Maximum Permitted Loan Balance, subject to the terms and conditions of the DIP Budget, this Final Order and the DIP Loan

Documents.  The DIP Credit Agreement and the other DIP Loan Documents shall constitute and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto and each of their respective Estates, enforceable against each such Debtor and its respective Estate in accordance with the terms hereof and the DIP Loan Documents and any successor of each such Debtor or any representative of the Estates (including a trustee, responsible person, or examiner with expanded powers).  The Debtors are authorized to obtain financial accommodations pursuant to the terms of the DIP Budget, this Final Order, the DIP Credit Agreement, and the other DIP Loan Documents.

(c)     <u>Repayment of Prepetition Obligations</u>.  Subject to Paragraph 21 of this Order, the Debtors are authorized and directed on a final basis to use proceeds of the DIP Facility and Cash Collateral to make the Revolver Roll-Up Payment, which Revolver Roll-Up Payment was paid in accordance with the Interim Order, to repay Prepetition Obligations constituting revolving credit advances.  Any remaining unsatisfied Prepetition Obligations under the Prepetition Credit Agreement shall receive Adequate Protection hereunder as set forth herein.

(d)     <u>Working Capital</u>.  The Debtors are authorized and directed to use the DIP Facility and Cash Collateral to fund working capital requirements, operating expenses, and capital expenditures of the Debtors during these Chapter 11 Cases and other line items subject to and in accordance with the terms of the DIP Budget, this Final Order, and the DIP Loan Documents, including, among other things, to implement the Closure Plan and to conduct orderly sales of the Non-Hospital Businesses.

9.     <u>Due Authorization</u>.  The Debtors acknowledge, represent, stipulate and agree, and the Court hereby finds and orders, that:

(a)     subject to the entry of this Final Order, the Debtors have obtained all

authorizations, consents and approvals necessary from, and have made all filings with and given all notices to, all federal, state and local governmental agencies, authorities and instrumentalities required to be obtained, made or given by the Debtors in connection with the execution, delivery, performance, validity and enforceability of the DIP Loan Documents;

(b)     in entering into the DIP Loan Documents and obtaining the use of Cash Collateral, and as consideration therefor and for the other accommodations and agreements of the DIP Lenders reflected herein and in the DIP Loan Documents, the Debtors hereby agree that until such time as all of the DIP Obligations are indefeasibly paid in final in full in cash[7] and the DIP Credit Agreement and DIP Loan Documents are terminated in accordance with the terms thereof, the Debtors shall not in any way prime or seek to prime the DIP Obligations, the DIP Liens or the DIP Superpriority Claims provided to the DIP Lenders under this Final Order by offering a subsequent lender or a party in interest a superior or *pari passu* lien or administrative expense pursuant to sections 105(a), 326, 328, 330, 331, 364(c), 364(d), 503, 506, 507, 546(c), 552(b), 726 or 1114 of the Bankruptcy Code or otherwise or acquiescing thereto;

(c)     each Debtor is jointly and severally liable for, and hereby absolutely and unconditionally guarantees to the DIP Agent and DIP Lenders and their respective successors and assigns, the full and prompt payment when due (whether at maturity or earlier, by reason of acceleration or otherwise, and at all times thereafter) and performance of, all DIP Obligations owed or hereafter owing to DIP Agent or any DIP Lender by each other Debtor.  Each Debtor agrees that (i) its guarantee obligation hereunder shall be, and is, absolute and unconditional for

---

[7] A reference herein to payment "in final," "in full," or "indefeasibly," or use of words of similar import shall include the cash collateralization of, at a minimum, 105% of the amount of any DIP Obligations that are contingent obligations, including any contingent indemnification obligations, and the establishment of any reserves in the DIP Agent's discretion, including, without limitation, for attorneys' fees and expenses.  This section shall not be in limitation of any rights or remedies of the DIP Agent or DIP Lenders under the DIP Loan Documents with respect to contingent DIP Obligations.

all purposes in these Chapter 11 Cases and is a present and continuing guaranty of payment and performance and not of collection, and (ii) its obligations under this Final Order and any DIP Loan Document shall not be discharged until the indefeasible payment and performance, in full, in cash of the DIP Obligations, and the termination of the lending commitments under the DIP Loan Documents; and

(d)      in no event shall the DIP Agent and DIP Lenders, whether in connection with the exercise of any rights or remedies under the DIP Credit Facility, hereunder or otherwise, be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors, so long as the actions of the DIP Agent and DIP Lenders do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a vessel or facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Comprehensive Environmental Response, Compensation and Liability Act, sections 9601 et seq. of title 42, United States Code, as amended, or any similar federal or state statute).

10.      <u>Reserves</u>.  The DIP Agent and DIP Lenders retain the right in their reasonable discretion to establish or modify reserves pursuant to the DIP Credit Agreement.

11.      <u>Interest, Fees, and Expenses</u>.

(a)      The DIP Obligations shall bear interest at the applicable rate (including any applicable default rate after the occurrence of an Event of Default) set forth in the DIP Loan Documents, and be due and payable in accordance with this Final Order and the DIP Loan Documents, in each case without further notice, motion or application to, order of, or hearing

before, this Court.

(b) The Debtors shall pay to the DIP Agent, for itself and, if applicable, the ratable benefit of the DIP Lenders, the fees payable under the terms of the DIP Loan Documents, including the following: (i) the Agent's fees, (ii) the Lender closing fees, and (iii) the Unused Commitment Fees, all as set forth in the DIP Loan Documents, whether or not incurred prepetition or postpetition, in each case whether or not such amounts are included in the DIP Budget or arose before or after the Petition Date. None of such fees payable pursuant to this sub-paragraph (b) shall be subject to any other approval by this Court.

(c) The Debtors shall pay the reasonable fees and expenses of the attorneys and advisors for the DIP Agent and for each DIP Lender that is a party to the DIP Credit Agreement on the Closing Date as provided under the DIP Loan Documents. Invoices supporting such fees and expenses shall be submitted to counsel for the Debtors, with copies to the U.S. Trustee, counsel for the Prepetition Agent and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). No attorney or advisor to the DIP Agent or DIP Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. The U.S. Trustee, Prepetition Agent, the Debtor, and Committee shall have ten (10) business days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors. Any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to the DIP Agent or DIP Lenders in connection with or with respect to the DIP Facility, DIP Credit Agreement or other DIP Loan

Documents are hereby approved in full.

12.     <u>Authorization to Act</u>.  Each of the Debtors is expressly authorized and empowered to perform, and the automatic stay under Bankruptcy Code Section 362 is hereby modified to permit them to perform under, make, execute and deliver all instruments and documents (including the execution of security agreements, mortgages, financing statements and other DIP Loan Documents), take such other actions and to pay all fees and expenses, which may be reasonably required or necessary for the Debtors' performance under and compliance with the terms of the DIP Loan Documents and this Final Order, including, <u>inter alia</u>: to (i) enter into and deliver the DIP Loan Documents, (ii) perform all of their obligations under the DIP Loan Documents and such other agreements as may be required by the DIP Loan Documents or as provided for in this Final Order; (iii) pay the fees and expenses set forth in the DIP Loan Documents or this Final Order, including the reasonable fees and expenses of attorneys and other professionals as provided for in the DIP Loan Documents and this Final Order, and (iv) to perform all other acts that may be required in connection with the DIP Loan Documents and this Final Order.

13.     <u>Amendments</u>.  Each of the Debtors is expressly authorized and empowered to enter into amendments or other modifications of the DIP Credit Agreement or any other DIP Loan Documents without further order of the Court, in each case, in such form as the DIP Agent and the DIP Lenders may agree with the Debtors in writing; <u>provided</u>, that notice of any modification or amendment shall be provided to the U.S. Trustee, the Prepetition Agent, counsel to the Committee and any affected holder of a Permitted Prior Senior Lien and/or counsel to any affected holder of a Permitted Prior Senior Lien, which parties may object to such modification or amendment, in writing, within two (2) business days from the date of the transmittal of such

notice (which, to the extent such contact information for such parties is known to the Debtors, shall be transmitted by fax or e-mail, and, if not known, by overnight mail); further provided, that, notwithstanding the foregoing, any material modification of the DIP Loan Documents that materially increases the burden on the Debtors shall require Court approval; and further provided, that if such objection is timely provided, then such modification or amendment shall be permitted only pursuant to an order of the Court, the entry of which may be sought on an expedited basis.

14.     Superpriority Claims and DIP Liens.  In respect of the DIP Obligations under the DIP Credit Agreement, the other DIP Loan Documents and this Final Order, the DIP Agent is granted, for itself and the ratable benefit of the DIP Lenders, the following with respect to the Debtors, their Estates and all DIP Collateral:

(a)     a superpriority administrative expense claim pursuant to Bankruptcy Code section 364(c)(1) with priority over all other administrative expenses pursuant to the Bankruptcy Code (including the kinds specified in or arising or ordered pursuant to Bankruptcy Code sections 105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 552(b), 726 and 1114 thereof or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), which superpriority expenses of the DIP Agent and DIP Lenders shall be subordinate only to the Carve-Out (the "**DIP Superpriority Claims**"); provided, however, for the avoidance of doubt, pursuant to applicable bankruptcy law, the granting of such DIP Superpriority Claims does not affect the status and superior priority of any liens, including the liens of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders and the holder of any Prior Permitted Senior Lien.

(b)     a first priority, priming security interest in and lien pursuant to Bankruptcy

Code section 364(d)(1) on all encumbered property of the Debtors and the Estates (the "**Section 364(d)(1) Liens**"), which Section 364(d)(1) Liens shall be senior to any existing liens or claims, subject only to (i) the Carve-Out, and (ii) liens on property of a Debtor (including the proceeds of such property) that are in existence on the Petition Date but only, subject to Paragraph 20 of this Final Order, if applicable, (A) to the extent a lien on any property is valid, perfected, and not avoidable, and (B) the lien on such property (or the proceeds of such property, as applicable) on the Petition Date was senior in priority to the Prepetition Liens (as hereinafter defined) of the Prepetition Agent on such property, and (iii) the Prepetition Liens of the Prepetition Agent (the items referenced in the foregoing clauses (ii) and (iii) being referred to collectively as the "**Permitted Prior Senior Liens**");[8]

(c)     a first priority security interest and lien pursuant to Bankruptcy Code section 364(c)(2) on all unencumbered property of the Debtors and the Estates (the "**Section 364(c)(2) Liens**"), which Section 364(c)(2) Liens shall be subject only to the Carve-Out; and

(d)     a junior security interest and lien pursuant to Bankruptcy Code section 364(c)(3) on all property of the Debtors and the Estates that is subject to a Permitted Prior Senior Lien (the "**Section 364(c)(3) Liens**"), which Section 364(c)(3) Liens are also subject to the Carve-Out.[9]

15.     DIP Collateral.  The DIP Liens of the DIP Agent, for the benefit of the DIP Lenders, under the DIP Loan Documents and as approved and perfected by this Final Order include, inter alia, liens upon and security interests in (i) all of those items and types of collateral in which security interests may be created under Article 9 of the Uniform Commercial Code,

---

[8] For the avoidance of doubt, subject to Paragraph 20, if applicable, GE's proposed lien shall be limited to only proceeds realized by the Debtors upon a disposition of the Aptium sublease, if any, and not in and upon the Aptium sublease itself.

[9] The Section 364(d)(1) Liens, Section 364(c)(2) Liens, and Section 364(c)(3) Liens shall be collectively referred to as the "DIP Liens."

(ii) all of those items and types of collateral not governed by Article 9 of the Uniform Commercial Code, including, without limitation, licenses issued by any federal or state regulatory authority, any leasehold or other real property interests, and commercial tort claims of the Debtors, (iii) any and all other DIP Collateral of any nature or form, and (iv) the products, rents, offspring, profits, and proceeds of any of the foregoing.  None of the DIP Obligations, DIP Liens or DIP Superpriority Claims shall (a) be subject to or *pari passu* with any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code, (b) be subject to or *pari passu* with any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (c) be subject to sections 510, 549, or 550 of the Bankruptcy Code, or (d) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise, except as expressly provided in this Final Order.

16.     Carve-Out.

(a)     Generally.  Upon the occurrence of the Carve-Out Trigger Date (defined below), the DIP Liens, the DIP Superpriority Claims, the Prepetition Agent Adequate Protection Liens, Section 507(b) Claims of the Prepetition Agent and Prepetition Lenders, and Prepetition Liens of the Prepetition Agent and Prepetition Lenders shall be subject to the payment, without duplication, of the following fees and expenses (the amounts set forth below, together with the limitations set forth therein, collectively, the "**Carve-Out**") from either Cash Collateral or proceeds resulting from liquidation of DIP Collateral or Prepetition Collateral (and, for the avoidance of doubt not from either cash collateral or proceeds resulting from the liquidation of any collateral of any holder of a Prior Permitted Senior Lien):

(i)	the reasonable fee and expense claims of the respective retained professionals of the Debtors, Committee, the Consumer Privacy Ombudsman appointed on April 21, 2010 [Docket No. 108] (the "**Consumer Privacy Ombudsman**"), and the Patient Care Ombudsman appointed on April 16, 2010 [Docket No. 63] (the "**Patient Care Ombudsman**" and together with the Consumer Privacy Ombudsmen, the **"Ombudsmen"**) that have been approved by this Court during the Chapter 11 Cases pursuant to sections 327, 328, and 1103 of the Bankruptcy Code or otherwise (the retained professionals of the Debtors and the Committee, the Consumer Privacy Ombudsman's retained professionals, and the Patient Care Ombudsman's professionals are collectively referred to as the "**Retained Professionals**"), the reasonable expenses of members of the Committee ("**Committee Member Expenses**"), and the reasonable fees and expenses of the Ombudsmen for unpaid fees and expenses which were incurred (A) on and after the Petition Date and before the Carve-Out Trigger Date in amounts not in excess of the amounts set forth in the DIP Budget, and (B) on and after the Carve-Out Trigger Date in an aggregate amount not exceeding $3 Million Dollars ($3,000,000), for all Retained Professionals, Committee Member Expenses and Ombudsmen; provided that, in each case, such fees and expenses of the Retained Professionals, Committee Member Expenses and Ombudsmen are in accordance with the DIP Budget and are ultimately allowed on a final basis by this Court pursuant to sections 330 and 331 of the Bankruptcy Code or otherwise and are not excluded from the Carve-Out under Paragraph 16 of this Final Order (nothing herein shall waive the right of any party to object to the allowance of any such fees and expenses); and, provided further, that the Carve-Out shall not include any bonus, transaction, success or completion fees or any other fees of similar import for Retained Professionals except for transaction fees for certain Retained Professionals engaged as investment bankers, agents or brokers to sell assets, namely Cain

Brothers & Company, LLC, Loeb & Troper LLP, Shattuck Hammond Partners, and Grubb & Ellis New York Inc.;

(ii)     the unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.  For the avoidance of doubt, there is no limitation on the obligations of the Debtors and their Estates with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(b)     Carve-Out Trigger Date.  As used herein, the term "**Carve-Out Trigger Date**" means the date on which the DIP Agent provides written notice to the Debtors, the U.S. Trustee and counsel to the Committee that the Carve-Out is invoked, which notice may be delivered only on or after the occurrence of an Event of Default under the DIP Loan Documents or upon the Termination Date.

(c)     Reduction of Amounts.  The fixed dollar amount of $3 million available to be paid under the Carve-Out following the Carve-Out Trigger Date on account of allowed fees and expenses incurred on and after the Carve-Out Trigger Date shall be reduced, dollar-for-dollar, by the aggregate amount of payments made on and after the Carve-Out Trigger Date on account of fees and expenses incurred on and after the Carve-Out Trigger Date to Retained Professionals, Committee Member Expenses, the Ombudsmen, the U. S. Trustee and Clerk of the Bankruptcy Court on account of such allowed fees and expenses (whether from Cash Collateral, any proceeds of the DIP Financing, or otherwise).  For the avoidance of doubt, there is no limitation on the obligations of the Debtors and their Estates with respect to unpaid fees payable to the U. S. Trustee and Clerk of the Bankruptcy Court pursuant to section 1930 of Title 28 of the United States Code.

(d)  Reservation of Rights.  Fees and expenses of Retained Professionals, Committee Member Expenses and Ombudsmen incurred in excess of the amounts provided therefor under the DIP Budget, including after the occurrence of the Carve-Out Trigger Date, shall, subject to approval of the Court, constitute allowed administrative expenses of the Debtors' estates pursuant to, *inter alia*, sections 328, 330(a), 331, and 503(b) of the Bankruptcy Code; provided, however, the Carve-Out shall be limited to amounts provided under the DIP Budget as set forth in this Paragraph 16, and the DIP Agent and Prepetition Agent reserve their rights to object to the allowance of any fees and expenses, including any fees and expenses sought that are not provided for in the DIP Budget.  The payment of any fees or expenses of the Retained Professionals, Committee Member Expenses and Ombudsmen pursuant to the Carve-Out shall not, and shall not be deemed to (i) reduce any Debtor's obligations owed to any of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders or to any holder of a Permitted Prior Senior Lien, or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties in the DIP Collateral or Prepetition Collateral (or their respective claims against the Debtors).  The DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any Retained Professionals, Committee Member Expenses, the Ombudsmen, the U. S. Trustee or Clerk of the Bankruptcy Court (or of any other entity) incurred in connection with the Chapter 11 Cases or any successor case, and nothing in this Final Order or otherwise shall be construed to obligate such parties in any way to pay such compensation to or to reimburse such expenses.

(e)  In the event the Chapter 11 Cases are converted to Chapter 7, there shall be a separate carve-out of $100,000 in the aggregate (the "**Trustee Carve-Out**") that may be used for the reasonable fees and expenses of a Chapter 7 trustee and such separate Trustee

Carve-Out shall have the same priorities as the Carve-Out.

17.     <u>Waiver of Right to Surcharge</u>.  In light of the consent of the DIP Agent and DIP Lenders to the current payment of administrative expenses of the Debtors' Estates in accordance with the DIP Budget and (i) the agreement of the DIP Agent and DIP Lenders to subordinate their Superpriority Claims to the Carve-Out, (ii) the agreement of the DIP Agent and DIP Lenders to subordinate their DIP Liens to the Carve-Out and Permitted Prior Senior Liens, the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders are each entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code and (b) any "equities of the case" claims or other claims under sections 105(a) or 552(b) of the Bankruptcy Code.  Accordingly, no costs or expenses of administration or other charge, lien, assessment or claim incurred at any time (including, without limitation, any expenses set forth in the DIP Budget) by any Debtor or any other person or entity shall be imposed or charged against any or all of the DIP Collateral, the DIP Agent, the DIP Lenders, the Prepetition Collateral, the Prepetition Agent, or Prepetition Lenders or their respective claims under the Bankruptcy Code, including sections 105(a), 506(c), 552(b) thereof, or otherwise, and the Debtors, on behalf of their Estates, waive any such rights. It is expressly understood by all parties that in making all such undertakings and proceeding in compliance with the DIP Budget, this Final Order and the DIP Loan Documents, the DIP Agent, DIP Lenders, Prepetition Agent and the Prepetition Lenders have each relied on the foregoing provisions of this Paragraph.  Notwithstanding any approval of or consent to the DIP Budget, nothing in this Final Order shall constitute or be deemed to constitute the consent by any of the DIP Agent, DIP Lenders, Prepetition Agent or Prepetition Lenders to the imposition of any costs or expense of administration or other charge, lien, assessment or claim (including, without limitation, any amounts set forth in the DIP Budget) against such party, its claims or its collateral

under sections 105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise and no such

consent shall be implied from any other action or inaction by such parties. In addition, without

limitation of the foregoing, nothing in this Final Order shall constitute or be deemed to constitute

the consent by Sun Life to the imposition of any costs or expense of administration or other

charge, lien, assessment or claim against Sun Life, its claims or its collateral under section

105(a), 506(c) or 552(b) of the Bankruptcy Code or otherwise, and the Debtors, Committee, DIP

Agent, Prepetition Agent and the Ombudsmen each reserve the right to seek to impose any such

costs, expenses, or other charge, lien, assessment, or claim against Sun Life, its claims and

collateral.

        18.     <u>Automatic Perfection</u>.

        (a)     The (i) DIP Liens granted to the DIP Agent, for the benefit of the DIP

Lenders pursuant to this Final Order and the DIP Loan Documents, and the (ii) Adequate

Protection Liens granted pursuant to this Final Order to the Prepetition Agent for the benefit of

the Prepetition Lenders, and the subordinate Adequate Protection Liens granted pursuant to this

Final Order to each of the PBGC and Sun Life, shall be valid, enforceable, and perfected by

operation of law upon entry of this Final Order by the Court without any further action by any

party. The DIP Agent and DIP Lenders in respect of the DIP Liens, the Prepetition Agent and

Prepetition Lenders in respect of the Adequate Protection Liens, and the PBGC and Sun Life in

respect of the subordinate Adequate Protection Liens, shall each not be required to enter into or

to obtain any control agreements, landlord waivers, mortgagee waivers, bailee waivers or

warehouseman waivers or to give, file or record any UCC-1 financing statements, mortgages,

deeds of trust, leasehold mortgages, notices to account debtors or other third parties, notices of

lien or similar instruments in any jurisdiction (including filings with the United States Patent and

Trademark Office, the United States Copyright Office or any similar agency in respect of trademarks, copyrights, trade names or patents with respect to intellectual property) (collectively, the "**Perfection Documents**"), or obtain consents from any licensor or similarly situated party in interest, or take any other action in order to validate and to perfect the DIP Liens granted under the DIP Loan Documents and this Final Order and the Adequate Protection Liens granted under this Final Order and approved hereby, all of which are automatically perfected by the entry of this Final Order.  If the DIP Agent, DIP Lenders, Prepetition Agent, or Prepetition Lenders, PBGC and/or Sun Life, independently or collectively, in each of their sole discretion respectively, choose to obtain, enter into, give, record or file any Perfection Documents, (x) all such Perfection Documents shall be deemed to have been obtained, entered into, given, recorded or filed, as the case may be, as of the Petition Date, (y) no defect in any such act shall affect or impair the validity, perfection, priority or enforceability of the DIP Liens and Adequate Protection Liens, and (z) such liens shall have the relative priority set forth herein notwithstanding the timing of filing of any such Perfection Documents.  In lieu of recording or filing any Perfection Documents, the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, the PBGC and Sun Life may, in each of their sole discretion, choose to record or file a true and complete copy of this Final Order in any place that any Perfection Document would or could be recorded or filed (which may include a description of the collateral appropriate to be indicated in a recording or filing at such place of recording or filing), and such recording or filing by the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Lenders, the PBGC or Sun Life shall have the same effect as if such Perfection Document had been filed or recorded as of the Petition Date.  In addition, the DIP Agent may, in its sole discretion, at the Debtors' expense, require the Debtors to file or record any Perfection Document.  The Debtors are

authorized and directed to execute and deliver promptly upon demand to the DIP Agent all Perfection Documents as the DIP Agent may reasonably request.

(b)     Until the indefeasible payment in full in cash of the DIP Obligations, DIP Collateral and Perfection Documents evidencing liens subordinate to the DIP Liens in the possession, custody or control of the Prepetition Agent (or in the possession, custody or control of agents or bailees of the Prepetition Agent) shall be deemed to be an agent or bailee, as the case may be, on behalf of and for the benefit of the DIP Agent and DIP Lenders for the purposes of perfecting the security interests granted in such DIP Collateral.  Upon an Event of Default and the request of the DIP Agent, the Prepetition Agent (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey, as applicable, any DIP Collateral and Perfection Documents in its possession, custody or control to the DIP Agent for the enforcement of rights and remedies under the DIP Loan Documents, and, upon the indefeasible payment in full in cash of all DIP Obligations, the DIP Agent (or its agents or bailees, as applicable) shall transfer, assign and otherwise convey any Prepetition Collateral and Perfection Documents to the Prepetition Agent.  For the avoidance of doubt, the grant, perfection, scope and vesting of the DIP Liens, DIP Superpriority Claims and DIP Obligations are fully effectuated by this Final Order and any security agreements, collateral agreements or other Perfection Documents executed as part of the DIP Loan Documents shall supplement the grant, perfection, scope and vesting set forth herein as well as the powers and protections accorded to the DIP Agent, on behalf of itself and the DIP Lenders, but in no event shall any such security agreement, collateral agreement or other Perfection Document be interpreted as a limitation of such provisions of this Final Order.

19.     <u>Stipulations and Waivers</u>:  After consultation with their attorneys and financial

advisors, subject to and without prejudice to the rights of the Committee and any other party as set forth in Paragraph 20 below, the Debtors admit, stipulate, and agree to the following, and make the releases and waivers set forth below, on and as of the Petition Date:

(a)     Prepetition Loans.  Prior to the Petition Date, certain of the Debtors entered into the Prepetition Credit Agreement and other Prepetition Loan Documents with the Prepetition Agent and Prepetition Lenders.  Pursuant to the Prepetition Loan Documents, the Prepetition Agent and Prepetition Lenders were granted liens on, and security interests in (the "**Prepetition Liens**"), substantially all property of each Borrower under the Prepetition Loan Documents, whether now owned or existing or hereafter acquired or arising regardless of where located, including all accounts, all chattel paper, certain commercial tort claims, all deposit accounts, all documents, all equipment, all general intangibles, all instruments, all inventory, all investment property, all letter-of-credit rights, all books and records, and all proceeds of the foregoing (all as more fully set forth in the Prepetition Loan Documents, the "**Prepetition Collateral**").  All indebtedness and other obligations in respect of the Prepetition Loan Documents shall be referred to as the "**Prepetition Obligations**."

(b)     Prepetition Obligations.

(i)     the Debtors were indebted and liable to the Prepetition Agent and Prepetition Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $313,000,000 in respect of loans made, letters of credit issued, and other financial accommodations provided, by the Prepetition Agent and Prepetition Lenders pursuant to the Prepetition Credit Agreement and the other Prepetition Loan Documents, plus accrued but unpaid interest, costs, fees and expenses as provided in the Prepetition Loan Documents;

(ii)     the Prepetition Liens are (x) valid, binding, perfected, enforceable, first priority liens on and security interests in the Prepetition Collateral, (y) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and (z) subject only to (A) after giving effect to this Final Order, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, and the Carve-Out (as defined in Paragraph 16 above), and (B) Permitted Prior Senior Liens;

(iii)     the Prepetition Obligations constitute the legal, valid and binding obligations of the Debtors that are party thereto, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code) and no portion of the Prepetition Obligations is subject to avoidance, recharacterization, disgorgement, recovery or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

(iv)     the Debtors do not have, and hereby forever release and waive, any claims, objections, challenges, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or applicable non-bankruptcy law, against the Prepetition Agent, Prepetition Lenders, or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees from the beginning of time;

(v)     subject to footnote 6 of this Final Order limiting use of Cash Collateral, all of the Debtors' cash existing as of the Petition Date, except for proceeds of the DIP Facility, including without limitation, all cash and other amounts on deposit or maintained by the Debtors in any account or accounts with any Prepetition Lender, constitutes Cash Collateral of the Prepetition Agent and Prepetition Lenders;

(vi)     the Debtors are in default with respect to their Prepetition

Obligations and an Event of Default has occurred under the Prepetition Loan Documents; and

(c)     <u>PBGC Obligations</u>.  In or about February, 2010, pursuant to 26 U.S.C. §412(n) and/or 26 U.S.C. §430(k), the PBGC filed a lien on behalf of the Saint Vincent Catholic Medical Centers Retirement Plan against certain or all of the Debtors including, *inter* alia, St. Elizabeth Ann.

(d)     <u>Sun Life Obligations</u>.  The promissory note in the principal amount of $17.5 million issued to Sun Life in connection with the debtors' emergence from their prior chapter 11 cases is, according to Sun Life, secured by a first priority lien on the Westchester Real Property (and any improvements thereon).

20.     <u>Effect of Stipulations on Third Parties</u>.

(a)     <u>Generally</u>.  The admissions, stipulations, agreements, releases, and waivers set forth in the immediately preceding Paragraph of this Final Order (collectively, the "**<u>Prepetition Lien and Claim Matters</u>**") are and shall be binding on the Debtors, any subsequent trustee, responsible person, examiner with expanded powers, any other Estate representative and all parties-in-interest and all of their successors-in-interest and assigns, including, without limitation, the Committee, <u>unless</u>, and solely to the extent that, (i) the Committee or another party-in-interest with standing and requisite authority, has timely filed the appropriate pleadings, and timely commenced the appropriate proceeding required under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth in Paragraph 22 of this Final Order) challenging the Prepetition Lien and Claim Matters (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "**<u>Challenge</u>**") by (a) with respect to the Prepetition Agent and Prepetition Lenders, no later than 120 days from the

date of entry of this Final Order, as such applicable date may be extended from time to time in the sole discretion of the Prepetition Agent or by this Court for good cause shown pursuant to an application filed by the Committee or any other party in interest prior to the expiration of such period, and (b) with respect to the PBGC and Sun Life, no later than 150 days from the date of entry of this Final Order, as such applicable dates may be extended from time to time in the sole discretion of the PBGC, or Sun Life, as applicable or by this Court for good cause shown pursuant to an application filed by the Committee or any other party in interest prior to the expiration of the applicable Challenge Deadline (the challenge periods set forth in clauses (a) and (b), each referred to as a "**Challenge Deadline**"), and (ii) this Court rules in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding and any such ruling is not subject to any further review or appeal.

(b)     <u>Binding Effect</u>.  To the extent no Challenge is timely and properly commenced by the Challenge Deadline, or to the extent such proceeding does not result in a final and non-appealable order of this Court that is inconsistent with the Prepetition Lien and Claim Matters, then, without further notice, motion or application to, order of, or hearing before, this Court and without the need or requirement to file any proof of claim, the Prepetition Lien and Claim Matters shall pursuant to this Final Order become binding, conclusive and final on the Committee and any other person, entity or party-in-interest in the Chapter 11 Cases, and their successors and assigns, and in any successor case for all purposes and shall not be subject to challenge or objection by any party-in-interest, including, without limitation, a trustee, responsible individual, examiner with expanded powers or other representative of the Estates. Notwithstanding anything to the contrary herein, if any such proceeding is properly and timely commenced, the Prepetition Lien and Claim Matters shall nonetheless remain binding on all

parties-in-interest and preclusive as provided in sub-paragraph (a) above except to the extent that each of such Prepetition Lien and Claim Matters is expressly the subject of a timely and properly filed Challenge. To the extent any such Challenge proceeding is timely and properly commenced, the Prepetition Agent, Prepetition Lenders, as applicable, shall be entitled to include the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in defending themselves in any such proceeding pursuant to the Prepetition Loan Documents.

(c) _Standing_. This Final Order confers and vests standing solely on the Committee (but not any other party-in-interest) to assert any claim on behalf of any Debtor or any estate of any Debtor, and relieves the Committee (but not any other party-in-interest) from any requirement under the Bankruptcy Code or otherwise to obtain authorization and standing from the Court prior to asserting any claim on behalf of any Debtor or any Estate of any Debtor.

(d) _Proceeds of Sale of St. Elizabeth Ann_. To the extent that a timely Challenge to the lien filed by the PBGC on behalf of the Saint Vincent Catholic Medical Centers Retirement Plan in the amount of $5,053,504 plus applicable interest against St. Elizabeth Ann shall have been filed and such Challenge shall not have been resolved by settlement or entry of a final, non-appealable order prior to the sale of St. Elizabeth Ann, then funds sufficient to satisfy the prepetition lien filed by the PBGC on behalf of the Saint Vincent Catholic Medical Centers Retirement Plan against St. Elizabeth Ann (to the extent such lien is found to be a valid, first priority lien) plus applicable interest shall be held in escrow or in trust pending final resolution of such Challenge.

21. _Limitation on Revolver Roll-Up Payment and Adequate Protection Liens_. Pursuant to the requirements of Local Rule 4001-2(k)(3) and this Final Order, the Court reserves the right, after a notice and a hearing, to unwind the Revolver Roll-Up Payment and Adequate

Protection Liens, in the event that there is a timely and successful Challenge to the validity, enforceability, extent, perfection, or priority of any secured party's claims and/or liens (including with respect to the Prepetition Lenders) or a determination that prepetition debt of such secured party's claims and/or liens (including with respect to the Prepetition Lenders) was undersecured as of the Petition Date, pursuant to the terms of this Final Order, including, without limitation, the Challenge Deadline.

      22.     <u>Limitation on Use of Proceeds</u>.  Notwithstanding anything in this Final Order to the contrary, no portion or proceeds of the DIP Facility, the DIP Collateral, the Prepetition Collateral, the Cash Collateral, or the Carve-Out, and no disbursements set forth in the DIP Budget shall be used for the payment of professional fees, disbursements, costs or expenses incurred in connection with: (a) objecting, contesting or raising any defense to the validity, perfection, priority, or enforceability of, or any amount due under, the DIP Loan Documents or the Prepetition Loan Documents or any security interests, liens or claims granted under this Final Order, the DIP Loan Documents, or the Prepetition Loan Documents to secure such amounts; (b) asserting any Challenges, claims, actions or causes of action against any of the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders or any of their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors; (c) preventing, hindering or otherwise delaying enforcement or realization on the DIP Collateral or the Prepetition Collateral or (d) seeking to amend or modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent, or the Prepetition Lenders under this Final Order, the DIP Loan Documents or the Prepetition Loan Documents, including seeking to use Cash Collateral and/or DIP Collateral on a contested basis; <u>provided</u>, <u>however</u>, that no more than $200,000 in the aggregate of the proceeds of the DIP Facility, the DIP Collateral, the Prepetition

Collateral, the Cash Collateral, and the Carve-Out may be used by the Committee to investigate (but not prosecute or Challenge) Prepetition Lien and Claim Matters.

23. <u>Avoidance Action Proceeds</u>. Notwithstanding anything in this Final Order or any other DIP Loan Document to the contrary, (i) Avoidance Action Proceeds shall be DIP Collateral and shall be subject to the DIP Liens and DIP Superpriority Claims, and, (ii) subject and subordinate to the DIP Liens and DIP Superpriority Claims, Avoidance Action Proceeds shall be subject to the Adequate Protection Liens of the Prepetition Agent and Prepetition Lenders and the Section 507(b) Claims of the Prepetition Agent and Prepetition Lenders. All DIP Liens. DIP Superpriority Claims and Section 507(b) Claims of the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders on Avoidance Action Proceeds shall terminate at such time as the DIP Obligations have been indefeasibly paid in full in cash.

24. <u>Adequate Protection</u>. This Court finds that the Adequate Protection provided in this Final Order, including, without limitation, in this Paragraph 24, is reasonable and sufficient to protect the interests of the Prepetition Agent, Prepetition Lenders, DASNY, the PBGC and Sun Life. Notwithstanding any other provision hereof, the grant of Adequate Protection to the Prepetition Agent, Prepetition Lenders, DASNY the PBGC and Sun Life pursuant hereto is without prejudice to the right of the Prepetition Agent, DASNY, the PBGC, Sun Life or any other party in interest to seek adequate protection or to seek modification of a grant of Adequate Protection provided in this Final Order so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

(a) <u>Adequate Protection for the PBGC and Sun Life</u>. The PBGC and Sun Life have each requested Adequate Protection. As Adequate Protection, the PBGC and Sun Life are

each hereby granted, each to the extent of any diminution in the value of its prepetition collateral, valid, binding, enforceable and perfected security interests and replacement liens upon all property of the Debtors, wherever located, whether arising prepetition or postpetition, of any nature whatsoever (respectively, the **"PBGC Adequate Protection Liens"** and the **"Sun Life Adequate Protection Liens"**).  The PBGC Adequate Protection Liens and Sun Life Adequate Protection Liens shall be pari passu with one another but shall each be subject and subordinate to (i) the Carve-Out, (ii) the DIP Obligations, DIP Liens and DIP Superpriority Claims, (iii) the Prepetition Agent Adequate Protection Liens (defined below), and (iv) the Permitted Prior Senior Liens.

(b)     Adequate Protection Liens.  As adequate protection of the Prepetition Liens of the Prepetition Agent and Prepetition Lenders under the applicable Prepetition Loan Documents, in accordance with sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition Agent shall be granted (for the ratable benefit of the respective Prepetition Lenders) valid, binding, enforceable and perfected security interests and replacement liens (the "**Prepetition Agent Adequate Protection Liens,**" and together with the PBGC Adequate Protection Liens and the Sun Life Adequate Protection Liens, the **"Adequate Protection Liens"**) upon all property of the Debtors whether arising prepetition or postpetition of any nature whatsoever, wherever located, in each case to secure the Prepetition Obligations (the "**Prepetition Agent Adequate Protection Obligations**") of, without duplication, the aggregate diminution, if any, subsequent to the Petition Date, in the value of the Prepetition Collateral by: (i) the reduction in Prepetition Collateral available to satisfy Prepetition Obligations as a consequence of the priming of the Prepetition Obligations by the DIP Obligations; (ii) depreciation, use, sale, loss, decline in market price or otherwise of the Prepetition Collateral;

and (iii) the sum of the aggregate amount of all Cash Collateral and the aggregate value of all non-cash Prepetition Collateral which is applied in payment of the DIP Obligations or any other obligations or expenses of the Debtors other than Prepetition Obligations, but only to the extent of any decrease in the value of the Prepetition Collateral on account of subsections (i), (ii) and (iii) above. The Prepetition Agent Adequate Protection Liens are subject and subordinate to (A) the Carve-Out, (B) the DIP Obligations, DIP Liens and DIP Superpriority Claims, and (C) the Permitted Prior Senior Liens and senior to the PBGC Adequate Protection Liens and Sun Life Adequate Protection Liens. None of the Prepetition Agent Adequate Protection Liens or Prepetition Agent Adequate Protection Obligations shall (x) be subject to any lien or security interest that is avoided and preserved for the benefit of the Estates under section 551 of the Bankruptcy Code, (y) subject to any inter-company claim, whether secured or unsecured, of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, or (z) hereafter be subordinated to or made *pari passu* with any other lien or security interest under sections 361, 363 or 364 of the Bankruptcy Code or otherwise except as expressly provided in this Final Order and the DIP Loan Documents, including, without limitation, with respect to the Carve-Out, Permitted Prior Senior Liens, DIP Obligations, DIP Liens and DIP Superpriority Claims.

(c) Section 507(b) Claims. To the extent the Prepetition Agent, the PBGC and Sun Life shall hold claims allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code, notwithstanding the provision of Adequate Protection hereunder, the Prepetition Agent, for the ratable benefit of the Prepetition Lenders, and the PBGC and Sun Life are hereby each granted an administrative expense claim pursuant to Bankruptcy Code section 507(b) (each, a "**Section 507(b) Claim**") of the Bankruptcy Code with priority over all other administrative expenses, but in all cases subject and subordinate to the Carve-Out, Permitted Prior Senior Liens,

DIP Obligations, DIP Liens and DIP Superpriority Claims. Such Section 507(b) Claims of the PBGC and Sun Life shall be pari passu with one another but in all respect subordinate and junior in priority to the Section 507(b) Claims of the Prepetition Agent.

(d)     <u>Adequate Protection Payments</u>. Subject to Section 506(b) of the Bankruptcy Code, the Debtors shall, in accordance with the DIP Budget, (x) with respect to the Prepetition Agent and Prepetition Lenders: (i) promptly pay all reasonable fees and expenses under the Prepetition Loan Documents incurred by the Prepetition Agent and Prepetition Lenders, whether incurred prior to or following the Petition Date, and (ii) pay all other payments payable when and as due under the Prepetition Loan Documents, including all payments of principal, interest, fees and charges; and (y) with respect to DASNY: (i) subject to any party's right to request recharacterization of such payments as payments of principal, make regularly scheduled principal, interest payments and all reasonable fees and expenses due to DASNY from Debtor Bishop Mugavero; and (ii) to the extent necessary, waive, lift or modify the automatic stay to permit the timely transfer of funds from the "Bishop Mugavero Depreciation Reserve Fund" (as defined in the Motion), the "Bishop Mugavero Operating Escrow Account" (as defined in the Motion), and the Revenue Fund, the Debt Service Fund, the Debt Service Reserve Fund, and the General Reserve Fund, each as defined in such documents for the Bishop Mugavero Bonds (as defined in the Motion) for the payment of debt service and debt service reserves and other actions that may be taken pursuant to and in accordance with the relevant documents executed and delivered in connection with the authorization and sale of the Bishop Mugavero Bonds**.** The payments under this Paragraph shall be referred to collectively as the "**<u>Adequate Protection Payments</u>**." Invoices supporting fees and expenses being charged to the Debtors shall be submitted to counsel for the Debtors, with copies to the U.S. Trustee, counsel

for the Prepetition Agent and counsel for the Committee (invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine). No attorney or advisor to the Prepetition Agent or the Prepetition Lenders shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court. The U.S. Trustee, Prepetition Agent, the Debtor, and Committee shall have ten (10) business days in which to raise an objection to the payment of any fees and expenses of such attorneys and advisors. In the event any Adequate Protection Payment would be required to be repaid to the Debtors as a result of application of Bankruptcy Code section 506(b) or otherwise, any such amounts shall not be repaid and instead shall be applied as follows: first, to the DIP Obligations until such obligations are indefeasibly paid in full, in cash; second, to the Prepetition Obligations until such obligations are indefeasibly paid in full, in cash; and third, to the Debtors and their Estates, or subject to further order of this Court.

(e)     Reservation of Rights of MedMal Trusts. The granting of the subordinate PBGC Adequate Protection Liens and the Sun Life Adequate Protection Liens, and the granting of the subordinate Section 507(b) Claims to PBGC and Sun Life, shall not prejudice any rights that the medical malpractice trusts that were established pursuant to the Prior Chapter 11 Plan or any other party in interest may have under the Prior Chapter 11 Plan, the Order confirming the Prior Chapter 11 Plan or otherwise; provided, however, that nothing herein shall be deemed to compromise the right of the PBGC, Sun Life or any other party in interest to contest the validity, priority, nature and extent of such rights.

25.     Indemnification. The Debtors shall indemnify the DIP Agent and DIP Lenders

and their respective affiliates, successors and assigns and the officers, directors, employees, agents, advisors, controlling persons and members of each of the foregoing (each, an "**Indemnified Person**") and hold each of them harmless from and against all costs, expenses (including reasonable fees, disbursements and other charges of counsel) and liabilities of such Indemnified Person arising out of or relating to any claim or any litigation or other proceeding (regardless of whether such Indemnified Person is a party thereto and regardless of whether such matter is initiated by a third party or by the Debtors or any of their affiliates or shareholders) that relates to the DIP Facility or this Final Order, including the financing contemplated hereby, the Chapter 11 Cases, or any transactions in connection therewith, provided that no Indemnified Person will be indemnified for any cost, expense or liability to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such Person's gross negligence or willful misconduct. Nothing herein is meant to limit the scope of any indemnity provided for the benefit of the DIP Agent or DIP Lenders in the DIP Loan Documents. For the avoidance of doubt, this Paragraph 25 does not apply or otherwise affect any indemnification rights or obligations in respect of the Prepetition Lenders under the Prepetition Loan Documents.

26.     Remedies.  Upon the occurrence of an Event of Default under the DIP Loan Documents or upon the Termination Date, and in each case without further notice, motion or application to, order of, or hearing before, this Court, the DIP Agent is granted leave to cease making financial accommodations to the Debtors, accelerate any or all of the DIP Obligations and declare such DIP Obligations to be immediately due and payable in full, in cash, and the Debtors shall use Cash Collateral only with the written consent of the DIP Agent and only to the extent required to avoid irreparable damage to the Debtors and their Estates. In addition, upon

the Termination Date, and after providing seven (7) days prior notice to the Court, U.S. Trustee, counsel for the Debtors, counsel for the Committee, any holder of a Permitted Prior Senior Lien and/or counsel to any holder of a Permitted Prior Senior Lien and the Notice Parties, then the DIP Agent, for the benefit of the DIP Lenders, shall be entitled to exercise all of its rights and remedies under this Order and the DIP Loan Documents, including, without limitation, foreclose upon the DIP Collateral or otherwise enforce the DIP Obligations, DIP Liens and DIP Superpriority Claims on any or all of the DIP Collateral and/or to exercise any other default-related remedies under the DIP Loan Documents, this Final Order or applicable law in seeking to recover payment of the DIP Obligations. For the avoidance of doubt, with respect to Permitted Prior Senior Liens, any exercise of such rights and remedies shall be in accordance with applicable non-bankruptcy law in respect of Permitted Prior Senior Liens. During the seven (7) day notice period, the Debtors, the Committee or any other party in interest may seek an order of the Court staying the DIP Agent's exercise of such remedies against the DIP Collateral and, if no such stay is obtained, then the DIP Agent may exercise any and all such rights and remedies without further order of the Court or notice to any party and the Debtors' authority to use Cash Collateral under this Final Order shall terminate.

27. <u>Access to DIP Collateral</u>. Notwithstanding anything contained herein to the contrary and without limiting any other rights or remedies of the DIP Agent, exercisable on behalf of the DIP Lenders, contained in this Final Order or the DIP Loan Documents, or otherwise available at law or in equity, and subject to the terms of the DIP Loan Documents, upon written notice to the landlord of any leased premises that an Event of Default or the Termination Date has occurred and is continuing under the DIP Loan Documents, the DIP Agent may, subject to the applicable notice provisions, if any, in this Final Order and any separate

agreement by and between such landlord and the DIP Agent, enter upon any leased premises of the Debtors or any other party for the purpose of exercising any remedy with respect to DIP Collateral located thereon and shall be entitled to all of the Debtors' rights and privileges as lessee under such lease without interference from the landlords thereunder, provided that the DIP Agent shall only be obligated to pay rent of the Debtors that first accrues after the DIP Agent's written notice referenced above and that is payable during the period of such occupancy by the DIP Agent, calculated on a daily per diem basis. Nothing herein shall require the DIP Agent to assume any lease as a condition to the rights afforded to the DIP Agent in this Paragraph. Furthermore, except with respect to the Westchester Real Property (as to which the rights of the DIP Agent and DIP Lenders are expressly reserved), any landlord's lien, right of distraint or levy, security interest or other interest that any landlord, warehousemen or landlord's mortgagee may have in any DIP Collateral of the Debtors located on such leased premises, to the extent the same is not void under section 545 of the Bankruptcy Code, is hereby subordinated to the DIP Obligations, DIP Liens, and DIP Superpriority Claims.[10]

28.     Insurance Policies.  Effective as of entry of this Final Order, the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to DIP Collateral or Prepetition Collateral, as applicable; provided, however, for the avoidance of doubt, this provision shall not delete any other additional insured or loss payee from any insurance policy, including, without limitation, with respect to the Westchester Real Property.

29.     Successors and Assigns.  This Final Order, the DIP Credit Agreement and the other DIP Loan Documents shall be binding upon all parties in interest in these Chapter 11

---

[10] The provisions of this Paragraph 27 will not apply to the Aptium lease.

Cases, including any subsequently appointed trustee, responsible individual, examiner with expanded powers, or other Estate representative.

30.     Survival.  The provisions of this Final Order and any actions taken pursuant hereto shall survive the entry of any subsequent order (other than entry of any subsequent Final Order), and the rights, remedies, powers, privileges, liens and priorities of the DIP Agent, DIP Lenders, Prepetition Agent, and Prepetition Lenders provided for in this Final Order and in any DIP Loan Document shall not be modified, altered or impaired in any manner by any order, including any order (i) confirming any plan of reorganization or liquidation in any of the Chapter 11 Cases (and, to the extent not indefeasibly paid in full in cash, the DIP Obligations shall not be discharged by the entry of any such order, or pursuant to section 1141(d)(4) of the Bankruptcy Code, each of the Debtors having hereby waived such discharge); (ii) converting any of the Chapter 11 Cases to a Chapter 7 case; (iii) dismissing any of the Chapter 11 Cases; or (iv) any superseding cases under the Bankruptcy Code.  The terms and provisions of this Final Order as well as the DIP Obligations, DIP Liens, DIP Superpriority Claim, DIP Loan Documents, and Adequate Protection Liens shall continue in full force and effect notwithstanding the entry of any such order, and such rights, claims and liens shall maintain their priority as provided by this Final Order and the DIP Loan Documents to the maximum extent permitted by law until all of the DIP Obligations are indefeasibly paid in full, in cash.

31.     Good Faith.  The DIP Facility, the use of Cash Collateral, and the other provisions of this Final Order, the DIP Credit Agreement and the other DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Agent, DIP Lenders, the Prepetition Agent and Prepetition Lenders, and the extension of the financial accommodations to the Debtors by the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders pursuant

to this Final Order and the DIP Loan Documents have been and are deemed to be extended in good faith, as that term is used in section 364(e) of the Bankruptcy Code. The DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders are entitled to, and are hereby granted, the full protections of section 364(e) of the Bankruptcy Code.

32. <u>Subsequent Reversal or Modification</u>. Subject to Paragraphs 20 and 21, if any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, that action will not affect (i) the validity of any obligation, indebtedness or liability under this Final Order and the DIP Loan Documents by the Debtors prior to the date of receipt of written notice to the DIP Agent and Prepetition Agent of the effective date of such action; or (ii) the validity and enforceability of any lien, administrative expense, right, or priority authorized or created hereby or pursuant to this Final Order and the DIP Loan Documents, including, without limitation, the DIP Obligations, DIP Liens and DIP Superpriority Claims, Prepetition Obligations, Prepetition Agent Adequate Protection Obligations, Prepetition Agent Adequate Protection Liens, Prepetition Agent Adequate Protection Payments and Section 507(b) Claims. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by the Debtors to the DIP Agent, DIP Lenders, Prepetition Agent and Prepetition Lenders prior to written notice to the DIP Agent and Prepetition Agent of the effective date of such action, shall be governed in all respects by the original provisions of this Final Order and the DIP Loan Documents, and the DIP Agent and DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits granted pursuant to this Final Order and the DIP Loan Documents.

33. <u>No Waiver</u>. This Final Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent or DIP Lenders, the Prepetition Agent or

Prepetition Lenders may have to bring or be heard on any matter brought before the Court. Any consent, modification, declaration of default, or exercise of remedies or non-exercise of remedies under or in connection with this Final Order or the DIP Loan Documents shall require the approval of DIP Agent, and, as and to the extent required by the voting provisions of the DIP Credit Agreement and shall not be deemed a waiver or relinquishment of any of the rights of the DIP Agent and DIP Lenders. Nothing contained in this Final Order (including without limitation, the authorization to use any Cash Collateral) shall impair, prejudice or modify any rights, claims or defenses available in law or equity to the DIP Agent on behalf of the DIP Lenders, or Prepetition Agent on behalf of the Prepetition Lenders, including, without limitation, the right to (a) request conversion of the Debtors' chapter 11 case to chapter 7 (to the extent applicable for charitable entities), (b) seek to terminate the exclusive rights of the Debtors to file, and solicit acceptances of, a plan of reorganization under section 1121 of the Bankruptcy Code or propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans, (c) object to the fees and expenses of any Retained Professionals, and (d) seek relief from the automatic stay. All such rights, claims and defenses, and the rights, objections and defenses of all parties in connection therewith, are hereby reserved.

34. <u>Additional Defaults</u>. In addition and without limitation of the Events of Default set forth in and defined in the DIP Loan Documents or this Final Order, it shall be a default hereunder (and constitute an "Event of Default" under the DIP Loan Documents) if (a) an order is entered dismissing or converting any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or appointing a Chapter 11 trustee or an examiner with expanded powers, (b) except as otherwise contemplated by the Transaction Side Letter or permitted by the DIP Credit Agreement, a sale of assets is proposed by the Debtors without the written consent of the DIP

Agent that would not indefeasibly pay the DIP Obligations in full in cash, (c) any other motion is filed by the Debtors for any relief directly or indirectly affecting the DIP Collateral in a material manner unless all DIP Obligations have been indefeasibly paid in final, in full, in cash, and completely satisfied upon consummation of the transaction contemplated thereby, (d) the Debtors fail to comply with any of the terms of this Final Order, including the DIP Budget, or any stipulation, representation or covenant by the Debtors stated herein is false or misleading, or (e) the Debtors fail to meet the deadlines for asset sales as set forth in the Transaction Side Letter and any other milestones set forth in the DIP Loan Documents (except to the extent such deadlines or milestones are extended by the DIP Agent). Any order for dismissal or conversion shall be automatically deemed to preserve the rights of the DIP Agent and DIP Lenders, and Prepetition Agent and Prepetition Lenders, under this Final Order and shall preserve the Carve-Out. No order providing for the sale of substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code shall be entered by the Court unless, upon the closing of such transaction, all liens securing the DIP Obligations and Prepetition Agent Obligations (in their respective priority) are transferred to the proceeds of such sale and such proceeds (but solely to the extent such proceeds are DIP Collateral or Prepetition Collateral and not the collateral of any other holder of a Permitted Prior Senior Lien) are applied to permanently and indefeasibly repay the DIP Obligations or Prepetition Agent Obligations, as applicable, in full, in cash. If an order dismissing any of these Chapter 11 Cases under section 305 or 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall be deemed to provide that (a) the DIP Liens and DIP Superpriority Claims granted to the DIP Lenders hereunder and in the DIP Loan Documents, as the case may be, and the Carve-Out shall continue in full force and effect, shall remain binding on all parties in interest and shall maintain their priorities as

provided in this Final Order until all DIP Obligations and indebtedness owing to the DIP Lenders under the DIP Loan Documents shall have been indefeasibly paid in full in cash and the DIP Lenders' obligations and commitments under the DIP Loan Documents shall have been terminated, and the Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Obligations, DIP Liens, DIP Superpriority Claims, Adequate Protection Liens, Adequate Protection Payment and 507(b) Claims.

35.    <u>Order Governs</u>.  In the event of any conflict between the provisions of this Final Order and the DIP Loan Documents, the provisions of this Final Order shall control and govern to the extent of such conflict.

36.    <u>Right to Credit Bid</u>.  Subject to Paragraph 20, pursuant to section 363(k) of the Bankruptcy Code, (i) the DIP Agent shall have the exclusive right to use the DIP Obligations, DIP Liens and DIP Superpriority Claim to credit bid with respect to any bulk or piecemeal sale of all or any portion of the DIP Collateral; and (ii) subject to the indefeasible payment in full in cash of the DIP Obligations, the Prepetition Agent shall have the exclusive right to use the Prepetition Obligations and the Prepetition Agent Adequate Protection Obligations, Prepetition Agent Adequate Protection Liens and Section 507(b) Claims of the Prepetition Agent and Prepetition Lenders to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.  For the avoidance of doubt, the rights of the DIP Agent and Prepetition Agent to credit bit with respect to their collateral do not permit the DIP Agent and Prepetition Agent to credit bid collateral of any holder of a Prior Permitted Senior Lien.

37.    <u>No Marshaling</u>.  None of the DIP Agent, DIP Lenders, DIP Collateral, the Prepetition Agent, Prepetition Lenders, or Prepetition Collateral shall be subject to the doctrine of marshaling.

38.     <u>United States Departments and Agencies</u>.  As to the United States, its agencies, departments or agents, nothing in this Final Order or the DIP Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

39.     <u>28 U.S.C. §959(b)</u>.  Nothing in this Final Order or the DIP Documents shall permit the Debtors to violate 28 U.S.C. §959(b).

40.     <u>DASNY and Trade Claims Monitor</u>.  Notwithstanding any statement in the Motion, neither of the DIP Orders shall impair, alter, modify or affect any rights between DASNY and the Trade Claims Monitor with respect to the priority of liens on the Arbitrage Rebate Accounts.

41.     <u>Amendment to DIP Credit Agreement</u>.  The Debtors, the DIP Agent and DIP Lenders shall enter into an amendment to the DIP Credit Agreement and, to the extent necessary, modifications of the other DIP Loan Documents, including the Transaction Side Letter, to reflect the terms of the Compromise Regarding the DIP Loan agreed to by the Debtors, the DIP Agent, the DIP Lenders and the Committee, a copy of which is attached hereto as Exhibit A, and the terms of which are expressly incorporated in this Final Order.  Such amendment to the DIP Credit Agreement and modifications to the other DIP Loan Documents are approved without further Order of this Court; provided, however, if the Debtors, the DIP Agent, the DIP Lenders and the Committee cannot agree to the definitive documentation reflecting the Compromise Regarding the DIP Loan, they shall seek relief of this Court to resolve this matter.

42.     <u>Headings</u>.  The headings in this Final Order are for reference purposes only and will not in any way affect the meaning and interpretation of the terms of this Final Order.

43.     <u>Immediate Docketing and Effect of Order</u>.  The Clerk of the Court is hereby directed to forthwith enter this Final Order on the docket of this Court maintained in regard to

these Chapter 11 Cases. This Final Order shall take effect immediately upon execution hereof, and, notwithstanding anything to the contrary contained in Bankruptcy Rules, including Bankruptcy Rule 4001(a)(3), there shall be no stay of execution of effectiveness of this Order. All objections to the entry of this Final Order have been withdrawn or overruled and the Motion is approved on a Final basis on the terms and conditions set forth herein. The Debtors shall promptly mail copies of this Final Order to the Notice Parties and to counsel for the Committee.

Dated: New York, New York
      May 17, 2010

                                    /s/ Cecelia Morris
                                    THE HONORABLE CECELIA G. MORRIS
                                    UNITED STATES BANKRUPTCY JUDGE