KRAMER LEVIN NAFTALIS & FRANKEL LLP
Kenneth H. Eckstein
Adam C. Rogoff
P. Bradley O'Neill
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for Debtors and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
In re:                                                   :    Chapter 11
                                                         :
SAINT VINCENTS CATHOLIC MEDICAL                          :    Case No. 10-11963 (CGM)
CENTERS OF NEW YORK, et al.,                             :
                                                         :
                              Debtors.                   :    Jointly Administered
---------------------------------------------------------X

**AFFIDAVIT OF THOMAS M. BARRY IN SUPPORT OF THE
DEBTORS' MOTION FOR (I) AN ORDER (A) APPROVING THE
SALE OF SUBSTANTIALLY ALL THE DEBTORS' BEHAVIORAL
HEALTH ASSETS INCLUDING THE OPERATIONS OF ST. VINCENT'S
HOSPITAL WESTCHESTER TO SAINT JOSEPH'S MEDICAL CENTER, AND
(B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN
EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (II) AN ORDER
(A) APPROVING BIDDING PROCEDURES FOR THE AUCTION OF A
REAL ESTATE OPTION, AND (B) SCHEDULING AN AUCTION AND
REAL ESTATE OPTION SALE HEARING; AND (III) AN ORDER
APPROVING THE SALE OF THE REAL ESTATE OPTION**

THOMAS M. BARRY, being duly sworn upon his oath, deposes and says:

1. I am a Managing Director of Cain Brothers & Company, LLC ("**Cain Brothers**"), an investment banking and professional services firm. Saint Vincent Catholic Medical Centers of New York ("**SVCMC**") and certain of its affiliates, as chapter 11 debtors and debtors in possession (each a "**Debtor**" and collectively, the "**Medical Centers**" or the

1

"**Debtors**")[1] retained Cain Brothers in these chapter 11 cases ("**Chapter 11 Cases**") to perform investment banking services for the Debtors' healthcare businesses. I submit this Affidavit ("**Affidavit**") in support of the Debtors' motion (the "**Motion**") for (I) an order (A) approving the sale of substantially all the Debtors' Behavioral Health Assets including the Operations of St. Vincent's Hospital Westchester to Saint Joseph's Medical Center, and (B) approving the assumption and assignment of certain executory contracts and unexpired leases; (II) an order (A) approving bidding procedures for the Auction of a Real Estate Option, and (B) scheduling an auction and Real Estate Option Sale Hearing; and (III) an order approving the sale of the Real Estate Option.[2] The sale of the Behavioral Health Assets includes but is not limited to the operations at St. Vincent's Hospital Westchester and the land and buildings of Chait Housing Development Corporation ("**Chait**") and Fort Place Housing Corporation ("**Fort Place**").[3]

2. To the extent any information disclosed herein requires amendment or modification upon the completion of further analysis or the discovery of additional relevant information, a supplemental affidavit will be submitted to the Court reflecting such amended, modified or additional information. Except as otherwise noted, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

---

[1] In addition to SVCMC, the Debtors are as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home; and (viii) SVCMC Professional Registry, Inc. There are certain affiliates of SVCMC who are not debtors.

[2] Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

[3] For purposes of this Affidavit, Behavioral Health Assets shall include Chait and Fort Place.

**The Marketing of the Behavioral Health Assets**

3. I am informed that, in December 2009 – prior to the retention of Cain Brothers – the Medical Centers retained Shattuck Hammond Partners ("**Shattuck Hammond**") to market St. Vincent's Westchester and the other Behavioral Health Assets. Subsequently, in early February 2010, the Medical Centers retained Cain Brothers & Company LLC ("**Cain Brothers**") as investment banker to oversee and coordinate the sale of the Medical Centers' businesses. On June 10, 2010, the Bankruptcy Court entered orders authorizing the Debtors' retention of Shattuck Hammond and Cain Brothers. Since its engagement, Cain Brothers has been working closely with Shattuck Hammond on the marketing and disposition of the various health service businesses of the Medical Centers. I have been overseeing and coordinating these marketing efforts personally.

4. Prior to Cain Brothers' retention, I understand that Shattuck Hammond Partners contacted approximately 18 potential purchasers to apprise them of the Debtors' interest in soliciting offers for the sale of the Behavioral Health Assets and to gauge their interest in acquiring the Behavioral Health Assets. This was being done concurrent with the Medical Centers' pre-bankruptcy efforts (in coordination with Governor Paterson's Task Force) to locate a new sponsor for the Medical Centers' health care services as a whole.

5. The Debtors entered into an exclusive non-binding letter of intent with Catholic Health Services of Long Island ("**CHSLI**") for the purchase of certain of the Behavioral Health Assets. The letter of intent was entered into on March 3, 2010 and contained a customary exclusivity provision to seek to negotiate a definitive agreement. This exclusivity provision provided for a carve-out for the continued marketing of the Behavioral Health Assets as part of a global transaction with SVCMC's Manhattan acute-care facility. However, as set forth in more detail in the affidavit of Scott B. Davis (the "**Davis Affidavit**"), submitted contemporaneously

herewith, CHSLI ultimately did not enter into definitive transaction documents and did not pursue a transaction with the Debtors and, accordingly, the letter of intent expired by its terms.

6. Subsequent to Cain Brothers' retention and the expiration of the CHSLI letter of intent – Shattuck Hammond Partners and Cain Brothers contacted potential purchasers, including additional purchasers not contacted prior to the CHSLI letter of intent. In all, Cain Brothers and Shattuck Hammond Partners contacted approximately 25 potential purchasers who could own and operate the Behavioral Health Assets, including county-backed healthcare systems, for-profit organizations that could potentially partner with a non-profit hospital or corporation that would operate the behavioral health facility, and an out-of-state healthcare organization that could attempt to satisfy regulatory requirements.

7. Based on instructions provided by the Debtors, the potential purchasers that Cain Brothers and Shattuck Hammond contacted were primarily providers that held licenses issued under Article 28 of the New York Public Health Law ("**Article 28**"). The decision to focus the Debtors' marketing efforts on Article 28 licensed providers was based upon the Debtors' business judgment influenced by certain regulatory constraints due to the patient community served by St. Vincent's Westchester operations (and its reliance upon adult Medicaid revenues) that are set forth in more detail in the Davis Affidavit.

8. While our marketing efforts centered primarily on Article 28 providers, Cain Brothers and Shattuck Hammond Partners also contacted certain entities that did not hold Article 28 licenses. These entities were uniformly disinterested in pursuing the purchase of the Behavioral Health Assets.

9. In addition, Cain Brothers and Shattuck Hammond explored the possibility of partnering non-Article 28 entities interested in owning and developing the Westchester Real

4

Property with Article 28 providers interested in operating the behavioral health facility. However, these discussions did not result in any serious indications of interest by potential operators. In fact, of the parties contacted, only St. Joseph's Medical Center was willing to establish a process to separately market a portion of the real estate as part of an overall purchase of the Behavioral Health Assets.

10. Of the 25 potential purchasers contacted both pre- and postpetition, 15 entered into confidentiality agreements with the Debtors and 13 visited the due diligence data room hosted by Shattuck Hammond Partners exclusively related to the Behavioral Health Assets. Thereafter, 6 interested parties conducted on-site visits at St. Vincent's Westchester. Four parties conducted extensive due diligence after submitting preliminary indications of interest.

11. Ultimately, despite their extensive marketing efforts to potentially eligible purchasers, the Debtors only received a single offer resulting in a definitive agreement – that from St. Joseph's Medical Center.

5

KL2 2668584.5

12. In summary, after an extensive marketing process whereby Cain Brothers and Shattuck Hammond contacted approximately 25 potential purchasers, both Article 28 and non-Article 28, who may be able to comply with the regulatory requirements to operate the Behavioral Health Assets, St. Joseph's Medical Center was the only interested party and the only part to submit a definitive offer thus becoming not only the highest and best offer, but also the only offer to preserve the Behavioral Health Assets as a going concern.

Executed this 4th day of October, 2010

_____
Thomas M. Barry

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK     )

Sworn to and subscribed before me
This fourth day of October, 2010

_____
Notary Public

MICHAEL A. MAKINDE
Notary Public, State of New York
NO. 01MA6192562
Qualified in Bronx County
Certificate Filed in New York County
Commission Expires September 02, 2012