**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | **:** | Chapter 11 |
| | **:** | |
| SAINT VINCENTS CATHOLIC MEDICAL | **:** | Case No. 10-11963 (CGM) |
| CENTERS OF NEW YORK, <u>et al.</u>, | **:** | |
| | **:** | |
| Debtors. | **:** | Jointly Administered |

-------------------------------------------------------- x  Related Doc. No. 799

### ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL THE ASSETS OF SAINT VINCENTS CATHOLIC MEDICAL CENTERS OF NEW YORK RELATED TO THE OPERATION OF ITS BEHAVIORAL HEALTH SERVICES BUSINESS TO SAINT JOSEPH'S MEDICAL CENTER; AND (B) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

Upon the Motion (the "**Motion**")[1] of Saint Vincents Catholic Medical Centers of

New York ("**SVCMC**") and certain of its affiliates, as Chapter 11 debtors and debtors-in-

possession (each a "**Debtor**" and, collectively, the "**Medical Centers**" or the "**Debtors**")[2] in the

above-referenced Chapter 11 cases (the "**Chapter 11 Cases**") for entry of:  (i) an order (the

"**Behavioral Health Services Sale Order**"), (a) approving an asset purchase agreement (as

amended, the "**APA**") for the sale to St. Joseph's Medical Center ("**St. Joseph's**" or

"**Purchaser**") of substantially all the assets relating to the Debtors' inpatient and outpatient

behavioral health service programs (the "**Behavioral Health Assets**"), including, without

limitation, (x) the St. Vincent's Westchester Hospital facility located at 275 North Street,

Harrison, New York ("**St. Vincent's Westchester**"); (y) the Chait Housing Development

---

[1] Unless otherwise indicated, capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

[2] In addition to SVCMC, the Debtors are as follows: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home; and (viii) SVCMC Professional Registry, Inc.  There are certain affiliates of SVCMC who are not Debtors.

Corporation ("**Chait**"); and (z) the Fort Place Housing Development Corporation ("**Fort Place**"), and (b) approving the assumption and assignment to Purchaser of certain executory contracts and unexpired leases related to the Behavioral Health Assets, (ii) an order ("**Bidding Procedures Order**"): (a) approving bidding procedures (the "**Bidding Procedures**") for the auction (the "**Auction**") of an option (as amended, "**Real Estate Option**") to purchase certain undeveloped real property at St. Vincent's Westchester ("**Undeveloped Real Property**"); and (b) scheduling the Auction and a hearing to approve the sale of the Real Estate Option (the "**Real Estate Option Sale Hearing**"), and (iii) an order (the "**Real Estate Option Sale Order**") approving a purchase and sale agreement (the "**Real Estate Option Purchase Agreement**") for the sale of the Real Estate Option to St. Joseph's or another bidder submitting a higher or better offer for the Real Estate Option at the Auction ("**Real Estate Option Purchaser**"); and on October 4, 2010, the Debtors having filed an Omnibus Response to (A) the Supplemental Limited Objection and Reservation of Rights of Sun Life Assurance Company of Canada and (B) the Limited Objection and Reservation of Rights of Michael E. Katzenstein, in his Capacity as the Medmal Trust Monitor, with an amended APA attached thereto as Exhibit A and an amended Real Estate Option attached thereto as Exhibit B; and the Debtors having withdrawn their request for approval of the Bidding Procedures Order; and the Court having conducted a hearing on approval of the Behavioral Health Services Sale Order on October 7, 2010 (the "**Behavioral Health Services Sale Hearing**"), and all parties-in-interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA and the transactions contemplated thereby; and upon the Motion and supporting documentation filed in connection therewith; and the Court having reviewed and considered the Motion and any objections or responses thereto; and upon the record of the Behavioral Health Services Sale Hearing and the full record of these

2

cases; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors and all parties-in-interest, and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is HEREBY FOUND AND DETERMINED THAT:[3]

        A.    <u>Jurisdiction and Venue</u>.  The Court has subject matter jurisdiction over the Motion and the relief requested therein pursuant to 28 U.S.C. section 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.).  The Motion is a core proceeding pursuant to 28 U.S.C. section 157(b); and venue is proper before the Court pursuant to 28 U.S.C. sections 1408 and 1409.

        B.    <u>Statutory Predicates</u>.  The statutory predicates for this Behavioral Health Services Sale Order are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

        C.    <u>Notice</u>.  Proper, timely, adequate and sufficient notice of the Motion and the relief requested therein, the Behavioral Health Services Sale Hearing, the assumption and assignment of the Assumed Contracts and Leases, and related transactions described in the APA (all such transactions being collectively referred to as the "**<u>Behavioral Health Services Sale Transaction</u>**"), has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and such notice was good and sufficient, and appropriate under the particular circumstances.  No other or further notice of the Motion, the

---

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

relief requested therein and all matters relating thereto, the Behavioral Health Services Sale Hearing, the Behavioral Health Services Sale Transaction or entry of this Behavioral Health Services Sale Order is or shall be required.

D. <u>Opportunity to Object</u>. Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to object to the sale of the Behavioral Health Assets. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

E. <u>Compliance with General Order</u>. As detailed herein, the Debtors have complied in all respects with General Order M-383 of the United States Bankruptcy Court for the Southern District of New York, dated November 18, 2009, establishing guidelines for the conduct of asset sales.

F. <u>Prompt Consummation</u>. Time is of the essence in consummating the Behavioral Health Services Sale Transaction and it is in the best interests of the Debtors and their estates to sell the Behavioral Health Assets within the time constraints set forth in the Motion and the APA. The APA must be approved and consummated promptly in order to maximize the value of Behavioral Health Assets for the Debtors' estates.

G. <u>Marketing Process</u>. As demonstrated by (i) the testimony and/or other evidence proffered or adduced at the Behavioral Health Services Sale Hearing and (ii) the representations of counsel made on the record at the Behavioral Health Services Sale Hearing, the marketing and bidding processes implemented by the Debtors, as set forth in the Motion and supporting documentation filed in connection therewith, were fair, proper, complete, and reasonably calculated to result in the best value received for the Behavioral Health Assets.

4

H.    Corporate Authority.  The Debtors have full corporate power and authority to consummate the Behavioral Health Services Sale Transaction pursuant to the APA and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate the Behavioral Health Services Sale Transaction.

I.    Business Justification.  The Debtors have articulated good, sufficient, and sound business reasons for consummating the APA, and the sale of the Behavioral Health Assets outside a plan of reorganization, and it is a reasonable exercise of the Debtors' business judgment to consummate the transactions contemplated by the APA.

J.    Best Interests.  Approval of the APA and the consummation of the Behavioral Health Services Sale Transaction are in the best interests of the Debtors, their estates, their creditors and other parties-in-interest.

K.    Highest or Otherwise Best.  The Purchaser's offer to purchase the Behavioral Health Assets, as memorialized in the APA, is the highest or otherwise best offer received for the Behavioral Health Assets to be sold.  The purchase price to be paid by the Purchaser pursuant to the APA is fair consideration and constitutes reasonably equivalent value for the Behavioral Health Assets, as determined by the marketing process.

L.    Arm's-Length Transaction.  The APA was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion, in good faith and from arm's-length bargaining positions.  The Purchaser in not an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the APA or any element of the Behavioral Health Services Sale Transaction to be avoided  or be the basis for an award of monetary

5

damages under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

M. <u>Good Faith</u>. The Purchaser is a good faith purchaser of the Behavioral Health Assets within the meaning of Bankruptcy Code section 363(m), and is therefore entitled to all of the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in connection with this proceeding in that: (i) the Purchaser in no way induced or caused the Chapter 11 filing of the Debtors; (ii) the Purchaser has recognized that the Debtors were free to deal with any other party interested in acquiring the Behavioral Health Assets; and (iii) all payments to be made to the Purchaser pursuant to the APA or other arrangements entered into by the Purchaser in connection with the Behavioral Health Services Sale Transaction have been disclosed.

N. <u>Free and Clear</u>. The Behavioral Health Assets constitute property of the Debtors' estates. The transfer of the Behavioral Health Assets to the Purchaser will be a legal, valid, and effective transfer of the Behavioral Health Assets, and will vest the Purchaser with all right, title, and interest of the Debtors in and to the Behavioral Health Assets free and clear of all liens, claims, interests, obligations, rights and encumbrances, except as otherwise specifically provided in the APA. Except as specifically provided in the APA, the Purchaser shall have no liability for any claims against the Debtors or their estates or any liabilities or obligation of the Debtors or their estates. Accordingly, the Debtors may sell the Behavioral Health Assets free and clear of all liens, encumbrances, pledges, mortgages, deeds of trust, security interests, claims, leases, charges, fines or penalties related to municipal violations, options, rights of first refusal, easements, servitudes, proxies, voting trusts or agreements, and transfer restrictions

6

under any agreement, including the Non-Permitted Exceptions (as such term is defined in the APA), in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, mature or unmatured, material or non-material, disputed or undisputed (collectively, the "**Interests**") and adverse claims, except as provided in the APA, because one or more of the standards set forth in section 363(f)(1) – (5) has been satisfied with regard to each such Interest or adverse claim. Those non-Debtor parties with Interests or adverse claims in or with respect to the Behavioral Health Assets who did not object, or who withdrew their objections, to the Behavioral Health Services Sale Transaction or the Motion are deemed to have consented to the sale of the Behavioral Health Assets free and clear of those non-debtor parties' interests or claims in the Assets pursuant to section 363(f)(2) of the Bankruptcy Code. Those holders of Interests in any Behavioral Health Assets who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Interests, if any, attach to the proceeds derived from the Behavioral Health Services Sale Transaction ultimately attributable to the property against or in which they claim an Interest. The Purchaser would not have entered into the APA, and would not consummate the Behavioral Health Services Sale Transaction, thus adversely affecting the Debtors, their estate, and their creditors if the sale of the Behavioral Health Assets to the Purchaser were not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

O.     <u>Adequate Assurance</u>. The assumption and assignment of the Assumed Contracts and Leases pursuant to the terms in the Motion and this Behavioral Health Services Sale Order is integral to the APA and is in the best interests of the Debtors and their estates,

creditors and all other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Purchaser has provided adequate assurance of its future performance under the Assumed Contracts and Leases within the meaning of sections 365(b)(1)(c) and (f)(2)(B) of the Bankruptcy Code. Any counterparty to an Assumed Contract or Lease that has not objected to the assumption and assignment to Purchaser of that agreement, or that has withdrawn its objection is deemed to have consented to (i) the assumption and assignment of such Assumed Contract, Assumed Leases, Additional Assumed Contract and/or Additional Assumed Lease and (ii) the cure amounts set forth in the Debtors' *Notice of Redesignation of Certain Executory Contract and Unexpired Leases to be Assumed and Assigned Pursuant to the Sale of the Debtors' Behavioral Health Assets* dated October 1, 2010.

P.     Avoidance and Successor Liability. The transfer of the Behavioral Health Assets (including any individual elements of the Behavioral Health Services Sale Transaction) to the Purchaser (i) does not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law and (ii) except as otherwise set forth in the APA, does not and will not subject the Purchaser to any liability whatsoever, including claims for any liabilities of the Debtors related to Medicare and Medicaid, with respect to the operation of the Debtors' business prior to the closing of the Behavioral Health Services Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability. Without limiting the foregoing, Purchaser is not liable (i) as a successor, (ii) under the APA, or (iii) under any other basis for any liabilities or responsibility with respect to the SVCMC Pension Plan, including without limitation, for any and all claims

8

under any provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), including Title IV of ERISA, or under any other statute, regulation or common law principle, whether such liability or claim arose prior to the Closing Date (as defined in the APA) or arises on or after the Closing Date.

Q. <u>No Merger or Consolidation</u>. The Behavioral Health Services Sale Transaction does not amount to a consolidation, merger, or de facto merger of the Purchaser and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or their estates, and the Purchaser does not constitute a successor to the Debtors or their estates.

R. <u>Compliance with Non-Bankruptcy Law</u>. In satisfaction of sections 363(d) and 541(f) of the Bankruptcy Code, the transfer of property as contemplated by the Behavioral Health Services Sale Transaction complies with applicable non-bankruptcy law governing such a transfer.

S. <u>Legal and Factual Bases</u>. The legal and factual bases set forth in the Motion and at the Behavioral Health Services Sale Hearing establish just cause for the relief granted herein.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1. <u>Motion</u>. The Motion is hereby granted as provided herein.

2. <u>Objections</u>. All objections to the Motion and the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included in such objections, other than objections to disputed Cure Amounts, are hereby overruled on the merits and denied.

9

3.      Sale Approval.  The Behavioral Health Services Sale Transaction, and all of the terms and conditions and transactions contemplated by the APA, are hereby authorized and approved pursuant to sections 105(a), 363(b) and 365(a) of the Bankruptcy Code.  Pursuant to section 363(b) of the Bankruptcy Code, the Debtors are authorized and directed to consummate the Behavioral Health Services Sale Transaction pursuant to and in accordance with the terms and conditions of the APA.  The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA and effectuate the provisions of this Behavioral Health Services Sale Order and the transactions approved hereby, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Behavioral Health Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.  The failure to specifically include any particular provision of the APA in this Behavioral Health Services Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA and each and every provision, term and condition thereof be authorized and approved in their entirety.

4.      Transfer of the Behavioral Health Assets.  As of the closing of the Behavioral Health Services Sale Transaction (the "**Closing**"), the transactions contemplated by the APA effect a legal, valid, enforceable and effective sale and transfer of the Behavioral Health Assets to the Purchaser, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Behavioral Health Assets.

10

5.    <u>Free and Clear</u>.    Except as specifically provided for in the APA, the transfer of the Behavioral Health Assets shall vest the Purchaser with all right, title, and interest of the Debtors in the Behavioral Health Assets pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all Interests, whether arising by statute or otherwise and whether arising before or after the commencement of these Chapter 11 Cases, whether known or unknown, including, but not limited to, Interests of or asserted by any of the creditors, vendors, employees, suppliers, or lessors of the Debtors or any other third party.    Any and all such Interests shall attach to the Net Sale Proceeds (as hereinafter defined) of the Behavioral Health Services Sale Transaction, including, without limitation, the Real Estate Option, with the same priority, validity, force, and effect as they now have against the Behavioral Health Assets. Except as provided in the APA, the Purchaser shall not be liable for, and the Behavioral Health Services Sale Transaction will not subject the Purchaser to, any liability for any Interests, including without limitation, statutory claims, that any of the foregoing parties or any other third party may have against the Debtors whatsoever, including claims for any liabilities of the Debtors related to their participation in Medicare and Medicaid programs, with respect to the operation of the Debtors' business prior to the closing of the Behavioral Health Services Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability.    All persons and entities asserting or holding any Interests in or with respect to the Behavioral Health Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), howsoever arising, shall be forever barred, estopped, and permanently enjoined

11

from asserting, prosecuting or otherwise pursuing such Interests against the Purchaser or the Behavioral Health Assets. Subject to the Interests attaching to the Net Sale Proceeds of the Behavioral Health Services Sale Transaction, this Behavioral Health Services Sale Order shall be effective as a determination that, as of the Closing, all Interests of any kind or nature whatsoever existing as to the Behavioral Health Assets prior to the Closing have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected. Following the Closing, no holder of an Interest in the Behavioral Health Assets shall interfere with the Purchaser's title to or use and enjoyment of the Behavioral Health Assets based on or related to such Interest. Each and every federal, state, and local governmental agency, recording office or department and all other parties, persons or entities is hereby directed to accept this Behavioral Health Services Sale Order for recordation as conclusive evidence of the free and clear and unencumbered transfer of title to the Behavioral Health Assets conveyed to the Purchaser. This Behavioral Health Services Sale Order and the APA shall be binding upon and govern the conduct of all such federal, state, and local government agencies or departments, including any filing agents, filing officers, title agents, recording agencies or offices, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Behavioral Health Assets.

6. <u>Surrender of Assets</u>. All entities who are presently, or who as of the Closing may be, in possession of some or all of the Behavioral Health Assets hereby are directed to surrender possession of the Behavioral Health Assets to the Purchaser as of the Closing. On the Closing and subject to the Interests attaching to the proceeds of the Sale as provided for in

12

this Behavioral Health Services Sale Order, each of the Debtors' creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its Interests in the Behavioral Health Assets, if any, as such Interests may have been recorded or may otherwise exist.

7. <u>Bulk Sale Laws Inapplicable</u>. No bulk sale law or *any* similar law of any local, state or other jurisdiction shall apply in any way to the Behavioral Health Services Sale Transaction and the transactions contemplated by the APA.

8. <u>Good Faith</u>. The Behavioral Health Services Sale Transaction has been undertaken by the Debtors and the Purchaser at arms'-length, without collusion, and the Purchaser will acquire the Behavioral Health Assets pursuant to the APA in good faith, under section 363(m) of the Bankruptcy Code, and is, and shall be entitled to all of the protections in accordance therewith. The consideration provided by the Purchaser for the Behavioral Health Assets under the APA is fair and reasonable, and the Behavioral Health Services Sale Transaction may not be avoided or be the basis for an award of monetary damages under section 363(n) of the Bankruptcy Code. The sale of the Behavioral Health Assets and the consideration provided by the Purchaser shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. The Purchaser is hereby granted and is entitled to all of the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code.

9. <u>Required Permits</u>. The Debtors are hereby authorized to assign all local, state and federal licenses and permits used in connection with the Behavioral Health Assets to the Purchaser in accordance with the terms of the APA.

KL2 2669621.9

10.     <u>Waiver of Rule 6006(f)</u>.  The Debtors are hereby authorized to assume and assign the Assumed Contracts and Leases in the Motion, rather than abide by the limits imposed by Bankruptcy Rule 6006(f).

11.     <u>Assumption and Assignment of Assumed Contracts and Leases</u>.

(a)     Pursuant to section 365(b), (c) and (f) of the Bankruptcy Code, the Debtors are authorized to assume and assign the Assumed Contracts and Leases designated for assignment to the Purchaser listed on <u>Exhibit A</u> to this Order; <u>provided</u>, <u>however</u>, that there shall be no assumption of any such contract or lease absent simultaneous assignment thereof to the Purchaser.  In accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Assumed Contracts and Leases to the Purchaser, (A) the Purchaser shall have all of the rights of the Debtors thereunder and each provision of such Assumed Contracts and Leases shall remain in full force and effect for the benefit of the Purchaser notwithstanding any provision in any such contract, lease, or in applicable law that prohibits, restricts or limits in any way such assignment or transfer, and (B) none of the Assumed Contracts and Leases may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the consummation of the transactions contemplated by the APA.

(b)     Notwithstanding the foregoing, the Debtors reserve the right to postpone, up to 90 days following the closing date of the Behavioral Health Services Sale Transaction, the assumption and assignment of their respective contracts with Empire HealthChoice Assurance, Inc. and HIP Health Plan of New York. The postponement may be done by filing a notice of postponement of assignment (the "**Notice of Postponement**") with the Court and serving it upon the affected non-debtor contract party and the Purchaser. The Notice of

14

Postponement shall identify the post-closing effective date of the assumption and assignment of such contract to the Purchaser.

        (c)      With respect to the Debtors' contract with Aetna, Inc. ("**Aetna**"), such contract shall only be assumed and assigned to the Purchaser subject to the prior consent by Aetna (in writing) to amend and bifurcate the contract between its application to the Behavioral Health Assets and all the Debtors other businesses in which event only that portion of the agreement relating to the Behavioral Health Assets shall be assumed and assigned.

        (d)      For the avoidance of doubt, with respect to the receivables relating to the contracts assigned to the Purchaser under the APA, any receivables which relate to services rendered by the Debtors on or prior to the Closing Date shall remain property of the estates and, if received by the Purchaser, shall be promptly turned over to the Debtors.

        12.      <u>Payment of Undisputed Cure Amounts</u>.  On or as promptly after the Closing as practical, the Cure Amounts to which no objections have been filed, or to which the Purchaser and applicable non-Debtor contract party have agreed as to the allowed Cure Amount(s), shall be paid.

        13.      <u>Disputed Cure Amounts</u>.  A further hearing shall be held on December 2, 2010 at 11:00 a.m. to consider any unresolved objections to the Cure Amounts pursuant to section 365 of the Bankruptcy Code.  With respect to Cure Amounts to which objections have been raised and not resolved, such Cure Amounts shall be paid by the Purchaser within the later of (i) five business days after the Closing or (ii) five business days after entry of a final, non-appealable Order allowing the Cure Amounts.

        14.      <u>Cure Payments</u>.  The Purchaser's payment of the undisputed Cure Amounts pursuant to this Behavioral Health Services Sale Order, and of any disputed Cure

15

Amounts paid pursuant to a final, non-appealable order or to consensual settlement with the applicable non-debtor party, shall be deemed to discharge the Debtors' obligation to: (i) cure any defaults under the Assumed Contracts and Leases; and (ii) compensate, or provide adequate assurance that the Purchaser will promptly compensate, any non-debtor party to the Assumed Contracts and Leases for any actual pecuniary loss resulting from any default under the Assumed Contracts and Leases. Pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall have no liabilities for any claims arising or relating to or accruing pre-closing or post-Closing under any of the Assumed Contracts and Leases.

15.     Cure Payments under the Assumed CBAs.  Notwithstanding anything in the APA to the contrary, Purchaser shall be responsible for the payment of all Cure Amounts, if any, under the Assumed CBAs in an amount (a) agreed to as between Purchaser and the applicable union or (b) otherwise determined by further order of the Court.  Purchaser reserves the right to dispute any Cure Amount or other amount asserted by the applicable union under an Assumed CBA, including without limitation as to the validity, amount and/or timeliness thereof.

16.     Use of Sale Proceeds. The Debtors are directed to remit the "Net Sale Proceeds" from the Behavioral Health Services Sale Transaction into a separate escrow account. As used in this Behavioral Health Services Sale Order, "**Net Sale Proceeds**" shall mean (i) all amounts paid or payable by the Purchaser to the Debtors with respect to the Behavioral Health Services Sale Transaction, after (a) pro-rations and any other adjustments that affect the final purchase price and (b) reserving for the transaction fees payable to the Debtors' brokers (Cain Brothers and Shattuck) arising from the Behavioral Health Services Sale Transaction, the payment of which shall be subject to further order of the Court and (ii) all net proceeds actually received by the Debtors following any subsequent sale or disposition of the Real Estate Option.

16

All liens on the Behavioral Health Assets shall attach to the Net Sale Proceeds with the same priority, validity, force and effect as on the Behavioral Health Assets before they were sold. The Net Sale Proceeds shall be distributed upon further order of the Court in accordance with applicable law.

17. <u>Modifications</u>. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of this Court, <u>provided</u> that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates and <u>provided</u> <u>further</u> that no such modifications, amendments, or supplements may be made except following two (2) business days' written notice to, or with the prior consent of: (i) General Electric Capital Corporation, as Agent for itself, and TD Bank, N.A., c/o Winston & Strawn LLP, 200 Park Avenue, New York, New York, 10166-4193, Attn: David Neier, Esq.; and Winston & Strawn LLP, 101 California Street, San Francisco, CA 94111-5802, Attn: Randy Rogers, Esq.; (ii) Sun Life Assurance Company of Canada c/o Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10017, Attn: James S. Carr, Esq.; (iii) MedMal Trust Monitor, c/o Cooley LLP, 1114 Avenue of the Americas, New York, New York 10036, Attn: Cathy Hershcopf, Esq. and Richard S. Kanowitz, Esq.; and (iv) the Creditors' Committee, c/o Akin Gump Strauss Hauer & Feld LLP, One Bryant Park, New York, NY 10036 (Attn: David H. Botter, Esq., Stephen Kuhn, Esq., and Sarah Link Schultz, Esq.).

18. <u>No Successor Liability</u>. The Purchaser is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the

Debtors and/or their estates, other than the Assumed Liabilities, with respect to the Behavioral Health Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability except for the assumption of the Assumed Contracts and Assumed Leases and the Assumed Liabilities as expressly provided in the APA. Except for, and solely to the specific and limited extent of, the assumption by the Purchaser of the Assumed Contracts and Leases and Assumed Liabilities pursuant to the APA, neither the purchase of the Behavioral Health Assets by the Purchaser or any of its affiliates nor the fact that the Purchaser or any of its affiliates is using any of the Behavioral Health Assets previously operated by the Debtors will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtors' business or any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Without limiting the foregoing, Purchaser is not liable (i) as a successor, (ii) under the APA, or (iii) under any other basis for any liabilities or responsibility with respect to the SVCMC Pension Plan, including without limitation, for any and all claims under any provision of ERISA, including Title IV of ERISA, or under any other statute, regulation or common law principle, whether such liability or claim arose prior to the Closing Date (as defined in the APA) or arises on or after the Closing Date.

19. <u>Binding Order</u>. This Behavioral Health Services Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtors and the Purchaser, their respective successors, and permitted assigns,

including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estate or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, and all creditors of any of the Debtors (whether known or unknown).

20. <u>Non-Severability</u>. The provisions of this Behavioral Health Services Sale Order are non-severable and mutually dependent.

21. <u>Behavioral Health Services Sale Order Immediately Effective</u>. As provided by Bankruptcy Rules 6004(h), 6006(d) and 7062, this Behavioral Health Services Sale Order shall be effective and enforceable immediately upon its entry, and the sale approved by this Behavioral Health Services Sale Order may close immediately upon entry of this Behavioral Health Services Sale Order, notwithstanding any otherwise applicable waiting periods.

22. <u>Sale of the Real Estate Option</u>. The Debtors have voluntarily withdrawn from the Motion their request for approval of bidding procedures and to schedule an auction for the sale of the Real Estate Option. Any such sale or other assignment of the Real Estate Option will be subject to further order of the Court.

23. <u>Allocation of Net Sale Proceeds</u>. No determination is being made as to the appropriate allocation of Net Sale Proceeds among the creditors asserting an interest in such proceeds. The allocation of such Net Sale Proceeds shall be the subject of further order of the Court.

24. <u>Scheduling Order</u>. The Debtors, GE Capital, Sun Life, the MedMal Trusts, and the Creditors' Committee shall confer in good faith and seek to settle a proposed scheduling order in this matter with respect to the determination of all issues regarding the allocation of the Net Sale Proceeds.

KL2 2669621.9

25.    <u>Retention of Jurisdiction</u>.    This Court shall retain jurisdiction on all matters pertaining to the relief granted herein, including to interpret, implement, and enforce the terms and provisions of this Behavioral Health Services Sale Order and the APA, adjudicate any dispute relating to the Behavioral Health Services Sale Transaction or the proceeds thereof, and the assumption, assignment and cure of any of the Assumed Contracts and Leases.

Dated:   Poughkeepsie, New York
         October 12, 2010


                                        /s/ Cecelia Morris
                              THE HONORABLE CECELIA G. MORRIS
                              UNITED STATES BANKRUPTCY JUDGE

KL2 2669621.9

**Exhibit A**