PENSION BENEFIT GUARANTY CORPORATION
Office of the Chief Counsel
Israel Goldowitz, Chief Counsel
Charles L. Finke, Deputy Chief Counsel
Joel W. Ruderman, Assistant Chief Counsel
Kelly R. Cusick, Attorney
Scott Wagner, Attorney
1200 K Street, NW, 3rd Floor
Washington, DC 20005-4026
Tel. No.: (202) 326-4020, ext. 3926
Fax No.: (202) 326-4112

*Counsel for Pension Benefit Guaranty Corporation*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SAINT VINCENTS CATHOLIC MEDICAL | ) | Chapter 11 |
| CENTERS OF NEW YORK d/b/a | ) | |
| SAINT VINCENTS CATHOLIC MEDICAL | ) | Case No. 10-11963 (CGM) |
| CENTERS, *et. al.*[1] | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Honorable Cecelia G. Morris |
| | ) | |

**STATEMENT OF PENSION BENEFIT GUARANTY CORPORATION IN SUPPORT OF DEBTORS' MOTION FOR (I) AN ORDER (A) APPROVING BREAK-UP FEE AND BIDDING PROCEDURES FOR THE AUCTION OF ST. ELIZABETH ANN'S ASSETS, (B) SCHEDULING AN AUCTION AND SALE HEARING, AND (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTACTS AND UNEXPIRED LEASES; AND (II) AN ORDER (A)**

---

[1] The Debtors in these Chapter 11 cases include: (i) 555 6th Avenue Apartment Operating Corporation; (ii) Bishop Francis J. Mugavero Center for Geriatric Care, Inc.; (iii) Chait Housing Development Corporation; (iv) Fort Place Housing Corporation; (v) Pax Christi Hospice, Inc.; (vi) Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center; (vii) St. Jerome's Health Services Corporation d/b/a Holy Family Home; (viii) SVCMC Professional Registry, Inc.; and (ix) Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincents Catholic Medical Centers.

**APPROVING THE SALE OF THE ST. ELIZABETH ANN'S ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO A RECEIVERSHIP AGREEMENT, (C) APPROVING ENTRY INTO THE BAYLEY SETON LEASE, AND (D) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY <u>CONTRACTS AND UNEXPRED LEASES</u>**

The Pension Benefit Guaranty Corporation ("PBGC"), by and through its undersigned counsel, hereby submits this statement in support of Debtors' motion for an order approving, *inter alia*, (i) the sale of substantially all the assets ("SEA Sale") of Debtor Sisters of Charity Health Care System Nursing Home, Inc. d/b/a St. Elizabeth Ann's Health Care & Rehabilitation Center ("SEA") to the stalking horse purchasers or other bidder(s) submitting a higher or better bid at auction, and (ii) the lease of the Bayley Seton campus (the "Bayley Seton Lease"), owned by Debtor Saint Vincents Catholic Medical Centers of New York d/b/a Saint Vincents Catholic Medical Centers ("SVCMC"), to the potential lessee, (the "Motion") (Dkt. No. 1694).

**STATEMENT IN SUPPORT**

1. PBGC,[2] the largest unsecured creditor of both SEA and SVCMC, supports the proposed SEA Sale and the Bayley Seton Lease because each transaction will enhance estate value, benefiting the respective estate's creditors. The SEA Sale will generate substantial cash for the SEA estate, and the Bayley Seton Lease will shift certain liabilities from SVCMC to the lessee, limiting the depletion of the SVCMC estate. For those reasons, the Motion should be approved.

---

[2] PBGC is the United States government agency that administers the nation's pension insurance program under Title IV of the Employee Retirement Income Security Act of 1974, *as amended* ("ERISA"). *See* 29 U.S.C. §§ 1301-1461 (2006 & Supp. III 2009). Under ERISA, PBGC becomes the statutory trustee of certain terminated, underfunded pension plans, and is responsible for paying those terminated plan's benefits, subject to statutory limitations. *See* 29 U.S.C. §§ 1322, 1342, 1361.

2. The Motion highlights an important issue, however, that must be addressed: the nine jointly-administered estates captioned above (collectively, "Debtors") will have interdebtor claims against each other to recoup certain inequities that, left unresolved, compromise the integrity of each estate. In a multi-debtor case, each distinct debtor must maximize the value of, and minimize the expenses for, its respective estate, which often necessitates those debtors to assert claims against each other. For example, SEA must resolve interdebtor claims, including claims for shouldering (i) DIP financing used solely by other Debtors, (ii) disproportionate amounts of SVCMC's corporate expenses, and (iii) liabilities shifted from SVCMC. Such interdebtor claims maintain the separateness of each Debtor, which is an integral component to satisfy each Debtor's fiduciary duties.

**I.    The Debtors' Estates Must Remain Separate and Distinct.**

3. On April 14, 2010, each Debtor filed for relief under chapter 11 of the Bankruptcy Code. The Court ordered each estate to be jointly administered for procedural purposes only. The estates of those nine Debtors have not been substantively consolidated, nor does any basis exist for substantive consolidation.[3]

4. The separateness of these nine Debtors is of particular concern to PBGC.

5. PBGC became statutory trustee of the Saint Vincent Catholic Medical Centers Retirement Plan (the "Pension Plan"), a defined benefit pension plan, on November 1, 2010, after the Pension Plan had terminated. At the time of termination, the Pension Plan was underfunded by over $294 million.

---

[3] Debtors did not disregard their corporate separateness pre-petition, and did not hopelessly commingle assets post-petition. *See e.g. In re Owens Corning*, 419 F.3d 195 (3d Cir.

6. When a pension plan terminates, as it did in this case, PBGC is an involuntary creditor. PBGC cannot choose which qualified pension plans it covers. Recognizing the exposure this creates, Congress provided PBGC with the ability to collect from, not just the pension plan sponsor, but also from the plan sponsor's entire controlled group, as defined in 29 U.S.C. § 1302(a)(14).[4]

7. Prior to termination, each of the nine Debtors was either a contributing sponsor of the Pension Plan,[5] or a member of the contributing sponsor's controlled group.[6] PBGC filed joint and several claims for underfunded benefit liabilities, minimum funding contributions, premiums, and shortfall waivers against each Debtor, including SVCMC and SEA. Joint and several claims against the entire controlled group, including all nine of the Debtors, provides PBGC with broader protection to collect the liabilities resulting from pension plan termination. That is only true, however, if the Debtor's estates remain separate.

## II. Interdebtor Claims Must Be Resolved.

8. Interdebtor claims often arise in circumstances such as those present here – in a liquidating chapter 11 bankruptcy case where multiple estates are jointly administered for

---

2005); *see also In re Augie/Restivo Banking Co*., 860 F.2d 515 (2d Cir. 1988).

[4] Under ERISA, the sponsor of a terminated pension plan and all members of that sponsor's controlled group, as defined in 29 U.S.C. § 1302(a)(14), are jointly and severally liable for the total shortfall between the plan's assets and promised benefits as of the plan's termination date. *See* 29 U.S.C. §§ 1301(a)(18), 1362(b). Furthermore, regardless of whether a plan terminates, those parties are also jointly and severally liable for minimum funding contributions owed to the plan and insurance premiums owed to PBGC. *See* 26 U.S.C. § 412(b)(2); 29 U.S.C. §§ 1082(c)(11), 1307.

[5] *See* 29 U.S.C. § 1301(a)(13).

[6] *See* 29 U.S.C. § 1301(a)(14).

procedural purposes only.[7] It is widely understood that a debtor owes a fiduciary duty to its creditors to maximize the value of its estate.[8] In a multi-debtor case, this often necessitates debtors asserting claims against the other debtors for expenses paid or liabilities assumed.[9] As described below, the respective estates of certain Debtors, including SEA, are at risk of shouldering expenses belonging to other Debtors. To maximize the value of those estates, the respective Debtors will need to resolve claims against other Debtors.

9. As the Bankruptcy Court for the Southern District of New York has recognized, "in a case with multiple debtors, the debtors, as fiduciaries, have duties to refrain from favoring or appearing to favor one or another of their estates and its creditors over another."[10] Timing of the receipt of sale proceeds and the payment of expenses should not impact unsecured creditors' ultimate recovery. Rather, the extent of each estate's assets and liabilities should govern unsecured creditors' recovery.

---

[7] *See e.g.*, *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 617 (Bankr. S.D.N.Y. 2006) (recognizing that "[i]n multi-debtor cases, individual debtors frequently, if not always, have actual or arguable obligations to each other – by reason of money lent, or funds or other assets having been transferred, from one debtor to another; by reason of one debtor having provided or obtained services for other debtors; by reason of allocations of overhead or changes for shared facilities or other property; or by reason of other interdebtor dealings.")

[8] *See* 7 Collier on Bankruptcy, ¶ 1108.09[3] (15th ed. 2008).

[9] *See e.g.*, *In re Innkeepers USA Trust*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010) (noting that "it is 'Bankruptcy 101' that a debtor and its board of directors owe fiduciary duties to the debtor's creditors to maximize the value of the estate, and each of the estates in a multi-debtor case.").

[10] *See In re Innkeepers USA Trust*, 442 B.R. at 235 (citing *In re Adelphia Commc'ns. Corp.*, 336 B.R. at 669-71).

10. For example, SEA,[11] and certain other Debtors such as Bishop Francis J. Mugavero Center for Geriatric Care, Inc. ("Bishop Mugavero"),[12] demonstrated greater financial health, both pre-petition and throughout the bankruptcy proceedings, than that of other Debtors. The creditors of SEA and Bishop Mugavero are entitled to the value of SEA's and Bishop Mugavero's financial well-being. In fact, it is the fiduciary duty of SEA and Bishop Mugavero to ensure that their respective creditors receive that value.

### A. The SEA Estate Should Not Be Inequitably Burdened By The Repayment of DIP Financing.

11. When the SEA Sale closes, substantial money will flow into the SEA estate. Pursuant to the Court-authorized debtor-in-possession credit agreement (the "DIP Agreement") (Dkt. No. 285), that money may be used to pay down any remaining DIP obligations.[13] By entering into the DIP Agreement, each Debtor agreed to serve as a mutual guarantor for the DIP obligations, regardless of whether the respective estate needed post-petition financing. Each Debtor did not agree, however, that it would ultimately shoulder the post-petition financing needs of other Debtors.

12. A large portion of the proceeds received from the sale of Bishop Mugavero paid down the DIP obligations. As a result of SEA's guarantee of the DIP, the SEA Sale proceeds also may be used similarly.

---

[11] SEA is a skilled nursing and rehabilitative health care facility located in Staten Island.
[12] Bishop Mugavero is a skilled nursing and residential health care facility located in Brooklyn.
[13] The DIP Agreement provides that each of the nine Debtors captioned above is jointly and severally liable for the payment of all DIP obligations. *See* DIP Agreement at § 11.1. The DIP Agreement has been amended several times throughout the case, none of which alter this provision.

13. Based on information provided by the Debtors, PBGC believes that SEA and Bishop Mugavero each generated sufficient cash flow to fund their respective operations both pre-petition and post-petition. Neither relied on GE lending pre-petition or used DIP funds to operate their respective businesses. Therefore, the SEA and Bishop Mugavero estates should not be burdened by the repayment of post-petition financing. At a minimum, the respective estates that funded post-petition financing used by other estates can look to the other estates to satisfy a portion of the obligation.

### B. Corporate Expenses Must Be Allocated Appropriately.

14. PBGC understands that SEA and Bishop Mugavero have not relied on SVCMC for material administrative support.

15. In both the pre-petition and post-petition periods, SEA and Bishop Mugavero were charged by its parent SVCMC for a significant amount of administrative expenses for the jointly administered estates, resulting in a benefit to SVCMC, even though SVCMC did not provide meaningful services in return for these charges.

16. More specifically, during the post-petition period, a regular monthly fee has been charged from SVCMC to SEA and Bishop Mugavero. In addition to this fee, SVCMC has allocated certain general corporate and restructuring expenses to both SEA and Bishop Mugavero. These allocations were not based on any estimate for actual services provided, but instead were based on an alternate methodology that appears to have resulted in an over-allocation of expenses to SEA and Bishop Mugavero.

### C. The Savings Resulting From A Shift In Bayley Seton Liabilities Should Be Shared with SEA.

17. If the SEA Sale and Bayley Seton Lease are the highest and best bid at the auction, the same group purchasing SEA's assets will also be leasing the Bayley Seton property. In doing so, that purchaser will assume carrying costs and liabilities of the Bayley Seton property totaling in excess of $2 million a year. SVCMC, as owner of Bayley Seton, had been responsible for those costs. Effectively, the SEA Sale structure will shift these liabilities from SVCMC to SEA. SEA should recognize the savings experienced by SVCMC resulting from the SEA purchaser's assumption of those costs.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## CONCLUSION

18. PBGC supports the Motion because it generates substantial cash for SEA and minimizes the expenses of SVCMC. But the issue of interdebtor claims highlighted by the Motion, as explained herein, is of great concern to PBGC. These interdebtor claims, among others, must be resolved to protect the integrity of each separate estate, and ultimately the fair treatment of each estate's creditors.

Dated: July 15, 2011
Washington, D.C.

Respectfully submitted,

*/s/ Joel W. Ruderman*
ISRAEL GOLDOWITZ, Chief Counsel
CHARLES L. FINKE, Deputy Chief Counsel
JOEL W. RUDERMAN, Assistant Chief Counsel
KELLY R. CUSICK, Attorney
SCOTT V. WAGNER, Attorney
Pension Benefit Guaranty Corporation
Office of the Chief Counsel
1200 K Street, NW, 3rd Floor
Washington, DC 20005-4026
Tel. No.: (202) 326-4020, ext. 3029
Fax No.: (202) 326-4112
Email: ruderman.joel@pbgc.gov &
efile@pbgc.gov

*Attorneys for Creditor*
*Pension Benefit Guaranty Corporation*

# CERTIFICATE OF SERVICE

I hereby certify, that on this 15th day of June 2011, the foregoing STATEMENT OF PENSION BENEFIT GUARANTY CORPORATION IN SUPPORT OF DEBTORS' MOTION FOR (I) AN ORDER (A) APPROVING BREAK-UP FEE AND BIDDING PROCEDURES FOR THE AUCTION OF ST. ELIZABETH ANN'S ASSETS, (B) SCHEDULING AN AUCTION AND SALE HEARING, AND (C) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTACTS AND UNEXPIRED LEASES; AND (II) AN ORDER (A) APPROVING THE SALE OF THE ST. ELIZABETH ANN'S ASSETS, (B) AUTHORIZING THE DEBTORS TO ENTER INTO A RECEIVERSHIP AGREEMENT, (C) APPROVING ENTRY INTO THE BAYLEY SETON LEASE, AND (D) APPROVING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPRED LEASES was served electronically or by overnight courier on the following:

| | |
|---|---|
| Judith Eisen, Esq.<br>Garfunkel Wild, P.C.<br>111 Great Neck Road, Suite 503<br>Great Neck, NY 11021<br><br>*Debtors' Counsel*<br>**Via Federal Express** | Adam C. Rogoff, Esq.<br>Kramer Levin Naftalis & Frankel LLP<br>1177 Avenue of the Americas<br>New York, NY 10036<br><br>*Debtors' Counsel*<br>**Via CM/ECF** |
| David Neier, Esq.<br>Winston & Strawn LLP<br>200 Park Avenue<br>New York, NY 10166-4193<br><br>*Claims Agent*<br>**Via CM/ECF** | Serene Nakano, Esq.<br>United States Trustee<br>33 Whitehall Street, 21st Floor<br>New York, NY 10004<br><br>*U.S. Trustee*<br>**Via CM/ECF** |
| David Botter, Esq.<br>Stephen Kuhn, Esq.<br>Sarah Link Schultz, Esq.<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br><br>*Creditor's Committee*<br>**Via CM/ECF** | Isaac Nutovic, Esq.<br>Nutovic & Associates<br>488 Madison Avenue, 16th Floor<br>New York, NY 10022<br>INutovic@nutovic.com<br>Isidor Friedenberg: sbenar@aol.com<br><br>*Purchasers*<br>**Via Email and Federal Express** |

                                                */s/ Joel W. Ruderman*
                                                JOEL W. RUDERMAN, Assistant Chief Counsel