<u>FOR PUBLICATION</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                                         :
*In re:*                                                 :
                                                         :
SAINT VINCENTS CATHOLIC MEDICAL          :    Chapter 11
CENTERS OF NEW YORK, *et al.*,            :
                                                         :    Case No. 10-11963 (CGM)
                                         *Debtors*       :
                                                         :
-------------------------------------------------------- x

## MEMORANDUM DECISION IMPOSING SANCTIONS

<u>A P P E A R A N C E S</u> :

AKIN GUMP STRAUSS HAUER & FELD LLP
*Attorneys for the Liquidating Trustee*
One Bryant Park
New York, NY 10036
<u>By</u>:    David H. Botter, Esq.
        Sarah Link Schultz, Esq.
        Angeline L. Koo, Esq.
        Ashleigh L. Blaylock, Esq.

LAW OFFICE OF SHERYL R. MENKES, ESQ.
*Attorneys for Elaine Garvey, Administratrix*
    *for the Estate of Ronald Brophy, Deceased*
325 Broadway
Suite 504
New York, NY 10007
<u>By</u>:    Sheryl R. Menkes, Esq.

**CECELIA G. MORRIS**
**CHIEF U.S. BANKRUPTCY JUDGE**

An unknown prepetition creditor, who failed to file a proof of claim despite receiving

adequate notice of the bar date for filing such claims, brought suit against certain debtors in state

court purportedly to recover against the debtors' insurance policies. Despite having evidence that

no insurance coverage existed and notice that the continuation of the state court action violated

the injunction contained in the debtors' confirmed chapter 11 plan, the creditor's attorney sought

and obtained an order from the state court directing the liquidating trustee to appear and show

cause why the plan injunction should not be lifted to allow the suit to proceed.

After the attorney refused to dismiss the state court action, the liquidating trustee sought

relief in this Court by way of an order enforcing the plan injunction. After a hearing, this Court

granted the trustee's motion, directed the attorney to dismiss the state court action, and stated

that it would award the liquidating trustee certain costs and attorneys' fees incurred in connection

with the actions of the creditor and her attorney. The Court requested additional submissions on

the exact amount of fees to be awarded and set a further hearing. After receiving the

submissions, the Court cancelled the further hearing and took the matter under advisement on the

submissions. The Court now issues this memorandum decision imposing sanctions against the

creditor's attorney in the amount of **$83,515.00** for the reasons set forth below.

### JURISDICTION

The Court has subject-matter jurisdiction over this contested matter pursuant to 28 U.S.C.

§ 1334 and the *Amended Standing Order of Reference* signed by Chief District Judge Loretta A.

Preska on January 31, 2012. The Court also has "inherent or ancillary jurisdiction to interpret

and enforce its own orders . . . wholly independent of the statutory grant of jurisdiction under 28

U.S.C. § 1334." *In re Spiegel, Inc.*, 2006 WL 2577825, at *7 (Bankr. S.D.N.Y. Aug. 16, 2006)

(citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934)). This is a "core" proceeding pursuant

to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate) and (O) (other

proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-

creditor or the equity security holder relationship).

## BACKGROUND

### A.    The Debtors' Bankruptcy Cases

On April 14, 2010 (the "Petition Date"), Saint Vincents Catholic Medical Centers of New York ("SVCMC"), along with certain of its affiliates (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code, initiating the above-captioned bankruptcy cases. *See* Vol. Pet., ECF No. 1.[1] On April 16, 2010, the Court entered an order directing the joint administration of the Debtors' cases. *See* Order, ECF No. 36.

On August 20, 2010, the Court entered an order fixing October 12, 2010 (the "General Bar Date") as the deadline for creditors to file proofs of claim for prepetition liabilities. *See* Order, ECF No. 773. On August 27, 2010, the Debtors served notice of the General Bar Date to more than 70,000 creditors and potential creditors in accordance with the order fixing the General Bar Date. *See* Aff. of Service, ECF No. 844. In addition, on September 10, 2010, notice of the General Bar Date was published in *The New York Times* and *The New York Post*. *See* Aff. of Publication, ECF No. 1277; Aff. of Publication, ECF No. 1278.

Thereafter, the Court entered orders fixing August 2, 2011 as the bar date for claims accruing between the Petition Date and May 31, 2011 (the "First Administrative Bar Date") and May 21, 2012 as the bar date for claims accruing between June 1, 2011 and April 30, 2012 (the "Second Administrative Bar Date"). *See* Order, ECF No. 1775; Order, ECF No. 2860. Notice of the First and Second Administrative Bar Dates was provided to known and potential creditors in accordance with the respective orders approving those bar dates. *See* Aff. of Service, ECF No. 1815; Aff. of Service, ECF No. 2870. As with the General Bar Date, notice of the First and Second Administrative Bar Dates was also published in *The New York Times* and *The New York*

---

[1]    Unless otherwise indicated, all references to ECF docket entries are to the jointly-administered docket maintained in the Debtors' consolidated chapter 11 cases under Case No. 10-11963 (CGM).

*Post.* *See* Aff. of Publication, ECF No. 1891; Aff. of Publication, ECF No. 1892; Aff. of

Publication, ECF No. 2968; Aff. of Publication, ECF No. 2969.

On June 29, 2012, the Court entered an order (the "Confirmation Order") confirming the

Debtors' chapter 11 plan (the "Plan"). *See* Plan, ECF No. 3035; Confirmation Order, ECF No.

3060. The Plan became effective pursuant to its terms on the same date (the "Effective Date").

*See* Notice of Effective Date, ECF No. 3069. Among other things, the Confirmation Order fixed

July 30, 2012 as the bar date for claims accruing between May 1, 2012 and the Effective Date

(the "Third Administrative Bar Date") and appointed Eugene I. Davis (the "Liquidating

Trustee") as the liquidating trustee of the Debtors' bankruptcy estates. *See* Confirmation Order

¶¶ 6(a); 7, ECF No. 3060.

Importantly, the Plan and Confirmation Order discharged and released all claims against

the Debtors and their estates that arose prior to the Effective Date. *Id.* ¶ 13(c). In order to

effectuate the provisions of the Plan, the Confirmation Order extended the automatic stay under

Bankruptcy Code § 362(a) until the closing of the chapter 11 cases and enjoined any person from

taking any action in furtherance of prosecuting any claims against the Debtors as specifically set

forth in §§ 11.3 through 11.5 of the Plan. *See* Plan §§ 11.3–11.5, ECF No. 3035; *see also*

Confirmation Order ¶ 13(c) (approving discharge and injunction provisions); ¶ 26 (approving

extension of automatic stay), ECF No. 3060. Notice of the Confirmation Order, the Effective

Date, and the Third Administrative Bar Date was provided to creditors in accordance with the

terms of the Confirmation Order. *See* Aff. of Service, ECF No. 3079.

**B.      *Ms. Garvey's Claims Against the Debtors***

Elaine Garvey ("Ms. Garvey") in her capacity as next-of-kin and administratrix of the

estate of Ronald Brophy ("Mr. Brophy"), purports to be a creditor of Debtors SVCMC and St.

Jerome's Health Services Corporation d/b/a Holy Family Home ("Holy Family").[2] Between

March 25 and June 6, 2010, Mr. Brophy was a patient and resident at the nursing home owned

and operated by Holy Family located at 1740 84th Street in Brooklyn, New York. *See* Opp'n ¶¶

8–9, ECF No. 3655. Mr. Brophy allegedly sustained pressure ulcers during his time at Holy

Family that led to his death on June 13, 2010, approximately one week after he left the facility.

*Id.* ¶ 9.

       After his death in June 2010, the Debtors served Mr. Brophy at his last-known address

with copies of the First, Second, and Third Administrative Bar Dates. Decl. of Steven R. Korf

(the "Korf Decl.") ¶ 6, ECF No. 3645; *see also* Aff. of Service, ECF No. 1815; Aff. of Service,

ECF No. 2870; Aff. of Service, ECF No. 3079. The Debtors also served Mr. Brophy with notice

of the Confirmation Order and the occurrence of the Effective Date. Korf Decl. ¶ 6, ECF No.

3645; *see also* Aff. of Service, ECF No. 3079. In addition, as set forth above, notice of the

General Bar Date and the First and Second Administrative Bar Dates was published in *The New

York Times* and *The New York Post*. *See* Aff. of Publication, ECF No. 1277; Aff. of Publication,

ECF No. 1278; Aff. of Publication, ECF No. 1891; Aff. of Publication, ECF No. 1892; Aff. of

Publication, ECF No. 2968; Aff. of Publication, ECF No. 2969. Despite this notice, Ms. Garvey

never filed a proof of claim or sought authority to file an untimely proof of claim on account of

Mr. Brophy's injuries.

## C.     *The Kings County Action*

### i.     *Ms. Garvey Files Suit Against the Debtors*

       On January 4, 2013, some two-and-a-half years after Mr. Brophy's death and six months

after the Court entered the Confirmation Order, Ms. Garvey brought suit on behalf of Mr.

Brophy against a number of entities including SVCMC and Holy Family by filing a summons

---

[2]  Holy Family is a Debtor in Case No. 10-11970 (CGM).

with notice (the "Summons with Notice") in the Supreme Court of Kings County, New York,

initiating the case styled and numbered *Garvey v. Lutheran Medical Center, et al.*, Index No.

218/2013 (the "Kings County Action"). A copy of the Summons with Notice is attached to the

*Motion of the Liquidating Trustee for Entry of an Order Enforcing the Plan Injunction* (the

"Motion to Enforce") as Exhibit C. *See* Mot. to Enforce Ex. C, ECF No. 3626. A copy of the

verified complaint (the "Complaint") in the Kings County Action dated May 14, 2013 is attached

to the Motion to Enforce as Exhibit D. *See id.* at Ex. D.

The Liquidating Trustee first learned of the Kings County Action on April 18, 2013—

more than three months after it was filed—when a copy of the Summons with Notice was served

on post-Effective Date SVCMC. Korf Decl. ¶ 5, ECF No. 3645. On April 30, 2013, counsel for

the Liquidating Trustee responded by sending a letter (the "April 30 Letter") to attorney Sheryl

Menkes ("Ms. Menkes"), counsel for Ms. Garvey: (i) informing her of the discharge and

injunction provisions of the Plan and Confirmation Order; (ii) informing her that the filing of the

Kings County Action violated those provisions; (iii) requesting that the Kings County Action be

withdrawn; and (iv) stating that if the Kings County Action was not withdrawn, the Liquidating

Trustee would move in this Court to enforce the Plan, seek an order of contempt, and seek an

award of attorneys' fees, costs, and compensatory and punitive damages. A copy of the April 30

Letter is attached to the Motion to Enforce as Exhibit E. *See* Mot. to Enforce Ex. E, ECF No.

3626.

According to the Motion to Enforce, the Liquidating Trustee did not receive a response to

the April 30 Letter. *See* Mot. to Enforce ¶ 15, ECF No. 3626. Rather, on June 4, 2013, Ms.

Menkes contacted counsel for the Liquidating Trustee by telephone to demand that the

Liquidating Trustee lift the automatic stay to allow the Kings County Action to proceed. *Id.* ¶ 16.

At that time, Ms. Menkes contended that the purpose of the Kings County Action was solely to establish the Debtors' liability to Mr. Brophy and to recover damages from available insurance. *Id.* Ms. Menkes thereafter provided the Liquidating Trustee's counsel with a copy of the Complaint in the Kings County Action, by which Ms. Garvey sought to recover unliquidated compensatory and punitive damages against the defendants, including SVCMC and Holy Family. *See id.* ¶ 17; *see also* Compl. 40, ECF No. 3626 Ex. D.

After a brief investigation, the Liquidating Trustee learned that no insurance was available to compensate for Mr. Brophy's injuries. *Id.* ¶ 18. Specifically, the Liquidating Trustee found that, when the Debtors sold the Holy Family facility to an unrelated third party in January 2012, the Debtors terminated the insurance coverage that was maintained for the facility. Decl. of Timothy J. Lenane ("Lenane Decl.") ¶ 7, ECF No. 3626 Ex. B. Since no tail policy was purchased, the only applicable insurance policy was a "claims made" policy. *Id.* Under that policy, claims must have been noticed no later than March 20, 2012 in order to be paid. *Id.* Since the Debtors did not receive notice of Mr. Brophy's potential claim until the Summons with Notice in the Kings County Action was served on April 18, 2013, there was no timely notice of any potential claim and therefore no insurance coverage available under any insurance policy to compensate for Mr. Brophy's injuries. *Id.* ¶ 10.

On June 5, 2013, the day after Ms. Menkes contacted the Liquidating Trustee, counsel for the Liquidating Trustee responded and informed Ms. Menkes that no insurance coverage existed to compensate for Mr. Brophy's injuries. Mot. to Enforce ¶ 18, ECF No. 3626. Counsel for the Liquidating Trustee followed up with a letter dated June 7, 2013 (the "June 7 Letter") again requesting that the Kings County Action be withdrawn and restating the Liquidating Trustee's intent to move in this Court for contempt and sanctions if the suit was not promptly withdrawn.

*Id.* The June 7 Letter to Ms. Menkes included a draft of the Motion to Enforce and a copy of the Lenane Declaration attesting to the lack of available insurance. *Id.* A copy of the June 7 Letter is attached to the Motion to Enforce as Exhibit G. *See id.* at Ex. G.

In response to the June 7 Letter, on June 8, 2013, Ms. Menkes contacted counsel for the Liquidating Trustee by email requesting time to consult with her client, Ms. Garvey. Mot. to Enforce ¶ 19, ECF No. 3626. In her email, Ms. Menkes stated that Ms. Garvey was on vacation and would not be back for the next two weeks, or sometime in mid-June. *Id.* Copies of relevant email correspondence between Ms. Menkes and counsel for the Liquidating Trustee are attached to the Motion to Enforce as Ex. H. *See id.* at Ex. H. In follow-up emails on June 10 and 11, Ms. Menkes indicated that she would advise Ms. Garvey to withdraw the Kings County Action once she returned from her vacation. *See id.* Based on that representation, counsel for the Liquidating Trustee agreed to forgo filing the Motion to Enforce to allow Ms. Menkes time to speak with her client. *See* Mot. to Enforce ¶ 19, ECF No. 3626.

On June 24, 2013, counsel for the Liquidating Trustee emailed Ms. Menkes to ascertain Ms. Garvey's position on withdrawing the Kings County Action. *Id.* ¶ 20. At that time, Ms. Menkes informed the Liquidating Trustee that her client would in fact not return from vacation until as late as July 4, not mid-June as she had originally indicated. *See id.* at Ex H. Nevertheless, Ms. Menkes represented to the Liquidating Trustee that she was "sure that [Ms. Garvey] will not have objections [to withdrawing the Kings County Action]," and that she simply needed to sit down with Ms. Garvey to have a conversation with her before it could be done. *Id.* Based on Ms. Menkes' representation that she had a meeting with her client scheduled for July 21 and that she was "certain [she] will have no problem from [Ms. Garvey]," the Liquidating Trustee agreed to hold off on filing the Motion to Enforce until July 22. *Id.*

ii.    *Ms. Menkes Obtains an Order to Show Cause*

In a filing in this Court, Ms. Menkes admits that, in response to the Liquidating Trustee's

requests, "[she] considered withdrawing the [Kings County Action]." Opp'n ¶ 4, ECF No. 3655.

She contends that she did not do so because, after researching the legal issues involved, she

determined that Ms. Garvey "had a viable cause of action." *Id.* In a later affidavit, Ms. Menkes

expanded:

> I had advised [the Liquidating Trustee] that I needed [Ms. Garvey]'s permission
> to discontinue the [Kings County Action], and I needed to speak with her in
> person. This is true. I had several conversations with [Ms. Garvey], the content of
> which is privileged. Although I did believe she would discontinue the action
> under the set of facts as presented by the Liquidating Trustee, this is not what
> occurred.

Supp. Menkes Aff. (defined below) ¶¶ 4–6, ECF No. 3688.

Indeed, this is not what occurred. Instead, on June 5, 2013—more than a month after the

Liquidating Trustee's April 30 Letter advising that the Kings County Action was in violation of

the discharge and injunction provisions of Plan and Confirmation Order and while Ms. Menkes

was in contact with counsel for the Liquidating Trustee regarding the availability of insurance—

Ms. Menkes commenced a *second* action on behalf of Ms. Garvey against the Debtors in Kings

County, New York under Index No. 10404/2013. *See id.* ¶ 10; Mot. to Enforce ¶ 22, ECF No.

3626. The same day, Ms. Menkes was informed by the Liquidating Trustee that no insurance

existed. Mot. to Enforce ¶ 18, ECF No. 3626. Approximately one week later, without informing

the Liquidating Trustee of the second suit, Ms. Menkes emailed the Liquidating Trustee's

counsel to state that she would advise Ms. Garvey to withdraw the Kings County Action. *See id.*

at Ex. H.

Eight days after Ms. Menkes' email stating that she would advise her client to withdraw

the Kings County Action, and again without informing the Liquidating Trustee, Ms. Menkes

submitted an affirmation in support of an order to show cause from the state court (the "Show Cause Affirmation"). A copy of the Show Cause Affirmation is attached to the Motion to Enforce as Exhibit J. *See* Mot. to Enforce Ex. J, ECF No. 3626. According to the Show Cause Affirmation, the purpose of the proposed order to show cause was "to compel the [Liquidating Trustee] to lift the bankruptcy stay [as to SVCMC and Holy Family] so [Ms. Garvey] can proceed in state court with [the] personal injury claim, as [the] personal injury claim is an exception to the automatic stay up to the limits of insurance coverage existing at the time of [Mr. Brophy]'s injuries at [Holy Family]." *Id.* ¶ 4. As set forth above, Ms. Menkes made this affirmation in the Kings County Action despite having been informed by counsel for the Liquidating Trustee more than seven weeks earlier that the prosecution of the Kings County Action was in violation of the discharge and plan injunction and being informed two weeks earlier that no insurance coverage actually existed. This latter fact—that no insurance coverage even existed for Ms. Garvey to pursue in the Kings County Action—was not disclosed to the state court at all in the Show Cause Affirmation. *See id.*

Based on the Show Cause Affirmation, the state court in the Kings County Action issued an order to show cause (the "Order to Show Cause") on June 19, 2013, directing the Liquidating Trustee to appear in the state court at a hearing to be held on July 31, 2013. A copy of the Order to Show Cause is attached to the Motion to Enforce as Exhibit I. *See* Mot. to Enforce Ex. I, ECF No. 3626. In pertinent part, the Order to Show Cause required the Liquidating Trustee to appear and show cause why "an order should not be entered compelling [the Liquidating Trustee] to lift the stay on plaintiffs [sic] personal injury claim [against the Debtors], as plaintiff's personal injury claim is an exception to the automatic stay up to the limits of the insurance coverage existing at the time of [Mr. Brophy]'s injuries . . . ." *Id.* at 2.

Ms. Menkes did not immediately inform the Liquidating Trustee that she had obtained the Order to Show Cause from the state court. Rather, five days after the Order to Show Cause was entered, when counsel for the Liquidating Trustee asked Ms. Menkes if Ms. Garvey would agree to withdraw the Kings County Action, Ms. Menkes responded that Ms. Garvey was still on vacation but that she was "sure that [Ms. Garvey] will not have objections [to withdrawing the Kings County Action]." Mot. to Enforce Ex. H, ECF No. 3626. Two weeks after that, when counsel for the Liquidating Trustee followed up to indicate that the Motion to Enforce needed to be filed immediately in order for it to be heard in this Court on the July 18, 2013 omnibus hearing date, Ms. Menkes again failed to disclose that she had obtained the Order to Show Cause, instead asking for additional time to meet with her client on July 21 and stating that she was "certain [she] will have no problem from [Ms. Garvey]." *Id.* The Liquidating Trustee thereafter agreed to delay filing the Motion to Enforce to allow Ms. Garvey until July 22 to meet with her client and make a decision. *Id.*

As a result, by withholding the fact that she had sought and obtained the Order to Show Cause from the state court on June 19, 2013 and by representing to the Liquidating Trustee that Ms. Garvey would withdraw the Kings County Action—which Ms. Menkes was still prosecuting without the knowledge of the Liquidating Trustee—Ms. Menkes caused the Liquidating Trustee to delay filing the Motion to Enforce for several weeks, specifically precluding the Liquidating Trustee from obtaining a hearing in this Court prior to the hearing on the Order to Show Cause in the Kings County Action on July 31, 2013. After finally learning about the Show Cause Order, the Liquidating Trustee filed the Motion to Enforce in this Court on July 29, 2013. *See* Mot. to Enforce, ECF No. 3626.

**D.       *Proceedings Before This Court***

        **i.       *The Motion to Enforce the Plan Injunction***

Pursuant to the Motion to Enforce, the Liquidating Trustee sought: (i) an injunction

against Ms. Garvey from continuing to prosecute the Kings County Action as against SVCMC

and Holy Family; (ii) a declaration that the Kings County Action was void *ab initio* as against

SVCMC and Holy Family; and (iii) an award of the Liquidating Trustee's costs and attorneys'

fees pursuant to Bankruptcy Code § 105(a) and 28 U.S.C. § 1927. *See* Mot. to Enforce ¶ 25, ECF

No. 3626. A hearing in this Court to consider the Motion to Enforce was scheduled for August

15, 2013. *See id.* at 1.

On August 9, 2013, Ms. Menkes moved for an adjournment of the August 15, 2013

hearing to allow her to: (i) obtain expert testimony regarding Mr. Brophy's mental capacity at the

time he was served with notices of the various bar dates; and (ii) cross-move to have the Motion

to Enforce remanded to state court or removed to an Article III court. *See* Mot. for Adjournment

¶¶ 9–10, ECF No. 3647. On August 12, 2013, the Liquidating Trustee filed opposition to the

request for an adjournment. *See* Opp'n, ECF No. 3648. The same day, this Court entered an

order denying the requested adjournment. *See* Order, ECF No. 3649. On August 14, 2013, the

day before the August 15 hearing, Ms. Menkes submitted an affirmation in opposition to the

Motion to Enforce. *See* Opp'n, ECF No. 3655.

A hearing on the Motion to Enforce was held on August 15, 2013. At the conclusion of

the hearing, the Court found that Mr. Brophy was an unknown creditor of the Debtors, since

neither he nor Ms. Garvey had filed suit against the Debtors at the time the bar date notices were

served. *See* Hr'g Tr. 59:8–11, ECF No. 3663 (citing *Curatola v. Saint Vincents Catholic Medical

Centers of New York (In re Saint Vincents Catholic Medical Centers of New York)*, 2008 WL

1721471, at *2 (S.D.N.Y. Apr. 10, 2008) (stating that a creditor could not have been a known creditor "because she had not yet filed a negligence claim against" the debtor)). Alternatively, even if he was a known creditor, the Court held that the Debtors' direct-mail notice of certain bar dates to Mr. Brophy's last-known address constituted sufficient notice. *See* Hr'g Tr. 57:25–59:8, ECF No. 3663.

In light of the Court's conclusion that notice was sufficient, the Court concluded that Mr. Brophy was bound by the discharge and injunction provisions of the Plan and Confirmation Order and granted the Motion to Enforce. *Id.* at 59:25–60:9. The Court also stated that it would award fees to the Liquidating Trustee:

> As notice was sufficient as to the plaintiff, the confirmed plan and the provisions therein; namely, the plan injunction and extensions of the automatic stay bar the plaintiff from continuing the state court lawsuit[.] [T]he trustee has requested fees for prosecuting this action.
>
> The fees are necessary and were necessary to defend the state court order to show cause. That action was [a] clear and blatant violation of the automatic stay . . . .
>
> To defend the state court action and the automatic stay, [the Liquidating Trustee is] entitled to fees and expenses for doing that, and I will grant those . . . .
>
> I'm definitely awarding fees for all the state court matters. I will reserve awarding fees on any of the injunction matters . . . at this time.

*Id.* at 60:6–13; 60:15–17; 61:20–23.

On August 19, 2013, the Court entered an order (the "Enforcement Order"): (i) declaring the Kings County Action void *ab initio* against SVCMC and Holy Family; (ii) enjoining Ms. Garvey from continuing to prosecute the Kings County Action; (iii) directing Ms. Garvey to dismiss the Kings County Action and provide evidence of such dismissal no later than September 30, 2013; (iv) directing counsel to the Liquidating Trustee to file an affidavit setting forth the fees and expenses incurred in connection with these matters; and (v) reserving decision on the

amount of the Liquidating Trustee's fees and expenses that would be awarded. *See* Enforcement
Order, ECF No. 3659.

On August 22, 2013, Sarah Schultz, counsel to the Liquidating Trustee, filed an affidavit
(the "Schultz Affidavit") summarizing the Liquidating Trustee's fees incurred in connection with
the Kings County Action and the Motion to Enforce. *See* Schultz Aff., ECF No. 3667. Exhibit A
to the Schultz Affidavit evidences that the attorneys for the Liquidating Trustee incurred a total
of $83,515.00 in fees on these matters, excluding time billed by timekeepers billing less than two
hours, time billed preparing binders for the hearing on the Motion to Enforce, and eight hours of
non-working travel time billed by Ms. Schultz for her travel to and from New York City. *Id.* at
Ex. A. The Liquidating Trustee categorized this time as follows: (i) 3.9 hours and $2,511.00 in
fees for communications with Ms. Menkes; (ii) 119.8 hours and $63,075.00 in fees for the
Motion to Enforce and the hearing before this Court; and (iii) 29.6 hours and $17,929.00 in fees
for involvement in the Kings County Action. *Id.* Exhibit B to the Schultz Affidavit evidences
that the Debtors' management company, Grant Thornton, LLP, incurred another $7,369.50 in
fees, for total fees incurred of $90,884.50. *Id.* at Ex. B.

### ii.    *The Motion for Reconsideration*

On August 22, 2013, Ms. Menkes filed a letter which the Court construed as a motion for
reconsideration of the Enforcement Order. *See* Letter, ECF No. 3669 (stating that Ms. Menkes
"respectfully ask[s] Your Honor to reconsider this ruling"). Between September 3 and September
6, 2013, Ms. Menkes also filed a number of documents that purport to be documentary evidence
in support of Ms. Garvey's claims. *See, e.g.*, Notice of Filing of Letters of Administration, ECF
No. 3679; Notice of Filing of Death Certificate of Ronald Brophy, ECF No. 3680; Notice of
Filing of Additional Contact Information for Ronald Brophy's Wife and Daughter, ECF No.

3681; Notice of Filing of Summons in Kings County Action, ECF No. 3689. None of these documents were presented to the Court prior to or at the hearing on the Motion to Enforce, and none of the documents were ever admitted into evidence.

On September 4, 2013, Ms. Menkes filed an affidavit (the "Menkes Affidavit") in response to the Enforcement Order. *See* Menkes Aff., ECF No. 3685. In the affidavit, Ms. Menkes contends that she "misapprehended" that no insurance coverage was available for Mr. Brophy's injuries. *Id.* ¶ 6. She asserts that the Kings County Action "was not brought in willful disregard of the Bankruptcy Court, nor [was it] brought it any way to circumvent the Bankruptcy Court, or in any bad faith. *Id.* ¶ 3. She further contends that the fees incurred by the Liquidating Trustee in responding to the Kings County Action and prosecuting the Motion to Enforce are excessive and beyond her ability to pay. *Id.* ¶¶ 8–10. In support of the contention that she could not afford to pay any sanctions, Ms. Menkes offered to submit her tax returns to the Court for *in camera* review. *Id.* ¶ 12.

The next day, Ms. Menkes filed a supplement to her affidavit (the "Supplemental Menkes Affidavit"), contending that the Kings County Action was brought to preserve Ms. Garvey's claims in light of the impending statute of limitations. Supp. Menkes Aff. ¶¶ 9–11, ECF No. 3688. With respect to the continued prosecution of the Kings County Action after the Liquidating Trustee informed Ms. Menkes that no insurance coverage existed, Ms. Menkes avers that "[she] believe[d] [Ms. Garvey] would discontinue the [Kings County Action] under the set of facts as presented by the Liquidating Trustee, [but] this is not what occurred." *Id.* ¶ 6. Other than stating that "this is not what occurred," neither of the affidavits submitted by Ms. Menkes explain why she submitted the Show Cause Affirmation in the Kings County Action without informing counsel for the Liquidating Trustee, failed to inform the state court that she was aware

that no insurance coverage was available, and failed to notify the Liquidating Trustee that the

Order to Show Cause had been issued until it was too late for the Liquidating Trustee to obtain a

return date for the Motion to Enforce in this Court that was prior to the hearing on the Order to

Show Cause in the Kings County Action.

On August 27, 2013, while the motion for reconsideration was pending, Ms. Menkes also

filed a notice of appeal of the Enforcement Order to the United States District Court for the

Southern District of New York. *See* Notice of Appeal, ECF No. 3674. On September 6, 2013,

Ms. Menkes filed a motion for a stay of proceedings in this Court pending the outcome of the

appeal. *See* Mot. for Stay Pending Appeal, ECF No. 3692. On September 12, 2013, the

Liquidating Trustee filed an omnibus opposition to the motion for reconsideration and the

motion for stay pending appeal. *See* Opp'n., ECF No. 3699. On September 17, 2013, Ms.

Menkes filed a reply. *See* Reply, ECF No. 3707.

A hearing on the motion for reconsideration and the motion for stay pending appeal was

held on September 19, 2013. At that time, this Court stated that it was "difficult to believe" that

Ms. Menkes had misapprehended whether insurance was available, given that counsel for the

Liquidating Trustee had "sent emails, letters, and had multiple phone calls with [Ms.] Menkes

regarding the [Kings County Action] and the lack of available insurance." Hr'g Tr. 43:11–16,

ECF No. 3720. The Court also emphasized that, irrespective of whether insurance was available,

the only appropriate forum for Ms. Garvey to have sought relief from the automatic stay—which

was extended post-confirmation pursuant to the terms of the Plan—was this Court, not the state

court by way of an order to show cause. *Id.* at 43:16–19; *see In re Dominguez*, 312 B.R. 499, 505

(Bankr. S.D.N.Y. 2004) ("Only a bankruptcy court has jurisdiction to terminate, annul, or modify

the automatic stay.").

Following the hearing, on September 26, 2013, the Court entered separate orders denying

the motions for a stay pending appeal and for reconsideration. *See* Order, ECF No. 3722; Order,

ECF No. 3723.[3] Among other things, the order denying the motion for reconsideration directed

counsel for the Liquidating Trustee to file copies of actual fee invoices (not merely a summary)

incurred in connection with the Kings County Action and the Motion to Enforce. Order ¶ 2, ECF

No. 3723. The order also directed Ms. Menkes to provide to the Court for *in camera* review

copies of financial records demonstrating her alleged inability to pay the Liquidating Trustee's

costs and attorneys' fees together with an affidavit certifying to the accuracy of the documents.

*Id.* ¶ 3. Specifically, Ms. Menkes was directed to provide: (i) profit and loss statements for 2010,

2011, 2012, and year-to-date through August 2013; (ii) income tax returns for tax years 2010,

2011, and 2012; and (iii) any other financial documents requested by the Court. *Id.* The order

also set a further hearing for November 21, 2013 to determine the amount of the Liquidating

Trustee's fees to be awarded. *Id.* ¶ 5.

### iii.      *Additional Submissions in this Court*

On September 26, 2013, the Liquidating Trustee submitted copies of actual fee invoices

for the Liquidating Trustee's attorneys' fees incurred in connection with these matters, but not

for the Debtors' management company. *See* Notice of Filing of Invoices, ECF No. 3724. By

letter dated November 1, 2013, Ms. Menkes submitted certain of the documents that she was

ordered to produce for *in camera* review and requested an adjournment of the hearing scheduled

for November 21, 2013 to allow her to submit the remainder. *See* Letter, ECF No. 3750. On

November 15, 2013, the Court entered an order adjourning the November 21 hearing to

December 19, 2013 and directing Ms. Menkes to "submit her 2012 tax returns, 2012 profit and

---

[3]    District Judge Katherine B. Forrest denied Ms. Garvey's subsequent motion for stay pending appeal in the
District Court by order dated October 1, 2013. *See* Order, ECF No. 3747.

loss statement, and 2012 year-to-date profit and loss statement to the Court for *in camera* review

no later than December 12, 2013." Order 1, ECF No. 3757.

By letter dated November 21, 2013, Ms. Menkes requested an adjournment of the

December 19, 2013 hearing due to a scheduling conflict. *See* Letter, ECF No. 3763. On

December 4, 2013, Ms. Menkes filed a formal motion for adjournment. *See* Mot. for

Adjournment, ECF No. 3771. Rather than adjourning the hearing, on December 17, 2013, this

Court entered an order cancelling the December 19 hearing and taking the written materials

submitted under advisement with respect to the amount of fees to be awarded. *See* Order, ECF

No. 3783. Despite this Court's order directing her to do so no later than December 12, 2013, Ms.

Menkes never submitted her 2012 tax returns, 2012 profit and loss statement, and 2012 year-to-

date profit and loss statement to the Court for *in camera* review.

In view of all of the foregoing, the Court now issues this memorandum decision awarding

the Liquidating Trustee certain of his costs and attorneys' fees as set forth below.

## DISCUSSION

As set forth above, the Court has already found that: (i) Mr. Brophy was an unknown

creditor of the Debtors who received adequate notice of the applicable bar dates by publication in

*The New York Times* and *The New York Post*; (ii) in the alternative, if Mr. Brophy was a known

creditor of the Debtors, he received adequate notice of the applicable bar dates by the Debtors'

direct-mail notice to his last-known address; and (iii) Mr. Brophy, and Ms. Garvey as the

administratrix of his estate, were bound by the discharge and injunction provisions contained in

the Plan and Confirmation Order. In light of those findings, the Court has already concluded that

the filing and prosecution of the Kings County Action was a "clear and blatant violation" of

those discharge and injunction provisions. Hr'g Tr. 60:13, ECF No. 3663.

The Court is now called on to determine the amount of sanctions to impose against Ms.

Menkes for: (i) filing the Show Cause Affirmation in the Kings County Action after having been

informed by the April 30 Letter that the continued prosecution of the action violated the

Confirmation Order; (ii) representing to the state court in the Show Cause Affirmation that Ms.

Garvey intended to pursue insurance coverage which Ms. Menkes knew was not available; (iii)

failing to inform the state court that Ms. Menkes knew that no insurance coverage was available;

(iv) failing to notify the Liquidating Trustee that Ms. Menkes had filed the Show Cause

Affirmation or obtained the Show Cause Order from the state court; and (v) representing to the

Liquidating Trustee that Ms. Garvey would withdraw the Kings County Action in order to entice

the Liquidating Trustee to delay filing the Motion to Enforce until after a hearing on the Order to

Show Cause could be held in the Kings County Action.

### i.    *Sanctions are Appropriate Pursuant to 28 U.S.C. § 1927*

As set forth in the Motion to Enforce, the Liquidating Trustee requests that the Court

award sanctions against Ms. Menkes pursuant to Bankruptcy Code § 105(a) and 28 U.S.C. §

1927.[4] *See* Mot. to Enforce ¶ 25, ECF No. 3626. Section 1927 of Title 28 of the United States

Code states:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally
> the excess costs, expenses, and attorneys' fees reasonably incurred because of
> such conduct.

28 U.S.C. § 1927. Section 1927 "looks to unreasonable and vexatious multiplications of

proceedings; and it imposes an obligation on attorneys throughout the entire litigation to avoid

---

[4]    The only meaningful difference between an award made under Bankruptcy Code § 105(a) and 28 U.S.C. § 1927
is "that awards under § 1927 are made only against attorneys or other persons authorized to practice before the
courts while an award made under [§ 105(a)] may be made against an attorney, a party, or both." *Oliveri v.
Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

dilatory tactics." *U.S. v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991).

Accordingly, "[b]ad faith is the touchstone of an award under this statute." *Id.* "Section 1927

authorizes the imposition of sanctions *only* when there is a finding of conduct constituting or

akin to bad faith." *State Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 180

(2d Cir. 2004) (emphasis added).

A bankruptcy court may exercise the power to sanction pursuant to § 1927. *Baker v.

Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222 (2d Cir. 1991).

In order to do so, the court "must find clear evidence of bad faith, which may be inferred by

actions which are so completely without merit as to require the conclusion that they must have

been undertaken for some improper purpose." *In re Truong*, 2008 WL 1776227, at *5 (Bankr.

S.D.N.Y. Apr. 14, 2008) (citing *Vishipco Line v. Charles Schwab & Co.*, 2003 WL 1345229, at

*10 (S.D.N.Y. Mar. 19, 2003)); *see also Oliveri*, 803 F.2d at 1273 ("[A]n award under § 1927 is

proper when the attorney's actions are so completely without merit as to require the conclusion

that they must have been undertaken for some improper purpose . . . ."). For purposes of § 1927,

delay constitutes an "improper purpose." *Oliveri*, 803 F.2d at 1273; *In re French Bourekas, Inc.*,

175 B.R. 517, 524–25 (Bankr. S.D.N.Y. 1994).

Here, the evidence is clear that Ms. Menkes filed the Show Cause Affirmation and sought

issuance of the Show Cause Order in bad faith and for the improper purpose of delaying the

Liquidating Trustee's enforcement of the plan injunction in this Court. At the time she filed the

Show Cause Affirmation, Ms. Menkes had actual knowledge of the discharge and injunction

provisions of the Plan and Confirmation Order and knew that there was no insurance from which

Ms. Garvey could ultimately recover. Not only did Ms. Menkes disregard that knowledge in

order to seek and obtain the Show Cause Order, Ms. Menkes concealed the issuance of that order

from the Liquidating Trustee, instead requesting repeated delays in the filing of the Liquidating

Trustee's Motion to Enforce and representing that the Kings County Action would be withdrawn.

In fact, from the time the Liquidating Trustee first informed her that no insurance coverage

existed on June 5, 2013 until the Motion to Enforce was filed on July 29, Ms. Menkes was able

to procure a delay of nearly two months, during which time she continued to prosecute the Kings

County Action unobstructed.

Rather than explain to this Court why the Kings County Action was not withdrawn after

her repeated statements to the Liquidating Trustee that it would be, Ms. Menkes has simply

alleged that "this is not what occurred." Supp. Menkes Aff. ¶ 6, ECF No. 3688. The Court has

already found that Ms. Menkes' contention that she "misapprehended" that there was no

insurance coverage was not credible in light of the undisputed fact that counsel for the

Liquidating Trustee informed Ms. Menkes in early June 2013 that there was no insurance

through phone calls, emails, and the June 7 Letter, attached to which was a copy of the Lenane

Declaration attesting to the lack of available insurance. *See* Hr'g Tr. 43:11–16, ECF No. 3720.

The Court now finds that her actions in filing the Show Cause Affirmation and continuing to

prosecute the Kings County Action while representing to the Liquidating Trustee that it would be

withdrawn were taken in bad faith. In light of the foregoing, and for the reasons set forth on the

record at the August 15, 2013 hearing on the Motion to Enforce, the Court finds that the

Liquidating Trustee has met his burden of clearly showing Ms. Menkes' bad faith sufficient to

warrant an award of attorneys' fees under § 1927.

### ii.    *The Amount of the Sanctions*

"Section 1927 expressly permits courts to require attorneys 'to satisfy personally the

excess costs, expenses, and attorneys' fees reasonably incurred because of [their] conduct.'" *In*

*re Green*, 422 B.R. 469, 477 (Bankr. S.D.N.Y. 2010) (quoting 28 U.S.C. § 1927). "The same standards of compensation and reimbursement apply whether sanctions are awarded under [Rule 11], 28 U.S.C. § 1927, or the Court's inherent power." *In re Spectee Grp.*, 185 B.R. 146, 160 (Bankr. S.D.N.Y. 1995). Specifically, an injured party may recover attorneys' fees that are attributable to "investigating, researching and fighting" the meritless claims and those that are incurred to "'research, prepare and prosecute' its sanctions motion." *Id.* (quoting *PaineWebber, Inc. v. Can Am Fin. Grp., Ltd.*, 121 F.R.D. 324, 334 (N.D. Ill. 1988)).

"The party seeking the sanction [under 28 U.S.C. § 1927] must provide the Court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary." *Id.* Work that would have been required even if the bad faith conduct had not been undertaken is not compensable. *In re St. Stephen's 350 E 116th St.*, 313 B.R. 161, 172 (Bankr. S.D.N.Y. 2004). "Only fees that are directly caused by the sanctionable conduct may be awarded. *Green*, 422 B.R. at 477. Ultimately, the decision as to the amount of sanctions to be awarded under § 1927 is committed to the Court's discretion. *Id.*

As set forth above, the Court has already determined to award the Liquidating Trustee his attorneys' fees incurred in connection with the Kings County Action. *See* Hr'g Tr. 60:15–17, ECF No. 3663. With respect to those fees, the Court finds that the Liquidating Trustee has met his burden of showing that such fees were "directly caused by the sanctionable conduct" and would not have been required had Ms. Menkes not engaged in bad faith conduct and dilatory tactics. *See Green*, 422 B.R. at 477; *St. Stephen's*, 313 B.R. at 172. Ms. Menkes' actions in delaying the Liquidating Trustee from filing the Motion to Enforce while simultaneously prosecuting the Order to Show Cause in the Kings County Action to pursue non-existent

insurance coverage are the very epitome of "multipl[ying] proceedings . . . unreasonably and

vexatiously." 28 U.S.C. § 1927. The Court has reviewed the invoices for the Liquidating

Trustee's attorneys' fees and finds that the 29.6 hours and $17,929.00 in fees incurred to defend

against the Kings County Action were reasonable and necessary. Ms. Menkes is therefore

personally liable for that amount as "excess costs, expenses, and attorneys' fees reasonably

incurred because of [her] conduct." *Id.*

The Liquidating Trustee requests additional attorneys' fees in the amount of $2,511.00

(representing 3.9 hours) incurred communicating with Ms. Menkes and another $63,075.00

(representing 119.8 hours) incurred in preparing and prosecuting the Motion to Enforce. *See*

Schultz Aff. Ex. A, ECF No. 3667; Notice of Filing of Invoices, ECF No. 3724. As set forth

above, an injured party may recover attorneys' fees that are attributable to "investigating,

researching and fighting" the meritless claims and those that are incurred to "'research, prepare

and prosecute' its sanctions motion." *Spectee*, 185 B.R. at 160 (quoting *PaineWebber*, 121

F.R.D. at 334); *accord Khan*, 488 B.R. at 536; *Green*, 422 B.R. at 477; *Emanuel*, 422 B.R. at

467. It is axiomatic that fees incurred in preparing and prosecuting a motion for sanctions are

"directly caused by the sanctionable conduct" and would not have been required had the

sanctionable conduct not occurred in the first place. *See Green*, 422 B.R. at 477; *St. Stephen's*,

313 B.R. at 172. The Court has reviewed the Liquidating Trustee's attorneys' fee invoices and

finds that the time incurred was reasonable and necessary. As a result, the Court agrees that it is

appropriate to shift the burden of these additional fees in the amount of $65,586.00 to Ms.

Menkes.

The Liquidating Trustee also requests $7,369.50 in fees incurred by the Debtors'

management company, Grant Thornton. Schultz Aff. Ex. B, ECF No. 3667. On August 22, 2013,

the Liquidating Trustee submitted a summary of Grant Thornton's time expended in these

matters. *See id.* However, when directed by the Court to file copies of actual invoices instead of a

mere summary of fees, the Liquidating Trustee did not do so. Absent copies of contemporaneous

time records for the fees that Grant Thornton seeks, the Court cannot order Ms. Menkes to pay

those fees. *See Spectee*, 185 B.R. at 160.

Accordingly, pursuant to 28 U.S.C. § 1927, the Court concludes that Ms. Menkes should

be held personally liable for $83,515.00 of the Liquidating Trustee's "excess costs, expenses and

attorneys' fees," representing: (i) $2,511.00 incurred in communications with Ms. Menkes; (ii)

$17,929.00 incurred in defending against the Kings County Action; and (iii) $63,075.00 incurred

in preparing and prosecuting the Motion to Enforce. *See* Schultz Aff. Ex. A, ECF No. 3667;

Notice of Filing of Invoices, ECF No. 3724. The Liquidating Trustee's request for the remaining

$7,369.50 incurred by Grant Thornton is denied.

### iii.    *The Sanctions Should Not be Reduced*

"[G]iven the underlying purpose of sanctions—to punish deviations from proper

standards of conduct with a view toward encouraging future compliance and deterring further

violations—it lies well within the district court's discretion to temper the amount to be awarded

against an offending attorney by a balancing consideration of his ability to pay." *Oliveri*, 803

F.2d at 1281; *see Kramer v. Mahia (In re Khan)*, 488 B.R. 515, 536 (Bankr. E.D.N.Y. 2013) ("A

court may also consider the [sanctioned party's] ability to pay, as that ability will necessarily

have an impact on  the extent to which an award of sanctions will serve the objective of

deterrence."); *In re Omega Trust*, 110 B.R. 665, 674 (Bankr. S.D.N.Y. 1990) (stating that factors

courts consider in determining sanctions includes "[t]he impact of the sanction on the offender,

including the offender's ability to pay a monetary sanction").

In light of Ms. Menkes' contention that she lacked the ability to pay the Liquidating Trustee's costs and attorneys' fees, and at Ms. Menkes' request to submit her tax returns to the Court to establish her inability to pay, the Court directed her to submit financial documents supporting her financial condition for *in camera* review. Order ¶ 2, ECF No. 3723. By subsequent order, the Court directed all of the required financial documents to be submitted "no later than December 12, 2013." Order 1, ECF No. 3757. Since Ms. Menkes failed to comply with the Court's unambiguous directive to submit all required documents by December 12, 2013—and still has not submitted all of them as of the date of this memorandum decision—the Court declines to exercise its discretion to temper its award of sanctions based upon Ms. Menkes' professed inability to pay.

On two separate occasions and in two separate hearings, the Court also gave Ms. Menkes the opportunity to specifically object to the portions of the Liquidating Trustee's attorneys' fees that she found to be unreasonable. *See* Hr'g Tr. 61:18–62:9, ECF No. 3663 (allowing Ms. Menkes the opportunity to respond in writing to the Liquidating Trustee's summary of fees incurred); Hr'g Tr. 49:18:22, ECF No. 3720 (allowing Ms. Menkes the opportunity to respond in writing to the Liquidating Trustee's actual fee invoices). Ms. Menkes did not file anything objecting to the attorneys' hourly rates or the specific time and expense entries other than a blanket assertion that the fees were excessive. The Court will not reduce the amount of sanctions based solely on a generalized objection to the size of the award. *See Spectee*, 185 B.R. at 161 (noting that sanctioned party had not argued that opposing law firm's billing rates were unreasonable, that the law firm had overstaffed the case, or that the law firm's time and expense records did not provide sufficient detail).

Considering all of the above, the Court finds that Ms. Menkes has not given the Court

any reason to reduce the award to the Liquidating Trustee and, in fact, "there are good reasons

not to reduce the award." *Id.* at 163. As set forth above, Ms. Menkes engaged in a number of bad

faith and dilatory tactics, including: (i) filing the Show Cause Affirmation in the state court

despite her actual knowledge of the discharge and injunction provisions of the Plan and

Confirmation Order; (ii) representing to the state court that the purpose of the Kings County

Action was to pursue insurance coverage which Ms. Menkes knew did not exist; (iii) failing to

notify the Liquidating Trustee that she had sought and obtained the Show Cause Order from the

state court in order to delay the Liquidating Trustee seeking relief in this Court; and (iv)

continuing to represent to the Liquidating Trustee's attorneys that she was certain that the Kings

County Action would be withdrawn when, in fact, she knew that it would not and was instead

continuing to prosecute the action. There is no suggestion that the Liquidating Trustee or his

attorneys are at fault for the sizeable amount of fees incurred; rather, the blame falls squarely on

Ms. Menkes for engaging in bad faith conduct in the first place.

Although the Court is aware that $83,515.00 represents a substantial sanctions award, the

Court believes that such a sanction is appropriate here. The ultimate burden of the more than

$80,000.00 in "excess fees and costs" that were reasonably and necessarily incurred by the

Liquidating Trustee as a result of Ms. Menkes' vexatious conduct will be borne not by the

Liquidating Trustee or his attorneys, but by unsecured creditors in this case, who are expected to

receive a distribution somewhere in the range of 2.3 to 7.5%. *See* Hr'g Tr. 42:4–7, ECF No.

3056. The Court believes that it is not appropriate to permit Ms. Menkes to shield herself from

responsibility for the payment of those fees by hiding behind her unsupported contention that she

is a sole practitioner who is unable to pay; the simple fact is that her deliberate, bad faith,

vexatious conduct directly resulted in the Liquidating Trustee incurring substantial attorneys'

fees that must now be paid. For the reasons set forth above, and in view of the whole record of

this case, the Court finds that it is appropriate to shift the entire burden of these fees (less the

$7,369.50 in fees incurred by Grant Thornton) to Ms. Menkes.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Ms. Menkes is directed to pay the Liquidating Trustee's

attorneys' fees in the amount of **$83,515.00**. The effectiveness of the order directing payment

shall be stayed for a period of fourteen days from the date of its entry to allow Ms. Menkes to

seek a stay pending appeal should she so desire. Counsel for the Liquidating Trustee is directed

to submit an order consistent with this memorandum decision.

Dated: Poughkeepsie, New York
       March 21, 2014

/s/ Cecelia G. Morris
CECELIA G. MORRIS
CHIEF U.S. BANKRUPTCY JUDGE